# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

## DOCKET NO.: 24-11126-B

DAVITA KEY,

Plaintiff – Appellant,

v.

HYUNDAI MOTOR MANUFACTURING ALABAMA, LLC,
HYUNDAI ENG AMERICA, INC., AND
DYNAMIC SECURITY, INC.,

Defendants – Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
DISTRICT COURT CIVIL ACTION NO.: 2:19-cv-0767-ECM

## APPENDIX TO BRIEF OF APPELLANT

COUNSEL FOR APPELLANT:

Heather Newsom Leonard
HEATHER LEONARD, P.C.
2105 Devereaux Cir, Ste 111
Birmingham, AL 35234
Phone: (205) 977-5421
Heather@HeatherLeonardPC.com

Leslie A. Palmer
PALMER LAW, LLC
104 23rd St. S., Ste 100
Birmingham, AL 35233
Phone: (205) 285-3050
Leslie@PalmerLegalServices.com

# INDEX of APPENDIX

Docket/Tab #

District Court Docket Sheet ............................................................A

Complaint ................................................................................1

Amended Complaint .....................................................................28

Memorandum Opinion and Order Granting Partial Motion to Dismiss for
HEA and Denying all other Motions to Dismiss...........................................38

Answer by HMMA........................................................................41

Answer by HEA ........................................................................42

Answer by Dynamic Security ...........................................................43

Memorandum Opinion Granting Summary Judgment for HMMA and
HEA and Partially Granting Summary Judgment for Dynamic Security ...138

Order and Judgment from Jury Verdict..................................................186

Memorandum Opinion and Order as to post trial motions.........................213

Notice of Appeal by Davita Key .......................................................221

Certificate of Service.................................................................B

Docket / Tab # A

District Court
Docket Sheet

APPEAL,CLOSED,ECM-Clerk5

**U.S. District Court**
**Alabama Middle District (Montgomery)**
**CIVIL DOCKET FOR CASE #: 2:19-cv-00767-ECM-SMD**

Key v. Dynamic Security, Inc.
Assigned to: Chief Judge Emily C. Marks
Referred to: Magistrate Judge Stephen Michael Doyle
Case in other court: 24-11069-B
                  24-11126-B
Cause: 42:2000 Job Discrimination

Date Filed: 10/10/2019
Date Terminated: 03/30/2023
Jury Demand: Plaintiff
Nature of Suit: 442 Civil Rights: Jobs
Jurisdiction: Federal Question

**Plaintiff**

**Davita M. Key**

represented by **Heather Newsom Leonard**
Heather Leonard, PC
2105 Devereux Circle; Suite 111
Birmingham, AL 35242
205-977-5421
Fax: 205-278-1400
Email: heather@heatherleonardpc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leslie Ann Palmer**
Palmer Law, LLC
104 23rd Street South
Suite 100
Birmingham, AL 35233
205-285-3050
Email: leslie@palmerlegalservices.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Hyundai Motor Manufacturing Alabama, LLC**
*TERMINATED: 02/10/2023*

represented by **David James Middlebrooks**
Lehr Middlebrooks Vreeland & Thompson PC
PO Box 11945
Birmingham, AL 35202-1945
205-326-3002
Fax: 205-326-3008
Email: dmiddlebrooks@lehrmiddlebrooks.com
*TERMINATED: 02/10/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Whitney Ryan Brown**
Lehr Middlebrooks Price & Vreeland, PC
2021 Third Avenue North
Birmingham, AL 35203
205-323-9274
Fax: 205-326-3008
Email: wbrown@lehrmiddlebrooks.com
*TERMINATED: 02/10/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Hyundai Engineering America, Inc.**
*TERMINATED: 02/10/2023*

represented by **Cortlin Lee Bond**
Bradley Arant Boult Cummings LLP
One Federal Pl - 1819 Fifth Ave N
Birmingham, AL 35203
205-521-8206

Fax: 205-521-8800
Email: cbond@bradley.com
*TERMINATED: 02/10/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard Leon DeWeese , Jr.**
DeWeese & Bae LLC
8191 Seaton Pl
Montgomery, AL 36117
334-239-7994
Email: richard@deweesebae.com
*TERMINATED: 01/14/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Sarahanne Young Vaughan**
Bradley Arant Boult Cummings
One Federal Pl; 1819 Fifth Ave N.
Birmingham, AL 35203-2119
205-521-8000
Fax: 205-521-8800
Email: svaughan@bradley.com
*TERMINATED: 02/10/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas Matthew Miller**
Bradley Arant Boult Cummings LLP
One Federal Place; 1819 Fifth Avenue North
Birmingham, AL 35203-2119
205-521-8000
Fax: 205-521-8800
Email: mmiller@bradley.com
*TERMINATED: 02/10/2023*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Yurie Yeoul Bae**
DeWeese & Bae LLC
3170 Parliament Cir
Suite B
Montgomery, AL 36116
334-239-7994
Email: yurie@deweesebae.com
*TERMINATED: 01/14/2022*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Dynamic Security, Inc.**                    represented by **Susan Ware Bullock**
Ford Harrison LLP
420 20th Street North; Suite 2560
Birmingham, AL 35203
205-244-5904
Fax: 205-244-5901
Email: sbullock@fordharrison.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Wesley Clyde Redmond**
Ford Harrison, LLP
420 20th Street North; Suite 2560
Birmingham, AL 35203
205-244-5905
Fax: 404-244-5901

Email: wredmond@fordharrison.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Movant**

**Equal Employment Opportunity Commission**    represented by    **Gerald Lee Miller**
U.S. Equal Employment Opportunity Commission
Ridge Park Place- Suite 2000
1130 22nd Street, South
Birmingham, AL 35205
205-212-2047
Fax: 205-212-2041
Email: gerald.miller@eeoc.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kurt Sethu Fischer**
United States Equal Employment Opportunity
Commission
EEOC, Birmingham District Office, Ridge Park Place
1130 22nd Street South, Suite 2000
Birmingham, AL 35205
205-212-2043
Fax: 205-212-2084
Email: kurt.fischer@eeoc.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Marsha Lynn Rucker**
EEOC-Birmingham District
1130 22nd Street South
Ridge Park Place
Birmingham, AL 35205
205-212-2046
Fax: 205-212-2041
Email: marsha.rucker@eeoc.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/10/2019 | 1 | COMPLAINT against Dynamic Security, Inc., Hyundai Engineering America, Inc., Hyundai Motor Manufacturing Alabama, LLC ( Filing fee $ 400.00 receipt number 4602055239.), filed by Davita M. Key. (Attachments: # 1 EEOC Letter and Right to Sue Letter, # 2 Civil Cover Sheet, # 3 Filing Fee Receipt)(dmn, ) (Entered: 10/11/2019) |
| 10/10/2019 | | DEMAND for Trial by Jury by Davita M. Key. (dmn, ) (NO PDF, see Doc. 1 for pdf.) (Entered: 10/11/2019) |
| 10/10/2019 | 2 | Corporate/Conflict Disclosure Statement by Davita M. Key. (dmn, ) (Entered: 10/11/2019) |
| 10/15/2019 | 3 | **(VACATED PURSUANT TO THE COURT'S 26 ORDER) ORDER REFERRING CASE to Magistrate Judge Honorable Judge Stephen Michael Doyle for all pretrial proceedings and entry of any orders or recommendations as may be appropriate. Signed by Chief Judge Emily C. Marks on 10/15/2019.(kh, )** Modified on 5/27/2020 (kh, ). (Entered: 10/15/2019) |
| 01/06/2020 | 4 | Summons Issued as to Dynamic Security, Inc., Hyundai Engineering America, Inc., Hyundai Motor Manufacturing Alabama, LLC., mailed CMRRR with copy of 1 Complaint. (cnw, ) (Entered: 01/06/2020) |
| 01/09/2020 | 5 | Return Receipt Card showing service of Summons and 1 Complaint signed by Jennifer Lockwood for Hyundai Engineering America, Inc. served on 1/7/2020, answer due 1/28/2020. (kh, ) (Entered: 01/09/2020) |
| 01/14/2020 | 6 | Return Receipt Card showing service of Summons and 1 Complaint signed by Gail Arrington for Dynamic Security, Inc. served on 1/9/2020, answer due 1/30/2020. (kh, ) (Entered: 01/14/2020) |
| 01/14/2020 | 7 | Return Receipt Card showing service of Summons and 1 Complaint signed by M.C. for Hyundai Motor Manufacturing Alabama, LLC served on 1/9/2020, answer due 1/30/2020. (kh, ) (Entered: 01/14/2020) |
| 01/27/2020 | 8 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Hyundai Engineering America, Inc.. (Bae, Yurie) (Entered: 01/27/2020) |

| 01/27/2020 | 9 | Corporate/Conflict Disclosure Statement by Hyundai Engineering America, Inc.. (Bae, Yurie) (Entered: 01/27/2020) |
|---|---|---|
| 01/30/2020 | 10 | NOTICE of Appearance by Whitney Ryan Brown on behalf of Hyundai Motor Manufacturing Alabama, LLC (Brown, Whitney) (Entered: 01/30/2020) |
| 01/30/2020 | 11 | MOTION to Dismiss , MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Hyundai Motor Manufacturing Alabama, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G)(Middlebrooks, David) (Entered: 01/30/2020) |
| 01/30/2020 | 12 | Corporate/Conflict Disclosure Statement by Hyundai Motor Manufacturing Alabama, LLC. (Brown, Whitney) (Entered: 01/30/2020) |
| 01/30/2020 | 13 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Motion to Dismiss by Defendant Dynamic Security* by Dynamic Security, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Bullock, Susan) (Entered: 01/30/2020) |
| 01/31/2020 | 14 | Corporate/Conflict Disclosure Statement by Dynamic Security, Inc.. (Bullock, Susan) (Entered: 01/31/2020) |
| 01/31/2020 | 15 | **ORDER: Upon consideration of Defendant Hyundai Engineering America, Inc.'s Motion to Dismiss (Doc. 8 ); Defendant Hyundai Motor Manufacturing Alabama, LLC's Motion to Dismiss (Doc. 11 ); and Defendant Dynamic Security, Inc.s Motion to Dismiss (Doc. 13 ), it is ORDERED that, on or before February 21, 2020, Plaintiff shall file written responses showing cause why Defendants' Motions should not be dismissed. Plaintiff shall file separate responses to each of the motions. Further, it is ORDERED that Defendants may file replies to Plaintiff's responses on or before March 6, 2020. Signed by Honorable Judge Stephen Michael Doyle on 1/31/2020.(kh, ) (Entered: 01/31/2020)** |
| 02/18/2020 | 16 | MOTION for Extension of Time To Respond To Defendant's 13 Motion To Dismiss by Davita M. Key. (kh, ) (Entered: 02/19/2020) |
| 03/04/2020 | 17 | **ORDERED that the Motion (Doc. 16 ) is GRANTED. Plaintiff's deadline to show cause as to why Defendants' Motions to Dismiss (Docs. 8 , 13 ) should not be granted is extended to March 21, 2020. Signed by Honorable Judge Stephen Michael Doyle on 3/4/2020. (kh, ) (Entered: 03/04/2020)** |
| 03/06/2020 | 18 | MOTION for Extension of Deadline to Reply to Plaintiff's Responses to their Respective Motions to Dismiss by Hyundai Motor Manufacturing Alabama, LLC by Hyundai Motor Manufacturing Alabama, LLC. (Brown, Whitney) (Entered: 03/06/2020) |
| 03/06/2020 | 19 | **ORDER: Upon consideration of Defendants HMMA's and HEA's Motion to Extend Time to Reply to Respond to Plaintiff's Responses to Their Respective Motions to Dismiss (Doc. 18 ), it is ORDERED that the Motion (Doc. 18 ) is GRANTED. Defendants may file replies to Plaintiff's response(s) to Defendants' Motions to Dismiss on or before April 6, 2020.Signed by Honorable Judge Stephen Michael Doyle on 3/6/2020. (kh, ) (Entered: 03/06/2020)** |
| 03/09/2020 | 20 | MOTION for Extension of Time To Respond To Defendant's Motion to Dismiss by Davita M. Key. (Attachments: # 1 Supporting Document)(kh, ) (Entered: 03/10/2020) |
| 03/10/2020 | 21 | **ORDER: Upon consideration of Plaintiff's Motion for Extension of Time to Respond to Defendants' Motion to Dismiss (Doc. 20 ), it is ORDERED that the Motion (Doc. 20 ) is GRANTED. Plaintiff may file a response to Defendants' Motion to Dismiss on or before May 20, 2020. Defendants may reply to Plaintiff's response on or before June 3, 2020. Signed by Honorable Judge Stephen Michael Doyle on 3/10/2020. (kh, ) (Entered: 03/10/2020)** |
| 05/20/2020 | 22 | NOTICE of Appearance by Heather Newsom Leonard on behalf of Davita M. Key (Leonard, Heather) (Entered: 05/20/2020) |
| 05/20/2020 | 23 | MOTION to Amend/Correct 1 Complaint, by Davita M. Key. (Attachments: # 1 Exhibit 1 - Proposed Amended Complaint) (Leonard, Heather) (Entered: 05/20/2020) |
| 05/20/2020 | 24 | RESPONSE in Opposition re 8 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 13 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Motion to Dismiss by Defendant Dynamic Security*, 11 MOTION to Dismiss MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Davita M. Key. (Leonard, Heather) (Entered: 05/20/2020) |
| 05/20/2020 | 25 | NOTICE of Appearance by Leslie Ann Palmer on behalf of Davita M. Key (Palmer, Leslie) (Entered: 05/20/2020) |
| 05/27/2020 | 26 | **ORDERED that the Court's Order of Referral, dated October 15, 2019 (doc. 3 ), is VACATED. Signed by Chief Judge Emily C. Marks on 5/27/2020. (kh, ) (Entered: 05/27/2020)** |
| 05/27/2020 | | Motions No Longer Referred: 13 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM *Motion to Dismiss by Defendant Dynamic Security*, 11 MOTION to Dismiss MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 23 MOTION to Amend/Correct 1 Complaint, , 8 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (kh, ) (Entered: 05/27/2020) |
| 05/29/2020 | 27 | **ORDERED that the Plaintiff's motion (doc. 23 ) is GRANTED. It is further ORDERED that the Plaintiff shall file her amended complaint on or before June 5, 2020 in compliance with this Court's local rules. See L.R.M.D.Ala.15.1. Signed by Chief Judge Emily C. Marks on 5/29/2020. (kh, ) (Entered: 05/29/2020)** |
| 06/01/2020 | 28 | AMENDED COMPLAINT against All Defendants, filed by Davita M. Key.(Palmer, Leslie) (Entered: 06/01/2020) |

| | | |
|---|---|---|
| 06/02/2020 | 29 | **ORDER: it is ORDERED that the Defs' motions to dismiss (doc. 8 ); (doc. 11 ); (doc. 13 ), are DENIED as moot. Signed by Chief Judge Emily C. Marks on 6/2/2020. (Attachments: # 1 Civil Appeals Checklist) (cwl, )** (Entered: 06/02/2020) |
| 06/12/2020 | 30 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Hyundai Motor Manufacturing Alabama, LLC. (Brown, Whitney) (Entered: 06/12/2020) |
| 06/15/2020 | 31 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Hyundai Engineering America, Inc.. (Bae, Yurie) (Entered: 06/15/2020) |
| 06/15/2020 | 32 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Dynamic Security, Inc.. (Attachments: # 1 Exhibit Exhibit A)(Bullock, Susan) (Entered: 06/15/2020) |
| 06/15/2020 | | ***PURSUANT TO THE 31 MOTION - Attorney Richard Leon DeWeese, Jr for Hyundai Engineering America, Inc. added. (No pdf attached to this entry) (cwl, ) (Entered: 06/16/2020) |
| 06/15/2020 | | ***PURSUANT TO THE 32 MOTION - Attorney Wesley Clyde Redmond for Dynamic Security, Inc. added. (no pdf attached to this entry) (cwl, ) (Entered: 06/16/2020) |
| 06/17/2020 | 33 | **ORDER: Now pending before the Court are the Defendants' Motions to Dismiss. (Doc. 30 ) (Doc. 31 ) (Doc. 32 ). Upon consideration of the motions and for good cause, it is ORDERED that on or before July 8, 2020, the Plaintiff shall show cause why the Defendants' motions (docs. 30 , 31 & 32 ), should not be granted. The Defendants may file replies on or before July 15, 2020. Signed by Chief Judge Emily C. Marks on 6/17/2020. (kh, )** (Entered: 06/17/2020) |
| 07/08/2020 | 34 | RESPONSE in Opposition re 30 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 32 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 31 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Davita M. Key. (Palmer, Leslie) (Entered: 07/08/2020) |
| 07/15/2020 | 35 | REPLY to Response to Motion re 30 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Hyundai Motor Manufacturing Alabama, LLC. (Brown, Whitney) (Entered: 07/15/2020) |
| 07/15/2020 | 36 | REPLY to Response to Motion re 30 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM , 32 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Dynamic Security, Inc.. (Bullock, Susan) (Entered: 07/15/2020) |
| 07/15/2020 | 37 | REPLY to Response to Motion re 31 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Hyundai Engineering America, Inc.. (Bae, Yurie) (Entered: 07/15/2020) |
| 08/31/2021 | 38 | **MEMORANDUM OPINION AND ORDER: it is ORDERED as follows: 1) Defendant HMMA's 30 motion to dismiss, is DENIED in its entirety; 2) Defendant HEA's 31 motion to dismiss, is GRANTED with respect to the Plaintiff's Title VII claims contained in Counts 1, 2, and 4; The motion is DENIED with respect the Plaintiff's 1981 claims contained in Counts 3 and 5; and 3) Defendant Dynamic's 32 motion to dismiss, is DENIED in its entirety, as further set out in Order. Signed by Chief Judge Emily C. Marks on 8/31/2021. (am, )** (Main Document 38 replaced on 8/31/2021 to correct heading in main pdf previously attached by clerk's office) (am, ). (Entered: 08/31/2021) |
| 08/31/2021 | 39 | NOTICE of Correction re 38 Memorandum Opinion and Order to correct the case caption only. (Attachments: # 1 Corrected Main Document 38 )(am, ) (Entered: 08/31/2021) |
| 09/01/2021 | 40 | **Rule 26(f) ORDER: DIRECTING that that the FED.R.CIV.P. 26(f) report containing the discovery plan shall be filed as soon as practicable but not later than 9/22/2021, as further set out in Order. Signed by Chief Judge Emily C. Marks on 9/1/2021. (am, )** (Entered: 09/01/2021) |
| 09/13/2021 | 41 | ANSWER to 28 Amended Complaint by Hyundai Motor Manufacturing Alabama, LLC.(Brown, Whitney) (Entered: 09/13/2021) |
| 09/14/2021 | 42 | ANSWER to 28 Amended Complaint by Hyundai Engineering America, Inc..(Bae, Yurie) (Entered: 09/14/2021) |
| 09/14/2021 | 43 | ANSWER & Defenses 28 Amended Complaint by Dynamic Security, Inc..(Bullock, Susan) Modified on 9/15/2021 to clarify text as reflected in pleading (am, ). (Entered: 09/14/2021) |
| 09/22/2021 | 44 | MOTION for Extension of Time to File *Report of Parties' Planning Meeting* by Hyundai Motor Manufacturing Alabama, LLC. (Brown, Whitney) (Entered: 09/22/2021) |
| 09/23/2021 | 45 | **TEXT ORDER: GRANTING the 44 MOTION for Extension of Time to File Report of Parties' Planning Meeting. Signed by Chief Judge Emily C. Marks on 9/23/2021. (NO PDF attached to this entry)(am, )** (Entered: 09/23/2021) |
| 09/23/2021 | 46 | REPORT of Rule 26(f) Planning Meeting. (Palmer, Leslie) (Entered: 09/23/2021) |
| 09/23/2021 | 47 | Joint MOTION for Protective Order by Davita M. Key, Hyundai Motor Manufacturing Alabama, LLC, Hyundai Engineering America, Inc., & Dynamic Security, Inc.. (Attachments: # 1 Text of Proposed Order)(Leonard, Heather) Modified on 9/24/2021 to add filers (am, ). (Entered: 09/23/2021) |
| 09/24/2021 | 48 | **PRIVACY PROTECTIVE ORDER: GRANTING the 47 Joint Motion for Protective Order, as further set out in Order. Signed by Honorable Judge Stephen Michael Doyle on 9/24/2021. (am, )** (Entered: 09/24/2021) |

| | | |
|---|---|---|
| 11/08/2021 | 49 | **ORDER: it is ORDERED that this matter is SET for a hearing by status and scheduling conference on 11/19/2021 at 11:00 a.m. in Courtroom 2A, US Courthouse Complex, One Church Street, Montgomery, AL; DIRECTING the Clerk to provide a court reporter for this proceeding. Signed by Chief Judge Emily C. Marks on 11/8/2021. (Furnished: Calendar & WS)(am, )** (Entered: 11/08/2021) |
| 11/19/2021 | 50 | Minute Entry for proceedings held before Chief Judge Emily C. Marks: Status Conference held on 11/19/2021 (PDF available for court use only). (Court Reporter Katie Sears Silas.) (ws, ) (Entered: 11/19/2021) |
| 11/19/2021 | 51 | **UNIFORM SCHEDULING ORDER: Final Pretrial Conference set for 9/22/2022, at 2:30 PM, in Courtroom 2A, before Chief Judge Emily C. Marks; Jury Selection & Trial set for 11/14/2022, at 10:00 AM, in Montgomery, AL, before Chief Judge Emily C. Marks; Amended Pleadings due by 2/4/2022; Discovery due by 4/25/2022; Mediation Notice due by 4/30/2022; Dispositive and Daubert Motions due by 5/25/2022; Proposed Pretrial Order due by 9/15/2022, as further set out in order. Signed by Chief Judge Emily C. Marks on 11/19/2021. (Furnished: Calendar & WS) (amf, )** (Entered: 11/19/2021) |
| 01/13/2022 | 52 | MOTION to Substitute Attorney by Hyundai Engineering America, Inc., construed as a Motion to Withdraw Counsel pursuant to the Court's 53 Order. (Miller, Thomas) Modified on 1/14/2022 (am, ). (Entered: 01/13/2022) |
| 01/13/2022 | | ***PURSUANT TO THE 52 MOTION - Attorney Cortlin Lee Bond for Hyundai Engineering America, Inc. added. (NO PDF attached to this entry) (am, ) (Entered: 01/13/2022) |
| 01/14/2022 | 53 | **ORDER: Construing the 52 Motion to Substitute Counsel as a Motion to Withdraw as Counsel; GRANTING the 52 Motion to Withdraw; DIRECTING Defendant's new counsel to file a notice of appearance in this matter. Signed by Chief Judge Emily C. Marks on 1/14/2022. (am, )** (Entered: 01/14/2022) |
| 01/14/2022 | | *** PURSUANT TO THE COURT'S 53 ORDER - Attorney Yurie Yeoul Bae and Richard Leon DeWeese, Jr terminated. (NO PDF attached to this entry) (am, ) (Entered: 01/14/2022) |
| 01/14/2022 | 54 | NOTICE of Appearance by Thomas Matthew Miller on behalf of Hyundai Engineering America, Inc. (Miller, Thomas) (Entered: 01/14/2022) |
| 01/14/2022 | 55 | NOTICE of Appearance by Cortlin Lee Bond on behalf of Hyundai Engineering America, Inc. (Bond, Cortlin) (Entered: 01/14/2022) |
| 03/28/2022 | 56 | MOTION to Amend 51 Scheduling Order by Davita M. Key. (Leonard, Heather) Modified on 3/28/2022 to clarify text as reflected in pleading (am, ). (Entered: 03/28/2022) |
| 03/28/2022 | 57 | **ORDER it is ORDERED that the 56 motion to amend is GRANTED; It is further ORDERED as follows: The pretrial conference presently scheduled for 9/22/2022, is RESET to 2/2/2023, @ 11:00 a.m. in the Courtroom 2A, FMJ US Courthouse, Montgomery, AL; DIRECTING the parties to jointly prepare a Proposed Pretrial Order due on or before 1/26/2023; This cause, presently set for jury selection and trial during the term of court commencing on 11/14/2022, is hereby RESET to the trial term commencing on 3/27/2023, @ 10:00 a.m. in Montgomery, AL; Dispositive & Daubert Motions due by 10/5/2022; Mediation Notice not more than 5 days after the Settlement Conference; Discovery Cutoff due on or before 9/2/2022, as further set out in Order. Signed by Chief Judge Emily C. Marks on 3/28/2022. (Furnished: Calendar & WS; Terminates: PTC - 9/22/2022; Jury Selection & Jury Trial - 11/14/2022)(am, )** (Entered: 03/28/2022) |
| 04/12/2022 | 58 | NOTICE of Appearance by Kurt Fischer on behalf of by Equal Employment Opportunity Commission (Fischer, Kurt) (Entered: 04/12/2022) |
| 04/12/2022 | 59 | MOTION to Quash *Subpoena* by Equal Employment Opportunity Commission. (Attachments: # 1 Exhibit Ex A: Defendant HMMA's Subpoena to EEOC, # 2 Exhibit Ex B: Defendant HMMA's Ltr to EEOC dated March 30, 2022)(Fischer, Kurt) (Entered: 04/12/2022) |
| 04/12/2022 | 60 | **TEXT ORDER TO SHOW CAUSE: Upon consideration of the 59 Motion to Quash Subpoena filed by non-party Equal Employment Opportunity Commission, it is ORDERED that, on or before 4/15/2022, Dft Hyundai Motor Manufacturing, LLC, shall show cause, if any there be, why the Motion should not be granted. Signed by Honorable Judge Stephen Michael Doyle on 4/12/2022. (No pdf attached to this entry) (wcl, )** (Entered: 04/12/2022) |
| 04/12/2022 | | ***PURSUANT TO THE 59 MOTION - Attorney Marsha Lynn Rucker and Gerald Lee Miller for Equal Employment Opportunity Commission added. (No pdf attached to this entry) (wcl, ) (Entered: 04/12/2022) |
| 04/12/2022 | | MEMORANDUM in Support of 59 MOTION to Quash *Subpoena* filed by Equal Employment Opportunity Commission. (NO PDF - See doc 59 ) (am, ) (Entered: 04/15/2022) |
| 04/15/2022 | 61 | RESPONSE to Motion re 59 MOTION to Quash *Subpoena* filed by Hyundai Motor Manufacturing Alabama, LLC. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G) (Brown, Whitney) (Entered: 04/15/2022) |
| 04/19/2022 | 62 | **ORDER: it is ORDERED that the Board's 59 Motion to Quash is DENIED, as further set out in Order. Signed by Honorable Judge Stephen Michael Doyle on 4/19/2022. (am, )** (Entered: 04/19/2022) |

| | | |
|---|---|---|
| 08/19/2022 | 63 | MOTION to Take Depositions of Cassandra Williams/Hyundai Engineering America, Inc.'s 30(B)(6) Deponent Outside of the Discovery Deadline *on September 6, 2022* by Davita M. Key. (Leonard, Heather) Modified on 8/22/2022 to reflect actual title. (dmn, ) (Entered: 08/19/2022) |
| 08/22/2022 | 64 | **ORDER: Now pending before the Court is Plaintiff Davita M. Key's motion to take depositions outside of the discovery deadline (doc. 63 ) filed on 8/19/2022. Upon consideration of the motion, and for good cause, it is ORDERED that the motion (doc. 63 ) is GRANTED to the extent that the discovery deadline is extended to 9/9/2022, for the sole purpose of taking the deposition of Cassandra Williams. It is further ORDERED that the dispositive motion deadline is extended to 10/12/2022. Signed by Chief Judge Emily C. Marks on 8/22/2022. (dmn, )** (Entered: 08/22/2022) |
| 09/15/2022 | 65 | Notice of Mediation and Settlement Conference by Davita M. Key (Leonard, Heather) (Entered: 09/15/2022) |
| 10/12/2022 | 66 | MOTION for Summary Judgment by Hyundai Motor Manufacturing Alabama, LLC. (Brown, Whitney) (Entered: 10/12/2022) |
| 10/12/2022 | 67 | BRIEF/MEMORANDUM in Support re 66 MOTION for Summary Judgment filed by Hyundai Motor Manufacturing Alabama, LLC. (Brown, Whitney) (Entered: 10/12/2022) |
| 10/12/2022 | 68 | Evidentiary Submission re 66 MOTION for Summary Judgment , 67 BRIEF/MEMORANDUM in Support filed by Hyundai Motor Manufacturing Alabama, LLC. (Attachments: # 1 Exhibit 1 - Declaration of R. Burns, # 2 Exhibit 2 - Depo Transcript of R. Burns, # 3 Exhibit 3 - Depo Transcript of K. Riddle, # 4 Exhibit 4 - Depo Transcript of S. Piers, # 5 Exhibit 5 - Declaration of G. Robinson, # 6 Exhibit 6 - Depo Transcript of C. Williams, # 7 Exhibit 7 - HEA's Response - RFA#2, # 8 Exhibit 8 - SOS Records Hyundai ENG, # 9 Exhibit 9 - SOS Records HEA, # 10 Exhibit 10 - SOS Records HMMA, # 11 Exhibit 11 - SOS "Hyundai" Word Search, # 12 Exhibit 12 - Plf's Depo Transcript (1 of 2), # 13 Exhibit 12 - Plf's Depo Transcript (2 of 2), # 14 Exhibit 13 - Declaration of C. Williams, # 15 Exhibit 14 - Plf's Second Supp Response to HMMA RFP #8)(Brown, Whitney) (Entered: 10/12/2022) |
| 10/12/2022 | 69 | MOTION for Summary Judgment by Hyundai Engineering America, Inc.. (Miller, Thomas) (Entered: 10/12/2022) |
| 10/12/2022 | 70 | BRIEF/MEMORANDUM in Support re 69 MOTION for Summary Judgment *Hyundai ENG America, Inc.'s Memorandum of Law in Support of its Motion for Summary Judgment* filed by Hyundai Engineering America, Inc.. (Miller, Thomas) (Entered: 10/12/2022) |
| 10/12/2022 | | ***PURSUANT TO THE 69 MOTION - Attorney Sarahanne Young Vaughan for Hyundai Engineering America, Inc. added. (No PDF attached to this entry) (bes, ) (Entered: 10/12/2022) |
| 10/12/2022 | 71 | Evidentiary Submission re 70 BRIEF/MEMORANDUM in Support, 69 MOTION for Summary Judgment - *Hyundai ENG America, Inc.'s Evidentiary Submission in Support of its Motion for Summary Judgment* filed by Hyundai Engineering America, Inc.. (Attachments: # 1 Exhibit 1_Part01 - Deposition of Davita Key, # 2 Exhibit 1_Part02 - Deposition of Davita Key, # 3 Exhibit 1_Part03 - Deposition of Davita Key, # 4 Exhibit 1_Part04 - Deposition of Davita Key, # 5 Exhibit 1_Part05 - Deposition of Davita Key, # 6 Exhibit 1_Part06 - Deposition of Davita Key, # 7 Exhibit 1_Part07 - Deposition of Davita Key, # 8 Exhibit 1_Part08 - Deposition of Davita Key, # 9 Exhibit 1_Part09 - Deposition of Davita Key, # 10 Exhibit 1_Part10 - Deposition of Davita Key, # 11 Exhibit 1_Part11 - Deposition of Davita Key, # 12 Exhibit 1_Part12 - Deposition of Davita Key, # 13 Exhibit 2 - Deposition of Cassandra Williams, # 14 Exhibit 3 - Declaration of Cassandra Williams) (Miller, Thomas) (Entered: 10/12/2022) |
| 10/12/2022 | 72 | MOTION for Leave to File *Supplemental Brief* by Hyundai Motor Manufacturing Alabama, LLC. (Middlebrooks, David) (Entered: 10/12/2022) |
| 10/12/2022 | 73 | MOTION for Summary Judgment by Dynamic Security, Inc.. (Bullock, Susan) (Entered: 10/12/2022) |
| 10/12/2022 | 74 | BRIEF/MEMORANDUM in Support re 73 MOTION for Summary Judgment filed by Dynamic Security, Inc.. (Bullock, Susan) (Entered: 10/12/2022) |
| 10/12/2022 | 75 | Evidentiary Submission re 73 MOTION for Summary Judgment , 74 BRIEF/MEMORANDUM in Support filed by Dynamic Security, Inc.. (Attachments: # 1 Exhibit Deposition Transcript of Plaintiff Davita Key, # 2 Exhibit Dynamic Pre-Employment Screening Form, # 3 Exhibit Plaintiffs Check Stub from Dynamic, # 4 Exhibit July 21, 2017, email from Gloria Robinson to Plaintiff, # 5 Exhibit HEA Appearance Standards for Security Personnel, # 6 Exhibit HMMA PPE and Dress Code Matrix, # 7 Exhibit Dynamic Acknowledgement and Receipt of Employee Handbook, # 8 Exhibit HEA Employee Handbook, # 9 Exhibit HMMA Contractor Safety, Security, and Fire Protection Handbook, # 10 Exhibit EEOC Intake Questionnaire - HMMA, # 11 Exhibit Dynamic EEOC Charge, # 12 Exhibit HMMA EEOC Charge, # 13 Exhibit Handwritten letter from Plaintiff to EEOC dated August 8, 2017, # 14 Exhibit Plaintiff's complaint of discrimination, # 15 Exhibit Dynamics Security Officers Manual Acknowledgement, # 16 Exhibit Signed acknowledgement of Dynamics Harassment Policy, # 17 Exhibit Signed acknowledgement of Dynamics Rules and Regulations, # 18 Exhibit Dynamic Dismissal and Notice of Right to Sue, # 19 Exhibit EEOC HMMA Letter of Determination, # 20 Exhibit EEOC Letter to Plaintiff and HMMA, # 21 Exhibit HMMA Notice of Right to Sue, # 22 Exhibit Rebuttal Letter from Plaintiff to EEOC, # 23 Exhibit Letter from Plaintiff to Alabama DOL, # 24 Exhibit Deposition Transcript of Cassandra Williams, # 25 Exhibit Deposition Transcript of Ray Curenton, # 26 Exhibit Deposition Transcript of Dynamic - Riddle, # 27 Exhibit Deposition Transcript of Dynamic - Spires, # 28 Exhibit Deposition Transcript of HMMA - Burns, # 29 Exhibit HEA Appearance Standards for Security Contractors, # 30 Exhibit Internal Dynamic Email Attaching Notice of Right to Sue, # 31 Exhibit Postmarked Envelope from EEOC to Dynamic, # 32 Exhibit Exhibits to Deposition Transcript of Ray Curenton Part 1 of 2, |

| | | |
|---|---|---|
| | | # 33 Exhibit Exhibits to Deposition Transcript of Ray Curenton Part 2 of 2)(Bullock, Susan) (Entered: 10/12/2022) |
| 10/13/2022 | 76 | **ORDER TO SHOW CAUSE, by the PLF, as to why the 66 , 69 , & 73 Motions for Summary Judgment filed by Hyundai Engineering America, Inc. should not be granted; Show Cause Response due by 11/3/2022; further ORDERED that the Dfts may file replies to the Plf's responses on or before 11/10/2022. Signed by Chief Judge Emily C. Marks on 10/13/2022. (bes, )** (Entered: 10/13/2022) |
| 10/13/2022 | 77 | **(VACATED PURSUANT TO THE COURT'S 78 ORDER) ORDER TO SHOW CAUSE, by the PLF, as to why the 72 Motion for Leave to File Supplemental Brief filed by Hyundai Motor Manufacturing Alabama, LLC should not be granted; Show Cause Response due by 11/20/2022. Signed by Chief Judge Emily C. Marks on 10/13/2022. (bes, )** Modified on 10/18/2022 (es, ). (Entered: 10/13/2022) |
| 10/18/2022 | 78 | **ORDER: it is ORDERED that the 77 Order dated 10/13/2022, is VACATED; it is ORDERED that on or before 10/25/2022, the Plaintiff shall show cause why the 72 motion should not be granted. Signed by Chief Judge Emily C. Marks on 10/18/2022. (es, )** (Entered: 10/18/2022) |
| 10/25/2022 | 79 | RESPONSE in Opposition re 72 MOTION for Leave to File *Supplemental Brief* filed by Davita M. Key. (Attachments: # 1 Exhibit 1 - HMMA's Rule 26 Disclosures, # 2 Exhibit 2 - HMMA's Interrogatory Answers)(Leonard, Heather) (Entered: 10/25/2022) |
| 10/27/2022 | 80 | **ORDER: it is ORDERED that Dft's 72 Motion for Leave to File Supplemental Brief is DENIED without prejudice with leave to refile. Signed by Chief Judge Emily C. Marks on 10/27/2022. (bes, )** (Entered: 10/27/2022) |
| 11/03/2022 | 81 | Evidentiary Submission re 73 MOTION for Summary Judgment , 69 MOTION for Summary Judgment , 66 MOTION for Summary Judgment filed by Davita M. Key. (Attachments: # 1 Exhibit 1 - HMMA's Rule 26 Disclosures, # 2 Exhibit 2 - HMMA's Interrogatory Answers, # 3 Exhibit 3 - HMMA's RPD Responses, # 4 Exhibit 4 - Email Composite, # 5 Exhibit 5 - Howell Statement, # 6 Exhibit 6 - HEA 30(b)(6) Notice, # 7 Exhibit 7 - Robinson Memo, # 8 Exhibit 8 - Williams Email, # 9 Exhibit 9 - HMMA Safety Handbook, # 10 Exhibit 10 - Robinson Email, # 11 Exhibit 11 - Unemployment Hearing Transcript, # 12 Exhibit 12 - Invoices, # 13 Exhibit 13 - Dynamic Security's EEOC Position Statement, # 14 Exhibit 14 - Notice of Charge to HMMA, # 15 Exhibit 15 - HMMA Mailroom Duties, # 16 Exhibit 16 - Williams Email re EEOC Filings, # 17 Exhibit 17 - Email re Causing Finding, # 18 Exhibit 18 - Email re Key's Unemployment, # 19 Exhibit 19 - Key Declaration, # 20 Exhibit 20 - Peoples July 31 Email)(Leonard, Heather) (Entered: 11/03/2022) |
| 11/03/2022 | 82 | BRIEF/MEMORANDUM in Opposition re 68 Evidentiary Submission,,, 70 BRIEF/MEMORANDUM in Support, 66 MOTION for Summary Judgment , 73 MOTION for Summary Judgment , 71 Evidentiary Submission,,,, 75 Evidentiary Submission,,,,,,,, 69 MOTION for Summary Judgment , 67 BRIEF/MEMORANDUM in Support, 74 BRIEF/MEMORANDUM in Support filed by Davita M. Key. (Palmer, Leslie) (Entered: 11/03/2022) |
| 11/09/2022 | 83 | MOTION for Extension of Time to File Response/Reply as to 82 BRIEF/MEMORANDUM in Opposition, *Defendant Dynamic Security, Inc.'s Motion for Enlargement of Time to File Reply to Plaintiff's Opposition to Its Motion for Summary Judgment* by Dynamic Security, Inc.. (Redmond, Wesley) (Entered: 11/09/2022) |
| 11/10/2022 | 84 | **TEXT ORDER granting 83 Motion for Extension of Time; the deadline for Dft Dynamic Security, Inc. to file a reply to Plf's Opposition to its Motion for Summary Judgment is extended to 11/14/2022. Signed by Chief Judge Emily C. Marks on 11/10/2022. (No PDF attached to this entry) (bes, )** (Entered: 11/10/2022) |
| 11/10/2022 | 85 | REPLY BRIEF *in Response to Plaintiff's Brief* filed by Hyundai Motor Manufacturing Alabama, LLC. (Brown, Whitney) (Entered: 11/10/2022) |
| 11/10/2022 | 86 | REPLY BRIEF re 70 BRIEF/MEMORANDUM in Support, 71 Evidentiary Submission,,,, 69 MOTION for Summary Judgment - *Hyundai ENG America, Inc.'s Reply in Support of its Motion for Summary Judgment* filed by Hyundai Engineering America, Inc.. (Miller, Thomas) (Entered: 11/10/2022) |
| 11/14/2022 | 87 | REPLY BRIEF re 73 MOTION for Summary Judgment , 75 Evidentiary Submission,,,,,,,, 74 BRIEF/MEMORANDUM in Support, 82 BRIEF/MEMORANDUM in Opposition, filed by Dynamic Security, Inc.. (Bullock, Susan) (Entered: 11/14/2022) |
| 11/14/2022 | 88 | MOTION to Strike 82 BRIEF/MEMORANDUM in Opposition, *Plaintiff's Declaration* by Dynamic Security, Inc.. (Bullock, Susan) (Entered: 11/15/2022) |
| 12/27/2022 | 89 | MOTION to Strike *Plaintiff's Demand for Jury Trial* by Dynamic Security, Inc.. (Attachments: # 1 Exhibit 1 - Waiver of Trial by Jury Handbook Excerpt, # 2 Exhibit 2 - Signed Handbook Acknowledgement, # 3 Exhibit 3 - Signed Pre-Application Employment Screening, # 4 Exhibit 4 - Deposition Excerpts of Plaintiff with Exhibits 2 and 10)(Bullock, Susan) (Entered: 12/27/2022) |
| 01/05/2023 | 90 | **ORDER: it is ORDERED that the Plaintiff shall file a response to Dynamic's 89 motion on or before 1/19/2023. It is further ORDERED that Dynamic shall file a reply to the Plaintiff's response on or before 1/26/2023. Signed by Chief Judge Emily C. Marks on 1/5/2023. (cwl, )** (Entered: 01/05/2023) |
| 01/19/2023 | 91 | RESPONSE in Opposition re 89 MOTION to Strike *Plaintiff's Demand for Jury Trial* filed by Davita M. Key. (Attachments: # 1 Exhibit Ex1 - Full Dynamic Security Officer's Handbook, # 2 Exhibit Ex 2 - Dynamic Security Signed Policies)(Palmer, Leslie) (Entered: 01/19/2023) |

| 01/25/2023 | 92 | **ORDER: it is ORDERED that the pretrial conference presently set for 2/2/2023, is RESET to 11:00 AM on 2/17/2023, in Courtroom 2A; The parties are DIRECTED to jointly prepare a proposed pretrial order, and the Plf shall ensure that the original of the proposed pretrial order is received by the Court on or before 2/10/2023, by transmitting an electronic copy of the proposed pretrial order to the Court as an attachment to an email message sent to propord_marks@almd.uscourts.gov.The Clerk is DIRECTED to provide a court reporter for this proceeding. Signed by Chief Judge Emily C. Marks on 1/25/2023. (Furn: calendar, cs) (Term: FPC set for 02/02/2023)(bes, )** (Entered: 01/25/2023) |
|---|---|---|
| 01/26/2023 | 93 | Witness List by Hyundai Motor Manufacturing Alabama, LLC. (Middlebrooks, David) (Entered: 01/26/2023) |
| 01/26/2023 | 94 | Deposition Designations by Hyundai Motor Manufacturing Alabama, LLC.. (Middlebrooks, David) (Entered: 01/26/2023) |
| 01/26/2023 | 95 | Exhibit List by Hyundai Motor Manufacturing Alabama, LLC.. (Middlebrooks, David) (Entered: 01/26/2023) |
| 01/26/2023 | 96 | Witness List by Hyundai Engineering America, Inc.. (Miller, Thomas) (Entered: 01/26/2023) |
| 01/26/2023 | 97 | Exhibit List by Hyundai Engineering America, Inc... (Miller, Thomas) (Entered: 01/26/2023) |
| 01/26/2023 | 98 | Witness List by Dynamic Security, Inc.. (Redmond, Wesley) (Entered: 01/26/2023) |
| 01/26/2023 | 99 | Exhibit List by Dynamic Security, Inc... (Redmond, Wesley) (Entered: 01/26/2023) |
| 01/26/2023 | 100 | Deposition Designations by Dynamic Security, Inc... (Redmond, Wesley) (Entered: 01/26/2023) |
| 01/26/2023 | 101 | Witness List by Davita M. Key. (Attachments: # 1 Exhibit Ex A - Depo Designations Dynamic Riddle, # 2 Exhibit Ex B - Depo Designations Dynamic Spires, # 3 Exhibit Ex C - Depo Designations HMMA Burns, # 4 Exhibit Ex D - Depo Designations HEA Williams, # 5 Exhibit Ex E - Depo Designations Cureton)(Palmer, Leslie) (Entered: 01/26/2023) |
| 01/26/2023 | 102 | Exhibit List by Davita M. Key.. (Palmer, Leslie) (Entered: 01/26/2023) |
| 01/26/2023 | 103 | REPLY to Response to Motion re 89 MOTION to Strike *Plaintiff's Demand for Jury Trial* filed by Dynamic Security, Inc.. (Bullock, Susan) (Entered: 01/26/2023) |
| 01/27/2023 | 104 | MOTION to Continue - *Unopposed Motion to Continue Pre-Trial Setting* by Hyundai Engineering America, Inc.. (Miller, Thomas) (Entered: 01/27/2023) |
| 01/27/2023 | 105 | Exhibit List *Defendant Dynamic Security, Inc.'s Amended Exhibit List* by Dynamic Security, Inc... (Redmond, Wesley) (Entered: 01/27/2023) |
| 01/30/2023 | 106 | **ORDER: it is ORDERED that unopposed motion to continue (doc. 104 ) is GRANTED and the pretrial conference presently set for February 17, 2023, is RESET to 2:00 p.m. on February 21, 2023, in Courtroom 2A, in the Frank M. Johnson, Jr. U.S. Courthouse, One Church Street, Montgomery, Alabama. No other deadlines are extended. The Clerk of the Court is DIRECTED to provide a court reporter for this proceeding. Signed by Chief Judge Emily C. Marks on 01/30/2023. (furnished: calendar and cs) (terminated: PTC for 2/17/2023).(amf, )** (Entered: 01/30/2023) |
| 02/01/2023 | 107 | MOTION for Leave to File *Amended Exhibit List* by Hyundai Motor Manufacturing Alabama, LLC. (Brown, Whitney) (Entered: 02/01/2023) |
| 02/02/2023 | 108 | **ORDER: it is ORDERED that on or before 2/6/2023, the Plaintiff shall show cause why the 107 motion should not be granted. Signed by Chief Judge Emily C. Marks on 2/2/2023. (cwl, )** (Entered: 02/02/2023) |
| 02/02/2023 | 109 | Deposition Designations *(Responsive Designations of Deposition/Trial Excerpts)* by Hyundai Motor Manufacturing Alabama, LLC.. (Middlebrooks, David) (Entered: 02/02/2023) |
| 02/02/2023 | 110 | Deposition Designations - *Defendant Hyundai ENG America, Inc.'s Responsive Designation of Deposition Trial Excerpts* by Hyundai Engineering America, Inc... (Miller, Thomas) (Entered: 02/02/2023) |
| 02/02/2023 | 111 | MOTION for Leave to File - *Defendant Hyundai ENG America, Inc.'s Motion for Leave to Amend its Trial Exhibit List* by Hyundai Engineering America, Inc.. (Miller, Thomas) (Entered: 02/02/2023) |
| 02/02/2023 | 112 | Deposition Designations *Defendant Dynamic Security, Inc.'s Deposition Counter-Designations* by Dynamic Security, Inc... (Redmond, Wesley) (Entered: 02/02/2023) |
| 02/03/2023 | 113 | Response to Order re 108 Order to Show Cause, 107 MOTION for Leave to File *Amended Exhibit List* filed by Davita M. Key. (Leonard, Heather) (Entered: 02/03/2023) |
| 02/03/2023 | 114 | **ORDER granting 107 Motion for Leave to Amend Exhibits List. Signed by Chief Judge Emily C. Marks on 2/3/2023. (amf, )** (Entered: 02/03/2023) |
| 02/03/2023 | 115 | **ORDER: it is ORDERED that on or before February 7, 2023, the Plaintiff shall show cause why the 111 motion for leave to amend trial exhibit list should not be granted. Signed by Chief Judge Emily C. Marks on 2/7/2023. (amf, )** (Entered: 02/03/2023) |
| 02/03/2023 | 116 | Exhibit List *(As Amended)* by Hyundai Motor Manufacturing Alabama, LLC.. (Middlebrooks, David) (Entered: 02/03/2023) |

| 02/07/2023 | 117 | RESPONSE TO ORDER TO SHOW CAUSE re 115 Order to Show Cause filed by Davita M. Key. (Leonard, Heather) (Entered: 02/07/2023) |
| 02/07/2023 | 118 | (STRICKEN - ENTERED IN WRONG CASE) Partial Filing fee: $ 6.00, receipt number 1417 (tha, ) Modified on 2/7/2023 (tha, ). (Entered: 02/07/2023) |
| 02/07/2023 | 119 | NOTICE of Error re 118 Filing Fee Received, which is STRICKEN from the record. This document was filed in the wrong civil action. (tha,) (Entered: 02/07/2023) |
| 02/08/2023 | 120 | **TEXT ORDER granting 111 Motion for Leave to Amend Trial Exhibit List. Signed by Chief Judge Emily C. Marks on 2/8/2023. (No pdf attached) (cwl, )** (Entered: 02/08/2023) |
| 02/08/2023 | 121 | Exhibit List - *Amended Trial Exhibit List* by Hyundai Engineering America, Inc... (Miller, Thomas) (Entered: 02/08/2023) |
| 02/09/2023 | 122 | Witness List by Hyundai Motor Manufacturing Alabama, LLC. (Brown, Whitney) (Entered: 02/09/2023) |
| 02/09/2023 | 123 | Objections to Plaintiff's 101 Witness List and Defendant Dynamic's 100 Deposition Designation List (Doc. 100) by Hyundai Motor Manufacturing Alabama, LLC.. (Brown, Whitney) Modified on 2/10/2023 to clarify the docket text(bes, ). (Entered: 02/09/2023) |
| 02/09/2023 | 124 | Objections to Plaintiff's 102 Exhibit List and Dynamic's 105 Amended Exhibit List by Hyundai Motor Manufacturing Alabama, LLC.. (Brown, Whitney) Modified on 2/10/2023 to clarify the docket text (bes, ). (Entered: 02/09/2023) |
| 02/09/2023 | 125 | Objection to re 93 Witness List, 116 Exhibit List filed by Davita M. Key. (Leonard, Heather) (Entered: 02/09/2023) |
| 02/09/2023 | 126 | Objection to re 105 Exhibit List filed by Davita M. Key. (Leonard, Heather) (Entered: 02/09/2023) |
| 02/09/2023 | 127 | Objection to re 121 Exhibit List filed by Davita M. Key. (Leonard, Heather) (Entered: 02/09/2023) |
| 02/09/2023 | 128 | Deposition Designations *Hyundai ENG America, Inc.'s Objections to Deposition Designations* by Hyundai Engineering America, Inc... (Attachments: # 1 Exhibit A - HEA's Chart of Depo Designation Objections, # 2 Exhibit B - Deposition Excerpts)(Miller, Thomas) (Entered: 02/09/2023) |
| 02/09/2023 | 129 | Exhibit List *Hyundai ENG America, Inc.'s Objections to Plaintiff's Exhibit List (Doc. 102)* by Hyundai Engineering America, Inc... (Miller, Thomas) (Entered: 02/09/2023) |
| 02/09/2023 | 130 | Objection to 94 Deposition Designations, 101 Witness List, *Defendant Dynamic Security, Inc.'s Objections to Deposition Testimony Designations* filed by Dynamic Security, Inc.. (Attachments: # 1 Exhibit A - Excerpts (Kristal Riddle), # 2 Exhibit B - Excerpts (Sherry Spires, # 3 Exhibit C - Excerpts (Cassandra Williams), # 4 Exhibit D - Excerpts (Ray Cureton), # 5 Exhibit E - Excerpts (Davita Key))(Bullock, Susan) (Entered: 02/09/2023) |
| 02/09/2023 | 131 | Objection to re 97 Exhibit List *Defendant Dynamic Security, Inc.'s Objections to Defendant Hyundai ENG America, Inc.'s Exhibit List* filed by Dynamic Security, Inc.. (Bullock, Susan) (Entered: 02/09/2023) |
| 02/09/2023 | 132 | Objection to re 95 Exhibit List *Defendant Dynamic Security, Inc.'s Objections to Defendant HMMA's Exhibit List* filed by Dynamic Security, Inc.. (Bullock, Susan) (Entered: 02/09/2023) |
| 02/09/2023 | 133 | Objection to re 102 Exhibit List *Defendant Dynamic Security, Inc.'s Objections to Plaintiff's Exhibit List* filed by Dynamic Security, Inc.. (Bullock, Susan) (Entered: 02/09/2023) |
| 02/09/2023 | 134 | Objection to re 101 Witness List, *Defendant Dynamic Security, Inc.'s Objections to Plaintiff's Witness List* filed by Dynamic Security, Inc.. (Bullock, Susan) (Entered: 02/09/2023) |
| 02/09/2023 | 135 | Objections to Dynamic Security Designations by Davita M. Key.. (Attachments: # 1 Exhibit Ex A - Depo Designations Dynamic Riddle, # 2 Exhibit Ex B - Depo Designations Dynamic Spires, # 3 Exhibit Ex C - Depo Designations Dynamic Cureton, # 4 Exhibit Ex D - Depo Designations Dynamic Williams, # 5 Exhibit Ex E - Depo Designations Dynamic Key) (Palmer, Leslie) Modified on 2/10/2023 to clarify the docket text (bes, ). (Entered: 02/09/2023) |
| 02/09/2023 | 136 | Objection to HEA Designations by Davita M. Key.. (Attachments: # 1 Exhibit Ex A - Depo Designations HEA Williams, # 2 Exhibit Ex B - Depo Designations HEA Williams Errata, # 3 Exhibit Ex c -Depo Designations HEA Cureton, # 4 Exhibit Ex D - Depo Designations HEA Spires, # 5 Exhibit Ex E - Depo Designations HEA Riddle)(Palmer, Leslie) Modified on 2/10/2023 to clarify the docket text (bes, ). (Entered: 02/09/2023) |
| 02/09/2023 | 137 | Objections to HMMA Designations by Davita M. Key.. (Attachments: # 1 Exhibit Ex A - Depo Designations HMMA Burns, # 2 Exhibit Ex B - Depo Designations HMMA Burns Errata, # 3 Exhibit Ex C - Depo Designations HMMA Williams, # 4 Exhibit Ex D - Depo Designations HMMA Williams Errata, # 5 Exhibit Ex E - Depo Designations HMMA Spires, # 6 Exhibit Ex F - Depo Designations HMMA Riddle, # 7 Exhibit Ex G - Depo Designations HMMA Cureton, # 8 Exhibit Ex H - Depo Designations HMMA Key)(Palmer, Leslie) Modified on 2/10/2023 to clarify the docket text (bes, ). (Entered: 02/09/2023) |
| 02/10/2023 | 138 | **MEMORANDUM OPINION AND ORDER: it is ORDERED that: 1) Dynamic's 88 motion to strike the declaration of Davita Key is DENIED; 2) HMMA's 66 motion for summary judgment is GRANTED, and all Plf's claims against HMMA are DISMISSED; 3) HEA's 69 motion for summary judgment is GRANTED, and all Plf's claims against HEA are DISMISSED; 4) Dynamic's 73 motion for summary judgment is GRANTED, to the extent that Plf's Counts I, II, III, and IV are DISMISSED as to Dynamic; and 5) Dynamic's 73 motion for summary judgment is** |

| | | |
|---|---|---|
| | | **DENIED** in all other respects. Signed by Chief Judge Emily C. Marks on 2/10/2023. (bes, ) (Entered: 02/10/2023) |
| 02/10/2023 | 139 | **ORDER: it is ORDERED that the 89 motion to strike Plf's jury demand is hereby SET for oral argument on 2/21/2023, at 2:00 PM in Courtroom 2A; Oral argument will take place at the same time and place as the pretrial conference. Signed by Chief Judge Emily C. Marks on 2/10/2023. (Furn: Calendar, cs)** (bes, ) (Entered: 02/10/2023) |
| 02/16/2023 | 140 | Response to PLF's 105 Objections to Exhibit List by Dynamic Security, Inc... (Attachments: # 1 Exhibit 1 - Deposition Transcript of Plaintiff Davita Key, # 2 Exhibit 22 - Rebuttal Letter from Plaintiff to EEOC dated October 4, 2017., # 3 Exhibit 24 - Letter of Intent - HEA0280, # 4 Exhibit 39 - Gloria Robinson Statement regarding removal., # 5 Exhibit 40 - Assignment Refusal Forms, # 6 Exhibit 43 - Ray Cureton Statement, # 7 Exhibit 44 - Nicole Scavell Statement, # 8 Exhibit 48 - Pl Discovery Resp to Dynamic IROG signed (4-11-22), # 9 Exhibit 49 - Pl Discovery Resp to Dynamic RFP (4-11-22), # 10 Exhibit 50 - Pl Discovery Resp to Dynamic RFA (4-11-22), # 11 Exhibit 59 - Key Response to Depart of Labor, # 12 Exhibit 60 - Contract for Services btween HE and HMMA., # 13 Exhibit 61 - July 27, 2015, letter of extension of Contract., # 14 Exhibit 64 - PowerPoint - Sexual harassment in the workplace., # 15 Exhibit 65 - PowerPoint - EEOC - What does it mean to me., # 16 Exhibit 88 - Transcript of Unemployment Compensation hearing)(Redmond, Wesley) Modified on 2/17/2023 to clarify the docket text (bes, ). (Entered: 02/16/2023) |
| 02/16/2023 | 141 | Response to Plf's 135 Objections to Deposition Designations by Dynamic Security, Inc... (Redmond, Wesley) Modified on 2/17/2023 to clarify the docket text (bes, ). (Entered: 02/16/2023) |
| 02/16/2023 | 142 | Resposne to 135 Objections to Exhibit List by Davita M. Key.. (Attachments: # 1 Exhibit Px 2 Hair Photos, # 2 Exhibit Px 10 Email, # 3 Exhibit Px 11 Email, # 4 Exhibit Px 13 Statement to Unemployment, # 5 Exhibit Px 14 Unemployment, # 6 Exhibit Px 15 Email, # 7 Exhibit Px 17 Complaint, # 8 Exhibit Px 18 Removal Memo, # 9 Exhibit Px 20 Email, # 10 Exhibit Px 21 Email, # 11 Exhibit Px 22 Statement, # 12 Exhibit Px 24 Howell Statement, # 13 Exhibit Px 25 Email, # 14 Exhibit Px 26 Email, # 15 Exhibit Px 27 Email, # 16 Exhibit Px 28 Email, # 17 Exhibit Px 29 Email, # 18 Exhibit Px 30 Email, # 19 Exhibit Px 32 Email, # 20 Exhibit Px 33 Email, # 21 Exhibit Px 34 Email, # 22 Exhibit Px 35 Email, # 23 Exhibit Px 36 Email, # 24 Exhibit Px 37 Email, # 25 Exhibit May Use Px 14 Charge Questionnaire, # 26 Exhibit May use Px 15 EEOC Charge, # 27 Exhibit May use Px 19 Position Statement, # 28 Exhibit May use Px 27 Security Detail Reports, # 29 Exhibit May use Px 41 Harassment Policy, # 30 Exhibit May use Px 43 Email, # 31 Exhibit May use Px 44 Email, # 32 Exhibit May Use Px 45 Email)(Palmer, Leslie) Modified on 2/17/2023 to clarify the docket text (bes, ). (Entered: 02/16/2023) |
| 02/16/2023 | 143 | Response to 134 Objections to Witness List by Davita M. Key. (Palmer, Leslie) Modified on 2/17/2023 to clarify the docket text (bes, ). (Entered: 02/16/2023) |
| 02/16/2023 | 144 | Response to 130 Objections to Deposition Designations by Davita M. Key.. (Palmer, Leslie) Modified on 2/17/2023 to clarify the docket text (bes, ). (Entered: 02/16/2023) |
| 02/20/2023 | 145 | MOTION for Reconsideration re 138 Memorandum Opinion and Order by Dynamic Security, Inc.. (Redmond, Wesley) Modified on 2/21/2023 to clarify the docket text (bes, ). (Entered: 02/20/2023) |
| 02/21/2023 | 146 | MOTION for Extension of Time to File *Defendant Dynamic Security, Inc.'s Motion for Enlargement of Time to File Jury Instructions, Voir Dire Questions, and Motions In Limine* by Dynamic Security, Inc.. (Bullock, Susan) (Entered: 02/21/2023) |
| 02/21/2023 | 147 | **ORDER: it is ORDERED that: 1) The Dft's 89 Motion to Strike Plf's Jury Demand is DENIED; 2) The Dft's 145 Motion to Reconsider is DENIED; 3) The Dft's 146 Motion for Enlargement of Time to File Jury Instructions, Voire Dire Questions, and Motions in Limine is GRANTED, and the parties shall submit their filings on or before 2/28/2023; Objections to motions in limine, fully briefed, must be filed on or before 3/7/2023; 4) The parties are DIRECTED to jointly prepare a proposed pretrial order, and the Plf shall ensure that the original of the proposed pretrial order is received by the Court on or before 2/23/2023, by transmitting an electronic copy of the proposed pretrial order to the Court as an attachment to an email message sent to propord_marks@almd.uscourts.gov. Signed by Chief Judge Emily C. Marks on 2/21/2023.** (bes, ) (Entered: 02/21/2023) |
| 02/21/2023 | 148 | Minute Entry for proceedings held before Chief Judge Emily C. Marks: Oral Argument held on 2/21/2023, Final Pretrial Conference held on 2/21/2023 (PDF available for court use only). (Court Reporter Blanton Callen.) (cs, ) (Entered: 02/22/2023) |
| 02/24/2023 | 149 | Proposed Jury Instructions by Davita M. Key. (Leonard, Heather) (Entered: 02/24/2023) |
| 02/24/2023 | 150 | First MOTION in Limine *To Exclude Reference to Ray Cureton Profession as Minister* by Davita M. Key. (Palmer, Leslie) (Entered: 02/24/2023) |
| 02/24/2023 | 151 | Second MOTION in Limine *To Preclude Mention of Dismissed Claims or Parties* by Davita M. Key. (Palmer, Leslie) (Entered: 02/24/2023) |
| 02/24/2023 | 152 | Third MOTION in Limine *To Exclude Reference to the EEOC Determination* by Davita M. Key. (Palmer, Leslie) (Entered: 02/24/2023) |
| 02/24/2023 | 153 | Fourth MOTION in Limine *To Exclude Reference to Unemployment Determination* by Davita M. Key. (Palmer, Leslie) (Entered: 02/24/2023) |
| 02/24/2023 | 154 | Proposed Voir Dire by Davita M. Key. (Palmer, Leslie) (Entered: 02/24/2023) |

| | | |
|---|---|---|
| 02/28/2023 | 155 | Proposed Voir Dire by Dynamic Security, Inc.. (Redmond, Wesley) (Entered: 02/28/2023) |
| 02/28/2023 | 156 | First MOTION in Limine *Defendant Dynamic Security, Inc.'s First Motion In Limine to Exclude Plaintiff's Testimony About Gloria Robinson's Alleged Comments About the Content of Memos Sent by "The Koreans"* by Dynamic Security, Inc.. (Redmond, Wesley) (Entered: 02/28/2023) |
| 02/28/2023 | 157 | Second MOTION in Limine *Defendant Dynamic Security, Inc.'s Second Motion in Limine to Exclude Its Statement of Position Submitted to the EEOC* by Dynamic Security, Inc.. (Redmond, Wesley) (Entered: 02/28/2023) |
| 02/28/2023 | 158 | Third MOTION in Limine *Defendant Dynamic Security, Inc.'s Third Motion In Limine to Exclude Evidence of Dismissed Claims* by Dynamic Security, Inc.. (Redmond, Wesley) (Entered: 02/28/2023) |
| 02/28/2023 | 159 | Fourth MOTION in Limine *Defendant Dynamic Security, Inc.'s Fourth Motion In Limine to Exclude Questions Asked by Ray Cureton Related to Assignment for the Plaintiff* by Dynamic Security, Inc.. (Redmond, Wesley) (Entered: 02/28/2023) |
| 02/28/2023 | 160 | Fifth MOTION in Limine *Defendant's Fifth Motion In Limine to Exclude Any Reference to Plaintiff Filing an EEOC Charge Against Defendant Dynamic Security, Inc*. by Dynamic Security, Inc.. (Redmond, Wesley) (Entered: 02/28/2023) |
| 02/28/2023 | 161 | Proposed Jury Instructions by Dynamic Security, Inc.. (Bullock, Susan) (Entered: 02/28/2023) |
| 03/01/2023 | 162 | Objection to re 155 Proposed Voir Dire filed by Davita M. Key. (Leonard, Heather) (Entered: 03/01/2023) |
| 03/03/2023 | 163 | MOTION for Certificate of Appealability *to Certify the portion of the Court's 2/21/2023 147 Order for Interlocutory Appeal and to Continue Trial Setting* by Dynamic Security, Inc. (Bullock, Susan) Modified on 3/6/2023 to create link and include additional text. (dmn, ) (Entered: 03/03/2023) |
| 03/07/2023 | 164 | RESPONSE in Opposition re 157 Second MOTION in Limine *Defendant Dynamic Security, Inc.'s Second Motion in Limine to Exclude Its Statement of Position Submitted to the EEOC* filed by Davita M. Key. (Attachments: # 1 Exhibit A - Dynamic Security's EEOC Position Statement (HEA 0053-56))(Leonard, Heather) (Entered: 03/07/2023) |
| 03/07/2023 | 165 | (Objections) RESPONSE in Opposition re 150 First MOTION in Limine *To Exclude Reference to Ray Cureton Profession as Minister Defendant Dynamic Security, Inc.'s Objections to Plaintiff's First Motion in Limine to Exclude Related to Ray Cureton's Profession as a Minister* filed by Dynamic Security, Inc.. (Redmond, Wesley) Modified on 3/8/2023 to clarify the docket text (amf, ). (Entered: 03/07/2023) |
| 03/07/2023 | 166 | (Objections) RESPONSE in Opposition re 151 Second MOTION in Limine *To Preclude Mention of Dismissed Claims or Parties Defendant Dynamic Security, Inc.'s Objections to Plaintiff's Second Motion in Limine to Exclude Reference to And/ Or Evidence of the Court's Dismissal of Any of the Plaintiff's Claims* filed by Dynamic Security, Inc.. (Redmond, Wesley) Modified on 3/8/2023 to clarify the docket text (amf, ). (Entered: 03/07/2023) |
| 03/07/2023 | 167 | (Objections) RESPONSE in Opposition re 152 Third MOTION in Limine *To Exclude Reference to the EEOC Determination Defendant Dynamic Security, Inc.'s Objections to Plaintiff's Third Motion In Limine to Exclude Reference to And/Or Evidence of the EEOC's Determination* filed by Dynamic Security, Inc.. (Redmond, Wesley) Modified on 3/8/2023 to clarify the docket text (amf, ). (Entered: 03/07/2023) |
| 03/07/2023 | 168 | (Objections) RESPONSE in Opposition re 153 Fourth MOTION in Limine *To Exclude Reference to Unemployment Determination Defendant Dynamic Security, Inc.'s Objections to Plaintiff's Fourth Motion In Limine to Exclude Reference to And/Or Evidence of the Findings of the Alabama Department of Labor* filed by Dynamic Security, Inc.. (Redmond, Wesley) Modified on 3/8/2023 to clarify the docket text (amf, ). (Entered: 03/07/2023) |
| 03/07/2023 | 169 | RESPONSE in Opposition re 156 First MOTION in Limine *Defendant Dynamic Security, Inc.'s First Motion In Limine to Exclude Plaintiff's Testimony About Gloria Robinson's Alleged Comments About the Content of Memos Sent by "The Koreans"* filed by Davita M. Key. (Palmer, Leslie) (Entered: 03/07/2023) |
| 03/07/2023 | 170 | RESPONSE in Opposition re 158 Third MOTION in Limine *Defendant Dynamic Security, Inc.'s Third Motion In Limine to Exclude Evidence of Dismissed Claims* filed by Davita M. Key. (Palmer, Leslie) (Entered: 03/07/2023) |
| 03/07/2023 | 171 | RESPONSE in Opposition re 159 Fourth MOTION in Limine *Defendant Dynamic Security, Inc.'s Fourth Motion In Limine to Exclude Questions Asked by Ray Cureton Related to Assignment for the Plaintiff* filed by Davita M. Key. (Palmer, Leslie) (Entered: 03/07/2023) |
| 03/07/2023 | 172 | RESPONSE in Opposition re 160 Fifth MOTION in Limine *Defendant's Fifth Motion In Limine to Exclude Any Reference to Plaintiff Filing an EEOC Charge Against Defendant Dynamic Security, Inc*. filed by Davita M. Key. (Palmer, Leslie) (Entered: 03/07/2023) |
| 03/07/2023 | 173 | (Objections) BRIEF/MEMORANDUM in Opposition re 161 Proposed Jury Instructions filed by Davita M. Key. (Palmer, Leslie) Modified on 3/8/2023 to clarify the docket text (amf, ). (Entered: 03/07/2023) |
| 03/07/2023 | | Objections to 150 First MOTION in Limine *To Exclude Reference to Ray Cureton Profession as Minister* filed by Dynamic Security, Inc.. (No PDF attached to this entry - See doc 165 for PDF) (amf, ) (Entered: 03/08/2023) |
| 03/07/2023 | | Objections to 151 Second MOTION in Limine *To Preclude Mention of Dismissed Claims or Parties* filed by Dynamic Security, Inc.. (No PDF attached to this entry - See doc 166 for PDF) (amf, ) (Entered: 03/08/2023) |

| 03/07/2023 | | Objections to 152 Third MOTION in Limine *To Exclude Reference to the EEOC Determination* filed by Dynamic Security, Inc.. (No PDF attached to this entry - See doc 167 for PDF) (amf, ) (Entered: 03/08/2023) |
|---|---|---|
| 03/07/2023 | | Objections to 153 Fourth MOTION in Limine *To Exclude Reference to Unemployment Determination* filed by Dynamic Security, Inc.. (No PDF attached to this entry - See doc 168 for PDF) (amf, ) (Entered: 03/08/2023) |
| 03/07/2023 | | Objections to 161 Proposed Jury Instructions filed by Davita M. Key. (No PDF attached to this entry - See doc 173 for PDF) (amf, ) (Entered: 03/08/2023) |
| 03/08/2023 | 174 | **MEMORANDUM OPINION AND ORDER: This matter is before the Court on Defendant Dynamic Security, Inc.'s motion to certify for interlocutory appeal and continue trial setting. (Doc. 163 ). Dynamic's request failed on all three elements of a 1292(b) justification for certifying an interlocutory appeal. Furthermore, immediate appeal here would not "materially advance the ultimate termination of the litigation." For good cause, it is ORDERED that Dynamic's motion (doc. 163 ) is DENIED as further set out in the opinion and order. Signed by Chief Judge Emily C. Marks on 3/8/2023. (dmn, )** (Entered: 03/08/2023) |
| 03/16/2023 | 175 | NOTICE OF JURY LIST AND JURORS' PROFILES for Jury Selection and Trial commencing on 3/27/2023 (Attachments: # 1 Juror Certification)(cs, ) (Entered: 03/16/2023) |
| 03/17/2023 | 176 | BILL OF COSTS by Hyundai Motor Manufacturing Alabama, LLC. (Attachments: # 1 Exhibit Costs)(Brown, Whitney) (Entered: 03/17/2023) |
| 03/17/2023 | 177 | BILL OF COSTS by Hyundai Engineering America, Inc., Hyundai Motor Manufacturing Alabama, LLC. (Attachments: # 1 Exhibit A)(Miller, Thomas) (Entered: 03/17/2023) |
| 03/24/2023 | 178 | **ORDER ON PRETRIAL HEARING: The jury selection and trial of this case, which is set to last 2 days, is set for 3/27/2023, at 10:00 AM in the United States District Court in Courtroom 2A of the US District Court in Montgomery, AL; Trial counsel and parties are to be present in the Courtroom no later than 8:30 AM on the morning of trial, as further set out in order. Signed by Chief Judge Emily C. Marks on 3/24/2023. (furn: Calendar, cs) (bes, )** (Entered: 03/24/2023) |
| 03/26/2023 | 179 | Proposed Jury Verdict Form by Davita M. Key. (Palmer, Leslie) (Entered: 03/26/2023) |
| 03/26/2023 | 180 | Deposition Designations *of Gloria Robinson* by Davita M. Key.. (Attachments: # 1 Exhibit A - Excerpts from Deposition of Gloria Robinson)(Leonard, Heather) (Entered: 03/26/2023) |
| 03/26/2023 | 181 | Proposed Jury Verdict Form by Dynamic Security, Inc.. (Bullock, Susan) (Entered: 03/26/2023) |
| 03/27/2023 | | **ORAL ORDER granting in part and denying in part 150 First Motion in Limine To Exclude Reference to Ray Cureton Profession as Minister by Davita M. Key, as further stated on the record. Entered by Chief Judge Emily C. Marks on 3/27/2023. (cs, )** (Entered: 03/28/2023) |
| 03/27/2023 | | **ORAL ORDER granting 151 Second MOTION in Limine To Preclude Mention of Dismissed Claims or Parties by Davita M. Key. Entered by Chief Judge Emily C. Marks on 3/27/2023. (cs, )** (Entered: 03/28/2023) |
| 03/27/2023 | | **ORAL ORDER denying as moot 152 Third MOTION in Limine To Exclude Reference to the EEOC Determination by Davita M. Key. Entered by Chief Judge Emily C. Marks on 3/27/2023. (cs, )** (Entered: 03/28/2023) |
| 03/27/2023 | | **ORAL ORDER granting 153 Fourth MOTION in Limine To Exclude Reference to Unemployment Determination by Davita M. Key. Entered by Chief Judge Emily C. Marks on 3/27/2023. (cs, )** (Entered: 03/28/2023) |
| 03/27/2023 | | **ORAL ORDER denying 156 First MOTION in Limine Defendant Dynamic Security, Inc.'s First Motion In Limine to Exclude Plaintiff's Testimony About Gloria Robinson's Alleged Comments About the Content of Memos Sent by "The Koreans" by Dynamic Security, Inc. Entered by Chief Judge Emily C. Marks on 3/27/2023. (cs, )** (Entered: 03/28/2023) |
| 03/27/2023 | | **ORAL ORDER denying as moot 157 Second MOTION in Limine Defendant Dynamic Security, Inc.'s Second Motion in Limine to Exclude Its Statement of Position Submitted to the EEOC by Dynamic Security, Inc. Entered by Chief Judge Emily C. Marks on 3/27/2023. (cs, )** (Entered: 03/28/2023) |
| 03/27/2023 | | **ORAL ORDER granting in part and denying in part 158 Third MOTION in Limine Defendant Dynamic Security, Inc.'s Third Motion In Limine to Exclude Evidence of Dismissed Claims by Dynamic Security, Inc., as further stated on the record. Entered by Chief Judge Emily C. Marks on 3/27/2023. (cs, )** (Entered: 03/28/2023) |
| 03/27/2023 | | **ORAL ORDER denying 159 Fourth MOTION in Limine Defendant Dynamic Security, Inc.'s Fourth Motion In Limine to Exclude Questions Asked by Ray Cureton Related to Assignment for the Plaintiff by Dynamic Security, Inc.. Entered by Chief Judge Emily C. Marks on 3/27/2023. (cs, )** (Entered: 03/28/2023) |
| 03/27/2023 | | **ORAL ORDER granting in part and denying in part 160 Fifth MOTION in Limine Defendant's Fifth Motion In Limine to Exclude Any Reference to Plaintiff Filing an EEOC Charge Against Defendant Dynamic Security, Inc. by Dynamic Security, Inc., as further stated on the record. Entered by Chief Judge Emily C. Marks on 3/27/2023. (cs, )** (Entered: 03/28/2023) |

| 03/27/2023 | | Minute Entry for proceedings held before Chief Judge Emily C. Marks: Voir Dire, Jury Selection and Trial Began on 3/27/2023 (NO PDF ATTACHED, SEE FINAL MINUTE ENTRY). (Court Reporter Patricia Starkie.) (cs, ) (Entered: 03/28/2023) |
|---|---|---|
| 03/28/2023 | 182 | MOTION for Judgment as a Matter of Law *Defendant Dynamic Security Inc.'s Motion for Judgment as a Matter of Law* by Dynamic Security, Inc.. (Redmond, Wesley) (Entered: 03/28/2023) |
| 03/28/2023 | | **ORAL ORDER Denying 182 Motion for Judgment as a Matter of Law. Entered by Chief Judge Emily C. Marks on 3/28/2023. (cs, ) (Entered: 03/28/2023)** |
| 03/28/2023 | | Minute Entry for proceedings held before Chief Judge Emily C. Marks: Jury Trial continued on 3/28/2023 (NO PDF ATTACHED, SEE FINAL MINUTE ENTRY). (Court Reporter Patricia Starkie.) (cs, ) (Entered: 03/28/2023) |
| 03/29/2023 | 183 | MOTION for Judgment as a Matter of Law *Defendant Dynamic Security, Inc.'s Renewed Motion for Judgment as a Matter of Law* by Dynamic Security, Inc.. (Redmond, Wesley) (Entered: 03/29/2023) |
| 03/29/2023 | | **ORAL ORDER Denying 183 Motion for Judgment as a Matter of Law. Entered by Chief Judge Emily C. Marks on 3/29/2023. (cs, ) (Entered: 03/29/2023)** |
| 03/29/2023 | | ORAL MOTION to Strike Defendant's Affirmative Defense on Failure to Mitigate by Davita M. Key. (cs, ) (Entered: 03/29/2023) |
| 03/29/2023 | | **ORAL ORDER denying Oral Motion to Strike Defendant's Affirmative Defense on Failure to Mitigate. Entered by Chief Judge Emily C. Marks on 3/29/2023. (cs, ) (Entered: 03/29/2023)** |
| 03/29/2023 | 184 | Closing Instructions to the Jury. (cs, ) (Entered: 03/30/2023) |
| 03/29/2023 | 185 | JURY VERDICT. (cs, ) (Entered: 03/30/2023) |
| 03/29/2023 | 187 | Minute Entry for proceedings held before Chief Judge Emily C. Marks: Jury Trial completed on 3/29/2023 (PDF available for court use only). (Court Reporter Patricia Starkie.) (Attachments: # 1 Witness List, # 2 Court's Exhibit List, # 3 CX-1 (Conventionally filed), # 4 CX-2 (Conventionally filed), # 5 Plaintiff's Exhibit List, # 6 Plaintiff's Exhibits (Conventionally filed), # 7 Defendant's Exhibit List, # 8 Defendant's Exhibits (Conventionally filed)) (cs, ) (Entered: 03/30/2023) |
| 03/30/2023 | 186 | **ORDER AND JUDGMENT: After this case had been presented to a jury, a verdict was returned, as further set out in order; It is, therefore, the ORDER, JUDGMENT, and DECREE of the Court, based on the jury verdict, that judgment is entered in favor of the Plf Davita M. Key and against the Dft Dynamic Security, Inc. as follows: 1. Compensatory damages in the amount of $300,064.00; 2. Punitive damages in the amount of $511,200.00; 3. Costs are taxed against the Defendant for which execution may issueThe Clerk of the Court is DIRECTED to enter this as a Final Judgment pursuant to Federal Rule of Civil Procedure 58. Signed by Chief Judge Emily C. Marks on 3/30/2023. (bes, ) (Entered: 03/30/2023)** |
| 03/30/2023 | 188 | JUROR QUESTIONNAIRE CERTIFICATION received 3/27/2023 from Heather Newsom Leonard on behalf of Davita M. Key. (cs, ) (Entered: 03/30/2023) |
| 03/30/2023 | 189 | JUROR QUESTIONNAIRE CERTIFICATION received 3/27/2023 by Leslie Ann Palmer on behalf of Davita M. Key. (cs, ) (Entered: 03/30/2023) |
| 03/30/2023 | 190 | JUROR QUESTIONNAIRE CERTIFICATION received 3/27/2023 by Susan Ware Bullock on behalf of Dynamic Security, Inc.. (cs, ) (Entered: 03/30/2023) |
| 04/13/2023 | 191 | Costs Taxed in amount of $ 4,636.10 against Davita M. Key. (bes, ) (Entered: 04/13/2023) |
| 04/13/2023 | 192 | Costs Taxed in amount of $ 3,943.50 against Davita M. Key (bes, ) (Entered: 04/13/2023) |
| 04/25/2023 | 193 | MOTION for Equitable Relief of Reinstatement of Interest by Davita M. Key. (Attachments: # 1 Exhibit A - Damages Calculation with Interest)(Palmer, Leslie) (Entered: 04/25/2023) |
| 04/26/2023 | 194 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Jury Trial VOLUME I (PDF ACCESS RESTRICTED FOR 90 DAYS) held on 03/27/2023, before Judge Emily C. Marks. Court Reporter/Transcriber Patricia G. Starkie, Telephone number (334) 322-8053. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. NOTICE OF INTENT TO REQUEST REDACTION DUE WITHIN 7 BUSINESS DAYS. Redaction Request due 5/17/2023. Redacted Transcript Deadline set for 5/30/2023. Release of Transcript Restriction set for 7/25/2023. (bes, ) (Entered: 04/26/2023) |
| 04/26/2023 | 195 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Jury Trial VOLUME II (PDF ACCESS RESTRICTED FOR 90 DAYS) held on 03/28/2023, before Judge Emily C. Marks. Court Reporter/Transcriber Patricia G. Starkie, Telephone number (334) 322-8053. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. NOTICE OF INTENT TO REQUEST REDACTION DUE WITHIN 7 BUSINESS DAYS. Redaction Request due 5/17/2023. Redacted Transcript Deadline set for 5/30/2023. Release of Transcript Restriction set for 7/25/2023. (bes, ) (Entered: 04/26/2023) |

| 04/26/2023 | 196 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Jury Trial VOLUME III (PDF ACCESS RESTRICTED FOR 90 DAYS) held on 3/29/2023, before Judge Emily C. Marks. Court Reporter/Transcriber Patricia G. Starkie, Telephone number (334) 322-8053. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. NOTICE OF INTENT TO REQUEST REDACTION DUE WITHIN 7 BUSINESS DAYS. Redaction Request due 5/17/2023. Redacted Transcript Deadline set for 5/30/2023. Release of Transcript Restriction set for 7/25/2023. (bes, ) (Entered: 04/26/2023) |
|---|---|---|
| 04/26/2023 | 197 | MOTION for Renewed Judgment as a Matter of Law *as to Liability and Punitive Damages; MOTION To Vacate, Alter or Amend the Judgment; or, Alternatively, MOTION for a New Trial or Remittitur of Emotional Distress and Punitive Damages* by Dynamic Security, Inc.. (Redmond, Wesley). Added MOTION for New Trial, MOTION to Alter Judgment on 3/11/2024 (AM). (Entered: 04/26/2023) |
| 04/27/2023 | 198 | **ORDER: it is ORDERED that the Dft shall file a response to the Plf's 193 motion for equitable relief of reinstatement and interest on or before 5/11/2023; It is further ORDERED that the Plf shall file a reply to the Dft's response on or before 5/18/2023. Signed by Chief Judge Emily C. Marks on 4/27/2023. (bes, ) (Entered: 04/27/2023)** |
| 04/27/2023 | 199 | **ORDER: it is ORDERED that the Plf shall file a response to the Dft's 197 motion for renewed judgment on or before 5/11/2023; It is further ORDERED that the Dft shall file a reply to the Plf's response on or before 5/18/2023. Signed by Chief Judge Emily C. Marks on 4/27/2023. (bes, ) (Entered: 04/27/2023)** |
| 05/03/2023 | 200 | MOTION for Extension of Deadline Time to File Petition for Attorneys' Fees and Bill of Cost *Unopposed* by Davita M. Key. (Palmer, Leslie) (Entered: 05/03/2023) |
| 05/08/2023 | 201 | **TEXT ORDER granting 200 Motion to Extend Deadline to Submit Petition for Attorneys' Fees and Cost Bill. Signed by Chief Judge Emily C. Marks on 5/8/2023. (No PDF attached to this entry)** (bes, ) Modified on 5/8/2023 to correct a typographical error contained with the original text order (bes, ). (Entered: 05/08/2023) |
| 05/10/2023 | 202 | Joint MOTION for Extension of Time to File Response/Reply as to 199 Order, 198 Order, *Responding to Post Judgment Motions* by Davita M. Key. (Palmer, Leslie) (Entered: 05/10/2023) |
| 05/10/2023 | 203 | **ORDER: it is ORDERED that the 202 joint motion to extend deadlines is GRANTED to the extent that all pending deadlines related to post judgment response briefing are CONTINUED GENERALLY; It is further ORDERED that the parties shall jointly report the status of mediation no later than noon on 6/12/2023; Thereafter, should it be necessary, the Court will reschedule the post judgment briefing deadlines. Signed by Chief Judge Emily C. Marks on 5/10/2023. (bes, ) (Entered: 05/10/2023)** |
| 06/12/2023 | 204 | Joint REPORT *on Status of Mediation* by Dynamic Security, Inc., Davita M. Key. (Redmond, Wesley) Modified on 6/12/2023 to add as also filed on behalf of the Plaintiff (amf, ). (Entered: 06/12/2023) |
| 06/13/2023 | 205 | **ORDER: it is ORDERED as to the following: 1) On the Plf's 193 motion for equitable relief: a.) The Dft shall file a response to the Plf's motion on or before 6/27/2023; b.) The Plf shall file a reply to the Dft's response on or before 7/5/2023; 2) On the Dft's 197 motion for judgment as a matter of law: a.) The Plf shall file a response to the Dft's motion on or before 6/27/2023; b.) The Dft shall file a reply to the Plf's response on or before 7/5/2023. Signed by Chief Judge Emily C. Marks on 6/13/2023. (bes, ) (Entered: 06/13/2023)** |
| 06/27/2023 | 206 | RESPONSE in Opposition re 197 MOTION for Judgment as a Matter of Law *Defendant Dynamic Security, Inc.'s Motion for Renewed Judgment as a Matter of Law as to Liability and Punitive Damages; To Vacate, Alter or Amend the Judgment; or, Alternatively, for a New Trial or Remitt* filed by Davita M. Key. (Palmer, Leslie) (Entered: 06/27/2023) |
| 06/27/2023 | 207 | RESPONSE in Opposition re 193 MOTION for Equitable Relief of Reinstatement of Interest filed by Dynamic Security, Inc.. (Bullock, Susan) (Entered: 06/27/2023) |
| 06/29/2023 | 208 | MOTION for Extension of Time to File Response/Reply as to 206 Response in Opposition to Motion, 207 Response in Opposition to Motion *Dynamic Security Inc.'s Motion for Three-Day Enlargement of Time to File Its Reply as to Its Motion for Renewed Judgment as A Matter of Law and Motion for Three-Day Enlargement of Time for Plaintiff to File her Reply as to Her Motion for Equitable Relief* by Dynamic Security, Inc.. (Bullock, Susan) (Entered: 06/29/2023) |
| 06/30/2023 | 209 | **TEXT ORDER granting 208 Motion for Extension of Time. Signed by Chief Judge Emily C. Marks on 6/30/2023. (No PDF attached to this entry)** (bes, ) (Entered: 06/30/2023) |
| 07/10/2023 | 210 | REPLY to Response to Motion re 193 MOTION for Equitable Relief of Reinstatement of Interest filed by Davita M. Key. (Palmer, Leslie) (Entered: 07/10/2023) |
| 07/10/2023 | 211 | REPLY BRIEF re 206 Response in Opposition to Motion, 197 MOTION for Judgment as a Matter of Law *Defendant Dynamic Security, Inc.'s Motion for Renewed Judgment as a Matter of Law as to Liability and Punitive Damages; To Vacate, Alter or Amend the Judgment; or, Alternatively, for a New Trial or Remitt Defendant Dynamic Security, Inc.'s Reply to Plaintiff's Response to Its Motion for Renewed Judgment as a Matter of Law as to the Liability and Punitive Damages; To Vacate, Alter, Or Amend the Judgment; or, Alternatively, For A New Trial or Remittitur of Emotional Distress and Punitive Damages* filed by Dynamic Security, Inc.. (Bullock, Susan) (Entered: 07/10/2023) |
| 03/11/2024 | 212 | **MEMORANDUM OPINION AND ORDER: it is ORDERED that Dynamic's 197 motion is DENIED, as further set out in Order. Signed by Chief Judge Emily C. Marks on 3/11/2024. (AM)** (Entered: 03/11/2024) |

| | | |
|---|---|---|
| 03/14/2024 | 213 | **MEMORANDUM OPINION AND ORDER: it is ORDERED that Key's 193 motion is GRANTED, in part, as to prejudgment interest and DENIED, in part, as to reinstatement; It is further ORDERED that prejudgment interest on Key's back pay award shall be paid in accordance with the chart appended to this order. Signed by Chief Judge Emily C. Marks on 3/14/2024. (AM)** (Entered: 03/14/2024) |
| 03/28/2024 | 214 | BILL OF COSTS by Davita M. Key. (Leonard, Heather) (Entered: 03/28/2024) |
| 03/28/2024 | 215 | MOTION for Attorney Fees by Davita M. Key. (Attachments: # 1 Exhibit 1 - Declaration of Davita Key, # 2 Exhibit 2 - Declaration of Leslie Palmer, # 3 Exhibit 3 - Declaration of Heather Leonard, # 4 Exhibit 4 - Declaration of Candis McGowan, # 5 Exhibit 5 - Declaration of Alicia Haynes, # 6 Exhibit 6 - Declaration of Jim Roberts, # 7 Exhibit 7 - Declaration of Sonya Edwardes, # 8 Exhibit 8 - Declaration of Cynthia Wilkinson) (Leonard, Heather) (Attachment 3 replaced on 3/29/2024 due to pages sideways/upside down) (DMN). Modified on 3/29/2024. (DMN) (Additional attachment(s) added on 3/29/2024: # 9 Corrected Certificate of Service) (DMN). (Entered: 03/28/2024) |
| 03/29/2024 | 216 | **(VACATED PURSUANT TO THE 219 ORDER) ORDER: Now pending before the Court is Plaintiff Davita M. Key's motion for attorney fees and expenses, filed on 3/28/2024. (Doc. 215 ). Upon consideration of the motion, and for good cause, it is ORDERED that the Defendant shall file a response to the Plaintiff's motion on or before 4/12/2024. It is further ORDERED that the Plaintiff shall file a reply to the Defendant's response on or before 4/19/2024. Signed by Chief Judge Emily C. Marks on 3/29/2024. (DMN)** Modified on 4/8/2024 (AM). (Entered: 03/29/2024) |
| 04/05/2024 | 217 | NOTICE OF APPEAL by Dynamic Security, Inc. as to 213 Memorandum Opinion and Order entered 3/14/2024, 212 Memorandum Opinion and Order entered 3/11/2024, 186 Order and Judgment entered 3/30/2023, 147 Order entered 2/21/2023, Oral Orders entered on 3/28/2023 and 3/29/2023, Oral Order entered 3/28/2023, Oral Order entered on 3/28/2023, denial of Defendant's Jury Verdict Form (Doc. 181 ) as reflected in Jury Verdict Form submitted to jury on 3/30/2023 (Doc. 185 ), Closing Jury Instructions to jury as entered by the Court on 3/30/2023 (Doc. 184 ), and 213 Memorandum Opinion and Order entered 3/14/2024. ( Filing fee $ 605 receipt number AALMDC-3617496.) (Redmond, Wesley) Modified on 4/8/2024 to clarify text and create links. (DMN) (Entered: 04/05/2024) |
| 04/08/2024 | 218 | Appeal Instructions sent to Wesley C. Redmond and Susan W. Bullock, counsel for Appellant Dynamic Security, Inc. re 217 Notice of Appeal. A copy of the Transcript Information Form must be mailed to each court reporter from whom you are requesting a transcript. (Attachments: # 1 Transcript Order Form)(DMN) (Entered: 04/08/2024) |
| 04/08/2024 | 219 | **ORDER: it is ORDERED that the Plaintiff's 215 motion is DENIED without prejudice with leave to refile, if appropriate, after the Eleventh Circuit has issued its final mandate in the Defendant's appeal; It is further ORDERED that the Court's briefing order on the Plaintiff's 216 motion is VACATED. Signed by Chief Judge Emily C. Marks on 4/8/2024. (AM)** (Entered: 04/08/2024) |
| 04/08/2024 | 220 | Transmission of 217 Notice of Appeal, 213 Memorandum Opinion and Order, 212 Memorandum Opinion and Order, 186 Order and Judgment, 147 Order, and Docket Sheet to US Court of Appeals. (Attachments: # 1 Docket Sheet and Appeal Record)(DMN) (Main Document 220 replaced on 4/11/2024) (DMN). (Entered: 04/08/2024) |
| 04/10/2024 | 221 | NOTICE OF APPEAL by Davita M. Key as to 138 Memorandum Opinion and Order entered 2/10/2023; 38 Order entered 8/31/2021; and from all other interlocutory orders or rulings affecting her rights entered by the Court prior to the entry of the final judgment. Plaintiff also appeals the Taxation of Costs entered 4/13/2023 for Defendants HEA and HMMA (Docs. 191 , 192 ). ( Filing fee $ 605 receipt number BALMDC-3619801.) (Palmer, Leslie) Modified on 4/11/2024 to clarify text and create links. (DMN) (Entered: 04/10/2024) |
| 04/11/2024 | 222 | Appeal Instructions sent to Heather Leonard and Leslie A. Palmer counsel for Appellant Davita Key re 221 Notice of Appeal. A copy of the Transcript Information Form must be mailed to each court reporter from whom you are requesting a transcript. (Attachments: # 1 Transcript Order Form)(DMN) (Entered: 04/11/2024) |
| 04/11/2024 | 223 | Transmission of 221 Notice of Appeal, 138 Memorandum Opinion and Order, 38 Memorandum Opinion and Order, 192 Costs Taxed, 191 Costs Taxed, and Docket Sheet to US Court of Appeals. (Attachments: # 1 Docket Sheet and Appeal Record)(DMN) (Entered: 04/11/2024) |
| 04/11/2024 | 224 | TRANSCRIPT ORDER FORM by Davita M. Key re 221 Notice of Appeal: "No hearing." (Leonard, Heather) Modified on 4/11/2024 to clarify text. (DMN) (Entered: 04/11/2024) |
| 04/11/2024 | 225 | USCA Case Number 24-11069-B for 217 Notice of Appeal, filed by Dynamic Security, Inc. Fee Status: Fee Paid. (DMN) (Entered: 04/12/2024) |
| 04/12/2024 | 226 | USCA Case Number 24-11126-B for 221 Notice of Appeal, filed by Davita M. Key. Fee Status: Fee Paid. (DMN) (Entered: 04/12/2024) |
| 04/12/2024 | 227 | Costs Taxed in amount of $15,381.84 against Dynamic Security, Inc. (GGN) (Entered: 04/12/2024) |
| 04/19/2024 | 228 | TRANSCRIPT ORDER FORM by Dynamic Security, Inc. re 217 Notice of Appeal, Appeal No. 24-11069: "I am ordering a transcript of the following proceedings: Pre-Trial 2/21/2023 before Chief Judge Emily C. Marks, Court Reporter: Blanton Callen. Trial 3/27/2023-3/29/2023 before Chief Judge Emily C. Marks, Court Reporter: Patricia Starkie." (Redmond, Wesley) Modified on 4/19/2024 to clarify text. (DMN) (Entered: 04/19/2024) |

| | | |
|---|---|---|
| 04/22/2024 | 229 | Transcript Acknowledgment Part II and Part III received from Court Reporter Patricia Starkie on 11th Circuit Appeal No. 24-11069-B. Certifying transcript has been completed and filed with the district court on: 4/26/2023. Transcripts on file Doc. 194 , 195 , 196 , filed 4/26/2023. (DMN) (Entered: 04/23/2024) |
| 04/23/2024 | 230 | USCA Notice of Receipt re 221 Notice of Appeal, 11th Circuit Appeal No.24-11126-DD: DUPLICATE of Transcript Order Form DE 2 as to Appellant Davita M. Key. NO ACTION WILL BE TAKEN. (DMN) (Entered: 04/23/2024) |
| 05/01/2024 | 232 | USCA Case Clerically Consolidated re 217 Notice of Appeal, 11th Circuit Appeal No. 24-11069-G: Absent objection filed within 14 days of this letter, this appeal will be consolidated by the Clerk with 24-11126 pursuant to FRAP 3(b)(2) and 11th Cir. R. 12-2. (DMN) (Entered: 05/03/2024) |
| 05/01/2024 | 233 | USCA Case Clerically Consolidated re 221 Notice of Appeal, 11th Circuit Appeal No. 24-11126-DD: Absent objection filed within 14 days of this letter, this appeal will be consolidated by the Clerk with 24-11069 pursuant to FRAP 3(b)(2) and 11th Cir. R. 12-2.(DMN) (Entered: 05/03/2024) |
| 05/02/2024 | 231 | Transcript Acknowledgment Part II received from Court Reporter Blanton Callen on 11th Circuit Appeal No. 24-11069. Satisfactory arrangements for paying the cost of the transcript were made on: 5/2/24. Estimated filing date: 5/31/24. (DMN) (Entered: 05/02/2024) |
| 07/02/2024 | 234 | NOTICE OF FILING OF ORAL ARGUMENT AND FINAL PRETRIAL CONFERENCE OFFICIAL TRANSCRIPT (PDF ACCESS RESTRICTED FOR 90 DAYS) for dates of 2/21/2023 before Judge Chief Judge Emily C. Marks, re 217 Notice of Appeal,,, Court Reporter/Transcriber Blanton Callen, Telephone number 334-412-3507. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER. NOTICE OF INTENT TO REQUEST REDACTION DUE WITHIN 7 BUSINESS DAYS. Redaction Request due 7/23/2024. Redacted Transcript Deadline set for 8/2/2024. Release of Transcript Restriction set for 9/30/2024. (CWL) (Entered: 07/03/2024) |
| 08/09/2024 | 236 | (STRICKEN - ISSUED IN ERROR PURSUANT TO NOTICE FROM USCA RECEIVED 8/12/2024) USCA Notice of Transcripts Overdue re 217 Notice of Appeal; Appeal No. 24-11069. (Email sent to CR P. Starkie) (LAB) Modified on 8/12/2024 (CWL). (Entered: 08/09/2024) |
| 12/02/2024 | | Pursuant to F.R.A.P. 11(c), the Clerk of the District Court for the Middle District of Alabama certifies that the record is complete for purposes of this appeal re: 221 Notice of Appeal, Appeal No. 24-11126. The record on appeal is available electronically with the exception of DE 187 -3 (CX-1), 187 -4 CX-2, 187 -6 (Plaintiff's Exhibits) and 187 -8 (Defendant's Exhibits), which will be sent electronically via One Drive. (CWL) (Entered: 12/02/2024) |
| 12/02/2024 | | USCA Certificate of Readiness as to 221 Notice of Appeal. The record on appeal is available electronically with the exception of DE 187 -3 (CX-1), 187 -4 (CX-2), 187 -6 (Plaintiff's Exhibits) and 187 -8 (Defendant's Exhibits), which was sent electronically via OneDrive. (CWL) (Entered: 12/02/2024) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 12/05/2024 15:01:24 | | |
| **PACER Login:** | Palmerlegalservices | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:19-cv-00767-ECM-SMD |
| **Billable Pages:** | 23 | **Cost:** | 2.30 |

Docket / Tab # 1

Complaint

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

RECEIVED

2019 OCT 10  P 12: 47

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

DAVITA M. KEY,                                              )

     Plaintiff,                                          )

v.                                                                    2:19-cv-767-Ecm-smD

HYUNDAI MOTOR MANUFACTURING ALABAMA, LLC )
HYUNDAI ENGINEERING AMERICA, INC.          )
and DYNAMIC SECURITY, INC.                        )

     Defendants.

## COMPLAINT AND JURY DEMAND

NOW COMES the Plaintiff DAVITA M. KEY and for her complaint against

Defendants HYUNDAI MOTOR MANUFACTURING, HYUNDAI ENGINEERING

AMERICA, INC. and DYNAMIC SECURITY, INC. she states as follows:

## JURISDICTION AND PARTIES

1.     This lawsuit for failure to hire, wrongful termination, discrimination and

retaliation is brought pursuant Title VII of the Civil Rights Act of 1964, as amended, (42

U.S.C. §§ 2000e to 2000e-17), and the United States **Pregnancy Discrimination

Act** (PDA) of 1978 (Pub.L. 95–555) a United States **federal** statute which amended

Title VII of the Civil Rights **Act** of 1964 to "prohibit sex **discrimination** "on the basis

of **pregnancy,** childbirth, or related medical conditions."   This lawsuit is also for

wrongful termination based upon retaliation for engaging in protected activity.

2.     This court has jurisdiction pursuant to 28 USC 1331, and 1343(4).

1

3. Plaintiff filed a charge of employment discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the commission of the unlawful employment practice alleged in this claim.

4. Plaintiff received notification of the right-to-sue letter from the EEOC on or about July 15, 2019 and has filed this complaint within 90 days of receiving the EEOC's notice of the right to sue.

5. Plaintiff Davita M. Key is a citizen of the United States and the State of Alabama and at all times relevant hereto resided in the City of Montgomery, County of Montgomery, State of Alabama and at all times relevant hereto was employed as a mailroom clerk for Defendant Hyundai Motor Manufacturing Alabama.

6. Defendant Hyundai Motor Manufacturing Alabama, LLC is an employer, as that term is defined under Title VII of the Civil Rights Act, and at all times relevant hereto was located at and/or conducted business at 700 Hyundai Blvd, Montgomery, Alabama 36105.

7. Defendant Hyundai Engineering America, Inc. is an employer, as that term is defined under Title VII of the Civil Rights Act, and at all times relevant hereto was located at and/or conducted business at 2 North Jackson Street, Suite 605 Montgomery, AL 36104.

8. Defendant DYNAMIC SECURITY, INC. is an employer, as that term is defined under Title VII of the Civil Rights Act, and at all times relevant hereto was located at and/or conducted business at 1102 Woodward Ave., Muscle Shoals, AL 35661.

2

9. All of the events complained of herein occurred 700 Hyundai Blvd, Montgomery, AL 36105, within the City of Montgomery, State of Alabama and arise out of the discrimination, retaliation and wrongful termination of Plaintiff Davita M. Key.

10. The instant action is for Race and Gender discrimination in violation of Title VII of the 1964 Civil Rights Act, Retaliation, and Violation of the Federal Pregnancy Discrimination Statute and Retaliatory Discharge.

11. The amount in controversy exceeds Seventy-Five Thousand ($75,000.00) Dollars, excluding interest and costs.

## INTRODUCTION

12. Plaintiff was hired by Hyundai Motor Manufacturing Alabama as a mail clerk through Dynamic Security as a mail clerk.

13. Plaintiff has been treated differently than her white and male co-workers by having conditions and requirements imposed on her which prohibit her from wearing her natural hair.

14. Plaintiff presented Ms. Gloria Robinson and Mr. Maurice Chambliss, supervisors at Hyundai Motor Manufacturing Alabama with a doctor's note stating that she was 14 weeks pregnant.

15. Plaintiff informed both Ms. Robinson and Mr. Chambliss that her doctor stated that she had no work restrictions.

16. Subsequently Plaintiff was asked by her supervisors why her hair was styled in the manner it was, which was a natural hairstyle.

17. Plaintiff stated that she was told anything at her job orientation that her

3

hairstyle was inappropriate.

18.    After that conversation, Plaintiff met with her trainer and started working for that day.

19.    After about 45 minutes, Plaintiff was called into her supervisor's office and was told that her hairstyle was in violation of a policy of Defendant Hyundai Motor Manufacturing Alabama policy.

20.    Plaintiff asked to see the policy and the supervisor refused to show it to her.

21.    Plaintiff was subsequently told that she would have to wear a hat that completely covered her head.

22.    About five minutes later, Plaintiff received a phone call from her supervisor about her specific due date and whether her doctor knew of her job duties.

23.    Plaintiff assured her supervisor that her doctor was aware and cleared her of any work restrictions and that her due date was January 2018.

24.    Plaintiff was discharged after that conversation.

25.    Plaintiff was later told by a HR representative for Hyundai Motor Manufacturing Alabama and Dynamic Security, Hyundai did not want her back at their work site do to her hair and something else.

26.    Plaintiff requested to see policies and procedures regarding pregnancy and hair, however they were all refused.

27.    Plaintiff further requested to file a complaint about her treatment but it was refused.

4

28.     As a result of Plaintiff exercising legal rights she was retaliated against, unfairly disciplined and subjected to wrongful discharge.

## COUNT I
## VIOLATION OF TITLE VII CIVIL RIGHTS ACT *as Amended*
## (42 U.S.C. §§ 2000e to 2000e-17)

29.     Plaintiff realledges each and every preceding paragraph set forth above.

30.     As a result of Plaintiff exercising legal rights she was retaliated against and unfairly disciplined and subjected to further harassment, disciplinary and discriminatory treatment.

31.     As a direct and proximate result of Defendants unlawful conduct, Plaintiff has suffered lost wages, benefits, and loss of employment opportunities.

32.     As a direct and proximate result of Defendants wrongful acts, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation.

## COUNT II
## VIOLATION OF PREGNANCY DISCRIMINATION ACT

33.     Plaintiff realledges each and every preceding paragraph set forth above.

34.     Plaintiff's medical doctor provided notification that released Plaintiff to work with no restrictions and Plaintiff provided that to Defendant, Hyundai Motor Manufacturing Alabama.

35.     In addition, Defendants failure to make reasonable accommodations to Plaintiff has caused and continues to cause Plaintiff to suffer substantial injuries for

5

pecuniary losses, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

36.  After Plaintiff told Defendant, Hyundai Motor Manufacturing Alabama that her due date was January 2018, she was terminated.

37.  Plaintiff was terminated in violation of the Pregnancy Discrimination Act.

38.  As a direct and proximate result of Defendants wrongful acts, Plaintiff has sustained loss of earnings, earning capacity, and fringe benefits and has suffered mental anguish, physical and emotional distress, humiliation and embarrassment, and loss of professional reputation.

## COUNT III
## RETALIATION

39.  Plaintiff requested to see Defendant Hyundai Motor Manufacturing Alabama employment policies prohibiting her from working while pregnant and policies prohibiting her from wearing her hair natural and her request to see these policies were denied.

40.  As a result of Plaintiff exercising legal rights she was retaliated against, unfairly disciplined, and subjected to wrongful termination.

4φ.  As a direct and proximate result of Defendants unlawful conduct, Plaintiff has suffered loss wages, benefits and loss employment opportunities

WHEREFORE, Plaintiff respectfully requests an award of damages that will be appropriate compensation for all of his damages and losses, consequential and exemplary damages, punitive damages, attorney fees and expenses, costs and interest, all resulting from Defendants discriminatory and wrongful actions.

6

## DEMAND FOR RELIEF

Plaintiff hereby demands judgment and all other relief prayed for above and against the Defendants, along with costs, interest, attorney fees, and other relief which this Court deems just.

## DEMAND FOR JURY TRIAL

NOW COMES the Plaintiff and hereby demands a trial by jury on all issues so triable.

By:     /s/DAVITA M. KEY
DAVITA M. KEY
6940 Wrangler Road, Apt. C
Montgomery, Alabama 36117
(334) 200-7078
dmkey825@gmail.com

Dated: October 10, 2019

7



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Birmingham District Office

Ridge Park Place
1130 22nd Street South, Suite 2000
Birmingham, AL 35205
Intake Information Group: 800-669-4000
Intake Information Group TTY: 800-669-6820
Birmingham Direct Dial: (205) 212-2100
FAX (205) 212-2105
Website: www.eeoc.gov

Davita M. Key
6940 Wrangler Rd, Apt. C
Montgomery, AL 36117

Re:   Davita Key vs. Hyundai Motor Manufacturing
      Charge Number 420-2019-00128

Dear Ms. Key:

The Equal Employment Opportunity Commission has determined that efforts to conciliate this charge as required by Title VII of the Civil Rights Act of 1964, as amended, (Title VII) have been unsuccessful. No further efforts to conciliate this charge will be made by the EEOC. This letter constitutes the notice required by Section 1601.25 of the Equal Employment Opportunity Commission's Procedural Regulations which provides that it shall make a written notification when it determines that further conciliation efforts would be futile or non-productive.

The EEOC has determined that it will not bring a lawsuit against the Respondent. The issuance of the enclosed Notice of Right to Sue concludes the processing of your charge by the EEOC. If you decide to sue Respondent, you must file a lawsuit in Federal District Court within 90 days of receipt of this letter and Notice of Right to Sue.

If you file a lawsuit, please forward a copy of your court complaint to this office within 10 days of its filing. We can then preserve your file and consider your suit when taking other actions. If you have any questions or concerns, you may contact Investigator Alicia Martin-Schutz at (205) 212-2072 or alicia.martin-schutz@eeoc.gov

On Behalf of the Commission:

7/12/19

**Date Mailed**

**Bradley A. Anderson**
**District Director**

Enclosure (Notice of Right to Sue-Conciliation Failure)



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Birmingham District Office**

Ridge Park Place
1130 22nd Street South, Suite 2000
Birmingham, AL 35205
Intake Information Group: 800-669-4000
Intake Information Group TTY: 800-669-6820
Birmingham Direct Dial: (205) 212-2100
FAX (205) 212-2105
Website: www.eeoc.gov

Hyundai Motor Manufacturing
C/O David J. Middlebrooks
Lehr Middlebrooks Vreeland & Thompson, P.C.
2021 3rd Ave North
Birmingham, AL 35203

Re:   Davita Key vs. Hyundai Motor Manufacturing
      Charge Number 420-2019-00128

Dear Mr. Middlebrooks:

The Equal Employment Opportunity Commission has determined that efforts to conciliate this charge as required by Title VII of the Civil Rights Act of 1964, as amended, (Title VII) have been unsuccessful. This letter constitutes the notice required by Section 1601.25 of the Equal Employment Opportunity Commission's Procedural Regulations which provides that the Commission shall notify a Respondent in writing when it determines that further conciliation efforts would be futile or non-productive.

No further efforts to conciliate this charge will be made by the EEOC. The EEOC has decided that it will not bring civil action under Title VII based on this charge. The Charging Party has been notified and issued a Notice of Right to Sue, which entitles her to sue Respondent under Title VII. A copy of the Notice of Right to Sue is enclosed. If you have any questions or concerns, you may contact Investigator Alicia Martin-Schutz at (205) 212-2072 or alicia.martin-schutz@eeoc.gov

                        On Behalf of the Commission:

7/12/19

Date Mailed                 Bradley A. Anderson      for
                            District Director

EEOC Form 161-A (11/16)               **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

# NOTICE OF RIGHT TO SUE
## (CONCILIATION FAILURE)

| | | |
|---|---|---|
| To: **Davita M. Key**<br>**6940 Wrangler Rd Apt C**<br>**Montgomery, AL 36117** | From: | **Birmingham District Office**<br>**Ridge Park Place**<br>**1130 22nd Street**<br>**Birmingham, AL 35205** |

☐  *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 420-2019-00128 | **ALICIA E. MARTIN-SCHUTZ,**<br>**Investigator** | (205) 212-2072 |

### TO THE PERSON AGGRIEVED:

This notice concludes the EEOC's processing of the above-numbered charge. The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you. In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case. This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

**BRADLEY A. ANDERSON,**
**District Director**

7/12/19
*(Date Mailed)*

cc:
**Hyundai Motor Manufacturing Alabama, LLC**

**C/O David J. Middlebrooks**
**Lehr Middlebrooks Vreeland & Thompson, P.C.**
**2021 3RD AVE N**
**Birmingham, AL 35203**

Enclosure with EEOC
Form 161-A (11/16)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS**  —  **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should keep a record of this date. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed within 90 days of the date this Notice was *mailed* to you (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

## PRIVATE SUIT RIGHTS  —  Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit **before 7/1/10** – *not* 12/1/10 – in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

## ATTORNEY REPRESENTATION  —  Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do **not** relieve you of the requirement to bring suit within 90 days.

## ATTORNEY REFERRAL AND EEOC ASSISTANCE  —  All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, please make your review request **within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

JS 44 (Rev. 02/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Davita M. Key

**DEFENDANTS**

Hyundai Motor Manufacturing Alabama, LLC
Hyundai Engineering America, Inc
Dynamic Security, Inc

**(b)** County of Residence of First Listed Plaintiff   Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Montgomery
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❏ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ❏ 2  U.S. Government Defendant
- ❏ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ❏ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ❏ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** — **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane — ❏ 365 Personal Injury - | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 376 Qui Tam (31 USC 3729(a)) |
| ❏ 130 Miller Act | ❏ 315 Airplane Product Liability — Product Liability | | | ❏ 400 State Reapportionment |
| ❏ 140 Negotiable Instrument | ❏ 320 Assault, Libel & — ❏ 367 Health Care/ Pharmaceutical | | **PROPERTY RIGHTS** | ❏ 410 Antitrust |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | Slander — Personal Injury | | ❏ 820 Copyrights | ❏ 430 Banks and Banking |
| ❏ 151 Medicare Act | ❏ 330 Federal Employers' — Product Liability | | ❏ 830 Patent | ❏ 450 Commerce |
| ❏ 152 Recovery of Defaulted | Liability — ❏ 368 Asbestos Personal | | ❏ 835 Patent - Abbreviated New Drug Application | ❏ 460 Deportation |
| Student Loans | ❏ 340 Marine — Injury Product | | ❏ 840 Trademark | ❏ 470 Racketeer Influenced and |
| (Excludes Veterans) | ❏ 345 Marine Product — Liability | | | Corrupt Organizations |
| ❏ 153 Recovery of Overpayment | Liability — **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ❏ 480 Consumer Credit |
| of Veteran's Benefits | ❏ 350 Motor Vehicle — ❏ 370 Other Fraud | ❏ 710 Fair Labor Standards | ❏ 861 HIA (1395ff) | ❏ 485 Telephone Consumer |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle — ❏ 371 Truth in Lending | Act | ❏ 862 Black Lung (923) | Protection Act |
| ❏ 190 Other Contract | Product Liability — ❏ 380 Other Personal | ❏ 720 Labor/Management | ❏ 863 DIWC/DIWW (405(g)) | ❏ 490 Cable/Sat TV |
| ❏ 195 Contract Product Liability | ❏ 360 Other Personal — Property Damage | Relations | ❏ 864 SSID Title XVI | ❏ 850 Securities/Commodities/ |
| ❏ 196 Franchise | Injury — ❏ 385 Property Damage | ❏ 740 Railway Labor Act | ❏ 865 RSI (405(g)) | Exchange |
| | ❏ 362 Personal Injury - — Product Liability | ❏ 751 Family and Medical | | ❏ 890 Other Statutory Actions |
| | Medical Malpractice | Leave Act | | ❏ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** — **PRISONER PETITIONS** | ❏ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ❏ 893 Environmental Matters |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights — **Habeas Corpus:** | ❏ 791 Employee Retirement | ❏ 870 Taxes (U.S. Plaintiff | ❏ 895 Freedom of Information |
| ❏ 220 Foreclosure | ❏ 441 Voting — ❏ 463 Alien Detainee | Income Security Act | or Defendant) | Act |
| ❏ 230 Rent Lease & Ejectment | ☒ 442 Employment — ❏ 510 Motions to Vacate | | ❏ 871 IRS—Third Party | ❏ 896 Arbitration |
| ❏ 240 Torts to Land | ❏ 443 Housing/ — Sentence | | 26 USC 7609 | ❏ 899 Administrative Procedure |
| ❏ 245 Tort Product Liability | Accommodations — ❏ 530 General | | | Act/Review or Appeal of |
| ❏ 290 All Other Real Property | ❏ 445 Amer. w/Disabilities - — ❏ 535 Death Penalty | **IMMIGRATION** | | Agency Decision |
| | Employment — **Other:** | ❏ 462 Naturalization Application | | ❏ 950 Constitutionality of |
| | ❏ 446 Amer. w/Disabilities - — ❏ 540 Mandamus & Other | ❏ 465 Other Immigration | | State Statutes |
| | Other — ❏ 550 Civil Rights | Actions | | |
| | ❏ 448 Education — ❏ 555 Prison Condition | | | |
| | — ❏ 560 Civil Detainee - | | | |
| | Conditions of | | | |
| | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ❏ 2 Removed from State Court
- ❏ 3 Remanded from Appellate Court
- ❏ 4 Reinstated or Reopened
- ❏ 5 Transferred from Another District *(specify)*
- ❏ 6 Multidistrict Litigation - Transfer
- ❏ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII of the 1964 Civil Rights Act, 42 USC 2000e
Brief description of cause:
Employment discrimination based on race and gender, pregnancy, discrimination, retaliation

## VII. REQUESTED IN COMPLAINT:

❏ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 100,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes   ❏ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE  October 19, 2019

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #  _____   AMOUNT  _____   APPLYING IFP  _____   JUDGE  _____   MAG. JUDGE  _____

10/10/19

DUPLICATE

Court Name: U S DISTRICT COURT - AL/M
Division: 2
Receipt Number: 4602055239
Cashier ID: bhill
Transaction Date: 10/10/2019
Payer Name: DAVITA M KEY
----------------------------------
CIVIL FILING FEE
 For: DAVITA M KEY
 Amount:        $400.00
----------------------------------
CASH
 Amt Tendered:  $400.00
----------------------------------
Total Due:       $400.00
Total Tendered: $400.00
Change Amt:        $0.00

2:19-cv-767-ECM-SMD

Key v. Hyundai Motor Manufacturing
Alabama, LLC et al

Docket / Tab # 28

Amended Complaint

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DAVITA M. KEY, | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:19-CV-767-ECM |
| | ) | |
| HYUNDAI MOTOR | ) | |
| MANUFACTURING, ALABAMA, | ) | |
| LLC; HYUNDAI ENG AMERICA, | ) | |
| INC.; and DYNAMIC SECURITY, INC. | ) | |
| | ) | Jury Trial Requested |
|    Defendants. | ) | |

## FIRST AMENDED COMPLAINT

## I.   JURISDICTION AND VENUE

1.   The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331,

1343(a)(4).  This lawsuit for termination based on pregnancy and race

discrimination and retaliation is authorized and instituted pursuant to Title

VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*,

and as amended by the Pregnancy Discrimination Act of 1978, and 42

U.S.C. § 1981 as amended.  Plaintiff invokes the jurisdiction of this Court to

secure protection for and to redress the deprivation of rights secured by Title

VII, the PDA and § 1981, seeking injunctive and other relief against

discrimination on the basis of sex, race, and retaliation.

## II.   PARTIES

2.      Plaintiff, Davita M. Key, ("Key" or "Plaintiff") is a Black female over the

age of 18 and is a resident of Montgomery, Alabama.

3.      Defendant, Hyundai Motor Manufacturing Alabama, LLC. ("HMMA") is a

foreign limited liability company doing business within the State of

Alabama with offices located in this judicial district.  HMMA employed at

least 15 people at all times relevant to this action.

4.      HMMA's registered agent's office is 700 Hyundai Boulevard; Montgomery,

AL 36105.

5.      HMMA's website is https://www.hmmausa.com/.

6.      Defendant, Hyundai ENG America, Inc.. ("HEA") is a foreign corporation

doing business within the State of Alabama with offices located in this

judicial district.  HEA employed at least 15 people at all times relevant to

this action.

7.      Upon information and belief, HMMA contracted with HEA in 2017 for

HEA to provide services at HMMA's Montgomery, Alabama location.

8.      HEA's employees performed work on the premises of HMMA for the

benefit of HMMA.

9.      Upon information and belief, HEA's employees were subject to HMMA's

policies and procedures.

10.     Upon information and belief, HEA's employees were subject to HMMA's work schedules.

11.     Upon information and belief, HEA's employees were subject to the direction and control of management and supervisory level employees for HMMA.

12.     Upon information and belief, HEA and HMMA are joint employers and/or an integrated enterprise.

13.     Defendant HEA and Defendant HMMA are jointly referred to as "Hyundai".

14.     Defendant, Dynamic Security, Inc. ("Dynamic") is a domestic corporation organized under the laws of the State of Alabama with offices located in this judicial district. Dynamic employed at least 15 people at all times relevant to this action.

15.     Dynamic's website is http://www.dynamicsecurity.org/.

16.     Dynamic's website provides on its "Our Approach" page, "The Dynamic Approach begins by forming strong lines of communication with our client contact, ensuring an understanding of our valued client's objectives, turning those goals into a regimen of recruitment, training and ongoing multi-layered support."

17.     In addition to providing contract security services, per Dynamic's website, it also provides facility staffing for part-time, temporary, full-time, industrial, and clerical workers.

18.  Dynamic's website states on its "our services page"
(http://www.dynamicsecurity.org/our-services.html) that it will put together
a customized proposal for a company or organization.

19.  In 2017, Dynamic placed employees to work on HMMA's property.

20.  The employees Dynamic placed to work on HMMA's property were
supervised and directed in their work by HMMA and/or HEA.

21.  The employees Dynamic placed to work on HMMA's property were subject
to the policies and procedures of HMMA and/or HEA.

22.  The work schedules for employees Dynamic placed to work on HMMA's
property were set by HMMA and/or HEA.

23.  Dynamic was a joint employer with HMMA and/or HEA with respect to the
employees Dynamic placed on HMMA's premises.

### III.    CONDITIONS PRECEDENT

24.  Key brings this action for the unlawful employment practices and acts of
intentional discrimination and retaliation.

25.  On August 3, 2017 Key completed an EEOC Intake Questionnaire detailing
her allegations of discrimination against Dynamic and "Hyundai" she
identified "Hyundai" as located at 700 Hyundai Blvd., Montgomery,
Alabama. On page 4 of the intake, Key marked "box 2" expressing an intent
to file a charge. (Doc. 11-2).

26.   Key wrote in her intake questionnaire that she had "filed a complaint w/ Dynamic Security/the agency I was hire through . . ."

27.   The EEOC formalized the charge against Dynamic as Charge No. 846-2017-32787. (Doc. 13-2).

28.   The EEOC formalized the charge against HMMA as Charge No. 420-2019-00128. (Doc. 13-1).

29.   After a failed conciliation, the EEOC issued a Cause Finding and Notice of Right to Sue stamped July 12, 2019. (Doc. 1-1).

30.   The EEOC dismissed the charge against Dynamic on March 1, 2019.

31.   Key did not receive the Dismissal until it was filed by a defendant in this action.

32.   Key belived and understood that her claims against Dynamic had been incorporated with the Hyundai charge.

33.   When Plaintiff received the finding in her favor and Notice of Right to Sue relating to the Hyundai charge, she believed it applied to Dynamic.

34.   Plaintiff filed this action within 90 days for receiving the Hyundai charge.

35.   Plaintiff meets all administrative prerequisites for filing suit on her Title VII, claims and timely brings this action.

36.   Plaintiff has no administrative prerequisites to satisfy for any claims under 42 U.S.C. § 1981 and is entitled to bring this action.

## IV. FACTS

37.   Plaintiff Key is Black.

38.   Defendant Dynamic provides security and staffing services to various

facilities throughout the state.

39.   Defendant HEA contracts with both HMMA and Dynamic to perform work

for the benefit of HMMA at HMMA's Montgomery location at 700 Hyundai

Boulevard; Montgomery, AL 36105.

40.   Defendant HMMA is a Limited Liability Company doing business in

Alabama at 700 Hyundai Blvd overseeing the production and manufacturing

of Hyundai vehicles. HMMA employees more than 2500 employees at the

Montgomery Alabama facility.

41.   Dynamic provides certain staff to the facility located at 700 Hyundai Blvd

("Hyundai Plant").

42.   Key applied with Dynamic for a position of mail clerk through indeed.com

and was selected for an interview at the Hyundai Plant.

43.   Dynamic sent Key to the Hyundai plant to interview.

44.   Three individuals, Gloria Robinson, Lt. Maurice Chambliss, and Cassandra

Williams, interviewed Key on July 19, 2017.

45. During the month of July 2017 Key wore her hair in "neat locks" or a neat dreadlocks style. She wore her hair in this style on the date of her interview. During her interview, no one raised concern about Key's hairstyle.

46. At the conclusion of the interview, Robinson brought in Cassandra Williams to see if Key's hairstyle was "okay."

47. Williams turned up her nose and asked if Key could take it down to which she responded only if she cut it. Williams asked Robinson what the policy was regarding hair and Robinson responded she did not think it was allowed.

48. Key showed both Williams and Robinson a manner in which she could wear her neat locked hair "up" and both approved the style.

49. Robinson, who was employed by Dynamic and worked under the umbrella and direction of Hyundai, emailed Key on July 21, 2017 hiring her for the position of mail clerk.

50. On July 27, 2017 Key completed training and paperwork at Dynamic's facility.

51. After completing the training, Key asked Dynamic's office manager, Nicole Scavella, if her hairstyle was within company policy. Scavella noted Key's hair was neat and was within policy and she was not sure why anyone would raise any issue. Dynamic approved Key's neat lock hairstyle as within its policy.

52.    On July 31, 2017, Key reported to the Hyundai Plant for her first day of employment wearing her hair in the same style that Scavella said was approved and she had worn during her interview.

53.    During her training at the Hyundai Plant, Key received a safety manual marked "Hyundai Motor Manufacturing Alabama, LLC."

54.    While Key was waiting to receive her security badge, Williams came into the building and spoke with Key. Though Key's hair was fully visible, Williams did not say anything to Key about her hairstyle at that time.

55.    Key also saw Robinson to receive certain instructions. Robinson also did not make any mention about Key's hairstyle.

56.    After receiving instructions from Robinson, Key pulled Robinson and Chambliss aside to inform them she was pregnant.

57.    Key presented Robinson and Chambliss a note from her doctor stating she was pregnant, had no restrictions, and would be able to fulfill all her duties. She provided this information as notice of future doctor's appointments.

58.    Robinson took the note to the office she shared with Williams.

59.    Approximately 10 minutes later Williams came to the area where Key was twice, the second time, she asked Key what she was going to do about her hair.

60. Key told Williams that Dynamic had told her that her hair was neat and appropriate under the policy.

61. Williams aggressively and loudly responded it was what she said that mattered, not what Dynamic had told her, and stormed off.

62. Williams' comment made clear to Key that the employment decision at issue would be controlled by Hyundai.

63. Key began training with another individual named Tanya.

64. After approximately 30-45 minutes Tanya received a call to bring Key back to the office.

65. Key returned to the office where Williams, Robinson, and Chambliss joined her.

66. Williams informed her in a stern voice she could not maintain her hair in that style because it was against policy. Key asked to see the policy but could only point Key to the policy for female uniformed officers – Key was not a uniformed officer. Key's hairstyle did not violate any company policy.

67. Williams told Key Dynamic could send her to any number of facilities if Dynamic approved her hair but she could not wear her hair in that style at the Hyundai Plant.

68. Williams said females could wear braids and they were different because of the "name and professionalism" and braids allowed you to see the scalp.

Williams and Robinson would not answer Key when she asked if her hair would be appropriate if she could see her scalp.

69. Williams told Key she would have to get her stylist to change her hair but she would not tell her to go home and gave her the option of wearing a hat all day every day if all her hair was covered.

70. Key said she had a hat at home she could wear that would cover all her hair and did not contain a logo. Robinson sent her home for the day telling her to contact her stylist and they would "go from there."

71. Key left as instructed she had only worked roughly 3.5 hours.

72. Approximately five minutes after Key left the Hyundai Plant, Robinson called Key and asked her when she was "due" and if her doctor knew she would be lifting boxes.

73. Key responded January (6 months) and yes her doctor was aware of her responsibilities and had cleared her. Robinson responded "okay" and hung up.

74. The next day, August 1, 2017, Key returned to the Hyundai Plant to resume work. She complied with Williams request and wore a hat that completely covered her hair. She reported to her job site with her trainer Tanya.

75. Tanya and Key made rounds, reached the security building, and went inside to office of Robinson and Williams, neither acknowledged Key or raised any concern with her hairstyle or hat.

76. On the ride back to the mailroom, Tanya asked Key why they had sent her home the day before. Key responded because of her hair and that she did not think it was right but she was still wanting to work with them.

77. After returning to the mailroom, Tanya received a call that Chambliss was coming to get Key. Key gathered her things and Chambliss returned her to the security building.

78. Robinson and Chambliss met with Key in the conference room and Robinson asked Key if anything was wrong with her.

79. Key, uncertain of what she was talking about, said she was fine and explained she wore her hat as she was told she could because she could not get a hair appointment so quickly.

80. Robinson stated the meeting was not because of her hat and asked, "so you feel discriminated against?"

81. Key said she had no comment and Robinson said, "so you do" and stated Tanya had told her she felt that way.

82. Robinson told Key the Koreans (HMMA and HEA) were a "different breed of animals and they send little memos saying that they do not want African-

Americans wearing their hair in dreadlock hairstyles" because they have VIP clients.

83.   Robinson said Key was going to be a problem and that the situation was going to be a problem and Key returned to work.

84.   Tanya confirmed she had stated Key felt discriminated against. Tanya called Robinson again, but Key stepped out of the mailroom. When Key returned, Key wrote up a formal complaint against Hyundai, Robinson, and Williams and told Chambliss she wanted to file a complaint with human resources. Chambliss told her to talk to Williams or Robinson. When she expressed concern about speaking with them Chambliss told her to go to Dynamic's facility and speak with Ray Cureton.

85.   Chambliss gave her permission to leave to speak with Cureton. She went immediately to the Dynamic facility to speak with Cureton.

86.   Cureton had Scavella sit in on the meeting and she shared her complaint.

87.   Scavella remarked Key's efforts would be fruitless and that filing a discrimination complaint is a serious offense.

88.   Cureton told Key Williams did not want her at the Hyundai Plant anymore because of her hair and "something else."

89.  Cureton stated he would send a copy of her complaint to the HR office in Birmingham and get back to her in a couple of days so she could review the Hyundai dismissal paperwork.

90.  Scavella walked Key to her car and told her she (Scavella) had "really" been discrimination against and that what Key experience was not discrimination and she was fighting a losing battle.

91.  On August 2, 2017, Robinson e-mailed Cureton and others at Dynamic from an e-mail addressing belonging to HMMA to relay express that Hyundai did not allow women to have cornrows or dreads and asked that Key not return to the plant.

92.  Key received a paycheck from Dynamic for her two partial days of work listing HMMA under the "Customer ID."

93.  Dynamic never placed Key in any further assignments.

94.  HMMA exercised control over Dynamic staff at the Hyundai Plant including dress code, work hours, hiring/firing (from that location), safety training, issuance of Hyundai badges.

95.  HME exercised control over Dynamic staff at the Hyundai Plant including disciplinary and training decisions.

## V.    STATEMENT OF PLAINTIFF'S CLAIMS

### COUNT ONE
### TITLE VII – PREGNANCY DISCRIMINATION

96.     Plaintiff adopts and realleges the allegations of paragraphs 1-95 as if fully
        set forth herein.

97.     Defendants discriminated against Plaintiff on the basis of sex/pregnancy in
        the terms and conditions of her employment in violation of Title VII of the
        Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act.

98.     Defendants hired Plaintiff to perform duties as a mail clerk at the Hyundai
        Plant.

99.     Defendants had previously discussed Plaintiff's hairstyle and come to a
        resolution which allowed Plaintiff to begin working July 31, 2017. When she
        began her shift, Defendants, having seen her hair that day, made no mention
        of her hairstyle.

100.    After beginning her workday, Plaintiff notified Defendants of her pregnancy
        on July 31, 2017 but did not ask for any accommodations and provided a
        doctor's note clearing her for work.

101.    Within minutes of receiving Plaintiff's doctor's note, Defendants developed
        issues with Plaintiff's hair and sent her home for the day denying her the
        remainder of her shift.

102.    Defendants terminated Key's employment from the Hyundai Plant August 2,
        2017.

103.   Defendant Dynamic did not assign Key to any other assignments upon her
       Hyundai termination.

104.   Defendants terminated Plaintiff because of her pregnancy and otherwise
       subjected her to pregnancy discrimination.

105.   Pregnancy was a motivating factor in Defendants decision.

106.   As a consequence of Defendants' unlawful conduct, Plaintiff suffered
       damages, including but not limited to lost wages, benefits, embarrassment,
       humiliation, shame, damages to reputation, mental distress, and emotional
       pain and anguish.

107.   Plaintiff has no plain, adequate, or complete remedy at law to redress the
       wrongs alleged herein, and this suit for compensatory damages, punitive
       damages, attorneys' fees, costs, injunctive relief, and declaratory judgement
       is her only means of securing adequate relief.

108.   Plaintiff is now suffering and will continue to suffer irreparable injury from
       Defendant's unlawful practices set forth herein unless enjoined by this
       Court.

**RELIEF**

   WHEREFORE, Plaintiff requests this Court assume jurisdiction of this cause of
action and award the following relief:

a.  Enter a declaratory judgment that Defendants' policies, practices, and procedures complained of herein have violated and continue to violate the rights of Plaintiff as secured by Title VII and the PDA;

b.  Grant Plaintiff a permanent injunction enjoining Defendants, their agents, successors, employees, attorneys, and those acting in concert with Defendants or at Defendants' request from violating Title VII;

c.  Grant Plaintiff an Order requiring Defendants to make her whole by granting appropriate declaratory relief, backpay, compensatory damages (including damages for mental anguish), punitive damages, interest, attorneys' fees, expenses, and costs; and

d.  Grant Plaintiff such other, further, different, or additional relief and benefits as justice may require.

## COUNT TWO
## TITLE VII RACE DISCRIMINATION

109.  Plaintiff adopts and realleges the allegations of paragraphs 1-95 as if fully set forth herein.

110.  Defendants discriminated against Plaintiff on the basis of race in the terms and conditions of her employment in violation of Title VII of the Civil Rights Act of 1964, as amended.

111.  Defendants hired Plaintiff to perform duties as a mail clerk at the Hyundai Plant.

112.   Plaintiff verified with Defendant Dynamic that her hairstyle was appropriate under the policy.

113.   Defendants HMMA and HEA set Plaintiff home from her shift because she had her hair in neat locks and were unable to point Plaintiff to any policy preventing that style.

114.   Defendants HMMA and HEA required Plaintiff to cover her hair claiming to give her time to get an appointment to change it.

115.   Defendant Dynamic was aware of Hyundai's alleged concern around Key's hair and allowed Hyundai to prevent Key from working.

116.   Without allowing Plaintiff time to change her hairstyle, Defendants HMMA and HME terminated Key's employment from the Hyundai Plant August 2, 2017.

117.   Plaintiff wore her hair in a manner commonly worn by African-American's.

118.   Plaintiff's hairstyle was neat and within policy but was identified as a negative African American characteristic by Defendants HMMA and HEA. This racial link is purportedly contained in Hyundai memos.

119.   Defendants HMMA and HEA terminated Plaintiff because of her race.

120.   Race was a motivating factor in HMMA and HEA's decision.

121.   Additionally, Defendants purported policy creates a disparate impact on African Americans.

122.   As a consequence of Defendants' unlawful conduct, Plaintiff suffered

damages, including but not limited to lost wages, benefits, embarrassment,

humiliation, shame, damages to reputation, mental distress, and emotional

pain and anguish.

123.   Plaintiff has no plain, adequate, or complete remedy at law to redress the

wrongs alleged herein, and this suit for compensatory damages, punitive

damages, attorneys' fees, costs, injunctive relief, and declaratory judgement

is her only means of securing adequate relief.

124.   Plaintiff is now suffering and will continue to suffer irreparable injury from

Defendant's unlawful practices set forth herein unless enjoined by this

Court.

**RELIEF**

WHEREFORE, Plaintiff requests this Court assume jurisdiction of this cause of

action and award the following relief:

a.   Enter a declaratory judgment that Defendants' policies, practices, and

procedures complained of herein have violated and continue to violate

the rights of Plaintiff as secured by Title VII;

b.   Grant Plaintiff a permanent injunction enjoining Defendants, their

agents, successors, employees, attorneys, and those acting in concert

with Defendants or at Defendants' request from violating Title VII;

   c.  Grant Plaintiff an Order requiring Defendants to make her whole by granting appropriate declaratory relief, backpay, compensatory damages (including damages for mental anguish), punitive damages, interest, attorneys' fees, expenses, and costs; and

   d.  Grant Plaintiff such other, further, different, or additional relief and benefits as justice may require.

## COUNT THREE
## 42 USC § 1981 DISCRIMINATION

125.  Plaintiff adopts and realleges the allegations of paragraphs 1-95 as if fully set forth herein.

126.  Defendants discriminated against Plaintiff on the basis of race in the terms and conditions of her employment in violation of 42 USC § 1981.

127.  Defendants hired Plaintiff to perform duties as a mail clerk at the Hyundai Plant.

128.  Plaintiff verified with Defendant Dynamic that her hairstyle was appropriate under the policy and notified Dynamic of Hyundai's issue.

129.  Defendants HMMA and HEA set Plaintiff home from her shift because she had her hair in neat locks despite her hair being within Defendant Dynamic's policy and earlier agreeing to allow Plaintiff to cover her hair until she could get an appointment to change it.

130. Defendants HMMA and HME terminated Key's employment from the Hyundai Plant August 2, 2017.

131. Plaintiff wore her hair in a manner commonly worn by African-Americans.

132. Defendants HMMA and HEA characterized Plaintiff's hairstyle as negative in the context of race.

133. Defendants HMMA and HEA terminated Plaintiff because of her race.

134. Race was a motivating factor in HMMA and HEA's decision.

135. Additionally, Defendants purported policy creates a disparate impact on African Americans.

136. As a consequence of Defendants' unlawful conduct, Plaintiff suffered damages, including but not limited to lost wages, benefits, embarrassment, humiliation, shame, damages to reputation, mental distress, and emotional pain and anguish.

137. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and this suit for compensatory damages, punitive damages, attorneys' fees, costs, injunctive relief, and declaratory judgement is her only means of securing adequate relief.

138. Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful practices set forth herein unless enjoined by this Court.

**RELIEF**

WHEREFORE, Plaintiff requests this Court assume jurisdiction of this cause of action and award the following relief:

    a.  Enter a declaratory judgment that Defendants' policies, practices, and procedures complained of herein have violated and continue to violate the rights of Plaintiff as secured by 42 USC § 1981;

    b.  Grant Plaintiff a permanent injunction enjoining Defendants, their agents, successors, employees, attorneys, and those acting in concert with Defendants or at Defendants' request from violating 42 USC § 1981;

    c.  Grant Plaintiff an Order requiring Defendants to make her whole by granting appropriate declaratory relief, backpay, compensatory damages (including damages for mental anguish), punitive damages, interest, attorneys' fees, expenses, and costs; and

    d.  Grant Plaintiff such other, further, different, or additional relief and benefits as justice may require.

**COUNT FOUR**
**TITLE VII RACE RETALIATION**

139.  Plaintiff adopts and realleges the allegations of paragraphs 1-95 as if fully set forth herein.

140. Defendants discriminated against Plaintiff in retaliation for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended 42 USC § 2000e, by terminating Plaintiff's employment when she complained of discrimination on the basis of a racially protected trait and a racially disparate grooming policy.

141. Dreadlocks, as a form of natural hair, are a protected racial characteristic under various versions of the CROWN Act in multiple jurisdictions.[1]

142. Defendants HMMA and HEA called Plaintiff into the office on August 1, 2017 because another employee said Plaintiff felt discriminated against.

143. Plaintiff requested to file a formal discrimination complaint on August 1, 2017.

144. Plaintiff left the Hyundai facility (with permission) to file a formal complaint with Dynamic at the Dynamic facility.

145. Defendants HMMA and HEA terminated Key's employment from the Hyundai Plant August 2, 2017 after she left to file a complaint.

146. Defendant Dynamic made statements demeaning or undermining Plaintiff's complaint and discouraging her from filing a formal complaint.

---

[1] The CROWN Act states for Creating a Respectful and Open World for Natural hair. Some jurisdictions have adopted the Act as "workplace" not "world.". The Crown Act has gained substantial press coverage and has even been filed in the Alabama legislature according to www.thecrownact.com.

147.   Defendants terminated Plaintiff because she complained of race
discrimination.

148.   As a consequence of Defendants' unlawful conduct, Plaintiff suffered
damages, including but not limited to lost wages, benefits, embarrassment,
humiliation, shame, damages to reputation, mental distress, and emotional
pain and anguish.

149.   Plaintiff has no plain, adequate, or complete remedy at law to redress the
wrongs alleged herein, and this suit for compensatory damages, punitive
damages, attorneys' fees, costs, injunctive relief, and declaratory judgement
is her only means of securing adequate relief.

150.   Plaintiff is now suffering and will continue to suffer irreparable injury from
Defendant's unlawful practices set forth herein unless enjoined by this
Court.

**RELIEF**

WHEREFORE, Plaintiff requests this Court assume jurisdiction of this cause of
action and award the following relief:

a.   Enter a declaratory judgment that Defendants' policies, practices, and
procedures complained of herein have violated and continue to violate
the rights of Plaintiff as secured by Title VII;

b.  Grant Plaintiff a permanent injunction enjoining Defendants, their

agents, successors, employees, attorneys, and those acting in concert

with Defendants or at Defendants' request from violating Title VII;

c.  Grant Plaintiff an Order requiring Defendants to make her whole by

granting appropriate declaratory relief, backpay, compensatory

damages (including damages for mental anguish), punitive damages,

interest, attorneys' fees, expenses, and costs; and

d.  Grant Plaintiff such other, further, different, or additional relief and

benefits as justice may require.

## COUNT FIVE
## 42 USC § 1981 RACE RETALIATION

151.  Plaintiff adopts and realleges the allegations of paragraphs 1-95 as if fully

set forth herein.

152.  Defendants discriminated against Plaintiff in retaliation for engaging in

protected activity in violation of 42 USC § 1981, by terminating Plaintiff's

employment when she complained of discrimination on the basis of her race

because of her African-American hairstyle and because of a racially

disparate grooming policy.

153.  Defendants HMMA and HEA called Plaintiff into the office on August 1,

2017 because another employee said Plaintiff felt discriminated against.

154.  Defendants stated she (Key) was going to be a problem.

155. Plaintiff requested to file a formal discrimination complaint on August 1, 2017.

156. Plaintiff left the Hyundai facility (with permission) to file a formal complaint with Dynamic at the Dynamic facility.

157. Defendants HMMA and HEA terminated Key's employment from the Hyundai Plant August 2, 2017 after she left to file a complaint.

158. Defendant Dynamic made statements demeaning or undermining Plaintiff's complaint and discouraging her from filing a formal complaint.

159. Defendants terminated Plaintiff because she complained of race discrimination and a racially disparate policy.

160. As a consequence of Defendants' unlawful conduct, Plaintiff suffered damages, including but not limited to lost wages, benefits, embarrassment, humiliation, shame, damages to reputation, mental distress, and emotional pain and anguish.

161. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and this suit for compensatory damages, punitive damages, attorneys' fees, costs, injunctive relief, and declaratory judgement is her only means of securing adequate relief.

162.   Plaintiff is now suffering and will continue to suffer irreparable injury from

Defendant's unlawful practices set forth herein unless enjoined by this

Court.

**RELIEF**

WHEREFORE, Plaintiff requests this Court assume jurisdiction of this cause of

action and award the following relief:

a.   Enter a declaratory judgment that Defendants' policies, practices, and

procedures complained of herein have violated and continue to violate

the rights of Plaintiff as secured by 42 USC § 1981;

b.   Grant Plaintiff a permanent injunction enjoining Defendants, their

agents, successors, employees, attorneys, and those acting in concert

with Defendants or at Defendants' request from violating 42 USC §

1981;

c.   Grant Plaintiff an Order requiring Defendants to make her whole by

granting appropriate declaratory relief, backpay, compensatory

damages (including damages for mental anguish), punitive damages,

interest, attorneys' fees, expenses, and costs; and

d.   Grant Plaintiff such other, further, different, or additional relief and

benefits as justice may require.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY
ON ALL CLAIMS SO TRIABLE.**

Respectfully Submitted,

Attorneys for Plaintiff

*/s/ Heather Leonard*
Heather Newsom Leonard
ASB-1152-061H

OF COUNSEL:
Heather Leonard, P.C.
2105 Devereaux Cir. Suite 111
Birmingham, AL 35243
Phone: (205) 977-5421
heather@heatherleonardpc.com

*/s/ Leslie A. Palmer*
Leslie A. Palmer
ASB-0436-L40P

OF COUNSEL:
Palmer Law, LLC
104 23rd Street South, Suite 100
Birmingham, AL 35233
Phone: (205) 285-3050
leslie@palmerlegalservices.com

**Certificate of Service**

I hereby certify that I have filed the foregoing on the Court's CM/ECF electronic filing system which will provide notice to all counsel of record on this 1st day of June, 2020.

Wesley C. Redmond
Susan W. Bullock
FordHarrison LLC
420 20th Street North, Suite 2560

27

Birmingham, AL 35203
wredmond@fordharrison.com
sbullock@fordharrison.com
Phone: (205) 244-5905
Counsel for Dynamic Secuirty, Inc.

David J. Middlebrooks
Whitney R. Brown
Lehr Middlebrooks Vreeland & Thompson, P.C.
PO Box 11945
Birmingham, AL 35202
dmiddlebrooks@lehrmiddlebrooks.com
wbrown@lehrmiddlebrooks.com
Phone: (205) 326-3002
Counsel for Hyundai Motor Manufacturing Alabama, LLC

Yurie Yeoul Bae
Richard L. DeWeese, Jr.
Deweese & Bae, LLC
8191 Seaton Place
Montgomery, AL 36116
yurie@deweesebae.com
richard@deweesebae.com
Phone: (334) 239-7994
Counsel for Hyundai ENG America, Inc.

Docket / Tab # 38

Memorandum Opinion and Order Granting Partial
Motion to Dismiss for HEA and Denying all other
Motions to Dismiss

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DAVITA KEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACT. NO. 2:19-cv-767-ECM |
| | ) | (WO) |
| HYUNDAI MOTOR MANUFACTURING, | ) | |
| LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION and ORDER

## I.  INTRODUCTION

Davita Key ("Plaintiff" or "Key") filed the operative complaint in this action on June 1, 2020, (doc. 28), in which she alleges Defendants Hyundai Motor Manufacturing Alabama, LLC, ("HMMA"), Hyundai ENG America, Inc., ("HEA"), and Dynamic Security, Inc., ("Dynamic") (collectively "the Defendants") discriminated against her because of her pregnancy and race.  Specifically, Key brings claims against all Defendants for pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") (count one); race discrimination under Title VII (count two); race discrimination pursuant to 42 U.S.C. § 1981 (count three); retaliation under Title VII (count four); and retaliation pursuant to 42 U.S.C. § 1981 (count five). (Doc. 28).

Now pending before the Court are the Defendants' motions to dismiss the Plaintiff's first amended complaint. (Docs. 30–32).  For the reasons that follow, Defendant HMMA's

1

motion (doc. 30) and Dynamic's motion (doc. 32) are due to be DENIED in their entirety. Defendant HEA's motion (doc. 31) is due to be GRANTED in part and DENIED in part.

## II.  JURISDICTION AND VENUE

The Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and the jurisdictional grant found in 42 U.S.C. § 2000e-5(f)(3).  Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama.  *See* 28 U.S.C. § 1391.

## III.  LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (alteration in original) (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*., at 678.  Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555–56.  This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-

me accusation." *Iqbal*, 556 U.S. at 678.   Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*.

## IV.  FACTS AND PROCEDURAL HISTORY[1]

Key applied for and was offered an interview with Dynamic Security, an employment agency, for a mail clerk position at the Hyundai Plant in Montgomery, Alabama.  At the interview, she met with Gloria Robinson, a Dynamic employee, Maurice Chambliss,[2] and Cassandra Williams, an HEA employee.

For the interview, Key wore her hair in "a neat dreadlocks style."  At the end of the interview, Robinson asked Williams if Key's hairstyle was "okay."  Williams "turned up her nose" and asked Key if she could take her hair down.  Key responded that she could take her hair down only if she cut it.  Williams then asked Robinson about the hair policy at the plant.  Robinson did not think Key's hairstyle was allowed.  In response, Key showed Robinson and Williams that she could wear her hair "up."  Both approved of the style. Two days later, Robinson hired Key for the mail clerk position at Hyundai.

The next week, Key trained and completed paperwork at Dynamic's facility.  After training, Key asked Nicole Scavella, Dynamic's office manager, whether her hairstyle was consistent with company policy.  Scavella told Key she did not think there would be an issue because her hair was neat and consistent with policy.

---

[1] This recitation of the facts is based upon the Plaintiff's complaint.  At this stage of the proceedings, for purposes of ruling on the motions to dismiss, the facts alleged in the complaint and reasonable inferences drawn therefrom are set forth in the light most favorable to the Plaintiff.

[2] The complaint does not specify which entity employed Maurice Chambliss or in what capacity he was employed.

On July 31, 2017, Key arrived at the Hyundai plant for her first day of work.  She wore her hair in the same manner as in her interview and approved by Scavella.  During her training at the plant, Key received a safety manual marked "Hyundai Motor Manufacturing of Alabama, LLC."

Both Robinson and Williams spoke with Key.  Although Key's hair was fully visible, neither commented on it.

After receiving instructions from Robinson, Key told Robinson and Chambliss that she was pregnant.  Key informed Robinson and Chambliss of her pregnancy to notify them of upcoming doctor appointments.  She also gave them a note from her doctor that indicated that Key "was pregnant, had no restrictions, and would be able to fulfill all her duties."

Robinson took the note to the office she shared with Williams.  About ten minutes later, Williams twice came to Key's area.  Williams asked Key "what she was going to do about her hair." Key responded that Dynamic told her that her hair was neat and in compliance with policy.  Williams "aggressively" and "loudly" told Key that it was "what she [Williams] said that mattered" and "not what Dynamic had told [Key]."

Shortly thereafter, Key was called to the office where she met with Williams, Robinson, and Chambliss.  Williams sternly informed Key that she could not keep her hairstyle because it violated policy.  Key asked to see the policy.  They showed Key a policy for a female uniformed officer—not Key's position.  Williams told Key that Dynamic could send her to other facilities if it approved of her hairstyle; but she could not wear her current hairstyle at the Hyundai plant.  Williams explained women could wear braids, which were different because of the "name and professionalism" and the scalp was

visible.  Key asked if her hairstyle would be appropriate if her scalp was visible, but Robinson and Williams would not answer her question.

Williams told Key she would have to get her hair restyled, and gave Key the option of "wearing a hat all day every day if all her hair was covered."  Key responded she had a hat at home that could cover all her hair. After telling Key to contact her stylist, Robinson sent Key home for the day and said they "would go from there."  Key left the plant, having worked approximately 3.5 hours.

Within minutes of leaving the Hyundai plant, Robinson called Key and asked her baby's due date and whether "her doctor knew she would be lifting boxes."  Key said she was due in six months and that her doctor had cleared her to perform her work responsibilities.

The next day, August 1, 2017, Key reported to the Hyundai plant.  In compliance with Williams' instructions, she wore a hat that completely covered her hair.  As Key and her trainer made their rounds, they encountered Robinson and Williams.  Neither said anything about Key's hat or hairstyle.  On the way back to the mailroom, her trainer asked Key why she was sent home the previous day.  Key explained she was sent home because of her hair.  Key said, "she did not think it was right," but she still wanted "to work with them."

After returning to the mailroom, Key was summoned to the security building to meet with Robinson and Chambliss.  Robinson asked Key "if anything was wrong with her."  Although Key did not know the reason for the question, she replied she was fine and explained that she wore a hat because she had not yet gotten a hair appointment.  Robinson

told her the meeting was not about the hat and asked, "so you feel discriminated against?" When Key replied that "she had no comment," Robinson responded, "so you do." Robinson also stated that Key's trainer said Key felt that she was being discriminated against. Robinson told Key that the Koreans "were a different breed of animals and they send little memos saying that they do not want African-Americans wearing their hair in dreadlock hairstyles." Robinson said Key and her situation were going to be problematic. Nonetheless, Key returned to work.

When Key returned to the mailroom, she wrote a formal complaint against Hyundai, Robinson, and Williams. She told Chambliss she wanted to file a complaint with human resources. He told her to speak with Williams and Robinson. Key was concerned about speaking directly with Williams and Robinson, so Chambliss told her to go speak with Ray Cureton at Dynamic's facility. Key immediately left the Hyundai plant and went to the Dynamic facility.

Key met with Cureton and Scavella who told Key that her efforts would be "fruitless and that filing a discrimination complaint is a serious offense." Cureton then added that "Williams did not want [Key] at the Hyundai plant anymore because of her hair and 'something else.'" Cureton told Key he would forward her complaint to the HR office in Birmingham. He also told Key he would contact her in a few days to review the dismissal paperwork from Hyundai. "Scavella walked Key to her car and told [Key] that she (Scavella) had 'really' been discrimination (sic) against and that what Key experience[d] (sic) was not discrimination and she was fighting a losing battle."

The next day, Robinson, using a HMMA email address, emailed Cureton and others at Dynamic to specify that Hyundai's policy did not permit women to have "cornrows or dreads." She specifically "asked that Key not return to the plant." Dynamic did not place Key in any other assignments. When Key received a paycheck from Dynamic for her partial days of work, HMMA was listed as the customer.

On August 3, 2017—the day after Key was terminated—she completed an EEOC intake questionnaire setting forth her allegations against Dynamic and "Hyundai." She described "Hyundai" as being located at 700 Hyundai Blvd., Montgomery, Alabama. The EEOC created two charges: one against HMMA and another against Dynamic.

Although the EEOC dismissed her charge against Dynamic on March 1, 2019, Key alleges that she did not receive the right to sue letter until Dynamic filed it in this action.

On July 12, 2019, the EEOC issued a cause finding and notice of right to sue against HMMA. Key alleges that she believed her claims against Dynamic had been "incorporated with the Hyundai charge." She further asserts that when she received the notice of right to sue on her Hyundai charge, she believed that it also applied to the charge against Dynamic. On October 10, 2019, Key filed suit against HMMA, HEA, and Dynamic. Key filed this action within 90 days of her receipt of the EEOC charge determination against "Hyundai."

**V. DISCUSSION**

The Defendants move to dismiss the Plaintiff's claims of pregnancy discrimination, race discrimination and retaliation under Title VII and race discrimination and retaliation claims under § 1981. The Defendants argue that the Plaintiff has not stated a plausible claim for relief against them under any of the causes of action. In response, the Plaintiff

7

argues that she pleaded sufficient facts to withstand the Defendants' motions to dismiss. The Court turns first to the Defendants' motions to dismiss the Plaintiff's Title VII claims.

## A. Title VII

In addition to their arguments that the Plaintiff has failed to state a claim under Title VII, the Defendants also argue that the Plaintiff's Title VII claims are barred for several procedural deficiencies as well. HEA argues that Key's Title VII claims against it are due to be dismissed because the Plaintiff did not specifically name HEA in her EEOC charge. Thus, she did not exhaust her administrative remedies against HEA with the EEOC. (Doc. 31 at 1). HEA and HMMA also argue that the claims against them should be dismissed because they had no employment relationship with the Plaintiff. (Doc. 30 at 2–8; doc 31 at 7–8).

Dynamic argues that Key failed to file her lawsuit against Dynamic within the prescribed statutory period after receiving a determination from the EEOC, so her Title VII claims against Dynamic should be dismissed. (Doc. 32 at 1).

The Court first considers the preliminary issues of whether the claims are procedurally barred for failure to satisfy administrative prerequisites and whether the Plaintiff has adequately pleaded facts to show that HEA or HMMA were Key's joint employers. The Court will then turn to whether the Plaintiff has stated claims for relief under Title VII or § 1981.

### 1. *Procedural prerequisites*

### a. **Plaintiff failed to exhaust her administrative remedies as to HEA**

HEA argues that the Plaintiff failed to exhaust the EEOC administrative remedies by not naming HEA in her EEOC charge. (Doc. 31 at 1). HEA points out that nowhere in the Plaintiff's complaint does she identify HEA as the "Hyundai" entity located at 700 Hyundai Blvd, and the only connection that the Plaintiff makes with HEA is in her intake form identifying Cassandra Williams—specifically identified as an employee AMCO, the former name of HEA. (*Id*. at 11). Further, in her EEOC charge against HMMA she identified Williams—an HEA employee— as an employee of HMMA.[3] (Doc 13-1). HEA argues that allowing the Title VII claims to proceed against HEA, a party not named in Key's EEOC charge, would not fulfill the purpose of Title VII. (Doc. 31 at 11).

---

[3] Although the Plaintiff did not attach a copy of her EEOC charges to her complaint, defendants HMMA and Dynamic attached copies to their motions to dismiss the complaint. (Doc. 11-1; Doc. 13-1 and 2). In general, the Court considers matters outside the pleadings on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the motion is converted into a motion for summary judgment. The Court may consider exhibits attached to a motion to dismiss in certain circumstances, however, without converting the motion to dismiss into a motion for summary judgment.

> Our Rule 12(b)(6) decisions have adopted the "incorporation by reference" doctrine, *see In re Silicon Graphics Inc. Securities Litigation,* 183 F.3d 970 (9th Cir.1999), under which a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed. *See Harris v. Ivax Corp.,* 182 F.3d 799, 802 n.2 (11th Cir.1999). "Undisputed" in this context means that the authenticity of the document is not challenged. *See, e.g., Beddall v. State Street Bank and Trust Co.,* 137 F.3d 12, 16–17 (1st Cir.1998); *GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir.1997); *Branch v. Tunnell,* 14 F.3d 449, 454 (9th Cir.1994).

*Horsley v. Feldt,* 304 F.3d 1125, 1134 (11th Cir. 2002).

> Although Key did not attach her EEOC charges to her amended complaint, she references them; they are central to her claims; and she does not dispute its contents or authenticity.

Key responds that she listed "Hyundai" in her EEOC charge as her employer at 700 Hyundai Blvd, and that HEA operates at that facility. (Doc. 34 at 17). The Plaintiff asserts that HEA and HMMA "operate out of the same facility, for the same interest, share policies, and act as joint employees," (*id.*), so notice to HMMA was sufficient as to HEA.

HEA argues that neither the Plaintiff nor the EEOC provided it notice about Plaintiff's EEOC claim. (Doc. 31 at 12). Even if it was aware of Plaintiff's charge, HEA suggests that the charge would not have put HEA on notice that it faced potential liability as an employer of the Plaintiff. (*Id.*). HEA also claims that it was not invited to participate or included in the EEOC conciliation process, and that they were prejudiced by this exclusion from the proceedings. (*Id.*). In response, the Plaintiff does not assert that she filed an EEOC complaint against HEA but instead argues that she pleaded enough facts to show that including HEA would be consistent with the purposes of Title VII. (Doc. 34 at 16).

Before bringing a Title VII claim, a plaintiff is required to exhaust administrative remedies which includes first filing a charge with EEOC. *Virgo v. Riviera Beach Assocs., Ltd*., 30 F.3d 1350, 1358 (11th Cir. 1994) (referencing 42 U.S.C. § 2000e-5). Generally, a plaintiff must name a defendant in an EEOC charge before proceeding against it in subsequent litigation under Title VII. *Id*. However, "courts liberally construe this requirement." *Id*. Although the naming requirement "serves to notify the charged party of the allegations and allows the party an opportunity to participate in conciliation and voluntarily comply with the requirements of Title VII," courts allow claims against unnamed parties to proceed if doing so would fulfill the purposes of Title VII. *Peppers v.*

*Cobb Cty., Georgia*, 835 F.3d 1289, 1296 (11th Cir. 2016).  To determine whether the

purposes of Title VII have been met, a court considers:

> (1) the similarity of interest between the named party and the unnamed party; (2) whether the plaintiff could have ascertained the identity of the unnamed party at the time the EEOC charge was filed; (3) whether the unnamed parties received adequate notice of the charges; (4) whether the unnamed parties had an adequate opportunity to participate in the reconciliation process; and (5) whether the unnamed party actually was prejudiced by its exclusion from the EEOC proceedings.

*Peppers*, 835 F.3d at 1296 (citing *Virgo*, 30 F.3d at 1358–59).

Here, allowing Title VII claims to proceed against HEA would not advance the

purpose of Title VII.  The Plaintiff demonstrated in her EEOC charge that she was aware

of the distinction between her employers when she brought separate charges against

HMMA and Dynamic.  In addition, she showed that she could distinguish between the two

Hyundai entities when she identified Williams as an AMCO (HEA) employee in her intake

questionnaire and an HMMA employee in her charge. *Compare* Doc. 11-2 and Doc. 13-1.

Further, simply directing her discrimination charge against at "Hyundai" located 700

Hyundai Blvd. did nothing to put HEA on notice that Key asserted a claim against it.

Indeed, Key asserts in the complaint that "HMMA contracted with HEA in 2017 for HEA

to provide services at HMMA's Montgomery, Alabama location." (Doc. 28 at 2).  These

allegations illustrate that HEA and HMMA are distinct entities which contracted with one

another for the provision of services.  Unlike in *Virgo*, 30 F.3d at 1359, where the plaintiff

used the name under which her actual employer did business, the Plaintiff alleged in her

complaint that HEA and HMMA are separate corporate entities.  Although the Plaintiff

implies that HMMA received notice of the EEOC complaint, (doc. 28 at 5), she alleges nothing to suggest that HEA was on notice of her charge.  She argues that because HEA and HMMA are an integrated enterprise, notice to both was unnecessary.  In contrast to *Virgo* where named and unnamed defendants shared executives who knew of the charge, there is no indication that HEA was ever on notice of the Plaintiff's EEOC charge.  30 F.3d at 1359.  Although Key alleges "[u]pon information and belief, HEA and HMMA are joint employers and/or an integrated enterprise," (doc. 28 at 3), she fails to allege sufficient facts to support this vague assertion.  The failure to name HEA in the EEOC charge, thereby depriving it of an opportunity to participate in the conciliation process, constitutes prejudice to HEA. Because the Plaintiff does not plead sufficient facts to demonstrate that proceeding against HEA would advance the purposes of Title VII, her Title VII claims against HEA are due to be DISMISSED for her failure to exhaust her administrative remedies against that entity.

### b.  Plaintiff's claims against Dynamic

Dynamic argues that the Plaintiff did not plead that "all conditions precedent to the institution of the lawsuit have been fulfilled" pursuant to Fed. R. Civ. P. 9(c), so the Court must dismiss all of the Plaintiff's Title VII claims against Dynamic. Specifically, the Defendant asserts the Plaintiff failed to bring her lawsuit within the statutory period prescribed by Title VII.  (Doc. 32 at 1).  Dynamic contends that, on March 1, 2019, the EEOC District Director mailed to the Plaintiff a notice of right to sue, (*id.* at 3), of which Dynamic received a copy. (Doc. 13-3).  Plaintiff had 90 days within which to file a lawsuit in district court.  Because the Plaintiff filed her suit on October 10, 2019—more than a

hundred days after the June 3, 2019 deadline—the Plaintiff's Title VII claims are untimely. Further, Dynamic argues that the Plaintiff did not plead any specific facts that she did not receive the notice of right to sue on March 1, 2019, or that the EEOC had combined her Dynamic claim with her Hyundai claim. (Doc. 32 at 9, 11).

In response, the Plaintiff asserts that she did not receive the Dynamic right to sue letter until it was filed by one of the defendants in this case. (Doc. 28 at 5). She further contends that she thought the charges were handled together and her claims against Dynamic were included in the right to sue notice against HMMA. So, according to the Plaintiff, it was enough for her to set forth that she received the right to sue letter only when it was attached to a filing in the case. (Doc. 34 at 18). Because of this, she argues, she is not required to plead more specific facts of when she received the right to sue letter. (*Id.*). Instead, she argues that the "three-day" rule applied by the Defendant is only applicable when there is no alternative proof of when the Plaintiff received the right to sue letter. (*Id.* at n.8).

Title VII provides that "[w]ithin ninety days after the giving of . . . notice [of dismissal of the charge] a civil action may be brought against the respondent named in the charge . . . by the person claiming to be aggrieved . . . ." 42 U.S.C § 2000e–5(f)(1). When a defendant contests whether the complaint was timely filed, the plaintiff bears the burden of showing that the plaintiff has met the timeliness requirement. *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005); *Green v. Union Foundry Company,* 281 F.3d 1229, 1233–34 (11th Cir. 2002). The Eleventh Circuit further explained that determinations on when notice was received, and thus the start of the 90-day limitation period, are to be

considered, "on a case-by-case basis to fashion a fair and reasonable rule for the circumstances of each case, one that would require plaintiffs to assume some minimum responsibility . . . without conditioning a claimant's right to sue . . . on fortuitous circumstances or events beyond [her] control." *Kerr*, 427 F.3d at 952 (citing *Zillyette v. Capital One Fin. Corp.,* 179 F.3d 1337, 1340 (11th Cir. 1999) (alternations in original). However, when there is a dispute about when the plaintiff received notice of the EEOC determination, the Eleventh Circuit has applied a "presumption of three days for receipt by mail." *Kerr,* 427 F.3d at 953 n.9; *Zillyette,* 179 F.3d at 1342.

"Because courts must make findings of fact regarding when a plaintiff . . . received [notice] in order to determine whether an action was timely filed, courts tend to this issue at summary judgment or after holding an evidentiary hearing." *Blair v. Brennan*, 2017 WL 2538564, at *2 (M.D. Fla. June 12, 2017). *See also Kerr,* 427 F.3d at 951–52 (summary judgment); *Zillyette*, 179 F.3d at 1341 (summary judgment); *Lewis v. Conners Steel Co.*, 673 F.2d 1240, 1243 (11th Cir. 1982) (reversing dismissal and remanding for an evidentiary hearing). When courts have considered the issue at the motion to dismiss stage, two general trends have emerged. If the plaintiff does not dispute receiving notice or does not plead any facts about when notice was received, courts apply the three-day receipt presumption and will dismiss the claim if it is untimely. *See Hood v. WalMart Store #5903*, 2020 WL 3555226, at *2 (M.D. Ala. June 11, 2020), *report and recommendation adopted*, 2020 WL 3549992 (M.D. Ala. June 30, 2020); *Howard v. Sec'y of the Army*, 2015 WL 4496129, at *5 (M.D. Fla. July 23, 2015) ("Howard has not contested the date Defendants contend she received the letter, nor has she attempted to refute the presumption of

receipt."); *Mims v. Monroe Cty. Bd. of Educ.*, 2014 WL 2508732, at \*3 (S.D. Ala. June 4, 2014) (finding that even though the plaintiff did not offer any evidence of when she received the right to sue letter, the court assumed she received it three days after mailing and her claim was timely filed). However, if a plaintiff disputes when or if she received a right to sue letter and pleads sufficient supporting facts, courts have either denied the motion to dismiss without prejudice or allowed limited discovery to the issue of when the plaintiff received notice of the determination. *Blair*, 2017 WL 2538564 at \*2 (allowed limited discovery about receipt when plaintiff argued "that USPS must have misdelivered [the determination] addressed to his attorney's office because his attorney did not receive [the determination] on November 12 (a Saturday) or November 14 (the next business day)") (brackets added); *Themm v. Tervis Tumbler Co.,* 2015 WL 1293120, at \*1, 4 (M.D. Fla. Mar. 23, 2015) (denied motion to dismiss without prejudice when the plaintiff argued she only received notice of the right to sue letter when her lawyer requested the letter and was told it had been sent almost three months before).

Here the Plaintiff argues that she only received notice of the Dynamic right to sue letter when it was filed as an attachment to the Defendants' motions to dismiss, and she had never received a copy from the EEOC in the mail. She further argues that she thought when she received the HMMA right to sue letter that it had integrated her charges against Dynamic. (Doc. 34 at 18). Because the Plaintiff disputes when she received the Dynamic right to sue letter and pleads facts, which taken as true as to when she received notice, it would be premature to dismiss her Title VII claim as untimely at this time. This case is distinguishable from other cases that were dismissed for untimeliness at the motion to

dismiss stage because in those cases, the plaintiffs either did not contest receipt or did not plead any facts of when they received notice. The Plaintiff here pleads enough facts that she did not receive notice until she received the Dynamic right to sue letter from Dynamic. (Doc. 28 at 5). Therefore, the motion to dismiss the Plaintiff's Title VII claims against Dynamic on timeliness grounds is due to be DENIED without prejudice.

### 2. *Joint employer theory*

Because the Plaintiff did not file an EEOC charge against HEA and the Court has concluded that the Title VII claims against HEA should be dismissed, the Court only addresses whether HMMA had an employment relationship Key.

### a. The Plaintiff has pled enough facts to support a plausible employment relationship between HMMA and Key

HMMA claims that the Plaintiff has not plausibly pleaded that HMMA was a joint employer of the Plaintiff. (Doc. 30 at 2-8). According to HMMA, because every step of the Plaintiff's employment was predominated by employees of Dynamic and HEA, no HMMA employee played any role in the Plaintiff's employment. (*Id.* at 3). As alleged in the complaint, the Plaintiff applied for employment with Dynamic; the grooming policy was enforced by employees of HEA or Dynamic; and an HEA employee (Williams) did not want Key to return the Hyundai plant. (Doc. 28 at 6–7, 12). HMMA argues that the Plaintiff, without factual support, combined HMMA and HEA in her pleadings. (Doc. 30 at 4). The only claims specific to HMMA were that it provided the work site and a safety manual. (*Id.* at 5). HMMA asserts that, because these two instances would be insufficient to provide a factual basis that HMMA was Key's joint employer, the allegations are conclusory and, therefore, should not be considered under 12(b)(6). (*Id.* at 4-5).

Because Plaintiff alleged various facts that support the interrelationship between the Defendants, the Plaintiff asserts she pleaded enough facts to show the Defendants are joint employers or involved in an integrated enterprise.[4] (Doc. 34 at 5-7). Because the Plaintiff alleges a plausible employment relationship, she argues her claims against HMMA should survive the motion to dismiss. (*Id.* at 8).

"A Title VII . . . discrimination claim can only be brought by an employee against [her] employer." *Peppers*, 835 F.3d at 1297 (alteration added). However, courts have interpreted the term "employer" liberally in line with the remedial purpose of Title VII. *Id.* The Eleventh Circuit has explained the existence of an employer relationship turns on the question of "who (or which entity) is in control of the fundamental aspects of the employment relationship that gave rise to the claim." *Id.* (citing *Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1345 (11th Cir. 1999) (en banc)). To answer this question, courts consider "the totality of the employment relationship." *Peppers*, 835 F.3d at 1297 (citing *Welch v. Laney*, 57 F.3d 1004, 1011 (11th Cir. 1995)). Courts consider: "(1) how much control the alleged employer exerted on the employee, and (2) whether the alleged employer had the power to hire, fire, or modify the terms and conditions of the employee's employment." *Id.* (citing *Welch*, 57 F.3d at 1011). In the joint employer context, courts

---

[4] The Plaintiff has not pled facts, however, to show that Defendants HEA and HMMA are an integrated enterprise. An integrated enterprise exists "where two nominally separate entities are actually part of a single integrated enterprise so that, for all purposes, there is in fact only a single employer." *Long v. Aronov Realty Mgmt., Inc.,* 645 F. Supp. 2d 1008, 1029 (M.D. Ala. 2009) (quotation marks omitted). "The single employer analysis involves examining various factors to determine if two nominally independent entities are so interrelated that they actually constitute a single integrated enterprise. . . ." *Id.*, (citing *Swallows v. Barnes & Noble Book Stores, Inc.,* 128 F.3d 990, 993 n.4 (6th Cir. 1997)). Beyond conclusory assertions, the Plaintiff has not pled enough facts to show the sufficient level of interrelation between HEA and HMMA to be an integrated enterprise.

examine the alleged employer's control over: "(1) the means and manner of the plaintiff's work performance; (2) the terms, conditions, or privileges of the plaintiff's employment; and (3) the plaintiff's compensation." *Kaiser v. Trofholz Techs., Inc.,* 935 F. Supp. 2d 1286, 1293 (M.D. Ala. 2013). The Eleventh Circuit has explained that "the focal point of the inquiry is not which entity controlled the specific aspect of the relationship giving rise to a discrimination claim, but rather which entity or entities controlled the fundamental and essential aspects of the employment relationship when taken as a whole." *Peppers,* 835 F.3d at 1301.

Courts usually determine whether a defendant is a joint employer at the summary judgment stage because such a determination requires a factual determination. Therefore, at the motion to dismiss stage, the Court is limited to considering whether a plaintiff has alleged sufficient facts that the defendant had enough control to plausibly be a joint employer. *Caver v. Help at Home LLC*, 2019 WL 2024265, at *2 (N.D. Ala. 2019). For example, in *Kaiser*, 935 F. Supp. 2d at 1293, the court found that the plaintiff had pleaded sufficient factual allegations to support the inference of an employment relationship when she alleged that the alleged employer employed her supervisors who could report on her job performance and her supervisors precipitated her termination by threatening to terminate her employer's contract. Similarly, a court found a plausible employment relationship existed when the plaintiff pleaded that the alleged employer provided feedback, oversaw day-to-day employment, work hours, and could discipline and remove employees. *Linzy v. Alabama Dep't of Pub. Health*, 2020 WL 6205848, at *2 (M.D. Ala. Oct. 22, 2020). The *Linzy* court further noted that the plaintiff need not allege that the

employer controlled every aspect of employment. *Id.* Further, in *Caver*, the court concluded that the plaintiff had plausibly alleged facts supporting the existence of an employment relationship when the employer's name was used on internal records, the plaintiff's paychecks, and the plaintiff's termination email. 2019 WL 2024265 at *2. However, a court found there was no plausible employment relationship when the plaintiff only pleaded that he "worked under the supervision" of the alleged employer, attended a meeting called by the alleged employer, and reported harassment to the alleged employer by one of its employees. *Isaacs v. Felder Servs., LLC*, 2014 WL 2806128, at *3 (M.D. Ala. 2014). And another court found there not to be a plausible employment relationship in light of only pleading "[t]here existed an employer-employee relationship between Plaintiff and Defendants" without specific factual support beyond "[m]ere shadowy allegations." *Craighead v. Austal USA, LLC*, 2017 WL 6559917, at *4 n.7 (S.D. Ala. 2017).

Here, the Plaintiff pleads enough facts—barely—to plausibly show that HMMA had enough control of her employment to support an employment relationship. After disregarding conclusory and speculative "upon information and belief" statements,[5] the Plaintiff has pleaded that she worked at a facility owned by HMMA, (doc. 28 at 2*)*, received a safety manual "marked Hyundai Motor Manufacturing, LLC", (*id.* at 8), an HEA employee emailed Dynamic from an HMMA email address stating dreadlocks were not allowed, (*id.* at 13), and HMMA was the customer identified on the Plaintiff's check from Dynamic. (*Id.*). The Plaintiff also alleges that she was told that the Koreans were a

---

[5] The Court is not required to accept as true the Plaintiff's conclusory "upon information and belief" statements without more factual information. *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (citing *Twombly*, 550 U.S. at 551 (declining to take as true the conclusory allegation "upon information and belief" that the companies had entered a conspiracy without enough facts to take that statement plausible)).

"different breed of animals and they send little memos saying that they do not want African-Americans wearing their hair in dreadlock hairstyles. . ." (*Id.* at 11–12). Although the Plaintiff does not plead that HMMA had the same amount of control to directly supervise or set work hours as in *Kaiser* or *Lenz,* she has alleged that she worked at facility owned by HMMA and, similar, to *Caver* that HMMA's name was used on her paycheck and emails about Key came from an HMMA email address. Although the Plaintiff's complaint contains conclusory statements about the nature of the employment relationship, there are enough factual allegations to distinguish the instant case from the cases where courts concluded that statements could not be considered more than mere allegations. Therefore, at this point, HMMA's motion to dismiss on the basis that it was not the Plaintiff's employer is due to be DENIED.

### 3. Title VII claims against HMMA and Dynamic

Because the Plaintiff failed to exhaust the administrative remedies against HEA, the only Title VII claims that remain are against Dynamic and HMMA. The Court first considers whether the Plaintiff has pleaded sufficient facts to proceed on her race discrimination and the pregnancy discrimination claims. The Court will then turn to whether the Plaintiff has alleged sufficient facts to support her claims of retaliation.

#### a. Race Discrimination

HMMA argues that the Plaintiff cannot state a claim for race discrimination because enforcing a ban on dreadlocks is not a racially discriminatory practice, and, therefore, does not fall within the ambit of Title VII. (Doc. 30 at 8). HMMA points to the Eleventh Circuit's holding in *Equal Emp't Opportunity Comm'n v. Catastrophe Mgmt. Solutions*,

852 F.3d 1018 (11th Cir. 2016) that a no-dreadlock grooming policy is not racially discriminatory. (Doc. 30 at 9). The Plaintiff responds that she pleaded a plausible claim under Title VII for both disparate treatment and disparate impact.

I.     Disparate treatment

HMMA argues the Plaintiff cannot plausibly plead a race discrimination claim based on the enforcement of Hyundai's dreadlock ban because dreadlocks are not an immutable characteristic of race but is an "elective, mutable style." (Doc. 30 at 9). The Plaintiff responds that the grooming policy was used to target her because she was African American and distinguishes the instant case from *Catastrophic Mgmt. Solutions, supra*. (Doc. 34 at 9–11). In *Catastrophic Mgmt. Solutions,* the court said there was no disparate treatment claim when a company applied a race neutral grooming policy. 852 F.3d at 1030. But in the instant case, the Plaintiff alleges that discrimination occurred when she was reprimanded for wearing her hair in dreadlocks based on a policy she was not shown and after she was given approval to wear her hair in that manner. (Doc. 28 at 11). In addition, she was told that the policy against dreadlocks was specific to African Americans and that her dismissal was "because of her hair and something else." (*Id.* at 11–12). She argues that these facts distinguish her case from *Catastrophe Mgmt. Solutions,* because they plausibly show that the grooming policy was used as proxy for intentional race discrimination. (Doc. 34 at 11–12).

Because the Supreme Court has explained that to survive a motion to dismiss a plaintiff is not required to plead facts to establish a prima facie case under the *McDonnell*

*Douglas*[6] framework, Key is only required to plausibly set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 511–12 (2002) (citing Federal Rule of Civil Procedure 8(a)(2)). "The question in a disparate treatment case is 'whether the protected trait actually motivated the employer's decision.'" *Catastrophe Mgmt. Solutions,* 852 F.3d at 1026 (quoting *Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003)). Therefore, at the motion to dismiss stage, the Court must determine whether the Plaintiff has plausible pleaded sufficient facts that the Defendants discriminated against her because of a *protected trait*.

Although the *Catastrophe Mgmt. Solutions* court found that dreadlocks were not immutable traits, and, therefore, not protected under Title VII, there is some daylight between *Catastrophe Mgmt. Solutions* and this case. In that case, the court found that not hiring an employee because she would not cut her dreadlocks in compliance with the company's grooming policy did not violate Title VII. 852 F.2d at 1021–1022. The court reasoned that "Title VII protects persons in covered categories with respect to their immutable characteristics, but not their cultural practices." *Id*. at 1030. However, the Court noted the allegations before it did not suggest that the dreadlock policy was used as a proxy for intentional race discrimination. *Id*.

The allegations in this case are distinguishable from *Catastrophe Mgmt. Solutions* because there are allegations that the enforcement of the dreadlock policy was a proxy for

---

[6] The Court, in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), set forth the now familiar test for establishing a prima facie case of discrimination by presenting circumstantial evidence.

race discrimination.[7]  The Plaintiff alleges that the basis of her termination was more than her just having dreadlocks.  Unlike in *Catastrophe Mgmt. Solutions* where the company told the plaintiff it would be unable to hire her because she would not cut her dreadlocks, the Plaintiff here was first told that her hairstyle was fine if worn in a certain manner.  When this was later corrected at the Hyundai plant, she was given the option to cover her hair in a hat until she could get her hair restyled.  When her supervisors became aware that she felt that she was being discriminated against because she had to wear a hat to cover her hair, they confronted her.  In this encounter, the Dynamic employee told Key, "the Koreans … were a 'different breed of animals and they send little memos saying that they do not want African-Americans wearing their hair in dreadlock hairstyles.'" (Doc. 28 at 11–12).  This statement suggests that the enforcement of the dreadlock policy, as applied to Key, was not solely about her hair—but was instead a proxy for her race.  The comment combined with the back and forth about what the dreadlock policy actually required support a plausible claim for intentional race discrimination, so the Defendants' motions to dismiss the race discrimination claim based on disparate treatment are due to be DENIED.

## II.    Disparate impact

HMMA also asserts that the Plaintiff cannot plead around *Catastrophe Mgmt. Solutions* by reframing her claim as a disparate impact claim.  (Doc. 30 at 9–10).  For her disparate impact claim, the Plaintiff argues that she fulfilled the pleading requirements by alleging "she wore her hair neat, within policy, and in a manner commonly worn by African

---

[7] It is important to clarify that this Court is not contravening Eleventh Circuit precedent that dreadlocks are not an immutable characteristic under Title VII.  This Court's holding at this juncture has nothing to do with the mutable nature of dreadlocks.  Instead, in this case, the Plaintiff has pleaded sufficient facts to show that the use of grooming policy was a proxy for underlying race discrimination.

Americans" and "the alleged policy used to terminated [sic] Key creates a disparate impact on African Americans." (Doc. 34 at 10).

To establish a disparate impact claim, a plaintiff must first identify the specific employment practice that allegedly has a disproportionate impact," and then "establish causation by offering statistical evidence sufficient to show that the challenged practice has resulted in prohibited discrimination." *Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1314 (11th Cir. 1994). To support her disparate impact claim, the Plaintiff solely pleads, "Defendants (sic) purported policy creates a disparate impact on African Americans." (Doc 28 at 17). Although the Plaintiff identified a specific employment practice that allegedly has a disparate impact, she fails to plead any factual allegations to support the claim that the dreadlocks policy resulted in a disparate impact on African Americans. Because the Plaintiff fails to plead anything beyond conclusory allegations of the disparate impact of the Defendants' dreadlock policy, the Plaintiff fails to state a plausible claim for relief for disparate impact discrimination. Therefore, Defendants' motions to dismiss the race discrimination claim based on disparate impact are due to be GRANTED.

### b. Pregnancy Discrimination

HMMA argues that Plaintiff has not plausibly pleaded enough facts to support a claim of pregnancy discrimination. HMMA asserts that the Plaintiff did not adequately allege that it knew of her pregnancy or that HMMA influenced any other defendants. (Doc. 30 at 13-14). Dynamic does not move for dismissal of the Plaintiff's pregnancy discrimination count on any basis other than the failure to comply with administrative prerequisites prior to filing suit. *See* Doc. 32.

24

The Plaintiff responds by arguing that she pleaded enough facts that the Defendants discriminated against her because of her pregnancy.  (Doc. 34 at 12).  She argues that it can be inferred that pregnancy "was a motivating factor in the employment decision by the mere mention of her pregnancy in close proximity to her discipline." (*Id.* at 13).  She alleges that her hairstyle only became a problem after she told her supervisors she was pregnant. (Doc. 28 at 14).  She also alleges that the Court can infer discriminatory motive from the fact that Robinson called and asked about her baby's due date.  (Doc. 34 at 13).

"The PDA amended Title VII to add that discrimination because of sex or on the basis of sex, includes discrimination on the basis of pregnancy, childbirth, or related medical conditions." *Hicks v. City of Tuscaloosa, Ala.*, 870 F.3d 1253, 1258 (11th Cir. 2017) (internal quotations omitted); *Valentine v. Legendary Marine FWB, Inc.*, 2010 WL 1687738, at *4 (N.D. Fla. Apr. 26, 2010) ("Discrimination on the basis of sex includes discrimination on the basis of pregnancy or childbirth.").  Courts use the same framework for a pregnancy discrimination claim as other claims of discrimination. *Chapter 7 Trustee v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1255 (11th Cir. 2012).  To state a prima facie case for pregnancy-discrimination, the Plaintiff must allege that "(1) she [was pregnant]; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) employment or disciplinary policies were differently applied to her." *Poague v. Huntsville Wholesale Furniture*, 369 F. Supp. 3d 1180, 1195 (N.D. Ala. 2019) (brackets in original). However, like her Title VII race discrimination claim, the Plaintiff is not required to plead facts sufficient to establish a prima facie pregnancy discrimination claim, only that she pleads enough facts upon which relief may be plausibly granted.

25

Here, the Plaintiff alleges that her supervisors began to discriminate against her immediately after she notified them of her pregnancy. (Doc. 28 at 10). The Plaintiff further asserts that although the Defendants did not question the manner in which she wore her hair in previous encounters—including that day—Williams, an HEA employee whom the Plaintiff alleges was also employed by HMMA, told the Plaintiff that she could not wear her hair in dreadlocks. The Plaintiff asserts that "minutes" after she was sent home, Robinson called and asked when her baby was due and if her doctor knew she would be lifting boxes. (*Id*.). The Plaintiff has plausibly pleaded enough facts to demonstrate that the very close temporal proximity of her disclosing her pregnancy was linked to the beginning of the Defendants' alleged discriminatory conduct. The extremely close temporal proximity alleged here is enough to survive a motion to dismiss. *See Brungart v. Bellsouth Telecomm., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000). Therefore, HMMA's motion to dismiss Key's pregnancy discrimination claim is due to be DENIED.

### c. Retaliation

HMMA asserts that the Plaintiff failed to allege a plausible claim of retaliation. Dynamic seeks to dismiss the Plaintiff's retaliation claim against it for the reasons asserted by HMMA. (Doc. 32 at 12). In light of Eleventh Circuit precedent in *Catastrophe Mgmt. Solutions*, the Defendants argue that it was unreasonable for the Plaintiff to believe that the enforcement of the dreadlocks ban was discriminatory and therefore her complaining about it was not a protected activity.

In response, the Plaintiff argues that her complaint was about race discrimination and not just about her hairstyle, and that the Defendants knew this. The Plaintiff alleges

she pleaded enough facts to show that Defendants subjected her to discrimination based on her race.  She points to two examples that support an inference that she was targeted based on her race.  She points to the statement that the "Koreans" did not want "African Americans" to wear their hair in dreadlocks and no supervisor could point to any policy that applied to Plaintiff. (Doc. 34 at 14).  She also alleges that she was summoned to speak with her supervisors after she complained about discrimination.  (*Id*.).  In her complaint, Key alleges that in the meeting with the Defendants' employees, she was told that she and her situation were going to be problematic.  (Doc. 28 at 12).  And she was later told by Dynamic employees that her filing a complaint was a serious offense. (*Id.*).

To establish a prima facie case of retaliation, a plaintiff must show that "(1) she engaged in statutorily protected activity, (2) an adverse employment action occurred, and (3) the adverse action was causally related to plaintiff's protected activities." *Little v. United Techs., Carrier Transicold Div.,* 103 F.3d 956, 959 (11th Cir. 1997).  To establish a causal connection, a plaintiff only has to demonstrate "that the protected activity and the adverse action were not wholly unrelated." *Matamoros v. Broward Sheriff's Office*, 2 F.4th 1329, 1336 (11th Cir. 2021) (citing *Shortz v. City of Plantation*, 344 F.3d 1161, 1180 n.30 (11th Cir. 2003)). In cases in which plaintiffs attempt to establish causation through temporal proximity, the temporal proximity must be "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

In this case, the Plaintiff's allegations support a plausible retaliation claim. Although the Defendants are correct that the Plaintiff initially complained to her trainer about how she was treated regarding her hair, which precipitated a meeting with her supervisors, it

was only after this meeting with her supervisors that she was told that the Koreans "do not want African-Americans wearing their hair in dreadlock hairstyles" and that the Plaintiff and her situation were "going to be a problem." (Doc. 28 at 12). After this meeting, the Plaintiff wrote a formal complaint against Hyundai, Robinson, a Dynamic employee, and Williams, an HEA employee, and stated she wanted to file it with human resources. (*Id*). The Plaintiff has pleaded sufficient facts to show that her complaint, which was shortly followed by her termination, was not just about her hair because she complained after she was told that the dreadlock ban was specific to African Americans. While at the Dynamic facility to file her complaint, Dynamic employees told her that a complaint "would be fruitless and that filing a discrimination complaint was a serious offense." (*Id*.) While at Dynamic, Key was also told that Williams did not want her back at the Hyundai plant because of her "hair and 'something else.'" (*Id*.)

In addition, the Plaintiff argues that the HEA and HMMA conflate "reasonable belief" with a "correct belief." (Doc. 34 at 15). She asserts that the correct standard is a "'reasonable form of good faith belief' that the conduct complained of is unlawful" and not that an employee "need to be correct in her beliefs or consult a lawyer for expert analysis for her complaint." (*Id.*). The Plaintiff does not need to prove the conduct about which she complained "was actually unlawful in order to establish a prima facie case." *Little,* 103 F.3d at 960. Based on the nature of her complaint which was made after her meeting with staff at the Hyundai plant, and the close temporal proximity of her termination of employment at the Hyundai plant, the Plaintiff has pleaded enough facts to support a

plausible claim of race retaliation upon which relief might be granted, so the Defendants'

motions to dismiss the retaliation claim are due to be DENIED.

**B.  42 U.S.C. § 1981**

Although this Court found that the Plaintiff had not exhausted her administrative

remedies against HEA as to  her Title VII claims, section 1981 has no such administrative

prerequisites.[8]

**a.  Race Discrimination**

Although the Defendants do not differentiate their Title VII arguments from their

§1981 arguments in their briefs, the arguments appear to be the same—namely that hair

style discrimination is not cognizable under either statute.  In response, the Plaintiff argues

that she has pleaded enough facts to support a disparate treatment claim[9] because she

identifies statements where the Defendants described her hair style in the negative context

of race.

Section 1981 provides, "[a]ll persons within the jurisdiction of the United States

shall have the same right in every State and Territory to make and enforce contracts . . . as

---

[8] Under § 1981, a defendant who is not a plaintiff's employer may be held liable for interference with the plaintiff's contractual rights with third parties. *Martinez v. Pavex Corp.,* 422 F. Supp. 2d 1284 (M.D. Fla. 2006) (citing *Zaklama, M.D. v. Mt. Sinai Medical Center,* 842 F.2d 291, 294–295 (11th Cir.1988) (finding § 1981 is broad enough to include situations where parties do not "occupy a direct employment relationship").   Therefore, the Court does not have to determine if an employment relationship existed between HMMA or HEA and the Plaintiff—only that the Plaintiff has pled enough facts that there was sufficient interference by the Defendants to the contractual rights of the Plaintiff. Because the Plaintiff alleges each of the parties participated in the alleged discriminatory actions and policies that were applied to her, the Plaintiff has met this burden.

[9] The Plaintiff also argues she brought a disparate impact § 1981 race discrimination claim.  However, disparate impact claims are not cognizable under § 1981. *See Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982) ("We conclude, therefore, that § 1981, like the Equal Protection Clause, can be violated only by purposeful discrimination.").

is enjoyed by white citizens . . . ." 42 U.S.C. § 1981(a).  The statute's prohibition against

race discrimination in the making and enforcement of contracts includes employment

contracts.  *Ferrill v. Parker Grp., Inc.*, 168 F.3d 468, 472 (11th Cir. 1999).

> To state a claim for race discrimination under § 1981, plaintiffs
> must allege facts establishing: (1) that the plaintiff is a member
> of a racial minority; (2) that the defendant intended to
> discriminate on the basis of race; and (3) that the discrimination
> concerned one or more of the activities enumerated in the
> statute.

*Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1270 (11th Cir. 2004).

"The test for intentional discrimination in suits under § 1981 is the same as the

formulation used in Title VII discrimination treatment cases." *Ferrill*, 168 F.3d at 472.  In

this case, by pleading that she is Black and was discriminated against "on the basis of her

race in the terms and conditions of her employment," Key satisfies the first and third

requirements for a § 1981 race discrimination claim.  However, like her Title VII claim,

the Defendants argue that Plaintiff fails to show intentional race discrimination because

hair style discrimination is not a protected characteristic.   And because of this, the

Defendants argue that the Plaintiff cannot show that the Defendants discriminated against

her by terminating her employment.  Nevertheless, the Plaintiff has pleaded enough facts

to show that her claim for race discrimination goes beyond a neutral application of the

dreadlocks policy to her.  The Plaintiff instead argues that the Defendants used the policy

to target her because of her race and in support of this, the Plaintiff points to the statement

that the Koreans "do not want African-Americans wearing their hair in dreadlock

hairstyles." (Doc. 28 at 12).  Further, when asked by the Plaintiff, the Defendants could not

produce a policy that squarely applied to her.  (*Id*. at 9).  Because the Plaintiff has pleaded

sufficient facts to plausibly show that the Defendants terminated her employment based on race discrimination, the Defendants' motions to dismiss on that basis are due to be DENIED.[10]

### b. Retaliation

Even though the Defendants do not distinguish their arguments under § 1981 and Title VII for retaliation, the Courts construes them as the same. Namely, the Defendants argue that the Plaintiff cannot show that she reasonably thought she participated in a protected activity by complaining about how she was treated based on how she wore her hair. The Plaintiff responds that her complaint was not just about hairstyle discrimination but that the Defendants had revealed to her that the policy was based on racial stereotypes.

In addition to prohibiting race discrimination in the formation of employment contracts, § 1981 also prohibits retaliation against workers who engage in statutorily protected activity. *Goldsmith v. Bagby Elevator Co.,* 513 F.3d 1261, 1277 (11th Cir. 2008). The same evidentiary standard applies to retaliation claims under Title VII and § 1981. Therefore, to prevail on § 1981 retaliation claim, a plaintiff must show that she "engaged in statutorily protected activity, [s]he suffered a materially adverse action, and there was some causal relation between the two events." *Moore v. Grady Mem. Hosp. Corp.*, 834 F.3d 1168, 1176 (11th Cir. 2016). "A complaint about discrimination is protected if the

---

[10] Section 1981 is broad enough to include situations where parties do not "occupy a direct employment relationship" affect the Plaintiff's employment. *See Zaklama, M.D. v. Mt. Sinai Medical Center,* 842 F.2d 291, 294–295 (11th Cir. 1988). Therefore, the Court does not have to determine if an employment relationship existed between HMMA or HEA and the Plaintiff—only whether the Plaintiff has pleaded enough facts that there was sufficient interference by the Defendants of her contractual rights. Because the Plaintiff alleges each of the parties participated in the alleged discriminatory actions and policies that were applied to her, the Plaintiff has met this burden.

plaintiff could "reasonably form a good faith belief that the alleged discrimination existed." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 925 (11th Cir. 2018) (quoting *Taylor v. Runyon*, 175 F.3d 861, 869 (11th Cir. 1999). Similar to pleading under Title VII, at the pleading stage, a plaintiff is only required to plead enough facts to establish a plausible claim of retaliation pursuant to § 1981.

Here the Plaintiff has pleaded enough facts to support a plausible claim of § 1981 retaliation. Although the Defendants argue that the Plaintiff could not have reasonably thought that hairstyle discrimination was protected, the Plaintiff is correct that she could maintain a retaliation claim she acted on a good faith reasonable belief in complaining about conduct prohibited by § 1981. The Plaintiff has pleaded enough facts that she was retaliated against for complaining about race discrimination. The Defendants' argument about hairstyle discrimination is unavailing because the Plaintiff decided to file a formal complaint against her employer *after* she met with her supervisors and they explained to her that the Koreans did not want African Americans to wear their hair in dreadlocks. The Plaintiff also pleaded that she was terminated from her employment at the Hyundai plant on the same day she submitted her complaint about race discrimination. Between these facts, the Plaintiff has alleged sufficient facts to support a claim of § 1981 retaliation, and the Defendants' motions to dismiss the retaliation claim are due to be DENIED.

## VI. CONCLUSION

Accordingly, for the reasons as stated, it is

ORDERED as follows:

1. Defendant HMMA's motion to dismiss, (doc. 30), is DENIED in its entirety.

2.  Defendant HEA's motion to dismiss, (doc. 31), is GRANTED with respect to the Plaintiff's Title VII claims contained in Counts 1, 2, and 4.  The motion is DENIED with respect the Plaintiff's § 1981 claims contained in Counts 3 and 5; and

3.  Defendant Dynamic's motion to dismiss, (doc. 32), is DENIED in its entirety.

DONE this 31st day of August, 2021.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE

Docket / Tab # 41

Answer by HMMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **DAVITA M. KEY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NUMBER:** |
| **v.** | ) | **2:19-cv-00767-ECM-SMD** |
| | ) | |
| **HYUNDAI MOTOR MANUFACTURING** | ) | |
| **ALABAMA, LLC, HYUNDAI** | ) | |
| **ENGINEERING AMERICA, INC. and** | ) | |
| **DYNAMIC SECURITY, INC.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT (DOC. 28)

Defendant Hyundai Motor Manufacturing Alabama, LLC ("HMMA") responds to Plaintiff's First Amended Complaint (Doc. 28) as follows:

### I.    Jurisdiction and Venue

1.  HMMA admits that this Court has subject matter jurisdiction over this matter pursuant to the 28 U.S.C. §§1331 and 1343(a)(4). The remainder of this paragraph contains a statement of intent which HMMA is not required to admit or deny, but HMMA denies that it violated the laws identified therein or any laws with respect to Plaintiff (whom was not its employee) and denies that Plaintiff is entitled to any relief or damages from HMMA on any basis.

### II.    Parties

2.  HMMA never employed Plaintiff and has no knowledge of her race, age, or residency and so denies the same and demands strict proof thereof.

3.  HMMA admits the allegations of paragraph 3.

4.  HMMA admits the allegations of paragraph 4.

5.  HMMA admits the allegations of paragraph 5.

6.  HMMA does not have knowledge of the allegations of paragraph 6 and so denies the same and demands strict proof thereof.

7.  HMMA admits there was a contract between HMMA and HEA in effect in 2017 for HEA to prove certain services at HMMA's Montgomery, AL location.

8.  HMMA admits the allegations of paragraph 8.

9.  HMMA admits that HEA employees assigned to HMMA were subject to certain HMMA policies and procedures when on HMMA premises, but denies that such HEA employees were subject to all HMMA policies and procedures.

10. HMMA denies that HEA employees (which Plaintiff was not) were subject to HMMA work schedules.

11. HMMA denies that HEA employees (which Plaintiff was not) were subject to the direction/control of HMMA management.

12. HMMA denies the allegations of paragraph 12.

13. Paragraph 13 does not contain an allegation of fact but Plaintiff's admission to using deceptive language to improperly attempt to aggregate two completely unrelated entities and HMMA objects to it and denies the same.

14. HMMA does not have knowledge of the allegations of paragraph 14 and so denies the same and demands strict proof thereof.

15. HMMA does not have knowledge of the allegations of paragraph 15 and so denies the same and demands strict proof thereof.

16. HMMA does not have knowledge of the allegations of paragraph 16 and so denies the same and demands strict proof thereof.

17. HMMA does not have knowledge of the allegations of paragraph 17 and so denies the same and demands strict proof thereof.

18. HMMA does not have knowledge of the allegations of paragraph 18 and so denies the same and demands strict proof thereof.

19. Upon information and belief, HMMA admits the allegations of paragraph 19, though it avers that HMMA never contracted with or directed Dynamic to do so.

20. HMMA denies the allegations of paragraph 20 related to it. HMMA does not have knowledge of the remaining allegations of paragraph 20 and so denies the same and demands strict proof thereof.

21. HMMA denies the allegations of paragraph 21 related to it. HMMA does not have knowledge of the remaining allegations of paragraph 21 and so denies the same and demands strict proof thereof.

22. HMMA denies the allegations of paragraph 22 related to it. HMMA does not have knowledge of the remaining allegations of paragraph 22 and so denies the same and demands strict proof thereof.

23. HMMA denies the allegations of paragraph 23 related to it. HMMA does not have knowledge of the remaining allegations of paragraph 23 and so denies the same and demands strict proof thereof.

## III.    Conditions Precedent

24. Paragraph 24 contains a statement of intent which HMMA is not required to admit or deny, but HMMA denies that it violated any laws with respect to Plaintiff (whom was not its employee) and denies that Plaintiff is entitled to any relief or damages from HMMA on any basis.

25. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 25 and so denies the same and demands strict proof thereof.

26. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 26 and so denies the same and demands strict proof thereof.

27. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 27 and so denies the same and demands strict proof thereof.

28. HMMA admits that it received a Charge of Discrimination with Plaintiff listed as the Charging Party bearing Charge No. 420-2019-00128. HMMA denies that this Charge administratively exhausted claims against it.

29. HMMA admits that its counsel received the correspondence at Doc. 1-1, page 2 on or about July 15, 2019. HMMA disputes that the EEOC engaged in a good faith conciliation of Plaintiff's claims even under the relaxed standard of *Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645 (2015).

30. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 30 and so denies the same and demands strict proof thereof.

31. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 31 and so denies the same and demands strict proof thereof.

32. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 32 and so denies the same and demands strict proof thereof. HMMA further denies that Plaintiff's claimed belief and understanding was reasonable.

33. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 33 and so denies the same and demands strict proof thereof. HMMA further denies that Plaintiff's claimed belief was reasonable.

34. HMMA denies paragraph 34 as drafted.

35. HMMA denies paragraph 35.

36. HMMA admits that there are no administrative prerequisites to file a claim under 42 U.S.C. §1981 but it denies that Plaintiff experienced any action in violation of that law that would entitle her to bring such an action against HMMA.

**IV. Facts**

37. HMMA never employed Plaintiff and has no knowledge of her race and so denies the same and demands strict proof thereof.

38. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 38 and so denies the same and demands strict proof thereof.

39. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 39 and so denies the same and demands strict proof thereof.

40. HMMA admits the allegations of paragraph 40.

41. Upon information and belief, HMMA admits the allegations of paragraph 41, though it avers that HMMA never contracted with or directed Dynamic to do so.

42. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 42 and so denies the same and demands strict proof thereof.

43. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 43 and so denies the same and demands strict proof thereof.

44. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 44 and so denies the same and demands strict proof thereof.

45. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 45 and so denies the same and demands strict proof thereof.

46. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 46 and so denies the same and demands strict proof thereof.

47. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 47 and so denies the same and demands strict proof thereof.

48. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 48 and so denies the same and demands strict proof thereof.

49. HMMA denies that Robinson worked under HMMA's umbrella or direction as apparently alleged by Plaintiff's improper use of the aggregate term "Hyundai" (*see* response to paragraph 13, *supra*.). HMMA lacks knowledge sufficient to admit or deny the remaining allegations of paragraph 49 and so denies the same and demands strict proof thereof.

50. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 50 and so denies the same and demands strict proof thereof.

51. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 51 and so denies the same and demands strict proof thereof.

52. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 52 and so denies the same and demands strict proof thereof.

53. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 53 and so denies the same and demands strict proof thereof.

54. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 54 and so denies the same and demands strict proof thereof.

55. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 55 and so denies the same and demands strict proof thereof.

56. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 56 and so denies the same and demands strict proof thereof.

57. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 57 and so denies the same and demands strict proof thereof.

58. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 58 and so denies the same and demands strict proof thereof.

59. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 59 and so denies the same and demands strict proof thereof.

60. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 60 and so denies the same and demands strict proof thereof.

61. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 61 and so denies the same and demands strict proof thereof.

62. HMMA denies that HMMA exercised or could credibly have been alleged to exercise any authority over Plaintiff's employment by Dynamic as apparently alleged by Plaintiff's improper use of the aggregate term "Hyundai" (*see* response to paragraph 13, *supra*.). HMMA lacks knowledge sufficient to admit or deny the remaining allegations of paragraph 62 and so denies the same and demands strict proof thereof.

63. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 63 and so denies the same and demands strict proof thereof.

64. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 64 and so denies the same and demands strict proof thereof.

65. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 65 and so denies the same and demands strict proof thereof.

66. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 66 and so denies the same and demands strict proof thereof.

67. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 67 and so denies the same and demands strict proof thereof. HMMA denies that it set any appearance standard for Dynamic employees.

68. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 68 and so denies the same and demands strict proof thereof.

69. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 69 and so denies the same and demands strict proof thereof.

70. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 70 and so denies the same and demands strict proof thereof.

71. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 71 and so denies the same and demands strict proof thereof.

72. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 72 and so denies the same and demands strict proof thereof.

73. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 73 and so denies the same and demands strict proof thereof.

74. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 74 and so denies the same and demands strict proof thereof.

75. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 75 and so denies the same and demands strict proof thereof.

76. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 76 and so denies the same and demands strict proof thereof.

77. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 77 and so denies the same and demands strict proof thereof.

78. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 78 and so denies the same and demands strict proof thereof.

79. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 79 and so denies the same and demands strict proof thereof.

80. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 80 and so denies the same and demands strict proof thereof.

81. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 81 and so denies the same and demands strict proof thereof.

82. HMMA denies that HMMA employees or Koreans are a "different breed of animals." HMMA denies that its employees send memos addressing the hairstyles of African-American employees. HMMA lacks knowledge sufficient to admit or deny the remaining allegations of paragraph 82 and so denies the same and demands strict proof thereof.

83. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 83 and so denies the same and demands strict proof thereof.

84. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 84 and so denies the same and demands strict proof thereof.

85. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 85 and so denies the same and demands strict proof thereof.

86. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 86 and so denies the same and demands strict proof thereof.

87. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 87 and so denies the same and demands strict proof thereof.

88. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 88 and so denies the same and demands strict proof thereof.

89. To the extent alleged, HMMA denies that it ever supplied dismissal paperwork to Dynamic. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 89 and so denies the same and demands strict proof thereof.

90. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 90 and so denies the same and demands strict proof thereof.

91. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 91 and so denies the same and demands strict proof thereof.

92. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 92 and so denies the same and demands strict proof thereof.

93. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 93 and so denies the same and demands strict proof thereof.

94. HMMA admits that it provided basic safety training to all contractors working on its premises and had in place dress codes that apply to workers on its premises including a policy specific to the security department, which was administered by HEA or HEA's designee. HMMA denies that it dictated work hours, hiring, or firing, and denies that it issued badges. HMMA denies that it exercised control over Dynamic staff at HMMA. Except as specifically admitted herein, HMMA denies any remaining allegations of paragraph 94.

95. HMMA lacks knowledge sufficient to admit or deny the allegations of paragraph 95 and so denies the same and demands strict proof thereof.

## V.   Statement of Plaintiff's Claims

## Count One: Title VII – Pregnancy Discrimination

96. HMMA re-alleges and incorporates by reference its responses to paragraphs 1 through 95 above with the same force and effect as if fully set forth herein.

97. HMMA denies the allegations of paragraph 97 with respect to it. HMMA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 97 and so denies the same and demands strict proof thereof.

98. HMMA denies the allegations of paragraph 98 with respect to it. HMMA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 98 and so denies the same and demands strict proof thereof.

99. HMMA denies the allegations of paragraph 99 with respect to it. HMMA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 99 and so denies the same and demands strict proof thereof.

100.   HMMA denies the allegations of paragraph 100 with respect to it. HMMA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 100 and so denies the same and demands strict proof thereof.

101.   HMMA denies the allegations of paragraph 101 with respect to it. HMMA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 101 and so denies the same and demands strict proof thereof.

102.   HMMA denies the allegations of paragraph 102 with respect to it. HMMA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 102 and so denies the same and demands strict proof thereof.

103.   HMMA lacks sufficient knowledge to admit or deny the allegations of paragraph 103 and so denies the same and demands strict proof thereof.

104.   HMMA denies the allegations of paragraph 104 with respect to it. HMMA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 104 and so denies the same and demands strict proof thereof.

105.   HMMA denies the allegations of paragraph 105 with respect to it. HMMA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 105 and so denies the same and demands strict proof thereof.

106.   HMMA denies the allegations of paragraph 106.

107.   HMMA denies the allegations of paragraph 107.

108.   HMMA denies the allegations of paragraph 108.

With respect to the unnumbered paragraph following paragraph 108, HMMA denies that Plaintiff is entitled to judgment or any of the relief set forth in said paragraph.

**Count Two: Title VII Race Discrimination**

109.   HMMA re-alleges and incorporates by reference its responses to paragraphs 1 through 95 above with the same force and effect as if fully set forth herein.

110.   HMMA denies the allegations of paragraph 110 with respect to it. HMMA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 110 and so denies the same and demands strict proof thereof.

111.   HMMA denies the allegations of paragraph 111 with respect to it. HMMA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 111 and so denies the same and demands strict proof thereof.

112.   HMMA lacks sufficient knowledge to admit or deny the allegations of paragraph 112 and so denies the same and demands strict proof thereof.

113.   HMMA denies the allegations of paragraph 113 with respect to it. HMMA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 113 and so denies the same and demands strict proof thereof.

114.   HMMA denies the allegations of paragraph 114 with respect to it. HMMA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 114 and so denies the same and demands strict proof thereof.

115.   HMMA denies the allegations of paragraph 115 with respect to it. HMMA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 115 and so denies the same and demands strict proof thereof.

116.   HMMA denies the allegations of paragraph 116 with respect to it. HMMA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 116 and so denies the same and demands strict proof thereof.

117.   HMMA (as does Plaintiff) lacks sufficient knowledge to admit or deny the allegations of paragraph 117 and so denies the same and demands strict proof thereof. HMMA further avers that the Court has dismissed any attempt by Plaintiff to bring a claim for disparate impact.

118.     HMMA denies the allegations of paragraph 118 with respect to it. HMMA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 118 and so denies the same and demands strict proof thereof.

119.     HMMA denies the allegations of paragraph 119 with respect to it. HMMA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 119 and so denies the same and demands strict proof thereof.

120.     HMMA denies the allegations of paragraph 120 with respect to it. HMMA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 120 and so denies the same and demands strict proof thereof.

121.     HMMA denies the allegations of paragraph 121 with respect to it. HMMA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 121 and so denies the same and demands strict proof thereof. HMMA further avers that the Court has dismissed any attempt by Plaintiff to bring a claim for disparate impact.

122.     HMMA denies the allegations of paragraph 122

123.     HMMA denies the allegations of paragraph 123.

124.     HMMA denies the allegations of paragraph 124.

With respect to the unnumbered paragraph following paragraph 124, HMMA denies that Plaintiff is entitled to judgment or any of the relief set forth in said paragraph.

**Count Three: 42 U.S.C. §1981 Race Discrimination**

125.     HMMA re-alleges and incorporates by reference its responses to paragraphs 1 through 95 above with the same force and effect as if fully set forth herein.

126.    HMMA denies the allegations of paragraph 126 with respect to it. HMMA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 126 and so denies the same and demands strict proof thereof.

127.    HMMA denies the allegations of paragraph 127 with respect to it. HMMA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 127 and so denies the same and demands strict proof thereof.

128.    HMMA denies the allegations of paragraph 128 with respect to it. HMMA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 128 and so denies the same and demands strict proof thereof.

129.    HMMA denies the allegations of paragraph 129 with respect to it. HMMA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 129 and so denies the same and demands strict proof thereof.

130.    HMMA denies the allegations of paragraph 130 with respect to it. HMMA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 130 and so denies the same and demands strict proof thereof.

131.    HMMA (as does Plaintiff) lacks sufficient knowledge to admit or deny the allegations of paragraph 131 and so denies the same and demands strict proof thereof. HMMA further avers that the Court has dismissed any attempt by Plaintiff to bring a claim for disparate impact.

132.    HMMA denies the allegations of paragraph 132 with respect to it. HMMA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 132 and so denies the same and demands strict proof thereof.

133.    HMMA denies the allegations of paragraph 133 with respect to it. HMMA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 133 and so denies the same and demands strict proof thereof.

134.    HMMA denies the allegations of paragraph 134 with respect to it. HMMA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 134 and so denies the same and demands strict proof thereof.

135.    HMMA denies the allegations of paragraph 135 with respect to it. HMMA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 135 and so denies the same and demands strict proof thereof. HMMA further avers that the Court has dismissed any attempt by Plaintiff to bring a claim for disparate impact.

136.    HMMA denies the allegations of paragraph 136

137.    HMMA denies the allegations of paragraph 137.

138.    HMMA denies the allegations of paragraph 138.

With respect to the unnumbered paragraph following paragraph 138, HMMA denies that Plaintiff is entitled to judgment or any of the relief set forth in said paragraph.

**Count Four: Title VII Race Retaliation**

139.    HMMA re-alleges and incorporates by reference its responses to paragraphs 1 through 95 above with the same force and effect as if fully set forth herein.

140.    HMMA denies the allegations of paragraph 140 with respect to it. HMMA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 140 and so denies the same and demands strict proof thereof.

141.    Paragraph 141 contains a summary of a type of legislation that has not been enacted in any jurisdiction relevant to this action, and HMMA is not required to admit or deny any such statement of law and objects to the same.

142.    HMMA denies the allegations of paragraph 142 with respect to it. HMMA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 142 and so denies the same and demands strict proof thereof.

143.    HMMA lacks sufficient knowledge to admit or deny the allegations of paragraph 143 and so denies the same and demands strict proof thereof.

144.    HMMA lacks sufficient knowledge to admit or deny the allegations of paragraph 144 and so denies the same and demands strict proof thereof.

145.    HMMA denies the allegations of paragraph 145 with respect to it. HMMA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 145 and so denies the same and demands strict proof thereof.

146.    HMMA lacks sufficient knowledge to admit or deny the allegations of paragraph 146 and so denies the same and demands strict proof thereof.

147.    HMMA denies the allegations of paragraph 147 with respect to it. HMMA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 147 and so denies the same and demands strict proof thereof.

148.    HMMA denies the allegations of paragraph 148.

149.    HMMA denies the allegations of paragraph 149.

150.    HMMA denies the allegations of paragraph 150.

With respect to the unnumbered paragraph following paragraph 150, HMMA denies that Plaintiff is entitled to judgment or any of the relief set forth in said paragraph.

**Count Five: 42 U.S.C. §1981 Race Retaliation**

151.  HMMA re-alleges and incorporates by reference its responses to paragraphs 1 through 95 above with the same force and effect as if fully set forth herein.

152.  HMMA denies the allegations of paragraph 152 with respect to it. HMMA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 152 and so denies the same and demands strict proof thereof.

153.  HMMA denies the allegations of paragraph 153 with respect to it. HMMA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 153 and so denies the same and demands strict proof thereof.

154.  HMMA denies the allegations of paragraph 154 with respect to it. HMMA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 154 and so denies the same and demands strict proof thereof.

155.  HMMA lacks sufficient knowledge to admit or deny the allegations of paragraph 155 and so denies the same and demands strict proof thereof.

156.  HMMA lacks sufficient knowledge to admit or deny the allegations of paragraph 156 and so denies the same and demands strict proof thereof.

157.  HMMA denies the allegations of paragraph 157 with respect to it. HMMA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 157 and so denies the same and demands strict proof thereof.

158.  HMMA lacks sufficient knowledge to admit or deny the allegations of paragraph 158 and so denies the same and demands strict proof thereof.

159.   HMMA denies the allegations of paragraph 159 with respect to it. HMMA lacks sufficient knowledge to admit or deny the remaining allegations of paragraph 159 and so denies the same and demands strict proof thereof.

160.   HMMA denies the allegations of paragraph 160.

161.   HMMA denies the allegations of paragraph 161.

162.   HMMA denies the allegations of paragraph 162.

With respect to the unnumbered paragraph following paragraph 162, HMMA denies that Plaintiff is entitled to judgment or any of the relief set forth in said paragraph.

## ADDITIONAL AND AFFIRMATIVE DEFENSES

HMMA states the following affirmative and additional defenses to the Complaint, but does not assume the burden of proof on any such defenses except as required by applicable law with respect to a particular defense asserted. HMMA further does not waive any right it may have to assert other affirmative and additional defenses or otherwise to supplement the Answer upon discovery of facts or evidence rendering such action appropriate.

## FIRST DEFENSE

Plaintiff's claims are or may be barred by the doctrines of waiver, consent, justification, laches, unclean hands, estoppel, judicial estoppel, and/or the applicable statute of limitations.

## SECOND DEFENSE

All decisions and/or actions challenged as discriminatory or retaliatory were undertaken for legitimate, nondiscriminatory, and non-pretextual reasons.

## THIRD DEFENSE

In the alternative to the Second Defense, some or all of the decisions challenged as discriminatory or retaliatory would have been undertaken even had Plaintiff not had the protected status or engaged in the protected conduct alleged.

## FOURTH DEFENSE

To the extent that Plaintiff has failed to mitigate her damages, Plaintiff should be denied relief, and, to the extent that she has mitigated her damages, HMMA is entitled to an offset of any recovery obtained by Plaintiff.

## FIFTH DEFENSE

HMMA did not act willfully or in reckless disregard of Plaintiff's federally protected rights; rather, its actions were taken in good faith.

## SIXTH DEFENSE

Plaintiff cannot state a *prima facie* case of sex/pregnancy, race discrimination, or retaliation with respect to HMMA.

## SEVENTH DEFENSE

Plaintiff unreasonably failed to take advantage of the appropriate publicized policy against discrimination and retaliation and the available procedure to report and remedy complaints.

## EIGHTH DEFENSE

Some or all of Plaintiff's claims are barred because HMMA maintained, disseminated, and enforced a clear policy against discrimination and retaliation, establishing reasonable and effective means of reporting and seeking relief from

conduct believed to be discriminatory or retaliatory, and because HMMA acted in accordance with this policy at all times.

## NINTH DEFENSE

Plaintiff has failed to plead special damages with the specificity required by the Federal Rules of Civil Procedure; therefore, she is barred from any recovery of special damages.

## TENTH DEFENSE

HMMA affirmatively avers to the extent necessary that if any of the Plaintiff's claims arose more than 180 days prior to the filing of the underlying Charge of Discrimination with the EEOC, such claims are barred for failure to meet the conditions precedent to bringing this action.   Moreover, any claims outside the scope of a reasonable investigation of that Charge of Discrimination are likewise barred.

## ELEVENTH DEFENSE

Likewise, HMMA affirmatively avers to the extent necessary that if Plaintiff failed to file suit within 90 days of receiving the operative Dismissal and Notice of Rights letter from the EEOC, any claims encompassed by such letter are barred by Plaintiff's failure to meet the conditions precedent to bringing this action.

## TWELFTH DEFENSE

To the extent that Plaintiff's Complaint could be interpreted to raise a demand for punitive damages, this demand violates the Constitution and/or common law or public policies of the United States on the following grounds:

a.      It is a violation of the Due Process and Equal Protection Clauses of the 14th Amendment to impose punitive damages, which are penal in nature,

against a civil defendant, upon Plaintiff satisfying a burden of proof that is less than beyond a reasonable doubt standard required in criminal cases.

b.       The procedures pursuant to which punitive damages are awarded fail to provide a reasonable limit on the amount of punitive damages against a defendant, which violates this defendant's rights to Due Process guaranteed by the United States Constitution.

c.       The procedures pursuant to which punitive damages are awarded failed to provide specific standards for the amount of the award of punitive damages, which violates the Due Process Clause of the 14th Amendment of the United States Constitution.

d.       The procedures pursuant to which punitive damages are awarded result in the imposition of different or disparate penalties for the same or similar acts, and thus, violate the Equal Protection Clause of the 14th Amendment of the United States Constitution and HMMA's Due Process rights.

e.       Any claim for punitive damages cannot be sustained because an award of punitive damages under existing standards violates rights guaranteed by the 5th, 8th, and 14th Amendments to the United States Constitution.

f.       The procedures pursuant to which punitive damages are awarded permit the imposition of excessive fines in violation of the 8th Amendment of the United States Constitution and in violation of HMMA's Due Process rights.

g.       Plaintiff's claim for punitive damages against HMMA cannot be sustained because any award of punitive damages would violate HMMA's Due Process rights inasmuch as juries are not guided by adequate or specific

standards concerning the amount necessary to punish and deter and without a necessary relationship to the amount of actual harm caused.

h.      The claim of punitive damages, and the provisions of law governing the right to recover punitive damages, are unconstitutionally vague, and definite and uncertain, and deprive this defendant of due process of law.

i.      Plaintiff's claim of punitive damages, and the provisions of law governing any right to recover punitive damages under the allegations made in the Complaint, caused HMMA to be treated differently from other similarly-situated persons and/or entities by subjecting HMMA to liability beyond actual loss, if any, caused by any act or omission, if any, and to liability determined without clearly defined principles, standards, and limits on the amounts of such awards.

j.      Plaintiff is not entitled to recover punitive damages under the circumstances alleged, if based on current standards of civil litigation would violate the self-incrimination clause of the 5th Amendment to the United States Constitution to impose against HMMA punitive damages, which are penal in nature, yet compelled HMMA to disclose potentially incriminating evidence.

k.      An award of punitive damages in this case would cause a deprivation of property without due process of law.

l.      The procedures pursuant to which punitive damages are awarded under the statutes alleged are not rationally related to legitimate government interests.

m.     The procedures pursuant to which punitive damages are awarded subject the defendant to punishment under a law not fully established before the alleged offense.

n.     The 11th Amendment of the United States Constitution prohibits Plaintiff's recovery of damages or of any other monetary relief in this action.

## THIRTEENTH DEFENSE

The underlying EEOC Charge was not timely served on HMMA. 29 C.F.R. §1601.14(a).

## FOURTEENTH DEFENSE

HMMA did not engage in or ratify or condone any discriminatory, retaliatory or unlawful conduct toward Plaintiff.

## FIFTEENTH DEFENSE

Plaintiff is not entitled to some or all of the relief requested in her Complaint because, even if HMMA was found to have considered any impermissible factors in any decisions or actions with respect to Plaintiff, which HMMA denies, no such decisions or actions were motivated by any impermissible factors.

## SIXTEENTH DEFENSE

Any damages or losses Plaintiff alleges to have suffered were, in whole or in part, the proximate and/or actual result of Plaintiff's own actions and/or the conduct of those other than HMMA.

## SEVENTEENTH DEFENSE

HMMA was never, directly or jointly, an employer of Plaintiff.

## EIGHTEENTH DEFENSE

HMMA was never in a contractual relationship with Plaintiff.

### NINETEENTH DEFENSE

Plaintiff did not engage in protected activity generally because she could not have had a reasonable belief that a policy against dreadlocked hairstyles was unlawful.

### TWENTIETH DEFENSE

Policies restricting or limiting certain hairstyles, including dreadlocks, are not unlawful. *EEOC v. Catastrophe Mgmt. Solutions*, 852 F.3d 1018 (11th Cir. 2016).

### TWENTY-FIRST DEFENSE

HMMA is entitled to offset to the extent that Plaintiff recovers any damages from any other defendant.

### TWENTY-SECOND DEFENSE

This Court has dismissed Plaintiff's disparate impact race claim. (Doc. 39-1, pp. 23-24, 33).

### TWENTY-THIRD DEFENSE

HMMA lacked knowledge of any of Plaintiff's alleged protected statuses or alleged protected conduct engaged in by Plaintiff.

### TWENTY-FOURTH DEFENSE

HMMA denies that it impeded any right of Plaintiff to make, enforce, modify, perform or terminate a contract pursuant to 42 U.S.C. §1981. HMMA denies that it took any action to inhibit Plaintiff from the enjoyment of any benefit, privilege, term, or condition of any contractual relationship.

### TWENTY-FIFTH DEFENSE

HMMA did not ratify or condone the acts or omissions of any other party with respect to Plaintiff.

## **TWENTY-SIXTH DEFENSE**

Plaintiff failed to meet her administrative prerequisites or timely file this Complaint with respect to her claims against an indispensable party or indispensable parties.

## **TWENTY-SEVENTH DEFENSE**

Plaintiff is unable to prove that her race (pursuant to Sec. 1981) or her alleged engagement in protected activity (pursuant to Title VII and Sec. 1981) was the but for cause of any adverse action against her (though HMMA did not take any adverse action against Plaintiff).

## **TWENTY-EIGHTH DEFENSE**

HMMA disputes that the EEOC engaged in a good faith conciliation of Plaintiff's claims even under the relaxed standard of *Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645 (2015).

\* \* \*

WHEREFORE, having stated its affirmative and additional defenses and having fully answered Plaintiff's Complaint, HMMA prays as follows:

a.      That the Court dismiss all claims against HMMA with prejudice;

b.      That the Court enter judgment against Plaintiff and in favor of HMMA;

c.      That costs be assessed against Plaintiff;

d.      That HMMA be awarded its attorneys' fees, as well as the costs incurred in the defense of this action; and

e.      That the Court render to HMMA such other and further relief as it deems just and proper.

Respectfully Submitted,

s/ Whitney R. Brown
David J. Middlebrooks ASB- 8553-D58D
Whitney R. Brown ASB-4431-H71B

OF COUNSEL:
LEHR MIDDLEBROOKS VREELAND & THOMPSON, P.C.
P.O. Box 11945
Birmingham, Alabama 35202-1945
(205) 326-3002
Fax: (205) 326-3008
Email: dmiddlebrooks@lehrmiddlebrooks.com
        wbrown@lehrmiddlebrooks.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Heather Newsom Leonard, Esq.
Leslie Palmer, Esq.
Heather Leonard, PC
2105 Devereux Circle, Suite 111
Birmingham, AL 35243

Wesley C. Redmond, Esq.
Susan W. Bullock, Esq.
FordHarrison LLP
420 20th Street North, Suite 2560
Birmingham, AL 35203

Yurie Yeoul Bae, Esq.
Richard L. DeWeese, Jr., Esq.
DeWeese & Bae, LLC
8191 Seaton Place
Montgomery, AL 36116

s/ Whitney R. Brown
OF COUNSEL

716117.docx

Docket / Tab # 42

Answer by HEA

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DAVITA M. KEY, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **CIVIL ACTION NO.** |
| | ) | **2:19-cv-00767-ECM-SMD** |
| HYUNDAI MOTOR MANUFACTURING | ) | |
| ALABAMA, LLC; | ) | |
| HYUNDAI ENG AMERICA, INC.; | ) | |
| and DYNAMIC SECURITY, INC. | ) | |
| | ) | |
| **Defendants.** | ) | |

### DEFENDANT HYUNDAI ENG AMERICA INC.'S ANSWER TO
### PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant Hyundai ENG America, Inc. ("HEA") answers Plaintiff's First Amended

Complaint (Doc. 28) as follows:

### I. JURISDICTION AND VENUE

1.      Defendant Hyundai ENG America, Inc. ("HEA") does not dispute that this Court

has subject matter jurisdiction over this action. Defendant denies that it violated any of the laws

cited in Paragraph 1 or engaged in any unlawful conduct toward Plaintiff. HEA further denies that

Plaintiff is entitled to the relief she seeks. Except as expressly admitted, HEA denies the remaining

allegations in Paragraph 1.

### II. PARTIES

2.      HEA admits that Plaintiff is a Black female over the age of 18. HEA lacks

knowledge or information sufficient to form a belief as to Plaintiff's residency, and, on this basis,

denies such allegation.

3.      HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 3 and, on this basis, denies those allegations.

4.      HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 4 and, on this basis, denies those allegations.

5.      HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained Paragraph 5 and, on this basis, denies those allegations.

6.      HEA admits that it is a foreign corporation registered to do business in the State of Alabama. HEA denies the remaining allegations contained in Paragraph 6.

7.      HEA admits that it provided certain services at the facilities of Hyundai Motor Manufacturing Alabama, LLC ("HMMA") in Montgomery, Alabama in 2017. HEA denies the remaining allegations contained in Paragraph 7.

8.      HEA admits that its employees performed work on the premises at HMMA. HEA denies the remaining allegations contained in Paragraph 8.

9.       HEA employees are subject to certain HMMA policies applicable to persons on HMMA premises while providing services thereon. HEA denies the remaining allegations in Paragraph 9 and specifically denies the allegation that HEA employees were generally subject to HMMA policies or procedures.

10.      HEA denies the allegations in Paragraph 10.

11.      HEA denies the allegations in Paragraph 11.

12.      HEA denies the allegations in Paragraph 12.

13.      Paragraph 13 consists of Plaintiff's explanation of terminology, to which no response is required. To the extent that Paragraph 13 may be deemed to require a response, it is denied.

2

14.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 and, on this basis, denies those allegations.

15.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 and, on this basis, denies those allegations.

16.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 and, on this basis, denies those allegations.

17.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 and, on this basis, denies those allegations.

18.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18 and, on this basis, denies those allegations.

19.     HEA admits the allegations in Paragraph 19.

20.     HEA denies the allegations in Paragraph 20.

21.     Dynamic Security Inc, ("Dynamic") employees were subject to certain HMMA and/or HEA policies applicable to persons on HMMA premises while providing services thereon. HEA denies the remaining allegations in Paragraph 21 and specifically denies the allegation that Dynamic employees were generally subject to HMMA or HEA policies or procedures.

22.     HEA denies the allegations in Paragraph 22.

23.     HEA denies the allegations in Paragraph 23.

### III.  CONDITIONS PRECEDENT

24.     Paragraph 24 consists of Plaintiff's characterization of her claim, to which no response is required. To the extent the allegations in Paragraph 24 may be deemed to require a response, they are denied.

25.     To the extent the allegations of Paragraph 25 reflect the contents of the document, the document speaks for itself, and HEA denies the allegations to the extent that they are inconsistent with that document. HEA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 25, and, on this basis, denies those allegations.

26.     To the extent the allegations of Paragraph 26 reflect the contents of the document, the document speaks for itself, and HEA denies the allegations to the extent that they are inconsistent with that document. HEA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 26, and, on this basis, denies those allegations.

27.     To the extent the allegations of Paragraph 27 reflect the contents of the document, the document speaks for itself, and HEA denies the allegations to the extent that they are inconsistent with that document. HEA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 27, and, on this basis, denies those allegations.

28.     To the extent the allegations of Paragraph 28 reflect the contents of the document, the document speaks for itself, and HEA denies the allegations to the extent that they are inconsistent with that document. HEA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 28, and, on this basis, denies those allegations.

29.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 29, and, on this basis, denies those allegations.

30.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 30, and, on this basis, denies those allegations.

31.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 31, and, on this basis, denies those allegations.

32.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 32, and, on this basis, denies those allegations.

33.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 33, and, on this basis, denies those allegations.

34.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 34, and, on this basis, denies those allegations.

35.     HEA denies the allegations in Paragraph 35.

36.     HEA admits that there are no administrative prerequisites to file a claim under 42 U.S.C. § 1981. HEA denies the remaining allegations in Paragraph 36.

## IV. FACTS

37.     HEA admits that Plaintiff is Black.

38.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 38 and, on this basis, denies those allegations.

39.     HEA admits that it contracted with HMMA to provide security services at HMMA's premises located at 700 Hyundai Blvd, Montgomery, AL 36105, and that it formerly subcontracted certain of those services to Dynamic. HEA denies the remaining allegations in Paragraph 39.

40.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 40 and, on this basis, denies those allegations.

41.     HEA admits that Dynamic provided certain staff to the facility located at 700 Hyundai Blvd at the time Plaintiff was assigned to the Hyundai Plant.

42.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 42 and, on this basis, denies those allegations.

43.     HEA admits that Plaintiff was interviewed at the HMMA plant. HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 43 and, on this basis, denies those allegations.

44.     HEA admits that Plaintiff was interviewed at the HMMA plant on or around July 19, 2017 by Gloria Robinson and Lt. Maurice Chambliss. HEA denies that Cassandra Williams interviewed Plaintiff.

45.     HEA admits that Plaintiff wore her hair in a dreadlocks style on the date of her interview. HEA denies the remaining allegations in Paragraph 45.

46.     HEA admits that at the conclusion of the interview, Ms. Robinson requested that Ms. Cassandra Williams enter the interview room to review Plaintiff's hairstyle. HEA denies the remaining allegations in Paragraph 46.

47.     HEA denies the allegations in Paragraph 47.

48.     HEA admits that Plaintiff showed Ms. Williams and Ms. Robinson a photo on her cellphone of a hairstyle she had worn in the past where the dreadlocks were styled in a way that was approved by both Ms. Williams and Ms. Robinson. HEA denies the remaining allegations in Paragraph 48.

49.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations pertaining to emails between Robinson and Plaintiff, and, on this basis, denies those

allegations. HEA further denies that Dynamic worked under the umbrella and direction of HEA or HMMA.

50.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 50, and, on this basis, denies those allegations.

51.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 51, and, on this basis, denies those allegations.

52.     HEA admits that Plaintiff reported to her first day of work on July 31, 2017 at the Hyundai Plant wearing her hair in same style as she had worn during her interview. HEA denies the remaining allegations in Paragraph 52.

53.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 53, and, on this basis, denies those allegations.

54.     HEA admits that Plaintiff initiated a conversation with Ms. Williams, and Ms. Williams did not mention her hairstyle in response to Plaintiff's inquiries. HEA denies the remaining allegations in Paragraph 54.

55.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 55, and, on this basis, denies those allegations.

56.      HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 56, and, on this basis, denies those allegations.

57.      HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57, and, on this basis, denies those allegations.

58.     HEA denies the allegations in Paragraph 58.

59.     HEA denies the allegations in Paragraph 59.

60.     HEA denies the allegations in Paragraph 60.

61.     HEA denies the allegations in Paragraph 61.

62.     HEA denies the allegations in Paragraph 62.

63.     HEA admits that a Dynamic employee named Latunya Howell was assigned to train Plaintiff in the mailroom. All references in the Amended Complaint to "Tanya" are construed to refer to Latunya Howell.

64.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 64, and, on this basis, denies those allegations.

65.     HEA admits that Ms. Robinson and Plaintiff came to Ms. Williams' office to discuss HEA's appearance policy. HEA denies the remaining allegations in Paragraph 65.

66.     HEA admits that Ms. Williams showed Plaintiff the appearance policy applicable to Plaintiff and informed Plaintiff that her hairstyle violated that policy. HEA denies the remaining allegations in Paragraph 66.

67.     HEA denies the allegations in Paragraph 67.

68.     HEA denies the allegations in Paragraph 68.

69.     HEA admits that Ms. Williams gave Plaintiff the option to wear a ball cap until she could get an appointment with her stylist. HEA admits that Ms. Williams did not instruct Plaintiff to go home. HEA denies the remaining allegations in Paragraph 69.

70.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 70, and, on this basis, denies those allegations.

71.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 71, and, on this basis, denies those allegations.

72.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 72, and, on this basis, denies those allegations.

73.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 73, and, on this basis, denies those allegations.

74.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 74, and, on this basis, denies those allegations.

75.     HEA admits that Ms. Williams did not acknowledge Key or raise any concern with Plaintiff's hairstyle or hat on August 1, 2017. HEA denies the remaining allegations in Paragraph 75.

76.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 76, and, on this basis, denies those allegations.

77.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 77, and, on this basis, denies those allegations.

78.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 78, and, on this basis, denies those allegations.

79.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 79, and, on this basis, denies those allegations.

80.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 80, and, on this basis, denies those allegations.

81.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 81, and, on this basis, denies those allegations.

82.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 82 pertaining to what Ms. Robinson told Plaintiff and, on this basis, denies those allegations. HEA specifically denies that any such memos were ever sent.

83.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 83, and, on this basis, denies those allegations.

84.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 84, and, on this basis, denies those allegations.

85.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 85, and, on this basis, denies those allegations.

86.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 86, and, on this basis, denies those allegations.

87.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 87, and, on this basis, denies those allegations.

88.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations pertaining to the subject matter of the conversation between Plaintiff and Ray Cureton in Paragraph 88, and, on this basis, denies those allegations.

89.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 89, and, on this basis, denies those allegations.

90.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 90, and, on this basis, denies those allegations.

91.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 91, and, on this basis, denies those allegations.

92.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 92, and, on this basis, denies those allegations.

93.     HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 93, and, on this basis, denies those allegations.

94.     HEA denies the allegations in Paragraph 94.

95.     HEA denies the allegations in Paragraph 95.

## V. STATEMENT OF PLAINTIFF'S CLAIMS

### Count One: Title VII – Pregnancy Discrimination

96.     Count One has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 96 require a response, HEA adopts and realleges its responses to Paragraphs 1-95 as if fully set forth herein.

97.     Count One has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 97 require a response, they are denied.

98.     Count One has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 98 require a response, they are denied.

99.     Count One has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 99 require a response, they are denied.

100.    Count One has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 100 require a response, they are denied.

101.    Count One has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 101 require a response, they are denied.

102.    Count One has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 102 require a response, they are denied.

103.    Count One has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 103 require a response, they are denied.

104.    Count One has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 104 require a response, they are denied.

105.    Count One has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 105 require a response, they are denied.

106.    Count One has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 106 require a response, they are denied.

107.    Count One has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 107 require a response, they are denied.

108.    Count One has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 108 require a response, they are denied.

Count One has been dismissed as to HEA and therefore no response is required to Plaintiff's prayer for relief. To the extent that it requires a response, HEA denies that Plaintiff is entitled to judgment or any of the relief requested.

**Count Two:  Title VII – Race Discrimination**

109.    Count Two has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 109 require a response, they are denied.

110.    Count Two has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 110 require a response, they are denied.

111.    Count Two has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 111 require a response, they are denied.

112.    Count Two has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 112 require a response, they are denied.

113.    Count Two has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 113 require a response, they are denied.

114.     Count Two has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 114 require a response, they are denied.

115.     Count Two has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 115 require a response, they are denied.

116.     Count Two has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 116 require a response, they are denied.

117.     Count Two has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 117 require a response, they are denied.

118.     Count Two has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 118 require a response, they are denied.

119.     Count Two has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 119 require a response, they are denied.

120.     Count Two has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 120 require a response, they are denied.

121.     The disparate impact claim in Count Two has been dismissed and therefore no response is required. To the extent that the allegations in Paragraph 121 require a response, they are denied.

122.     Count Two has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 122 require a response, they are denied.

123.     Count Two has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 123 require a response, they are denied.

124.     Count Two has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 122 require a response, they are denied.

13

Count Two has been dismissed as to HEA and therefore no response is required to Plaintiff's prayer for relief. To the extent that it requires a response, HEA denies that Plaintiff is entitled to judgment or any of the relief requested.

### Count Three: 42 U.S.C. § 1981 Discrimination

125.    HEA adopts and realleges its responses to Paragraphs 1 – 95 as if fully set forth herein.

126.    To the extent that the allegations in Paragraph 126 are directed to HEA, they are denied. HEA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 126 and, on this basis, denies those allegations.

127.    HEA admits that Plaintiff was hired by Dynamic to provide services at the mail room at the Hyundai Plant. HEA denies the remaining allegations in Paragraph 127.

128.    HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 128, and, on this basis, denies those allegations.

129.    To the extent that the allegations in Paragraph 129 are directed to HEA, they are denied. HEA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 129 and, on this basis, denies those allegations.

130.    To the extent that the allegations in Paragraph 130 are directed to HEA, they are denied. HEA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 130 and, on this basis, denies those allegations.

131.    HEA admits that Plaintiff wore her hair in dreadlocks style. HEA denies the remaining allegations in Paragraph 131.

132.    To the extent that the allegations in Paragraph 132 are directed to HEA, they are denied. HEA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 132 and, on this basis, denies those allegations.

133.    To the extent that the allegations in Paragraph 133 are directed to HEA, they are denied. HEA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 133 and, on this basis, denies those allegations.

134.    To the extent that the allegations in Paragraph 134 are directed to HEA, they are denied. HEA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 134 and, on this basis, denies those allegations.

135.    The disparate impact claim in Count Three has been dismissed, and therefore no response is required. To the extent that the allegations in Paragraph 135 require a response, they are denied.

136.    HEA denies the allegations in Paragraph 136.

137.    HEA denies the allegations in Paragraph 137.

138.    HEA denies the allegations in Paragraph 138.

To the extent Plaintiff's prayer for relief requires a response, HEA denies that Plaintiff is entitled to judgment or any of the relief requested.

### Count Four: Title VII – Race Retaliation

139.    HEA adopts and realleges its responses to Paragraphs 1 – 95 as if fully set forth herein.

140.    Count Four has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 140 require a response, they are denied.

141.    Count Four has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 141 require a response, they are denied.

142.    Count Four has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 142 require a response, they are denied.

143.    Count Four has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 143 require a response, they are denied.

144.    Count Four has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 144 require a response, they are denied.

145.    Count Four has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 145 require a response, they are denied.

146.    Count Four has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 146 require a response, they are denied.

147.    Count Four has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 147 require a response, they are denied.

148.    Count Four has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 148 require a response, they are denied.

149.    Count Four has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 149 require a response, they are denied.

150.    Count Four has been dismissed as to HEA and therefore no response is required. To the extent that the allegations in Paragraph 150 require a response, they are denied.

Count Four has been dismissed as to HEA and therefore no response is required to Plaintiff's prayer for relief. To the extent that it requires a response, HEA denies that Plaintiff is entitled to judgment or any of the relief requested.

**Count Five: 42 U.S.C. § 1981 Race Retaliation**

151.    HEA adopts and realleges its responses to Paragraphs 1 – 95 as if fully set forth herein.

152.    To the extent that the allegations in Paragraph 152 are directed to HEA, they are denied. HEA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 152 and, on this basis, denies those allegations.

153.    To the extent that the allegations in Paragraph 153 are directed to HEA, they are denied. HEA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 153 and, on this basis, denies those allegations.

154.    To the extent that the allegations in Paragraph 154 are directed to HEA, they are denied. HEA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 154 and, on this basis, denies those allegations.

155.    To the extent that the allegations in Paragraph 155 are directed to HEA, they are denied. HEA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 155 and, on this basis, denies those allegations.

156.    HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 156, and, on this basis, denies those allegations.

157.    To the extent that the allegations in Paragraph 157 are directed to HEA, they are denied. To the extent that the allegations are directed to other defendants, HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 157 and, on this basis, denies those allegations.

158.    HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 158 and, on this basis, denies those allegations.

159.    To the extent that the allegations in Paragraph 159 are directed to HEA, they are denied. To the extent that the allegations are directed to other defendants, HEA lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 159 and, on this basis, denies those allegations.

160.    HEA denies the allegations in Paragraph 160.

161.    HEA denies the allegations in Paragraph 161.

162.    HEA denies the allegations in Paragraph 162.

To the extent Plaintiff's prayer for relief requires a response, HEA denies that Plaintiff is entitled to judgment or any of the relief requested.

## AFFIRMATIVE AND ADDITIONAL DEFENSES

HEA states the following affirmative and additional defenses. HEA expressly reserves its right to assert other affirmative and additional defenses and/or supplement or amend its Answer upon discovery of facts and evidence.

## FIRST DEFENSE

Plaintiff's Complaint and each cause of action therein fails to state a claim upon which relief can be granted.

## SECOND DEFENSE

Plaintiff failed to state a claim for race discrimination or retaliation under 42 U.S.C § 1981 with respect to HEA.  Plaintiff has failed to engage in a protected activity by complaining (or having a reasonable belief that Plaintiff complained) of race discrimination under 42 U.S.C § 1981.

## THIRD DEFENSE

All actions taken by HEA with regard to Plaintiff were justified, taken in good faith and for lawful, non-retaliatory, legitimate, non-discriminatory reasons. HEA would have made some

or all of the decisions and/or actions alleged as discriminatory or retaliatory even if Plaintiff had not been in a protected class in individuals or engaged in the alleged protected conduct.

## FOURTH DEFENSE

Assuming *arguendo* any employee of HEA engaged in discrimination or other unlawful conduct toward Plaintiff, HEA neither knew nor reasonably should have known of the unlawful conduct and did not authorize, ratify, or consent to any unlawful conduct.

## FIFTH DEFENSE

Assuming *arguendo* any employee of HEA engaged in discrimination, retaliation, or any unlawful conduct toward Plaintiff, that conduct was contrary to HEA's express policies against discrimination and retaliation, occurred outside the scope of any employment relationship, and cannot be attributed to HEA.

## SIXTH DEFENSE

HEA at all times acted reasonably and in good faith towards Plaintiff.

## SEVENTH DEFENSE

Plaintiff's claims for equitable relief are barred by the doctrines of unclean hands, estoppel, waiver, consent, laches, and/or accord and satisfaction.

## EIGHTH DEFENSE

Plaintiff did not suffer any adverse employment action or damages because of any alleged discrimination or retaliation. Any alleged damages suffered by Plaintiff were caused by and/or were contributed to by the acts or omissions of Plaintiff or those other than HEA.

## NINETH DEFENSE

Plaintiff's claims are barred in whole or in part to the extent she failed to use reasonable means to mitigate her alleged damages. Plaintiff's alleged claims are barred, in whole or in part,

by the right of Defendants to a set-off against such alleged damages and/or damages recovered from other Defendants.

## TENTH DEFENSE

The Complaint should be dismissed to the extent that any of Plaintiff's claims are barred by the applicable statute of limitations.

## ELEVENTH DEFENSE

HEA avers that any award of punitive damages to Plaintiff would violate the Constitution of the United States.

## TWELFTH DEFENSE

Race or any alleged engagement in protected activity was not the "but for" cause of any adverse decision against Plaintiff or any alleged injury suffered by Plaintiff.

## THIRTEENTH DEFENSE

Plaintiff does not have standing to seek injunctive relief.

## FOURTEENTH DEFENSE

Plaintiff has failed to plead special damages with the specificity required by the Federal Rules of Civil Procedure.

## FIFTEENTH DEFENSE

HEA was not a direct or joint employer of Plaintiff at any time.

## SIXTEENTH DEFENSE

Assuming *arguendo* any other defendant or an employee thereof engaged in discrimination, retaliation, or any unlawful conduct toward Plaintiff, such conduct cannot be attributed to HEA.

## SEVENTEENTH DEFENSE

Plaintiff did not engage in a protected activity generally because she could not have had a reasonable belief that a policy against dreadlocks was unlawful.

## **EIGHTEENTH DEFENSE**

Policies restricting certain hairstyles, including dreadlocks, are not unlawful. *EEOC v. Catastrophe Mgmt. Solutions*, 852 F.3d 1018 (11th Cir. 2016).

**WHEREFORE**, Defendant HEA respectfully requests that the Court (a) dismiss Plaintiff's claims against HEA with prejudice; (b) enter judgment against Plaintiff and in favor of HEA; (c) assess costs against Plaintiff; and (d) award HEA any other relief deemed just and proper, including, but not limited to, attorney's fees and costs incurred in the defense of this action.

DATED:  September 14, 2021

Respectfully submitted,

*/s/ Yurie Yeoul Bae*
Yurie Yeoul Bae (ASB-3264-J96L)
Richard L. DeWeese, Jr. (ASB-0448-K16H)
*Attorneys for Defendant Hyundai ENG America, Inc.*

OF COUNSEL:

**DEWEESE & BAE, LLC**
8191 Seaton Place
Montgomery, AL  36116
Telephone: (334) 239-7994
Email:  yurie@deweesebae.com
        richard@deweesebae.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this September 14, 2021, the foregoing was filed with the Clerk of the Court via the CM/ECF which will send notification of such filing to the following counsel of record:

Heather Newsom Leonard, Esq.
Heather Leonard, PC
2105 Devereux Circle, Suite 111
Birmingham, AL 35243

Leslie Palmer, Esq.
Palmer Law, LLC
104 23rd Street South, Suite 100
Birmingham, AL 35233

Wesley C. Redmond, Esq.
Susan W. Bullock, Esq.
FordHarrison LLP
420 20th Street North, Suite 2560
Birmingham, AL 35203

David J. Middlebrooks, Esq.
Whitney R. Brown, Esq.
Lehr Middlebrooks Vreeland & Thompson, P.C.
P.O. Box 11945
Birmingham, AL 35202

*/s/ Yurie Yeoul Bae*
OF COUNSEL

Docket / Tab # 43

Answer by Dynamic Security

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DAVITA M. KEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL CASE NO. 2:19-cv-767-ECM |
| | ) | |
| HYUNDAI MOTOR | ) | |
| MANUFACTURING | ) | |
| ALABAMA, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ANSWER AND DEFENSES TO PLAINTIFF'S</u><br><u>AMENDED COMPLAINT</u>

Dynamic Security, Inc. ("Dynamic"), by and through undersigned counsel, respectfully responds to Plaintiff Davita Key's ("Plaintiff") First Amended Complaint (Doc. 28) alleging as follows:

Except as admitted, qualified or affirmatively alleged in this Answer, Dynamic denies each and every allegation in the Amended Complaint.

## I.   JURISDICTION AND VENUE

1.    Dynamic admits that the Court has subject matter jurisdiction over the federal claims asserted in this action and that the Plaintiff seeks relief under these claims, but Dynamic denies the remainder of the allegations set forth in Paragraph One of the Complaint.

## II.   PARTIES

2.    Dynamic admits Plaintiff correctly stated her race and age, but is without sufficient information to admit or deny Plaintiff's residency.

3.    Dynamic is without sufficient information to admit or deny the allegations set forth in Paragraph Three of the Amended Complaint.

4.    Dynamic is without sufficient information to admit or deny the allegations set forth in Paragraph Four of the Amended Complaint.

5.    Dynamic is without sufficient information to admit or deny the allegations set forth in Paragraph Five of the Amended Complaint.

6.    Dynamic is without sufficient information to admit or deny the allegations set forth in Paragraph Six of the Amended Complaint.

7.    Dynamic is without sufficient information to admit or deny the allegations set forth in Paragraph Seven of the Amended Complaint.

8.    Dynamic is without sufficient information to admit or deny the allegations set forth in Paragraph Eight of the Amended Complaint.

9.    Dynamic is without sufficient information to admit or deny the allegations set forth in Paragraph Nine of the Amended Complaint.

10.    Dynamic is without sufficient information to admit or deny the allegations set for in Paragraph Ten of the Amended Complaint.

11.    Dynamic is without sufficient information to admit or deny the allegations set for in Paragraph Eleven of the Amended Complaint.

12.    Dynamic is without sufficient information to admit or deny the allegations set forth in Paragraph 12 of the Amended Complaint.

13.    Dynamic acknowledges Plaintiff refers to Defendant HEA and Defendant HMMA jointly as "Hyundai."

14.    Dynamic admits the allegations set forth in Paragraph 14 of the Amended Complaint.

15.    Dynamic admits the allegations set forth in Paragraph 15 of the Amended Complaint.

16.    Dynamic admits the allegations set forth in Paragraph 16 of the Amended Complaint.

17.    In response to Paragraph 17 of the Amended Complaint, Dynamic admits that its website identifies the services set forth in Paragraph 17 of the Amended Complaint.

18.    In response to Paragraph 18 of the Complaint, the language set forth is an incomplete statement, so Dynamic denies the allegations set forth in Paragraph 18 of the Amended Complaint.

19.    Dynamic admits the allegations set forth in Paragraph 19 of the Amended Complaint.

20.     Dynamic admits the allegations set forth in Paragraph 20 of the Amended Complaint.

21.     Dynamic admits the allegations set forth in Paragraph 21 of the Amended Complaint.

22.     Dynamic admits the allegations set forth in Paragraph 22 of the Amended Complaint.

23.     Dynamic denies the allegations set forth in Paragraph 23 of the Amended Complaint.

### III.   CONDITIONS PRECEDENT

24.     Dynamic denies the allegations set forth in Paragraph 24 of the Amended Complaint.

25.     Dynamic admits the allegations set forth in Paragraph 25 of the Amended Complaint.

26.     Dynamic admits the allegations set forth in Paragraph 26 of the Amended Complaint.

27.     Dynamic admits the allegations set forth in Paragraph 27 of the Amended Complaint.

28.     Upon information and belief, Dynamic admits the allegations set forth in Paragraph 28 of the Amended Complaint.

29.     Dynamic is without sufficient information to admit or deny the allegations set forth in Paragraph 29 of the Amended Complaint.

30.     Dynamic admits the allegations set forth in Paragraph 30 of the Amended Complaint.

31.     Dynamic is without sufficient information to admit or deny the allegations in Paragraph 31 of the Amended Complaint and therefore denies them.

32.     Dynamic is without sufficient information to admit or deny Plaintiff's beliefs. Dynamic denies that the notice of right to sue referenced in Paragraph 32 of the Amended Complaint applies to Plaintiff and denies any remaining allegations set forth in Paragraph 32 of the Amended Complaint.

33.     Dynamic is without sufficient information to admit or deny Plaintiff's beliefs. Dynamic denies that the notice of right to sue referenced in Paragraph 33 of the Amended Complaint applies to Plaintiff and denies any remaining allegations set forth in Paragraph 33 of the Amended Complaint.

34.     Dynamic is without sufficient information to admit or deny the allegations set forth in Paragraph 34 of the Amended Complaint and therefore denies them.

35.     Dynamic denies the allegations set forth in Paragraph 35 of the Amended Complaint.

36.    Dynamic admits that the statute cited does not require satisfaction of administrative prerequisites. Defendant denies Plaintiff is entitled to bring this action or recover damages pursuant to the statute cited and denies any remaining allegations set forth in Paragraph 36 of the Amended Complaint.

## IV.   FACTS

37.    Dynamic admits the allegation set forth in Paragraph 37 of the Amended Complaint.

38.    Dynamic admits the allegations set forth in Paragraph 38 of the Amended Complaint.

39.    Dynamic denies that Dynamic contracts with Defendant HEA to perform work at the identified site. Defendant is without sufficient information to admit or deny the remaining allegations set forth in Paragraph 39 of the Amended Complaint and therefore denies them.

40.    Upon information and belief, Dynamic admits the allegations in Paragraph 40 of the Amended Complaint.

41.    Dynamic admits the allegations set forth in Paragraph 41 of the Amended Complaint.

42.    In response to Paragraph 42 of the Amended Complaint, Dynamic admits the Plaintiff applied for a position and was selected for an interview.

Dynamic denies the remaining allegations set forth in Paragraph 42 of the Amended Complaint.

43.   Dynamic admits that, based on Plaintiff's application, she was approved for an interview at the Hyundai Plaintiff. Defendant denies any remaining allegations set forth in Paragraph 43 of the Amended Complaint.

44.   Dynamic admits that Gloria Robinson and Maurice Chambliss interviewed Plaintiff on July 19, 2017. Dynamic denies the remaining allegations set forth in Paragraph 44 of the Amended Complaint.

45.   In response to Paragraph 45 of the Complaint, Dynamic admits the Plaintiff wore her hair in a dreadlock style at the interview and denies the remainder of the allegations of Paragraph 45 of the Amended Complaint.

46.   In response to Paragraph 46 of the Amended Complaint, Dynamic admits that Robinson brought in Williams to provide a second opinion, but denies Dynamic the remainder of the allegations set forth in Paragraph 46 of the Amended Complaint.

47.   Dynamic denies the allegations set forth in Paragraph 47 of the Amended Complaint.

48.   In response to Paragraph 48 of the Amended Complaint, Dynamic admits that Robinson and Williams approved the hair style Plaintiff showed in a

picture, but denies the remaining allegations set forth in Paragraph 48 of the Amended Complaint.

49.    Dynamic admits only that it offered Plaintiff a job and assigned her to the Hyundai plant. Dynamic denies the remaining allegations set forth in Paragraph 49 of the Amended Complaint.

50.    Dynamic admits the allegations set forth in Paragraph 50 of the Amended Complaint.

51.    Defendant denies the allegations set forth in Paragraph 51 of the Amended Complaint.

52.    Dynamic admits only that Plaintiff's first day of assignment to the Hyundai Plant was July 31, 2017. Dynamic denies the remaining allegations set forth in Paragraph 52 of the Amended Complaint.

53.    Dynamic is without sufficient information to admit or deny the allegations set forth in Paragraph 53 of the Amended Complaint.

54.    Dynamic is without sufficient information to admit or deny the allegations set forth in Paragraph 54.

55.    Dynamic denies the allegations set forth in Paragraph 55 of the Amended Complaint.

56.    In response to Paragraph 56 of the Amended Complaint, Dynamic admits that Plaintiff asked to speak to Robinson regarding a personal matter and told

Robinson and Chambliss she was pregnant, but denies the remaining allegations set forth in Paragraph 56 of the Amended Complaint.

57.    Dynamic denies the allegations set forth in Paragraph 57 of the Amended Complaint.

58.    Dynamic denies the allegations set forth in Paragraph 58 of the Amended Complaint.

59.    Dynamic is without sufficient information to admit or deny the allegations set forth in Paragraph 59 of the Amended Complaint and, therefore, denies the allegations set forth in Paragraph 59 of the Amended Complaint.

60.    Dynamic is without sufficient information to admit or deny what Plaintiff told Williams and therefore denies the same. Dynamic denies the remaining allegations set forth in Paragraph 60 of the Amended Complaint.

61.    Dynamic is without sufficient information to admit or deny the allegations set forth in Paragraph 61 of the Amended Complaint and therefore denies them.

62.    Dynamic is without sufficient information to admit or deny the allegations set forth in Paragraph 62 of the Amended Complaint and therefore denies them.

63.     In response to Paragraph 63 of the Amended Complaint, Dynamic admits that Plaintiff began working with LaTonya Howell a mailroom employee and trainer.

64.     Dynamic denies the allegations set forth in Paragraph 64 of the Amended Complaint.

65.     In response to Paragraph 5 of the Amended Complaint, Dynamic admits that Key met with Robinson and Chambliss, but denies the remaining allegations set forth in Paragraph 65 of the Amended Complaint.

66.     Dynamic is without sufficient information to admit or deny the allegations set forth in Paragraph 66 of the Amended Complaint and, therefore, denies the allegations set forth in Paragraph 66 of the Amended Complaint.

67.     Dynamic is without sufficient information to admit or deny the allegations set forth in Paragraph 67 of the Amended Complaint and, therefore, denies the allegations set forth in Paragraph 67 of the Amended Complaint.

68.     Dynamic is without sufficient information to admit or deny the allegations set forth in Paragraph 68 of the Amended Complaint and, therefore, denies the allegations set forth in Paragraph 68 of the Amended Complaint.

69.     Dynamic is without sufficient information to admit or deny the allegations set forth in Paragraph 69 of the Amended Complaint and, therefore, denies the allegations set forth in Paragraph 69 of the Amended Complaint.

70.     In response to Paragraph 70, Dynamic admits that Plaintiff told Williams that she could wear an appropriate hat, that Plaintiff was released for the day, and that Robinson stated they would go from there once Plaintiff contacted her hair stylist. Dynamic denies the remaining allegations set forth in Paragraph 70 of the Amended Complaint.

71.     Dynamic admits Plaintiff could not continue to work at the Hyundai Plant because her hair style did not conform to the client's grooming policy and left after the approximate time stated. Defendant denies the remaining allegations set forth in Paragraph 71 of the Amended Complaint.

72.     In response to Paragraph 72 of the Amended Complaint, Dynamic admits Robinson called Plaintiff and asked when she was due, but denies the remaining allegations set forth in Paragraph 72 of the Amended Complaint.

73.     In response to Paragraph 73 of the Amended Complaint, Dynamic admits Plaintiff told Robinson she was due in January, but denies the remaining allegations set forth in Paragraph 73 of the Amended Complaint.

74.     Dynamic admits Plaintiff returned to the Hyundai Plant on August 1, 2017, wearing a hat, and worked with a trainer. Dynamic denies the remaining allegations set forth in Paragraph 74 of the Amended Complaint.

75.     In response to Paragraph 75, Dynamic admits that Plaintiff and Howell came to the office where Robinson was and that Robinson did not speak to Plaintiff

or discuss her hairstyle.  Dynamic is without sufficient information to admit or deny the remaining allegations set forth in Paragraph 79 of the Amended Complaint and, therefore, denies the allegations set forth in Paragraph 579 of the Amended Complaint.

76.     Dynamic is without sufficient information to admit or deny what Tanya or Plaintiff said to each other and therefore denies the same. Dynamic denies the remaining allegations set forth in Paragraph 62 of the Amended Complaint.

77.     Dynamic admits Chambliss directed Plaintiff to the conference room. Defendant denies the remaining allegations set forth in Paragraph 77 of the Amended Complaint.

78.     Dynamic admits only that Robinson and Chambliss met with Plaintiff. Dynamic denies the remaining allegations set forth in Paragraph 78 of the Amended Complaint.

79.     Dynamic denies the allegations set forth in Paragraph 79 of the Amended Complaint.

80.     In response to Paragraph 80 of the Amended Complaint, Dynamic admits Robinson inquired whether Plaintiff felt she was being discriminated against, but denies the remaining allegations set forth in Paragraph 80 of the Amended Complaint.

81.   In response to Paragraph 81 of the Amended Complaint, Dynamic admits Plaintiff stated no comment and was told that a co-worker said she felt that way, but denies the remaining allegations set forth in Paragraph 81 of the Amended Complaint.

82.   Dynamic denies the allegations set forth in Paragraph 82 of the Amended Complaint.

83.   Dynamic denies the allegations set forth in Paragraph 83 of the Amended Complaint.

84.   Dynamic admits that Howell confirmed she told Robinson about the complaint, that she spoke again to Robinson, that Plaintiff handwrote a complaint, and that Plaintiff was told to speak with Ray Cureton. Dynamic denies the remaining allegations set forth in Paragraph 84 of the Amended Complaint.

85.   Dynamic admits only that Plaintiff was sent to speak with Ray Cureton. Dynamic denies the remaining allegations set forth in Paragraph 85 of the Amended Complaint.

86.   Dynamic admits Plaintiff met with Cureton and that Scavella was present. Dynamic denies the remaining allegations set forth in Paragraph 86 of the Amended Complaint.

87.   Dynamic denies the allegations set forth in Paragraph 87 of the Amended Complaint.

88.     Dynamic admits only that Cureton stated her hair did not comply with the client's grooming policy. Dynamic denies the remaining allegations set forth in Paragraph 88 of the Amended Complaint.

89.     Dynamic denies the allegations set forth in Paragraph 89 of the Amended Complaint.

90.     Dynamic denies the allegations set forth in Paragraph 90 of the Amended Complaint.

91.     In response to Paragraph 91 of the Amended Complaint, Dynamic admits that Plaintiff was not allowed to return to the Hyundai facility and that her hair did not conform to the client's grooming policy, but denies the remaining allegations set forth in Paragraph 91 of the Amended Complaint.

92.     Dynamic admits the allegations set forth in Paragraph 92 of the Amended Complaint.

93.     Dynamic denies the allegations set forth in Paragraph 93 of the Amended Complaint.

94.     Dynamic admits the allegations set forth in Paragraph 94 of the Amended Complaint.

95.     Dynamic admits the allegations set forth in Paragraph 95 of the Amended Complaint.

## V.    STATEMENT OF PLAINTIFF'S CLAIMS

### COUNT ONE
### TITLE VII – PREGNANCY DISCRIMINATION

96.    Dynamic incorporates by reference its responses to paragraphs 1 – 95 as if fully set forth herein.

97.    Dynamic denies the allegations set forth in Paragraph 97 of the Amended Complaint.

98.    Dynamic denies the allegations set forth in Paragraph 98 of the Amended Complaint.

99.    Dynamic denies the allegations set forth in Paragraph 99 of the Amended Complaint.

100.    In response to Paragraph 100 of the Amended Complaint, Dynamic admits it was notified of Plaintiff's pregnancy; Dynamic is without sufficient information to admit or deny whether the other defendants were aware of the pregnancy and, therefore, denies those allegations; and denies the remaining allegations set forth in Paragraph 100 of the Amended Complaint.

101.    Dynamic denies the allegations set forth in Paragraph 101 of the Amended Complaint.

102.    Dynamic denies the allegations set forth in Paragraph 102 of the Amended Complaint with respect to it, but admits that Plaintiff's assignment to the Hyundai plant was terminated.

15

103. Dynamic denies the allegations set forth in Paragraph 103 of the Amended Complaint.

104. Dynamic denies the allegations set forth in Paragraph 104 of the Amended Complaint.

105. Dynamic denies the allegations set forth in Paragraph 105 of the Amended Complaint.

106. Dynamic denies the allegations set forth in Paragraph 106 of the Amended Complaint.

107. Dynamic denies the allegations set forth in Paragraph 107 of the Amended Complaint.

108. Dynamic denies the allegations set forth in Paragraph 108 of the Amended Complaint.

## COUNT TWO
## TITLE VII RACE DISCRIMINATION

109. Dynamic incorporates by reference its responses to paragraphs 1 – 95 as if fully set forth herein.

110. Dynamic denies the allegations set forth in Paragraph 110 of the Amended Complaint.

111. Dynamic denies the allegations set forth in Paragraph 111 of the Amended Complaint.

112.   Dynamic denies the allegations set forth in Paragraph 112 of the Amended Complaint.

113.   Dynamic denies the allegations set forth in Paragraph 113 of the Amended Complaint.

114.   Dynamic denies the allegations set forth in Paragraph 114 of the Amended Complaint.

115.   In response to Paragraph 115, Dynamic admits that it was made aware that Plaintiff's hair was not within its client's grooming policy and acted pursuant to its client's request and denies the remaining allegations set forth in Paragraph 115 of the Amended Complaint.

116.   Dynamic denies the allegations set forth in Paragraph 116 of the Amended Complaint.

117.   Dynamic is without sufficient information to admit or deny the allegations set forth in paragraph 117 of the Amended Complaint.

118.   Dynamic denies the allegations set forth in Paragraph 118 of the Amended Complaint.

119.   Dynamic is without sufficient information to admit or deny the allegations set forth in Paragraph 119 of the Amended Complaint and, therefore, denies the allegations set forth in Paragraph 119 of the Amended Complaint.

120.   Dynamic denies the allegations set forth in Paragraph 120 of the Amended Complaint.

121.   Dynamic denies the allegations set forth in Paragraph 121 of the Amended Complaint.

122.   Dynamic denies the allegations set forth in Paragraph 122 of the Amended Complaint.

123.   Dynamic denies the allegations set forth in Paragraph 123 of the Amended Complaint.

124.   Dynamic denies the allegations set forth in Paragraph 124 of the Amended Complaint.

## COUNT THREE
## 42 USC § 1981 DISCRIMINATION

125.   Dynamic incorporates herein by reference its responses to Paragraphs 1 – 95.

126.   Dynamic denies the allegations set forth in Paragraph 126 of the Amended Complaint.

127.   Dynamic denies the allegations set forth in Paragraph 127 of the Amended Complaint.

128.   Dynamic denies the allegations set forth in Paragraph 128 of the Amended Complaint.

129.   Dynamic denies the allegations set forth in Paragraph 129 of the Amended Complaint that are directed at it.   Dynamic is without sufficient information to admit or deny the remaining allegations set forth in Paragraph 129 of the Amended Complaint and, therefore, denies the allegations set forth in Paragraph 129 of the Amended Complaint

130.   In response to Paragraph 130 of the Amended Complaint, Dynamic admits Plaintiff was no longer allowed to work at the Hyundai facility on the dates stated due to its client's request.   Dynamic is without sufficient information to admit or deny the remaining allegations set forth in Paragraph 130 of the Amended Complaint.

131.   Dynamic is without sufficient information to admit or deny the allegations set forth in Paragraph 131 of the Amended Complaint and, therefore, denies the allegations set forth in Paragraph 131 of the Amended Complaint.

132.   Dynamic denies the allegations set forth in Paragraph 132 of the Amended Complaint.

133.   Dynamic is without sufficient information to admit or deny the allegations set forth in Paragraph 133 of the Amended Complaint and, therefore, denies the allegations set forth in Paragraph 133 of the Amended Complaint.

134.   Dynamic denies the allegations set forth in Paragraph 134 of the Amended Complaint.

135.   Dynamic denies the allegations set forth in Paragraph 135 of the Amended Complaint.

136.   Dynamic denies the allegations set forth in Paragraph 136 of the Amended Complaint.

137.   Dynamic denies the allegations set forth in Paragraph 137 of the Amended Complaint.

138.   Dynamic denies the allegations set forth in Paragraph 138 of the Amended Complaint.

**COUNT FOUR**
**TITLE VII RACE RETALIATION**

139.   Dynamic incorporates herein by reference its responses to Paragraphs 1 – 95.

140.   Dynamic denies the allegations set forth in Paragraph 140 of the Amended Complaint.

141.   Dynamic denies the allegations set forth in Paragraph 141 of the Amended Complaint.

142.   Dynamic denies the allegations set forth in Paragraph 142 of the Amended Complaint.

143.   In response to Paragraph 143 of the Complaint, Dynamic admits that Plaintiff stated she wanted to file a complaint, but denies the remaining allegations set forth in Paragraph 143 of the Amended Complaint.

144.   In response to Paragraph 144 of the Complaint, Dynamic admit Plaintiff was instructed to leave the Hyundai facility and see Dr. Cureton.  Dynamic denies the remaining allegations set forth in Paragraph 144 of the Amended Complaint.

145.   In response to Paragraph 145 of the Amended Complaint, Dynamic admits Plaintiff was no longer allowed to work at the Hyundai facility after she left the facility due to its client's request.  Dynamic is without sufficient information to admit or deny the remaining allegations set forth in Paragraph 145 of the Amended Complaint.

146.   Dynamic denies the allegations set forth in Paragraph 145 of the Amended Complaint.

147.   Dynamic denies the allegations set forth in Paragraph 146 of the Amended Complaint.

148.   In response to Paragraph 147 of the Complaint, Dynamic admits that Plaintiff stated she wanted to file a complaint, but denies the remaining allegations set forth in Paragraph 147 of the Amended Complaint.

149.   Dynamic denies the allegations set forth in Paragraph 148 of the Amended Complaint.

150.   Dynamic denies the allegations set forth in Paragraph 149 of the Amended Complaint.

## COUNT FIVE
## 42 USC § 1981 RACE RETALIATION

151.   Dynamic incorporates herein by reference its responses to Paragraphs 1 – 95.

152.   Dynamic denies the allegations set forth in Paragraph 152 of the Amended Complaint.

153.   Dynamic is without sufficient information to admit or deny the allegations set forth in Paragraph 153 of the Amended Complaint and, therefore, denies the allegations set forth in Paragraph 153 of the Amended Complaint.

154.   Dynamic denies the allegations set forth in Paragraph 154 of the Amended Complaint.

155.   In response to Paragraph 155 of the Complaint, Dynamic admits that Plaintiff stated she wanted to file a complaint, but denies the remaining allegations set forth in Paragraph 154 of the Amended Complaint.

156.   In response to Paragraph 156 of the Complaint, Dynamic admit Plaintiff was instructed to leave the Hyundai facility and see Dr. Cureton.  Dynamic denies the remaining allegations set forth in Paragraph 156 of the Amended Complaint.

157.   In response to Paragraph 157 of the Amended Complaint, Dynamic admits Plaintiff was no longer allowed to work at the Hyundai facility after she left the facility due to its client's request.  Dynamic is without sufficient information to

admit or deny the remaining allegations set forth in Paragraph 157 of the Amended Complaint.

158.   Dynamic denies the allegations set forth in Paragraph 158 of the Amended Complaint.

159.   Dynamic denies the allegations set forth in Paragraph 159 of the Amended Complaint.

160.   Dynamic denies the allegations set forth in Paragraph 160 of the Amended Complaint.

161.   Dynamic denies the allegations set forth in Paragraph 161 of the Amended Complaint.

162.   Dynamic denies the allegations set forth in Paragraph 162 of the Amended Complaint.

With regard to the Relief clauses under Counts One, Two, Three, Four, and Five, Dynamic denies Plaintiff is entitled to the relief requested or any relief whatsoever.

## AFFIRMATIVE DEFENSES

### First Defense

Except to the extent expressly admitted herein, the allegations of the Complaint are denied.

**Second Defense**

To the extent Plaintiff has failed or refused to mitigate her damages, she is not entitled to relief.

**Third Defense**

Defendant affirmatively has made a good faith effort to comply with all federal and state laws.

**Fourth Defense**

This Court is without jurisdiction to hear Title VII claims that were not timely brought before the EEOC and investigated by that agency.

**Fifth Defense**

Defendant denies that Plaintiff's race or any other impermissible factor played any role with respect to any employment decision, practice, or term or condition of employment complained of by Plaintiff.

**Sixth Defense**

Even if Plaintiff could prove intentional discrimination, or retaliation, which Defendant denies, Defendant would demonstrate that it would have taken the same employment actions in the absence of any unlawful motivating factors.

**Seventh Defense**

Some or all of Plaintiff's claims fail to state a claim upon which relief can be granted.

## Eighth Defense

Plaintiff has not stated a claim for sex or race discrimination or for unlawful retaliation. Among other reasons, Plaintiff did not engage in any protected activity.

## Ninth Defense

To the extent that Plaintiff's Amended Complaint challenges employment decisions affecting her, such decisions were made on the basis of legitimate, non-discriminatory and non-retaliatory factors.

## Tenth Defense

Some of Plaintiff's claims are barred by the statute of limitations.

## Eleventh Defense

Plaintiff was not subjected to any adverse terms and conditions of her employment.

## Twelfth Defense

Defendant is not liable for punitive damages as it has have made good faith efforts to enforce any anti-discrimination laws and policies. Defendant cannot be held vicariously liable for punitive damages for any allegedly discriminatory decision of its agents where such decisions are contrary to Defendant's good faith efforts to prevent discrimination in the workplace and comply with Title VII. Defendant, in no way, acted with malice or reckless disregard for the federal laws

preventing harassment and discrimination. *Kolstad v. American Dental Ass'n,* 527 U.S. 526, 546, 119 S. Ct. 2118, 144 L. Ed. 2d 494 (1999).

### Thirteenth Defense

Defendant reserves the right to assert any additional affirmative defenses that may be determined during discovery.

### Fourteenth Defense

Plaintiff was an employee-at-will.

### Fifteenth Defense

Plaintiff cannot establish a *prima facie* case of discrimination based on sex, race, or in retaliation for any complaint of discrimination.

### Sixteenth Defense

Defendant affirmatively avers that all of its actions were taken in good faith.

### Seventeenth Defense

Plaintiff's claims for damages may be barred by the after-acquired evidence doctrine.

### Eighteenth Defense

Plaintiff has failed to satisfy the conditions precedent to maintaining some of the claims in this action.

### Nineteenth Defense

Plaintiff has not suffered any injuries or damages caused by Dynamic, but

were the result of Plaintiff's own actions or actions of other entities.

### Twentieth Defense

Dynamic denies that Plaintiff's sex or any other impermissible factor played any role with respect to any employment decision, practice, or term or condition of employment complained of by Plaintiff.

### Twenty-First Defense

Plaintiff's claims for punitive damages are barred because she cannot prove by clear and convincing evidence that Defendant acted with actual malice relative to her.

### Twenty-Second Defense

Defendant, without admitting that any employees engaged in any of the acts or conduct attributed to it in the Complaint, did not ratify any alleged intentional conduct by its employees.

### Twenty-Third Defense

To the extent Plaintiff failed to make any reasonable attempts to mitigate her damages, Defendant is entitled to a setoff, should it prevail.  In addition, any recovery must be set off and/or reduced by wages, commissions, pay and benefits, other earning or remuneration, regardless of form received, that were paid or due to Plaintiff or receivable with exercise of due diligence.

### Twenty-Fourth Defense

Defendant adopts all defenses under Alabama statutory law and common law and under federal law relating to limitation of punitive damages.

### Twenty-Fifth Defense

Any award of punitive damages in this case would violate Defendant's rights under the United States Constitution and the State of Alabama Constitution.

### Twenty-Sixth Defense

Plaintiff's Title VII claims are barred by the statute of limitations.

### Twenty-Seventh Defense

Some of Plaintiff's Title VII claims are barred by the statute of limitations because they were not included in a timely-filed charge.

### Twenty-Eighth Defense

Some of Plaintiff's Title VII claims are barred by the statute of limitations and because claims and allegations in the Amended Complaint were not within the scope of the EEOC Charge.

### Twenty-Ninth Defense

Plaintiff's Title VII retaliation claims fail because she cannot establish that her complaints were the "but for" cause of her purported termination. *See Nassar v. Univ. of Texas Southwestern Med. Center,* 570 U.S. 338 (2013).

**Thirtieth Defense**

This action is not maintainable under Title VII with respect to any event or alleged event occurring more than 180 days prior to the filing of the EEOC Charge upon which this action is based.

**Thirty-First Defense**

All of the actions challenged by Plaintiff were made by another entity and not by Dynamic.

**Thirty-Second Defense**

Dynamic cannot be liable for a retaliation claim because it was not informed of complaints made by Dynamic.

**Thirty-Third Defense**

Dynamic took no actions to condone or ratify another entity's decisions regarding Plaintiff.

Respectfully submitted,

*/s/Susan W. Bullock*
Wesley C. Redmond
Susan W. Bullock
FordHarrison LLP
420 20th Street North, Suite 2560
Birmingham, AL  35203
wredmond@fordharrison.com
sbullock@fordharrison.com
Phone: 205-244-5905
        205-244-5904

29

Facsimile: 205-244-5901

*Counsel for Dynamic Security, Inc.*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on 14th day of September, 2021, she electronically filed a true and correct copy of the foregoing with the Clerk of Court using the CM/ECF System, which provides notice to all counsel of record:

Heather Leonard
Heather Leonard, P.C.
2105 Devereaux Cir., Suite 111
Birmingham, AL 35243

Leslie A. Palmer, LLC
Palmer Law, LLC
104 23rd Street South, Suite 100
Birmingham, AL  35233

*Counsel for Plaintiffs*

David J. Middlebrooks
Whitney R. Brown
Lehr Middlebrooks Vreeland & Thompson, P.C.
P.O. Box 11945
Birmingham, AL  35202

*Counsel for Hyundai Motor Manufacturing Alabama, LLC*

Yurie Yeoul Bae
Richard L. DeWeese, Jr.
Deweese & Bae, LLC
8191 Seaton Place
Montgomery, AL 36116

*Counsel for Hyundia ENG America, Inc.*

*/s/ Susan W. Bullock*
Of Counsel

WSACTIVELLP:12576836.1

31

Docket / Tab # 138

Memorandum Opinion Granting Summary
Judgment for HMMA and HEA and Partially
Granting Summary Judgment for Dynamic Security

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DAVITA M. KEY,                          )
                                        )
          Plaintiff,                    )
                                        )
     v.                                 )    CIVIL CASE NO. 2:19-cv-767-ECM
                                        )              (WO)
HYUNDAI MOTOR MANUFACTURING             )
ALABAMA, LLC, *et al.*,                 )
                                        )
          Defendants.                   )

**MEMORANDUM OPINION and ORDER**

**I.  INTRODUCTION**

Now pending before the Court are motions for summary judgment filed by
Defendants Hyundai Motor Manufacturing Alabama, LLC ("HMMA") (doc. 66), Hyundai
Engineering America, Inc. ("HEA") (doc. 69), and Dynamic Security, Inc. ("Dynamic")
(doc. 73).  Plaintiff Davita M. Key ("Key") brings five claims against all three Defendants:
pregnancy discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.
§ 2000e-2 (Count I), race discrimination pursuant to Title VII and 42 U.S.C. § 1981
(Counts II and III), and race retaliation pursuant to Title VII and § 1981 (Counts IV and
V).[1]  Her claims arise out of two days of employment at the Hyundai car manufacturing
plant in Montgomery, Alabama, spanning from July 31, 2017, until August 1, 2017.  Based

---

[1]  The Court previously dismissed Key's Title VII claims (Counts I, II, and IV) against HEA. *See Key v.
Hyundai Motor Mfg., Ala., LLC*, 2021 WL 3909663, at *5 (M.D. Ala. Aug. 31, 2021).  Therefore, the only
claims against HEA to be discussed on summary judgment are her claims for race discrimination (Count
III) and race retaliation (Count V) brought pursuant to § 1981.

on a thorough review of the record, the briefs, and the applicable law, for the reasons to be discussed, HMMA's and HEA's motions for summary judgment are due to be GRANTED, and Dynamic's motion for summary judgment is due to be GRANTED in part and DENIED in part.

## II. JURISDICTION

The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(4).  The parties do not contest personal jurisdiction or venue, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a).  A "genuine" dispute of fact exists "if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996).  An issue of fact is "material" if it could "affect the outcome of the case under the governing law." *Id.*  The movant bears the initial burden to identify evidence showing no genuine dispute of material fact remains, or that the non-moving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  If the movant satisfies this burden, then the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts,"

and they do so by citing to particular parts of the record or by showing the cited materials do not establish the presence or absence of a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); FED. R. CIV. P. 56(c)(1). If the non-movant fails to support their version of the facts or to properly address the movant's version of the facts as required by Rule 56(c), then the court may "consider the fact undisputed for purposes of the motion." FED. R. CIV. P. 56(e)(2).

At the summary judgment stage, the Court must view all evidence in the light most favorable to the non-movant and draw all justifiable inferences from the evidence in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Sprowl v. Mercedes-Benz U.S. Int'l, Inc.*, 815 F. App'x 473, 478 (11th Cir. 2020) (quoting *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987)).

## IV.  FACTS

### A.  Corporate Relationship Between HMMA, HEA, and Dynamic

This case involves three distinct corporate entities. HMMA is an automotive assembly plant that produces vehicles in Montgomery, Alabama, for Hyundai's North American automobile market—Hyundai is a company based out of South Korea. HMMA employed HEA to provide it with various services—e.g., security, janitorial, landscaping, and general contracts.[2] Though the two companies share "Hyundai" in their names, there

---

[2] HEA went by "AMCO America, Inc." at the time of Key's employment by Dynamic, and Key referred to HEA as "AMCO" in her EEOC intake questionnaire.

is no shared ownership affiliation between the two.  HEA turned to various subcontractors to fulfill the services it provided HMMA, one being Dynamic.  Dynamic equipped HEA with the manpower necessary to fulfill its security contract with HMMA.  While the three entities were distinct, HMMA could ask the HEA director of security at its plant to request Dynamic to remove a Dynamic employee from an assignment there, though no request was ever made relevant to this case.  HEA informed Dynamic employees that they had to abide by HMMA's company policies while at the plant.

**B.    Grooming Policies**

HEA had an "Appearance Standard[] for Security Personnel" at the plant created by HEA's Manager of Security Services, Cassandra Williams ("Williams"), a black female. The appearance standard stated that well-groomed braids were permitted for female uniformed officers but "[d]reads or dreadlocks hairstyle [were] prohibited." (Doc. 71-3 at 5).  Williams decided to prohibit dreadlocks altogether for HEA because she believed they did not appear professional and well-kempt.

In 2017, the time of the plaintiff's employment at the plant, HMMA had a "Dress Code Matrix" that did not discuss dreadlocks but required "hair longer than collar length" to be "tied back or tucked in [a] hat." (*Id.* at 8).  HMMA's dress code only applied to production areas, not administrative buildings like the mailroom, where the plaintiff was stationed.

Dynamic had a "Personal Appearance" standard in its employee handbook.  It stated that female officers "[s]hall maintain a neat hairstyle that keeps long hair away from the

face and the hair should not extend more than two inches below the top of the collar.  If hair extends more than two inches below the top of the collar, then it must be worn up when on duty." (Doc. 75-7 at 19).

HEA permitted two black female Dynamic security employees stationed at the HMMA plant to wear their hair in dreadlocks, albeit in a tight pulled-up bun style in compliance with HEA's and Dynamic's appearance standards.  There is no evidence that any white employees at HMMA, HEA, or Dynamic wore their hair in dreadlocks.

**C.   Key's Interview with Dynamic**

Key responded to a job advertisement by Dynamic for a security position in the mailroom at the HMMA plant.  She interviewed for the position on July 19, 2017, in the plant's security building.   Gloria Robinson ("Robinson") and Maurice Chambliss ("Chambliss"), both black Dynamic employees, conducted the interview.  Chambliss was a District Manager for Dynamic.  Robinson was Dynamic's Account Manager at the HMMA plant.  During the interview, Robinson told Key, "Oh, your hair might be a problem." (Doc. 68-12 at 6).  Key wore her hair in shoulder length dreadlocks.

Key offered a photograph example on her phone of an "up-do" hairstyle, where the dreadlocks were pulled up tight in a bun.  Robinson left the room to speak with Williams, who was in her office nearby.  Robinson told Williams that an interviewee for the mailroom position wore dreadlocks, and asked Williams if Key could put her dreadlocks in an "up-do" style to meet HEA's appearance standard.  Williams entered the interview room and confirmed that Key's dreadlocks were not permitted by HEA but said that if Key could get

them styled in the "up-do" style, then she could maintain her dreadlocks.  In Williams'

view, the style in which Key wore her dreadlocks appeared "frayed" and not "neat."  Key

indicated she would contact her stylist to put her hair in the "up-do" style.  Robinson

offered Key the mailroom security position two days later.

**D.     Events on July 31, 2017**

When Key arrived at her first day of work at the HMMA plant on July 31, 2017, her

dreadlocks remained shoulder-length, as they appeared at her interview.  Key did not style

her dreadlocks in the "up-do" style because Dynamic's Office Manager, Nicole Scavella

("Scavella"), a black female, told Key during Dynamic's orientation on July 21, 2017, that

her dreadlocks did not violate Dynamic's personal appearance standard.

At the HMMA plant on July 31, 2017, Dynamic employee LaTonya Howell

("Howell") was assigned as Key's trainer and Chambliss was her direct supervisor.  Key

first went to HMMA's training center for a safety class, where she received an HMMA

safety handbook—the only handbook she received from HMMA.  An HMMA employee

at the security building—the only HMMA employee Key met during her employment—

gave Key a "Hyundai" badge with her name written on it.  The only HEA employee with

whom Key interacted was Williams.  Williams set the schedule for when Dynamic

personnel were to manage the mailroom according to the basic shift hours provided to her

by HMMA.  Based on this schedule, Dynamic informed Key when she was to report to the

mailroom and paid her according to the number of hours reported.

After Key received her badge, she waited in the security building for Howell to pick her up to begin training.  As she waited, Robinson and Chambliss greeted her.  At that point Key told Robinson and Chambliss for the first time that she was pregnant by handing them a doctor's note that specified Key had no work restrictions.  Robinson later informed Williams about the pregnancy.  About ten to twenty minutes after Key gave the doctor's note to Robinson—who had since returned to the office she shared with Williams—Williams came out of the office, and asked Key, "What's wrong with your hair?" (Doc. 68-12 at 30).  Williams then returned to her office without saying more.  Eventually, Howell met Key, and they began their training.

About an hour into the training, Chambliss retrieved Key from the mailroom to meet with Robinson in her office.  When Key arrived, Williams and Robinson began questioning Key about her hairstyle.  Key explained that she did not change her dreadlock style because the Dynamic handbook only said it had to be neat and groomed, a standard she felt her hair met.  Williams and Robinson responded that while it might comply with Dynamic's personal appearance standard, her hair did not comply with HEA's standard.  Upon Key's request, Williams showed her HEA's appearance standard policy.

Williams told Key that she could only wear her dreadlocks if she wore a hat until she could get her hair styled in the "up-do" manner.  Because Key would have had to return home to retrieve a hat, Robinson instructed her to go home and not return to work that day.  Key never spoke with Williams again after that meeting.  After she left work, Key got in contact with her stylist to schedule a hair appointment for the upcoming weekend.  Also,

after Key left the plant, Robinson called Key to ask when her baby was due and whether her doctor was aware of her job requirements.

After this conversation on the phone, Robinson emailed her superiors at Dynamic. In her email, Robinson outlined various issues she had with Key on her first day of employment. Specifically, she noted that Key had not changed her hair as they had agreed at her interview. Robinson complained that Key, four months into her pregnancy, did not inform her or Chambliss during the interview that she was pregnant. Robinson expressed concern about having a pregnant woman working in the mailroom, where she had to be able to lift up to fifty pounds. Tracy Peoples, Dynamic's Vice President of Operations, responded to Robinson's email, "[I]f the officer they hired is not a fit (because she was pregnant) when they hired her[,] the only way I can see her being removed is if she does not comply with rules and regs regarding hair." (Doc 81-20 at 2).

### E.   Events on August 1, 2017

The next day, on August 1, 2017, Key returned to the Hyundai plant wearing a hat covering her hair. Howell met Key in the morning at the security office to bring her to the mailroom. As they drove to the mailroom, Howell asked Key why she went home early the previous day. Key responded that there was something wrong with her hair and that she did not think she was being treated fairly. Thereafter, Howell informed Williams that Key wanted to see the HMMA handbook to review the hair and appearance policy because Key felt as though she was being discriminated against. Williams notified Robinson and Chambliss about the request to let them "get ahead of" Key's complaint. (Doc. 71-13

at 27). Williams "did not construe [Key's] complaints about hairstyle to be about race." (Doc. 71-14 at 5).

Robinson summoned Key from the mailroom and asked her if she felt discriminated against. Key responded, "[N]o comment." (Doc. 68-12 at 41). Robinson then said that Key should not have asked Williams to see HEA's appearance policy. According to Key, Robinson said "that the Koreans were a different breed of animals and that they send little memos and they don't want African Americans . . . wearing their hair [in dreadlocks] because of the clientele they have." (*Id.*).

Robinson and Williams later conferred about whether to continue Key's assignment at the plant. They concluded that Key should be reassigned to a new site by Dynamic. Williams memorialized this decision in an email sent to Ray Cureton ("Cureton"), Dynamic's District Manager, a white male. In the email, Williams wrote: "I foresee an issue down the road with [Key]. Rather than let it fester I'm asking that she be moved to another site." (Doc. 81-8 at 2). Williams highlighted the following concerns: "After the issue with her hair yesterday she returns this morning with a hat, not necessarily what I thought was appropriate"; Key "asked to see a copy of our policy regarding dreads"; "she didn't bother to speak when she entered our office;" "we hear from our mailroom employee Latunya Howell that [Key] is already stating that she can't lift boxes"; and "she's asking to see a HMMA handbook and that the issue is not about her hair, she is being discriminated against because she is pregnant." (*Id.*). After Williams sent this email, Robinson informed Williams that Key had been sent to Dynamic's off-plant office to meet with Cureton.

When Key first arrived at Dynamic's office, Key informed Cureton about the events that took place at the HMMA plant and submitted a signed, handwritten complaint to Cureton. Specifically, Key's complaint was against "Hyundai," Williams, and Robinson. Key wrote, "I believe that I have been discriminated against on the basis of my current hairstyle (dreadlocks), and also because I told Ms. Gloria Robinson that I was pregnant on Mon., July 31, 2017." (Doc. 75-14 at 2). According to Key, Scavella, Dynamic's Office Manager, sat in on Key's meeting with Cureton and later told her not to file a complaint because, given that she was not called the "n-word," Key was fighting a losing battle and had not really been discriminated against.

At her meeting with Cureton, Key first learned that Dynamic was not going to send her back to the HMMA plant. Cureton told her that Robinson made the request "[b]ecause of [her] hair and something else"; though he said he did not want to get into what the "something else" was at that moment. (Doc. 68-12 at 12). After Key turned in her Hyundai badge, Cureton told her that he would try to send her to another job site when one came available. Key contends that Dynamic never reached out to offer her another assignment, even after she inquired in person on August 8, 2017. Dynamic maintains, however, that it did offer Key other assignments, but they only had available part-time or second or third-shift positions, which Key was unwilling to work. Cureton sent an email to Sherry Spires ("Spires"), Dynamic's Human Resources Coordinator, on August 1, 2017, stating, "I can attempt to reassign Ms. Key to a different site, but I don't think that's advisable at this time, especially if she has to carry through with the stated 'official complaint' of discrimination

10

against Hyundai, Ms. Williams, and Ms. Robinson." (Doc. 75-25 at 26–27).  Moreover, on

August 6, 2017, he asked Spires in another email, "[I]s it advisable to try to move her to a

different site when she is making threats to sue HMMA over the appearance standards?"

(Doc. 75-33 at 25).

## F.   EEOC Procedural History

On August 2, 2017, the day after she submitted her written complaint to Dynamic,

Key visited the U.S. Equal Employment and Opportunity Commission ("EEOC") office.

She followed the instructions of EEOC representatives and filled out an EEOC Intake

Questionnaire.  In the Questionnaire, signed by Key that day, she asserted her belief that

"Hyundai," "Ms. Cassandra Williams, AMCO," and "Ms. Gloria Robinson" discriminated

against her. (Doc. 75-12 at 2, 3).  She listed the HMMA plant address and Ray Cureton at

Dynamic Security as the human resources director of contact.  On the Questionnaire, Key

selected "race," "retaliation," and "pregnancy" as the bases for her claims, writing that

Robinson told her that "the Koreans who own the company didn't want Blks wearing their

hair a certain way." (*Id.* at 3).

Page four of the Questionnaire provided, "If you would like to file a charge of job

discrimination, you must do so . . . within 180 days from the day you knew about the

discrimination . . . . If you want to file a charge, you should check Box 2." (*Id.* at 5).  Key

checked Box 2, which read, "I want to file a charge of discrimination, and I authorize the

EEOC to look into the discrimination I described above.  I understand that the EEOC must

give the employer, union, or employment agency that I accuse of discrimination

information about the charge, including my name." (Doc. 75-12 at 5).  After this box, in the section labeled "PRIVACY ACT STATEMENT," the Questionnaire listed its principal purpose: "This questionnaire may serve as a charge if it meets the elements of a charge." (*Id.*).  Key attached to the Questionnaire details of the events spanning from her interview on July 19, 2017, until her termination on August 1, 2017, indicating that she "wish[ed] to file a charge of discrimination for race and gender, pregnancy discrimination and retaliation due to [her] exercise of protected activity by filing a complaint of discrimination with [her] employer . . . Hyundai (Dynamic Security)." (*Id.* at 6).

The EEOC investigator assigned to Key's case compiled Key's information, prepared a Formal Charge of Discrimination against "Dynamic Security Incorporated" and had Key sign it on August 3, 2017. (Doc. 75-11 at 2).  Dynamic received a copy of this Charge by August 11, 2017.  It then submitted a position statement in opposition to Key's assertions of race and pregnancy discrimination and retaliation.

Over a year later, in October of 2018, a new EEOC investigator assigned to Key's case asked her to sign a separate Charge of Discrimination against HMMA; Key signed the Charge on October 16, 2018.  Key assumed her Intake Questionnaire filed on August 2, 2017, qualified as her Formal Charge against both Dynamic and HMMA, so she thought the 2018 Charge against HMMA was merely a formality.  She also assumed that the EEOC had consolidated her Charges against Dynamic and HMMA, handling both as one case.

The EEOC sent a letter to "HMMA Hyundai" on October 24, 2018, writing:

> Due to administrative error, our staff failed to serve the Notice on Hyundai within ten days.  We received Charging Party's intake questionnaire on

August 3, 2017.  On the intake questionnaire, she indicated her intention to file a Charge of Discrimination against Hyundai.  Consequently, the original filing date will reflect as the date of the Commission's receipt of her original communication, the intake questionnaire.

(Doc. 81-14 at 2).  The EEOC's investigation determined an employment relationship existed between Key and HMMA and recommended a for-cause determination, believing discrimination and retaliation did occur.  Key and HMMA took part in conciliation efforts, but the efforts failed.  The EEOC thereafter "determine[d] that further conciliation efforts would be futile or non-productive," and decided to "not bring a lawsuit against [HMMA]" on Key's behalf. (Doc. 71-10 at 9).  On July 12, 2019, Key received from the EEOC its notice of conciliation failure and her right to sue HMMA.

Key listed the same home address on her Intake Questionnaire and on her two EEOC Charges.  The EEOC gave notice to Dynamic of Key's Charge against it on August 11, 2017, and Dynamic subsequently wrote a position statement in opposition to the Charge.  At her provided home address, Key received from the EEOC a mailed copy of Dynamic's position statement, experiencing no problem in the mailing process.  Additionally, Key received three mailings from the EEOC—one sent on or about June 10, 2019; two sent on or about July 12, 2019—pertaining to her charge against HMMA, again with no problem.  On March 1, 2019, the EEOC mailed to the address provided by Key a Dismissal and Notice of Rights to Sue ("right-to-sue letter") as to her Charge against Dynamic, issuing a "no cause" determination.  The notice stated that if she chose to pursue a civil action against Dynamic under Title VII, then the "lawsuit must be filed within 90 days of [her] receipt of this notice." (Doc. 75-18 at 2).  By March 20, 2019, at the latest, Dynamic received a copy

of Key's right-to-sue letter; the delay was due to Dynamic forwarding mail from a previous address to a new office.

Key, on the other hand, claims she never received the Dynamic right-to-sue letter from the EEOC. The letter was properly addressed, Key had no issues with the mail before or after that time, and she or her husband retrieved mail from the mailbox regularly. According to Key, the first time she saw the Dynamic right-to-sue letter was when Dynamic attached it to its motion to dismiss this lawsuit.

After she undisputedly received her right-to-sue letter as to her Charge against HMMA, Key filed suit in this Court on October 10, 2019, ninety days after the HMMA right-to-sue letter was mailed.

## V. DISCUSSION

### A.    Evidentiary Objections

The Court first addresses Dynamic's motion to strike certain portions of Key's declaration submitted in support of her opposition to summary judgment. (Doc. 88). Dynamic asserts that paragraph twenty-seven of Key's declaration contains her account of statements made by Cureton during an unemployment hearing and statements made by the EEOC in a written rebuttal. Dynamic argues that this paragraph should be stricken because it is not based on personal knowledge, it is conclusory and speculative, it is hearsay, and is not the best evidence. In addition to the objection as to this specific paragraph, Dynamic objects to "all other inadmissible portions of the Plaintiff's Declaration on which she relies to oppose Defendant Dynamic's Motion for Summary Judgment." (*Id.* at 4).

14

First, to the extent Dynamic objects on the basis of hearsay, the Court finds that the statements could be reduced to admissible form at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293–94 (11th Cir. 2012) ("[A] district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form." (citation omitted)).  Further, Dynamic's specific objections to paragraph twenty-seven go more to the weight of the evidence than its admissibility.  Finally, the last "catch-all" objection lacks sufficient clarity, and the Court will not guess as to which portions of the Declaration Dynamic finds "inadmissible."  Accordingly, for good cause, Dynamic's motion to strike (doc. 88) is due to be DENIED.

## B.    Count I – Title VII Pregnancy Discrimination

Key claims that Dynamic and HMMA discriminated against her based on her pregnancy in violation of Title VII.  Title  VII, as amended by the Pregnancy Discrimination Act, prohibits discrimination based on pregnancy, childbirth, or related medical conditions. 42 U.S.C. § 2000e(k) (amending 42 U.S.C. § 2000e-2).  To survive summary judgment on a pregnancy discrimination claim, a plaintiff must provide evidence that the defendant took an adverse employment action against her because of her pregnancy. *See Chapter 7 Tr. v. Gate Gourmet, Inc.*, 683 F.3d 1249, 1254–55 (11th Cir. 2012); *Holland v. Gee*, 677 F.3d 1047, 1054–55 (11th Cir. 2012) ("The analysis for a pregnancy discrimination claim is the same type of analysis used in other Title VII sex discrimination suits." (citation omitted)).

A plaintiff may rely on "either direct or indirect evidence to show that her employer discriminated against her because of her pregnancy." *Chapter 7 Tr.*, 683 F.3d at 1255. Direct evidence is evidence that, if believed, "proves the existence of a fact without inference or presumption." *Id.* (citation omitted). "Indirect evidence is circumstantial evidence." *Id.* (citation omitted). "Discrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent." *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1262 (11th Cir. 2001). Therefore, when evaluating a charge of pregnancy discrimination, courts "must focus on the actual knowledge and actions of the decision-maker." *Walker v. Prudential Prop. and Cas. Ins. Co.*, 286 F.3d 1270, 1274 (11th Cir. 2002).

### 1.   *HMMA*

HMMA asserts that it cannot be found liable for intentional pregnancy discrimination against Key because there is no evidence that it either knew of her pregnancy or took an adverse action against her. To survive a motion for summary judgment, Key must present evidence demonstrating that HMMA actually knew she was pregnant—otherwise it could not be held accountable for acting on that basis. *See Lubetsky v. Applied Card Sys., Inc.*, 296 F.3d 1301, 1306 (11th Cir. 2002) ("[W]hen we evaluate a charge of disparate treatment employment discrimination, we must focus on the actual knowledge and actions of the decision-maker."); *see also Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 580–82 (3d Cir. 1996) (cited approvingly by *Lubetsky*) (holding plaintiff failed to establish a prima facie case of pregnancy discrimination even though she told six

co-workers she was pregnant but could not provide any evidence the defendant decision-maker knew she was pregnant).  Likewise, Key must present evidence that HMMA was the actual decision-maker in her termination. *Walker*, 286 F.3d at 1274.

Key has not presented sufficient evidence that anyone at HMMA knew of Key's pregnancy or was a decision-maker in her termination.  No evidence indicates that Key, HEA, or Dynamic informed an HMMA employee about Key's pregnancy.  Key argues that HMMA is nevertheless liable because Williams' knowledge is imputable to HMMA, and thus "notice to Williams was . . . notice to HMMA." (Doc. 82 at 68).  Key contends that HMMA intentionally discriminated against her due to her pregnancy based on its constructive knowledge of her pregnancy, imputed from Williams, an HEA employee.  The Eleventh Circuit, however, has declined to find discriminatory intent based on constructive notice.

In *Silvera*, for example, the Circuit held that a district court erred by imputing knowledge of one school board member to the board as a whole. 244 F.3d at 1261.  In that case, a school board fired a school employee based on a newly discovered prior arrest. *Id.* at 1256–57.  The fired employee sued the board, claiming that his firing was pretext for race discrimination because one board member was aware of his arrest before the board hired him. *Id.* at 1257.  The district court found a conflict of evidence as to whether the board had knowledge of the arrest, thus calling into question whether the firing was pretextual. *Id.* at 1261.  Because one board member had knowledge of the arrest, the district court "reason[ed] that if the Board constructively knew of" the arrest through imputed

knowledge, then a jury could find that the stated reason for the employee's firing was pretext. *Silvera*, 244 F.3d at 1261–62.

The Circuit in *Silvera* reversed the district court, holding it erred by "simply imputing the knowledge" of one board member to the board as a whole, while there was "no evidence at all that [the one board member] actually told the Board anything about [the employee's] arrest." *Id.* at 1262.  Discrimination, the Circuit held, must be based on "actual knowledge, and real intent, not constructive knowledge and assumed intent." *Id.*

Key maintains that HMMA discriminated against her due to her pregnancy based solely on Williams' knowledge of the pregnancy and Williams' decision to terminate her employment at the HMMA plant.  As the court held in *Silvera*, however, a discrimination claim cannot rely solely on "constructive knowledge and assumed intent," but instead must be based on evidence of *actual* knowledge and intent. 244 F.3d at 1262; *cf. Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 800 (11th Cir. 2000) (declining to impute knowledge to a corporation in a retaliation case because "the fact the employer is a corporation does not relieve a plaintiff of the burden of showing a causal connection between the protected conduct and the decision to take the adverse employment action"); *Pressley v. Haeger*, 977 F.2d 295, 297 (7th Cir. 1992) (stating that "[r]acial discrimination is an intentional wrong.  An empty head means no discrimination.  There is no 'constructive intent,' and constructive knowledge does not show actual intent").  Key fails to present evidence that anyone at HMMA actually knew that Key was pregnant and intended to take an adverse action against her based on that pregnancy.  Therefore, no genuine dispute of

fact remains as to Key's pregnancy discrimination claim against HMMA, and its motion for summary judgment is due to be GRANTED as to Count I.

### 2. *Dynamic*

Dynamic contends that all Key's Title VII claims against it must be dismissed because Key failed to file her complaint in this Court within the prescribed statutory period after receiving her Dynamic right-to-sue letter from the EEOC.  Title VII provides, "Within ninety days after the giving of . . . notice [of dismissal of the charge] a civil action may be brought against the respondent named in the charge . . . by the person claiming to be aggrieved." 42 U.S.C § 2000e-5(f)(1).  When a defendant contests whether the complaint was timely filed, the plaintiff bears the burden of showing she has met the timeliness requirement. *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005); *Green v. Union Foundry Co.*, 281 F.3d 1229, 1233–34 (11th Cir. 2002).  Determinations on when notice was received—and thus the start of the ninety-day limitation period—are to be considered "on a case-by-case basis to fashion a fair and reasonable rule for the circumstances of each case, one that would require plaintiffs to assume some minimum responsibility without conditioning a claimant's right to sue on fortuitous circumstances or events beyond her control." *Kerr*, 427 F.3d at 952 (alternations adopted).

When there is a dispute about when the plaintiff received her right-to-sue letter, the Eleventh Circuit has applied a "presumption of three days for receipt by mail." *Id.* at 953 n.9; *Zillyette v. Cap. One Fin. Corp.*, 179 F.3d 1337, 1342 (11th Cir. 1999).  This presumption, however, "does not apply if the plaintiff can show that receipt of the notice

was delayed 'through no fault of [her] own.'" *Robbins v. Vonage Bus., Inc.*, 819 F. App'x 863, 867 (11th Cir. 2020) (quoting *Lewis v. Conners Steel Co.*, 673 F.2d 1240, 1243 (11th Cir. 1982)).  To establish no fault, a plaintiff must show that she took "reasonable steps to ensure delivery of the notice to [her] current address." *Id.* (quoting *Lewis*, 673 F.2d at 1243); *see also Stallworth v. Wells Fargo Armored Servs. Corp.*, 936 F.2d 522, 524 (11th Cir. 1991) ("[A] plaintiff 'should not be heard to complain' unless the plaintiff has . . . [taken] reasonable steps to ensure delivery of the notice to [her] current address.").

The parties dispute when Key received her right-to-sue letter, but there is no dispute as to when the EEOC mailed the letter:  March 1, 2019.  If the time for Key's Title VII claims against Dynamic began running on March 4, 2019—when Key presumably received her right-to-sue letter as to Dynamic—then Key's Title VII claims against Dynamic are time-barred.  If, however, the time ran from the date that Key received the letter attached to Dynamic's motion to dismiss in this case, then her claims were timely filed with this Court.

On March 1, 2019, the EEOC mailed Key the notice of her right to sue Dynamic.  Given the disputed receipt date, the Circuit's "three-day presumption" applies.  Therefore, unless Key can show delay in receipt was caused through no fault of her own, the Court presumes that she received her right-to-sue letter by March 4, 2019.  Key had ninety days from that date to file a lawsuit in federal court—June 2, 2019.  However, Key did not file suit until October 10, 2019—one hundred and thirty days after the presumed June 2 deadline.  Dynamic argues that Key does not carry her burden to present sufficient evidence

20

that she never received the right-to-sue letter due to no fault of her own within the presumed three days.

Key asserts, on the other hand, that she did not receive the Dynamic right-to-sue letter until it was attached to a filing by Dynamic in this case. She also maintains that she and her husband alone resided, and regularly checked the mailbox, at the address to which the EEOC sent mail. Key further contends that she thought her Charge against Dynamic was consolidated with her Charge against HMMA, and thus was included in the right-to-sue letter as to HMMA. These facts, according to Key, are sufficient evidence to overcome the presumption of timely mailing and receipt.

A similar argument was made, and rejected, in *Kerr.* The parties in *Kerr* disputed the exact date on which the plaintiffs received their right-to-sue letters in the mail, and thus when the clock began ticking on when they could bring a Title VII claim against their employer. 427 F.3d at 951. There was no dispute as to whether the right-to-sue letters were mailed. *Id.* at 951–52. The employer produced evidence that the EEOC followed the same procedures mailing the right-to-sue letters as it did other mailings that had reached the plaintiffs' addresses. *Id.* at 952. Evidence also demonstrated that the defendant employer received a copy of the right-to-sue letters in the mail with no unusual delay. *Id.* The court held that the employer sufficiently raised the "presumption that the notices were properly mailed," and the plaintiffs did not present sufficient evidence to rebut that presumption. *Id.*

The circumstances in this case are similar to the circumstances in *Kerr*, such that they raise a presumption that the EEOC properly mailed notice of Key's right to sue

Dynamic on March 1, 2019. Key received three mailings from the EEOC regarding her charge against HMMA at the same address listed on her Dynamic right-to-sue letter. Additionally, Dynamic provided evidence that it received a copy of the notice on or before March 20, 2022.[3] Key has not identified any evidence demonstrating there may have been a flaw in the mailing procedure. Like the employer in *Kerr*, Dynamic has presented sufficient evidence to "raise a presumption that the notices were properly mailed." 427 F.3d at 952.

Key contends that her sworn testimony that she never received the right-to-sue letter should overcome the three-day presumption of receipt. However, this testimony alone is insufficient to defeat the presumption of proper mailing and receipt within three days. *See Sevillano v. Orange County*, 2021 WL 2431847, at *3 (M.D. Fla. May 26, 2021) (finding self-serving testimony alone not sufficient to defeat the presumption of timely mailing and receipt). Without pointing to specific evidence of who or what could be at fault besides herself, Key fails to present a genuine dispute of fact as to when she received the Dynamic right-to-sue letter.

In *Bloom v. Shinseki*, for example, the only evidence to overcome the presumption of timely receipt was the plaintiff's own declaration that he and his wife did not receive the right-to-sue notices in their mailbox. 2012 WL 4009751, at *4 (M.D. Ala. Sept. 12, 2012). The court found that this declaration alone was insufficient evidence to "demonstrate a

---

[3] The delay in Dynamic's receipt of the mailed copy of Key's right-to-sue letter was due to Dynamic forwarding mail from a previous address to a new office. Even if the ninety-day period began running three days after Dynamic received the letter on March 20, 2019, Key still failed to meet that filing deadline, which would have been June 21, 2019.

22

basis for" finding that the plaintiff never received the notices, "and it [did] not refute the [defendant's] evidence" to the contrary. *Bloom*, 2012 WL 4009751, at *4. Similarly, Key's only evidence to overcome the presumption of proper delivery is her sworn testimony that neither she nor her husband received the notice in their mailbox, though they regularly checked it.

Key bears the burden to present evidence to overcome the three-day presumption of receipt. *Green*, 281 F.3d at 1233–34. There is insufficient evidence in this case that the mail failed to make it to her through "fortuitous circumstances or events beyond her control." *Kerr*, 427 F.3d at 952. The cases cited by Key either were decided at the motion to dismiss stage or had some type of *affirmative evidence* that an event out of the complainant's control occurred to keep her from noticing the right-to-sue letter. *See, e.g.*, *McAllister v. Metro. Transit Auth.*, 2013 WL 4519795, at *1 (E.D.N.Y. Aug. 26, 2013) (occurring at the motion to dismiss stage); *Stallworth*, 936 F.2d at 525 (resting fault with the EEOC for not sending the notice to plaintiff's attorney as directed); *Franks v. Bowman Transp. Co.*, 495 F.2d 398, 404–05 (5th Cir. 1974) (plaintiff's nine-year-old nephew, "through no fault of" plaintiff, "lost the letter"). Key speculates that the problem could lay with the postal service. However, this speculation does constitute evidence giving rise a reasonable inference either that the EEOC did not actually mail the right-to-sue letter or that the letter was never delivered by the postal service. Key, therefore, does not affirmatively demonstrate that her "failure to receive [a right-to-sue] letter was in no way her fault"; thus, "[r]eceipt is presumed." *Kerr*, 427 F.3d at 952.

Because receipt was presumed to be within three days of the March 1, 2019 mailing—March 4, 2019—the last day in which Key could file a Title VII claim against Dynamic for these events was June 2, 2019.  Key fails to overcome this presumption, so her October 10, 2019, Title VII complaint against Dynamic was untimely, and Dynamic's motion for summary judgment is due to be GRANTED as to all Title VII claims against it.

## C.   Counts II and III – Title VII and § 1981 Race Discrimination

Key brings race discrimination claims against Dynamic[4] and HMMA pursuant to Title VII, and against all three defendants pursuant to § 1981.[5]  Title VII prohibits discrimination on the basis of race. 42 U.S.C. § 2000e-2(a)(1).  Section 1981 provides, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a).  In their motions for summary judgment, the Defendants analyze Key's race discrimination claims under the familiar *McDonnell Douglas* burden shifting analysis. *See* 411 U.S. 792 (1973).  They highlight that Key fails to present evidence of a valid comparator, and thus her claims would fail the *McDonnell Douglas* test.

Key argues, however, that the lack of a valid comparator does not doom her claims because *McDonnell Douglas* does not apply in this case.  Instead, she asserts for the first

---

[4]  Because Key's Title VII claims against Dynamic were untimely filed, *see supra*, the only remaining discrimination claim against Dynamic falls under § 1981.  Dynamic's motion for summary judgment as to Key's Title VII race discrimination claim against it is therefore due to be GRANTED.

[5]  Because, as will be discussed, the Court finds that Key cannot survive summary judgment on her race discrimination claims against all three defendants, the Court aggregates its discussion of her claims against individual defendants and refers to Dynamic, HEA, and HMMA in this Part collectively as "the Defendants."

time in her response to summary judgment that this is a mixed motive case, and that *Quigg*

*v. Thomas County School District* should apply because "*McDonnell Douglas* is

inappropriate for evaluating mixed-motive claims." 814 F.3d 1227, 1239 (11th Cir. 2016).[6]

A discrimination claim may survive summary judgment "where both legitimate and

illegitimate reasons motivated the decision." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 93

(2003); *Quigg*, 814 F.3d at 1239.  If a plaintiff alleges such a mixed-motive claim, then

"the court must determine whether the plaintiff has presented sufficient evidence for a

reasonable jury to conclude, by a preponderance of the evidence, that her protected

characteristic was a motivating factor for [an] adverse employment decision." *Quigg*, 814

F.3d at 1239 (alteration adopted) (quotation and citation omitted).  Specifically, courts

assess whether "(1) the defendant took an adverse employment action against the plaintiff;

and (2) a protected characteristic was *a* motivating factor for the defendant's adverse

employment action." *Id.* (emphasis in original) (alteration adopted) (citation omitted).  The

second element requires the plaintiff to demonstrate that she would not have been

terminated if not for her protected characteristic. *See Lewis v. Metro. Atlanta Rapid Transit

Auth.*, 343 F. App'x 450, 455 (11th Cir. 2009).

---

[6] HMMA argues that Key waived her mixed-motive claim because she did not affirmatively plead it in her complaint. (Doc. 85 at 25).  Decisions on waiver in this context have varied. *See, e.g., Price Waterhouse v. Hopkins*, 490 U.S. 228, 247 n.12 (1989) ("Nothing in this opinion should be taken to suggest that a case must be correctly labeled as either a 'pretext' case or a 'mixed-motives' case from the beginning in the District Court."), *superseded by statute on other grounds as recognized by Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1017 (2020); *Robinson v. Alexander City*, 2021 WL 4134054, at \*6 (M.D. Ala. Sept. 10, 2021) (finding waiver where plaintiff did not plead a mixed-motive claim or put the defendants on notice during the discovery process of a claim under that theory, which "highlight[s] the problem with parties failing to plainly articulate the nature of their claims in their complaints").  The Court does not reach the question of waiver because Key's claims fail on the merits.

25

Even if *McDonnell Douglas* did apply in this case, Key argues that it "is not, and never was intended to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment discrimination case." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011); (Doc. 82 at 72). Rather than rely on the more stringent *McDonnell Douglas* burden shifting analysis, Key asserts that her race discrimination claim survives summary judgment based on a convincing mosaic of discrimination. Indeed, Key analyzes her race discrimination claims under the less demanding convincing mosaic theory, and so the Court does the same.[7]

A plaintiff can "survive summary judgment by presenting 'circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent.'" *Jenkins v. Nell*, 26 F.4th 1243, 1250 (11th Cir. 2022) (quoting *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011)). There remains a genuine dispute of fact "if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Id.* (citation omitted). A plaintiff establishes a "convincing mosaic" by pointing to evidence demonstrating, among other things, "(1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, (2) systematically better treatment of similarly situated employees, and (3) pretext." *Id.* (quotations and citation omitted).

---

[7] Key provides her convincing mosaic argument also in support of her mixed-motive theory. Therefore, the Court will address her convincing mosaic argument, understanding that its analysis applies also to her argument for a mixed-motive theory.

Key argues that she presents sufficient evidence to establish a convincing mosaic of discrimination from which a reasonable jury could infer discrimination.  Specifically, she claims this mosaic includes the following circumstantial evidence:  (1) HEA's appearance standard was not applied uniformly, (2) the Defendants permitted at least two other black employees to wear dreadlocks that were "styled," indicating Key's dreadlocks were problematic because they were worn naturally; (3) the Defendants authorized Key to wear dreadlocks if she styled them differently from their natural appearance by putting them in a bun or covering them with a hat so that the dreadlocks were not visible; (4) the intention of the appearance standard was to prevent black persons from wearing their hair in natural dreadlocks; and (5) the appearance standard was not applied to all races because there is no evidence that a white employee attempted to wear dreadlocks.

This circumstantial evidence, however, does not demonstrate a convincing mosaic of racial discrimination.  To Key's first three pieces of the mosaic, evidence that HEA's appearance standard was not applied uniformly because other employees were permitted to wear dreadlocks actually strikes against her convincing mosaic theory.  The other employees permitted to wear dreadlocks here were also black.  The only distinguishing factors that Key identifies between herself and these employees is that she wore her dreadlocks at shoulder length, while they wore dreadlocks pulled up in a tight bun, in keeping with HEA's appearance standard.  This evidence does not reasonably lead to an inference that the Defendants engaged in disparate enforcement based on racial animus.  Rather, it reveals that Williams and Robinson took issue with Key's dreadlocks due to the

27

style in which she wore her dreadlocks, which was not in keeping with HEA's facially race-neutral appearance policy. *Cf. Willingham v. Macon Tel. Publ'g Co.*, 507 F.2d 1084, 1092 (5th Cir. 1975)[8] (holding a grooming policy based on "something other than immutable or protected characteristics do not inhibit employment opportunity").

Simply because dreadlocks were permitted in a tight bun does not raise the inference that HEA's appearance standard was being enforced in a racially discriminatory manner. Absent evidence of discriminatory application of restrictions on dreadlocks, the Eleventh Circuit treats race neutral no-dreadlocks grooming policies as nondiscriminatory. *E.E.O.C. v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1030 (11th Cir. 2016). The court in *Catastrophe Management* held that dreadlocks are a hairstyle, not "an immutable characteristic of race," even though they "are a 'natural outgrowth' of the texture of black hair." *Id.*

Key contends that her style of dreadlocks was racially targeted due to their natural, un-styled appearance, as opposed to the permitted "styled" dreadlocks worn by two other black employees. This argument reveals, however, that Key's dreadlocks—which the Eleventh Circuit holds is a style in which one wears her hair, not an immutable characteristic—were not styled in as professional a manner as were the other two employees' dreadlocks. *Cf. Willingham*, 507 F.2d at 1092. These pieces of evidence, therefore, do not support the inference that Williams and Robinson disapproved of Key's

---

[8]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981.

dreadlocks based on intentional race discrimination. *See Catastrophe Mgmt. Sols.*, 852 F.3d at 1030 (rejecting plaintiff's argument that a race-neutral grooming policy to prohibit dreadlocks, without evidence of racially discriminatory application, constitutes intentional race discrimination).[9]

To her fourth piece of the mosaic, Key presents evidence that Robinson told her "that the Koreans were a different breed of animals and that they send little memos and they don't want African Americans . . . wearing their hair [in dreadlocks] because of the clientele they have." (Doc. 68-12 at 41).  Robinson, however, denies ever making this statement, and the only evidentiary support for the memos from unidentified "Koreans" is Key's own testimony as to Robinson's statement.  No documentary evidence corroborating this claim was ever submitted.

The Defendants argue that Key's testimony about Robinson's comment cannot be considered as part of a convincing mosaic because it is inadmissible hearsay.  Even if Key's testimony on this point could be reduced to admissible form at trial, it could not support an inference on which a reasonable jury could find a convincing mosaic of intentional race discrimination.  Absent evidence of unequal application of the appearance standard on the basis of race in this situation, Key fails to show that the statement, even if it was made,

---

[9] Key claims, without evidentiary support from the record, that HEA's appearance standard was not race neutral because it "require[ed] Key to chemically treat her hair." (Doc. 82 at 71).  As HMMA points out, however, there is nothing in the record to suggest that any Defendant had a grooming policy in which Key was forced to chemically treat her hair to comply. (Doc. 58 at 13).  The record indicates that Key's dreadlocks, worn at shoulder-length at the time of her interview, did not comply with HEA's appearance standard, and when Key showed Williams a style in which she could wear her dreadlocks pulled up in a tight bun, Williams agreed that the style in the photo was acceptable under HEA's standard.  Nothing from this evidence implies that Key was *required* to chemically treat her hair to comply.

reveals intentional racial animus.  Even when viewed in the light most favorable to Key, her factual showing does not create a triable claim of race discrimination.

To the fifth and final piece of evidence, Key contends that it is mere speculation and conjecture that the appearance standard was applied race-neutrally because the Defendants cannot point to any white employee that attempted to wear dreadlocks.  Key, however, bears the burden of weaving a convincing mosaic of intentional race discrimination, and she has offered no evidence that the Defendants have permitted a white person to wear dreadlocks but prohibited a black person from doing so.  To infer racial animus from this lack of evidence would relieve Key of her burden to present sufficient evidence from which a reasonable jury could find intentional race discrimination. *See Holland*, 677 F.3d at 1056 (noting plaintiff bears the burden to establish a "reasonable inference that the employer engaged in the alleged discrimination" (quoting *Smith*, 644 F.3d at 1326)); *cf. Catastrophe Mgmt. Sols.*, 852 F.3d at 1030 (holding that being "historically, physiologically, and culturally associated with [a black person's] race . . . does not make [dreadlocks] an immutable characteristic of race" such that a no-dreadlock grooming policy in and of itself is racially discriminatory).  That no white employee has attempted to wear dreadlocks is insufficient to transform a race-neutral appearance standard into evidence of intentional discrimination, particularly where there is evidence that black employees were permitted to wear dreadlocks in professional styles.

Viewing the evidence in the light most favorable to Key, the Court concludes that Key's circumstantial evidence does not present questions of material fact as to intentional

race discrimination in enforcing an appearance standard sufficient to submit those claims to a jury.  Key has not carried her "ultimate burden" of demonstrating that a "trier of fact" could reasonably be persuaded that the Defendants "intentionally discriminated against [her]" under either a convincing mosaic theory or a mixed-motive theory. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004), *abrogated on other grounds by Lewis v. City of Union City*, 918 F.3d 1213 (11th Cir. 2019) (en banc).  Thus, no genuine dispute of material fact remains as to Key's race discrimination claims, and summary judgment on these claims is warranted.

### D.      Counts IV and V – Title VII and § 1981 Race Retaliation

Key brings retaliation claims against Dynamic and HMMA pursuant to Title VII, and against all three defendants pursuant to § 1981.  She maintains that all three defendants fired her in retaliation for filing a complaint about race discrimination.  Retaliation claims brought under § 1981 are analyzed under the same framework as their Title VII counterparts, and they therefore are subject to the *McDonnell Douglas* burden-shifting analysis. *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc).[10]

A prima facie case of retaliation requires a plaintiff to show that (1) "she engaged in statutorily protected activity," (2) "she suffered an adverse action," and (3) "the adverse action was causally related to the protected activity." *Id.* (citation omitted).  Statutory

---

[10]  The Court addresses Key's § 1981 race retaliation claims with the understanding that the same analytic framework applies to her Title VII race retaliation claims.

protections are not limited to those who file formal complaints; they also extend to those who voice informal complaints "to their superiors or who use their employers' internal grievance procedures." *Rollins v. State of Fla. Dep't of Law Enf't*, 868 F.2d 397, 400 (11th Cir. 1989) (per curiam).

A plaintiff can show that she engaged in a statutorily protected activity if her complaint "explicitly or implicitly communicate[s] a belief that the practice constitutes unlawful employment discrimination." *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1311 (11th Cir. 2016) (citation omitted).  A plaintiff must show that she "had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Id.* (citing *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)).  Her burden includes both a subjective and an objective component—"[t]hat is, the plaintiff must not only show that she subjectively (i.e., in good faith) believed the defendant was engaged in unlawful employment practices, but also that her belief was *objectively* reasonable in light of the facts and record present." *Id.* (emphasis in original) (quotations and citation omitted).  The plaintiff, however, "is not required to prove that the discriminatory conduct complained of was actually unlawful" for the retaliation claim to succeed. *Id.*  The conduct need only "be close enough to support an objectively reasonable belief that it is." *Id.* (citation omitted).  Whether the offensive conduct is "close enough" to an unlawful employment practice is "measured by reference to controlling substantive law" at that time. *Id.*

A materially adverse employment action is an action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quotations and citation omitted).

To satisfy the final element of a prima facie retaliation claim, "a plaintiff must show that the relevant decisionmaker was aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." *Patterson v. Ga. Pac., LLC*, 38 F.4th 1336, 1351 (11th Cir. 2022) (citation omitted). A plaintiff generally satisfies the causal link element if she can present circumstantial evidence of "close temporal proximity between" the protected activity and the adverse employment action. *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1295 (11th Cir. 2021).

When the plaintiff establishes a prima facie case of retaliation, there is a "presumption that the adverse action was the product of an intent to retaliate." *Bryant v. Jones*, 575 F.3d 1281, 1308 (11th Cir. 2009). The burden then shifts to the employer to rebut this presumption by "articulating a legitimate, non-[retaliatory] reason for the employment action." *Gogel*, 967 F.3d at 1135. If the employer successfully does so, then the burden shifts back to the plaintiff to demonstrate that the "proffered reason was merely a pretext to mask [retaliatory] actions." *Bryant*, 575 F.3d at 1308. It is at this crucial stage that the plaintiff must establish but-for causation: she must demonstrate that her "protected activity was a but-for cause of the alleged adverse action by the employer," *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013), or, in other words, she must show that

she would not have been fired if she had not engaged in the protected activity. *Gogel*, 967 F.3d at 1135. The burden of persuasion remains on the employee throughout. *Id.*

### 1.   *Dynamic*[11]

Dynamic argues that Key did not engage in a statutorily protected activity and that, if she had, there was no causal relationship between her complaint about discrimination and her being fired for wearing her hair in dreadlocks. Key's burden to establish a prima facie case against Dynamic "is not [an] onerous" one. *Furcron*, 843 F.3d at 1312 (quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)).

### a.   **Statutorily Protected Activity**

Key asserts that her written complaint submitted to Cureton at Dynamic's office on the afternoon of August 1, 2017, satisfied the first element of her prima facie race retaliation claim. To satisfy this first element, the workplace conduct at issue must not "be viewed in isolation, but rather it is to be viewed cumulatively, and in its social context." *Id.* (citation omitted).

Key complained that she felt discriminated against, in part, "on the basis of [her] current hairstyle (dreadlocks)." (Doc. 75-14 at 2). She made this complaint just hours after Robinson allegedly told her that "the Koreans" "send little memos and they don't want African Americans . . . wearing their hair [in dreadlocks]." (Doc. 68-12 at 41). Taking Key's complaint about being discriminated based on her dreadlocks "in its social

---

[11] As with Key's other Title VII claims against Dynamic, which were untimely filed, *see supra*, the only remaining retaliation claim against Dynamic falls under § 1981. Dynamic's motion for summary judgment as to Key's Title VII race retaliation claim (Count IV) against it is therefore due to be GRANTED.

context"—with its temporal proximity to the alleged statement about how "the Koreans" do not want "African Americans" wearing dreadlocks—a reasonable jury could find that Key reasonably believed such a complaint was about race discrimination. *See Furcron*, 843 F.3d at 1312.

The proximity of Robinson's alleged statement about "Koreans" not liking "African Americans" wearing their hair in dreadlocks demonstrates that there is a question of fact as to whether Key had both a subjective and objective good faith belief that her employers were "engag[ing] in unlawful employment practices." *Id.* at 1311 (citation omitted). A reasonable jury could find that this fact permits a complainant to both subjectively and objectively believe that complaining about discrimination due to her dreadlocks was the functional equivalent of complaining about race discrimination. Thus, Key's complaint about discrimination due to her dreadlocks, based on the context of Robinson's alleged statement, could have been a statutorily protected activity. *See Martin v. Fin. Asset Mgmt. Sys., Inc.*, 959 F.3d 1048, 1053 n.3 (11th Cir. 2020) ("[Section] 1981 prohibits employers from retaliating against employees for complaining about race discrimination."); *see also Bryant*, 575 F.3d at 1309.

Dynamic argues that Key's complaint was not objectively reasonable given Eleventh Circuit precedent at the time. The Circuit in *Catastrophe Management* held that a no-dreadlock grooming policy was a permissible race-neutral grooming policy, not a proxy for race discrimination. 852 F.3d at 1030. So long as a grooming policy that

prohibits dreadlocks is applied "even handedly," the grooming policy is considered race-neutral and not discriminatory. *Catastrophe Mgmt.*, 852 F.3d at 1032–33 (citation omitted).

There is evidence, however, that Key's discrimination complaint to Cureton was not based on the policy itself, but on the *application* of the policy. Key's complaint specified that she felt discriminated against based on her dreadlocks. This alone may not ordinarily suffice. However, Key filed this complaint after Robinson allegedly made a statement about "the Koreans" not wanting "*African Americans*" to wear their hair in dreadlocks.[12] It would be reasonable, in this context, for Key to believe that the dreadlock prohibition was a race-based policy. Because Key could have believed the policy was not applied "even-handedly," as it was in *Catastrophe Management*, she also could have reasonably believed that complaining about discrimination based on dreadlocks was equivalent to complaining about race discrimination. *See id.* A reasonable jury could find that Key engaged in a protected activity when she complained to Cureton. *Knox v. Roper Pump Co.*, 957 F.3d 1237, 1245 (11th Cir. 2020) ("It is undisputed that [a] complaint of racial discrimination was a protected activity.").

---

[12] Even if Key's testimony as to Robinson's comment could not be reduced to admissible evidence to prove the Defendants' intentional *discrimination*, it is admissible as part of Key's retaliation claim. Rather than proving the truth of the matter asserted, the statement could evidence Key's state of mind when she made her complaint to Cureton, which is relevant to the first element of her retaliation claim. *See United States v. Jeri*, 869 F.3d 1247, 1261 (11th Cir. 2017) (holding that "before a statement that would otherwise be inadmissible hearsay can be admitted under 803(3) to show the declarant's then existing state of mind, the declarant's state of mind must be a relevant issue in the case" (quotations and citation omitted)). Whether Robinson, in fact, made the statement is a question of fact for the jury.

### b.      Adverse Employment Action

Key presents evidence that, following her complaint of race discrimination to Cureton, Dynamic never reached out to offer a new employment assignment, effectively terminating her employment with Dynamic.  Termination certainly satisfies the low "well might have dissuaded" standard for Key's retaliation claim. *See White*, 548 U.S. at 68.  Key therefore presents sufficient evidence to meet the adverse action element of her prima facie race retaliation claim.

### c.      Causal Connection

Key has presented sufficient evidence to raise a question of fact as to a causal connection between her protected activity and the alleged adverse employment action. There was a close temporal proximity between Dynamic's knowledge of Key's race discrimination complaint to Cureton and the adverse employment action it took against her.  Cureton and Scavella could have reasonably believed that Key's complaint about being "discriminated against on the basis of [her] current hairstyle (dreadlocks), (doc. 75-14 at 2), was equivalent to a race discrimination complaint.  Indeed, there is evidence that Dynamic understood Key's complaint to encompass a race discrimination claim. According to Key, Scavella advised her not to file a complaint because, given that she was not called the "n-word," Key was fighting a losing battle and had not really been discriminated against.  Moreover, by August 11, 2017, Dynamic knew that Key filed an EEOC Charge against Dynamic for, in part, "race discrimination." (*See* Doc. 68-3, 27).  In its September 1, 2017, position statement on this Charge, Dynamic stated: "[I]t did not

discriminate or retaliate in any way against [Key] on the basis of her race, her sex, or on any other basis." (Doc. 81-13 at 2).

Key presents evidence that after her complaint to Cureton and after her Formal Charge filed against Dynamic with the EEOC, Dynamic never offered her another assignment.  Moreover, on August 1, 2017, Cureton wrote an email to Dynamic human resources, saying, "I can attempt to reassign Ms. Key to a different site, but I don't think that's advisable at this time, especially if she has to carry through with the stated 'official complaint' of discrimination against Hyundai, Ms. Williams, and Ms. Robinson." (Doc. 75-25 at 26–27).  This email demonstrates that Dynamic was aware of Key's complaint and that the decision to take an adverse employment action occurred very soon thereafter. *See Tolar*, 997 F.3d at 1295.  Therefore, Key satisfies this element of her prima facie case.

### d.      Legitimate, Nonretaliatory Reasons

Because Key has established a prima facie case of retaliation, the burden now shifts to Dynamic to produce legitimate, nonretaliatory reasons for its actions. *See id.* at 1289. Dynamic contends that it offered Key other employment opportunities, but that she refused to take any further job due to her unwillingness to work part-time, or second or third shifts. Key, however, offers contradictory evidence demonstrating she was never offered any more assignments from Dynamic, and that she indicated to Dynamic that she would be willing to work any shift.

At the summary judgment stage, the Court must construe the evidence in the light most favorable to Key.  There is a dispute of fact as to whether Key was offered further

employment from Dynamic.  Therefore, the "presumption that the adverse action was the product of an intent to retaliate" remains unrebutted. *Bryant*, 575 F.3d at 1308.  Key has presented sufficient evidence to raise a genuine dispute of fact as to her § 1981 race retaliation claim against Dynamic, and Dynamic's motion for summary judgment on Count V is due to be DENIED.

   2.   *HEA*[13]

   HEA does not dispute that Key suffered an adverse action in the form of termination from her work at the HMMA plant, but it does argue that she did not engage in a statutorily protected activity and that, if she had, there was no causal relationship between her complaint about discrimination and her being fired for wearing her hair in dreadlocks.

   At issue in Key's retaliation claim against HEA is the complaint she voiced to Howell the morning of August 1, 2017, which was then brought to the attention of Williams.  Key told Howell that she felt discriminated against because she was "being treated unfairly because of [her] hair." (Doc. 68-12 at 40).  After Robinson confronted Key about whether she felt discriminated against, Robinson and Williams concurred that Key should be reassigned to a new site.  Williams memorialized this decision to terminate her assignment at the Hyundai plant in an email to Cureton at 8:50 a.m. on August 1, 2017.  Williams' decision to terminate Key came after her first complaint voiced to Howell but before her written complaint submitted to Cureton at the Dynamic office.

---

[13] The Court previously dismissed Key's Title VII race retaliation claim against HEA, *see Key*, 2021 WL 3909663, at *5, and so only a § 1981 race retaliation claim remains as to HEA.

While Key's race retaliation claim against *Dynamic* satisfies the "objective reasonableness" prong of her statutorily protected activity prima facie element, Key cannot meet this prong in her claim against *HEA*. Key fails to produce evidence that the complaint she made to Howell the morning of August 1, 2017, reasonably referenced unlawful race discrimination. Regardless of whether Key had a good faith subjective belief that complaining about HEA's appearance standard was a complaint about race discrimination, there was no objective basis at that point for her to believe the policy was racially discriminatory. *See Furcron*, 843 F.3d at 1311. The context of Key's complaint to HEA is different from the context of her complaint to Dynamic. When Key complained to Dynamic about discrimination based on her dreadlocks, she had allegedly been told by Robinson that "the Koreans" did not like "African Americans" wearing their hair in dreadlocks. A reasonable jury could find that, in this context, Key's complaint related to race discrimination. There was no such context in Key's earlier complaint to Howell, which was then communicated to HEA. Prior to Robinson's alleged comments, when Key made her complaint to Howell, there was no evidence that Key reasonably believed the appearance standard was being applied disparately to black persons.

The Eleventh Circuit makes it clear that if offensive conduct is not unlawfully discriminatory, opposing that conduct does not constitute protected activity. *See, e.g.*, *Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1214 (11th Cir. 2008) ("Where binding precedent squarely holds that particular conduct is not an unlawful employment practice by the employer, and no decision of this Court or of the Supreme Court has called that

precedent into question or undermined its reasoning, an employee's contrary belief that the practice is unlawful is unreasonable."); *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1317 (11th Cir. 2002) ("Finally, the plaintiffs may not stand on their ignorance of the substantive law to argue that their belief was reasonable.  As we have stated previously, '[i]f the plaintiffs are free to disclaim knowledge of the substantive law, the reasonableness inquiry becomes no more than speculation regarding their subjective knowledge.'" (citation omitted)).

At the time of Key's employment in this case, the Eleventh Circuit held that a race-neutral grooming policy that prohibited wearing dreadlocks is not racially discriminatory on its face. *See Catastrophe Mgmt.*, 852 F.3d at 1035 (rejecting the argument that a no-dreadlock policy on its face is a proxy for intentional race discrimination, so long as the grooming policy is applied race-neutrally); *cf. Willingham*, 507 F.2d at 1091 (holding that men and women could be subject to different grooming standards because length of hair was "related more closely to the employer's choice of how to run his business than to equality of employment opportunity," and both sexes were subject to grooming policies); *Harper*, 139 F.3d at 1387, 1389 (according to precedent established in *Willingham*, "plaintiffs could not have had an objectively reasonable belief that [defendant] . . . discriminated against them on the basis of their sex" when they complained about a "grooming policy that prohibited men, but not women, from wearing long hair").

Key fails to provide sufficient evidence that she knew or thought the policy was applied in a racially disparate manner when she complained to Howell, and thus she had

no objective belief that she engaged in a protected activity.  Therefore, Key fails to show that her complaint was "a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Furcron*, 843 F.3d at 1311 (citation omitted). Additionally, Williams did not perceive Key's "complaints about hairstyle to be about race." (Doc. 71-14 at 5).  So, there could be no causal link between Key's purported protected activity and termination. *See Patterson*, 38 F.4th at 1351 (holding "a plaintiff must show that the relevant decisionmaker was aware of the protected conduct").  Key therefore fails to meet the first element of her prima facie race retaliation claim against HEA, and no genuine dispute of fact remains as to her § 1981 race relation claim against HEA; its motion for summary judgment is due to be GRANTED regarding Count V.

### 3. *HMMA*

Key asserts that HMMA retaliated against her in violation of Title VII and § 1981 because Williams, acting as HMMA's agent, terminated Key's employment at the plant after she complained about race discrimination.  Even if Williams acted as HMMA's agent, any race retaliation claim against HMMA fails because Key cannot make out a prima facie retaliation case based on Williams' knowledge alone.  As discussed above, because there was no objectively reasonable basis for Key to believe that her complaint voiced to Howell the morning of August 1, 2017—the only complaint that Williams knew about—was a statutorily protected activity, she cannot make out a prima facie retaliation case based on Williams' knowledge alone.  Indeed, Williams' knowledge of her first complaint is the only basis on which Key seeks to hold HMMA liable for retaliation.  Therefore, Key fails

to create a genuine dispute of fact as to a prima facie retaliation case against HMMA as well as HEA, and HMMA's motion for summary judgment is due to be GRANTED as to Counts IV and V.

## VI.  CONCLUSION

Accordingly, and for good cause, it is

ORDERED that:

1)   Dynamic's motion to strike the declaration of Davita Key (doc. 88) is DENIED;

2)   HMMA's motion for summary judgment (doc. 66) is GRANTED, and all Plaintiff's claims against HMMA are DISMISSED;

3)   HEA's motion for summary judgment (doc. 69) is GRANTED, and all Plaintiff's claims against HEA are DISMISSED;

4)   Dynamic's motion for summary judgment (doc. 73) is GRANTED, to the extent that Plaintiff's Counts I, II, III, and IV are DISMISSED as to Dynamic; and

5)   Dynamic's motion for summary judgment (doc. 73) is DENIED in all other respects.

Done this 10th day of February, 2023.


          /s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE

43

Docket / Tab # 186

Order and Judgment from Jury Verdict

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DAVITA M. KEY,                          )
                                        )
          Plaintiff,                    )
                                        )
     v.                                 )     CIVIL CASE NO. 2:19-cv-767-ECM
                                        )
DYNAMIC SECURITY, INC.                  )
                                        )
          Defendant.                    )

**ORDER AND JUDGMENT**

On March 29, 2023, after this case had been presented to a jury, a verdict was

returned as follows:

**41 U.S.C. § 1981 RETALIATION CLAIM**

Do you find from a preponderance of the evidence:

1.   That Davita M. Key engaged in protected activity?

     a.  Answer:  <u>Yes</u>

     If your answer is "No," this ends your deliberations, and your foreperson
     should sign and date the last page of this verdict form.  If your answer is
     "Yes," go to the next question.

2.   That Dynamic Security, Inc. took an adverse employment action against
     Davita M. Key?

     a.  Answer:  <u>Yes</u>

     If your answer is "No," this ends your deliberations, and your foreperson
     should sign and date the last page of this verdict form.  If your answer is
     "Yes," go to the next question.

3.      That Dynamic Security, Inc. took the adverse employment action because of Davita M. Key's protected activity?

    a.  Answer:  <u>Yes</u>

If your answer is "No," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form.  If your answer is "Yes," go to the next question.

4.      That Davita M. Key suffered damages because of the adverse employment action?

    a.  Answer:  <u>Yes</u>

If your answer is "No," this ends your deliberations, and your foreperson should sign and date the last page of this verdict form.  If your answer is "Yes," then go to the next question.

5.      That Davita M. Key should be awarded damages to compensate for a net loss of wages and benefits to the date of your verdict?

    a.  Answer:  <u>Yes</u>

    b.  If your answer is "Yes," in what amount?  $ <u>85,200.00</u>

6.      That Davita M. Key should be awarded damages to compensate for emotional pain and mental anguish?

    a.  Answer:  <u>Yes</u>

    b.  If your answer is "Yes," in what amount?  $ <u>214,864.00</u>

If you did not award damages in response to either Question Nos. 5 or 6, this will end your deliberations, and your foreperson should go to the end of this verdict form to sign and date it.  If you awarded damages in response to Question Nos. 5 or 6 (or both), go to the next question.

7.      That punitive damages should be assessed against Dynamic Security, Inc.?

    a.  Answer:  <u>Yes</u>

    b.  If your answer is "Yes," in what amount?  $ <u>511,200.00</u>

2

SO SAY WE ALL, this the <u>29th</u> day of March, 2023.

 /s/  William L. Gallahair
Foreperson's Signature

It is, therefore, the ORDER, JUDGMENT, and DECREE of the Court, based on the jury verdict, that judgment is entered in favor of the Plaintiff Davita M. Key and against the Defendant Dynamic Security, Inc. as follows:

1.      Compensatory damages in the amount of $300,064.00

2.      Punitive damages in the amount of $511,200.00

3.      Costs are taxed against the Defendant for which execution may issue.

The Clerk of the Court is DIRECTED to enter this as a Final Judgment pursuant to Federal Rule of Civil Procedure 58.

DONE this 30th day of March, 2023.

 /s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE

Docket / Tab # 213

Memorandum Opinion and Order
as to post-trial motions

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DAVITA M. KEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL CASE NO. 2:19-cv-767-ECM |
| | ) | (WO) |
| DYNAMIC SECURITY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION and BACKGROUND**

Now pending before the Court is Plaintiff Davita M. Key's ("Key") motion for equitable relief of reinstatement and prejudgment interest. (Doc. 193). For the reasons that follow, the motion is due to be GRANTED, in part, as to prejudgment interest and DENIED, in part, as to reinstatement.

This case arises out of Key's two-day employment as a security guard assigned to a position at a Hyundai car manufacturing plant through Defendant Dynamic Security, Inc. ("Dynamic"), a temporary employment agency. Key claimed sex discrimination, race discrimination, and retaliation against Dynamic and two Hyundai defendants. The only claim to survive summary judgment, however, was her race retaliation claim brought against Dynamic pursuant to 42 U.S.C. § 1981. Accordingly, Key's retaliation claim was the sole claim in the Court's pretrial order. (Doc. 178 at 2).

At trial on this claim, Key presented evidence that Gloria Robinson ("Robinson"), an employee working for one of the Hyundai defendants, told her that the Koreans[1] sent memos about how they do not like African Americans wearing their hair in dreadlocks. Because of this comment, Key testified that she felt there was a hair policy specifically targeting African Americans, which constituted race discrimination. Based on that belief, Key complained to Dynamic's district manager, Ray Cureton ("Cureton"), that she felt Hyundai discriminated against her based on her hairstyle (dreadlocks). Key was subsequently removed from her position at the Hyundai plant.

Key also testified that she filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") soon after being removed from the plant, which detailed, among other claims, a claim of race discrimination based on Robinson's comment. The jury heard evidence that Dynamic received this Charge of Discrimination about a week later. The jury also saw an email conversation between Cureton and Dynamic's human resources director, Sherry Spires ("Spires"), about whether to place Key at another temporary position while her Charge of Discrimination was pending. Key testified that Dynamic never offered her another position, effectively terminating her employment.

Ultimately, the jury returned a verdict in favor of Key on her retaliation claim, awarding her $85,200 for net lost wages and benefits ("back pay"), $214,864 for emotional pain and mental anguish, and $511,200 for punitive damages. The Court

---

[1] Hyundai is a company based in South Korea. Throughout testimony and evidentiary materials in this case, individuals refer to Hyundai upper-level management as "the Koreans." (*See, e.g.*, doc. 68-12 at 41).

2

entered final judgment in accordance with the jury verdict.   After the entry of final judgment, Key moved for equitable relief of reinstatement and prejudgment interest. (Doc. 193).

## II.  LEGAL STANDARD

As both parties have acknowledged, the award of prejudgment interest is within the discretion of the Court. *Tucker v. Hous. Auth. of Birmingham Dist.*, 507 F. Supp. 2d 1240, 1281 (N.D. Ala. 2006), *aff'd*, 229 F. App'x 820 (11th Cir. 2007) (citing *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1448 (11th Cir. 1985)); (doc. 193 at 2); (doc. 207 at 2).[2]   Specifically, such an award is meant to adjust back pay in a manner that accounts for inflation and the present-day value of income in the absence of the offending conduct which resulted in adverse employment action.   Thus, courts factor in considerations such as mitigation of damages or whether back pay was readily ascertainable. *See Tucker*, 507 F. Supp. 2d at 1284.

Similarly, reinstatement or, in the alternative, front pay are equitable remedies available to be fashioned as the Court finds appropriate. *Id.* at 1281–82.  As it relates to wrongful discharge cases, however, the Eleventh Circuit follows a presumption of reinstatement in the absence of "special circumstances warranting the denial of equitable relief." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1338 (11th Cir. 1999) (quoting *Williams v. City of Valdosta*, 689 F.2d 964, 977 (11th Cir. 1982)).  Notably, a

---

[2] The Court here, and elsewhere in the opinion, cites to non-binding authority.   While the Court recognizes that these cases are not precedential, the Court finds them persuasive.

trial court must "carefully articulate its reasons for awarding front pay rather than reinstatement," if it chooses to do so. *Id.* at 1339.

## III. DISCUSSION

### A.   Reinstatement

In her motion, Key seeks reinstatement to her employment with Dynamic in a full-time, first-shift position, paying at least $13 an hour, within a forty-five-mile area of Montgomery, Alabama. (Doc. 193 at 5).  Dynamic, in its response, agrees to place Key in "any position that it has available that fits this criter[ion]," while also noting the difficulties in carrying out such a reinstatement. (Doc. 207 at 6).  For these reasons, and the ones discussed below, the Court finds reinstatement and front pay to be inappropriate in this case.

At bottom, reinstatement is meant to make a victorious plaintiff whole. *See Farley*, 197 F.3d at 1338–39.  Here, Key acknowledges that she ended up in a higher paying job, which is in the educational field associated with her master's degree. (Doc. 210 at 6). Additionally, the job to which she seeks reinstatement is, in reality, a series of temporary jobs subject to the whims of clients who contract with Dynamic.  This reality is the basis of Dynamic's concerns about reinstating Key to a position that inherently has gaps in employment and pay. (*See* doc. 207 at 6–7).  Thus, Key's previous position at Dynamic would not offer the stability and economic benefits tied to the teaching job obtained by Key following her effective termination from Dynamic.

Accordingly, the Court finds that reinstatement and front pay would be inequitable in light of the special circumstances of this case, as recounted above and in the parties' briefs.  Further, the Court specifically finds that the remedies previously ordered, and are due to be ordered, will make Key whole in the absence of reinstatement or front pay. Therefore, Key's motion is due to be DENIED with respect to reinstatement.

## B.   Prejudgment Interest

Key also moves for prejudgment interest on her back pay award. (Doc. 193 at 1). As previously discussed, prejudgment interest is squarely within the Court's sound discretion. *Tucker*, 507 F. Supp. 2d at 1281.  Moreover, the manner and method of such prejudgment interest is in the Court's province. *See id.* at 1283–84.

The parties dispute both the equities of prejudgment interest and, if the Court finds it to be appropriate, the manner in which prejudgment interest should be calculated.  Key urges the Court to utilize a methodology applying the Internal Revenue Service's ("IRS") prime rates compounded quarterly.  While Dynamic cites to case law utilizing another method of calculating prejudgment interest, such a case appears to this Court to be an outlier. (*See* doc. 207 at 5–6 (citing *Mock v. Bell Helicopter Textron, Inc.*, 2007 WL 2774230 (M.D. Fla. Sept. 24, 2007), *aff'd*, 313 F. App'x 279 (11th Cir. 2009)).  Indeed, Eleventh Circuit case law indicates that the methodology utilizing IRS prime rates, as implemented by the National Labor Relations Board, is the gold standard of prejudgment interest calculations as it best captures economic realities. *See E.E.O.C. v. Guardian Pools, Inc.*, 828 F.2d 1507, 1512 (11th Cir. 1987); *McKelvy v. Metal Container Corp.*,

854 F.2d 448, 453 (11th Cir. 1988); *Tucker*, 507 F. Supp. 2d at 1284. Further, such a model is best suited towards being compounded quarterly. *See Darnell v. City of Jasper, Ala.*, 730 F.2d 653, 656–57 (11th Cir. 1984). And typically, interest accrues from the date of the wrongful act until the entry of final judgement. *See Garner v. G.D. Searle Pharms. & Co.*, 2013 WL 568871, at *6 (M.D. Ala. Feb. 14, 2013).

In this case, the back pay amounts are readily accessible as Key testified to such at trial, and the jury largely agreed with these amounts in reaching its verdict. Additionally, the Court finds the IRS prime rate methodology compounded quarterly to be the fair and just method of calculating Key's prejudgment interest. To that end, the Court largely adopts the calculations attached to Key's motion (doc. 193-1 at 2) with the caveat that the "net lost wages" column totals an amount greater than the amount awarded by the jury. Further, the Court utilized the IRS quarterly interest rates published by the U.S. Office of Personnel Management.[3] Accordingly, the Court adjusted the figures to account for the aforementioned discrepancy and provide Key the award granted by the jury. The revised Back Wages Chart is attached to this order.

Therefore, for the reasons stated and for good cause, it is

ORDERED that Key's motion (doc. 193) is GRANTED, in part, as to prejudgment interest and DENIED, in part, as to reinstatement. It is further

---

[3] These rates are maintained for the convenience of federal agencies and appear accurate to the Court. U.S. OFF. OF PERSONNEL MGMT., FACT SHEET: INTEREST RATES USED FOR COMPUTATION OF BACK PAY (2024), https://www.opm.gov/policy-data-oversight/pay-leave/pay-administration/fact-sheets/interest-rates-used-for-computation-of-back-pay/ (noting that the chart provides IRS quarterly interest rates used to compute back pay).

ORDERED that prejudgment interest on Key's back pay award shall be paid in accordance with the chart appended to this order.

Done this 14th day of March, 2024.

_____/s/ Emily C. Marks_____
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE

# APPENDIX A: KEY'S BACK PAY and
# PREJUDGMENT INTEREST CALCULATIONS

| | | | | | | | Office of Personnel Management Annual Interest Rate | Quarterly Interest | Amount of Interest | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | **Back Wages Chart for Key** | | | | | |
| | | | | | Back Wages Chart for Key through Verdict with IRS Prime Rate Interest | | | | | |
| Year | Quarter | Base Wage | Interim (Mitigating) Earnings | Adjustment to Reconcile with Jury Award | Net Lost Wages | Accumulated Principal | | | | |
| 2017 | 3 | $4,680.00 | $          - | $          663.73 | $ 4,016.27 | $ 4,016.27 | 4% | 1.00% | $ 40.16 | $ 4,056.43 |
| 2017 | 4 | $6,760.00 | $          - | $          - | $ 6,760.00 | $ 10,816.43 | 4% | 1.00% | $ 108.16 | $ 10,924.60 |
| 2018 | 1 | $6,760.00 | $          - | $          - | $ 6,760.00 | $ 17,684.60 | 4% | 1.00% | $ 176.85 | $ 17,861.44 |
| 2018 | 2 | $6,760.00 | $          - | $          - | $ 6,760.00 | $ 24,621.44 | 5% | 1.25% | $ 307.77 | $ 24,929.21 |
| 2018 | 3 | $6,760.00 | $          - | $          - | $ 6,760.00 | $ 31,689.21 | 5% | 1.25% | $ 396.12 | $ 32,085.33 |
| 2018 | 4 | $6,760.00 | $    3,958.98 | $          - | $ 2,801.02 | $ 34,886.35 | 5% | 1.25% | $ 436.08 | $ 35,322.43 |
| 2019 | 1 | $6,760.00 | $    2,090.07 | $          - | $ 4,669.93 | $ 39,992.36 | 6% | 1.50% | $ 599.89 | $ 40,592.24 |
| 2019 | 2 | $6,760.00 | $    2,090.07 | $          - | $ 4,669.93 | $ 45,262.17 | 6% | 1.50% | $ 678.93 | $ 45,941.10 |
| 2019 | 3 | $6,760.00 | $    2,090.07 | $          - | $ 4,669.93 | $ 50,611.03 | 5% | 1.25% | $ 632.64 | $ 51,243.67 |
| 2019 | 4 | $6,760.00 | $    2,090.70 | $          - | $ 4,669.30 | $ 55,912.97 | 5% | 1.25% | $ 698.91 | $ 56,611.88 |
| 2020 | 1 | $6,760.00 | $    2,219.49 | $          - | $ 4,540.51 | $ 61,152.39 | 5% | 1.25% | $ 764.40 | $ 61,916.80 |
| 2020 | 2 | $6,760.00 | $    2,219.49 | $          - | $ 4,540.51 | $ 66,457.31 | 5% | 1.25% | $ 830.72 | $ 67,288.02 |
| 2020 | 3 | $6,760.00 | $    2,219.49 | $          - | $ 4,540.51 | $ 71,828.53 | 3% | 0.75% | $ 538.71 | $ 72,367.25 |
| 2020 | 4 | $6,760.00 | $    2,219.49 | $          - | $ 4,540.51 | $ 76,907.76 | 3% | 0.75% | $ 576.81 | $ 77,484.57 |
| 2021 | 1 | $6,760.00 | $    3,619.20 | $          - | $ 3,140.80 | $ 80,625.37 | 3% | 0.75% | $ 604.69 | $ 81,230.06 |
| 2021 | 2 | $6,760.00 | $    3,619.20 | $          - | $ 3,140.80 | $ 84,370.86 | 3% | 0.75% | $ 632.78 | $ 85,003.64 |
| 2021 | 3 | $6,760.00 | $    4,408.95 | $          - | $ 2,351.05 | $ 87,354.69 | 3% | 0.75% | $ 655.16 | $ 88,009.85 |
| 2021 | 4 | $6,760.00 | $    4,803.69 | $          - | $ 1,956.31 | $ 89,966.16 | 3% | 0.75% | $ 674.75 | $ 90,640.90 |
| 2022 | 1 | $6,760.00 | $    4,803.69 | $          - | $ 1,956.31 | $ 92,597.21 | 3% | 0.75% | $ 694.48 | $ 93,291.69 |
| 2022 | 2 | $6,760.00 | $    4,803.69 | $          - | $ 1,956.31 | $ 95,248.00 | 4% | 1.00% | $ 952.48 | $ 96,200.48 |
| 2022 | 3 | $6,760.00 | $    8,934.57 | $          - | $          - | $ 96,200.48 | 5% | 1.25% | $ 1,202.51 | $ 97,402.99 |
| 2022 | 4 | $6,760.00 | $  11,000.00 | $          - | $          - | $ 97,402.99 | 6% | 1.50% | $ 1,461.04 | $ 98,864.04 |
| 2023 | 1 | $6,760.00 | $  11,000.00 | $          - | $          - | $ 98,864.04 | 7% | 1.75% | $ 1,730.12 | $ 100,594.16 |
| | | | | | **$ 85,200.00** | | | | | |
| | | | | | | | | | **Final Backpay Amount, Inclusive of Prejudgment Interest** | **$ 100,594.16** |

Docket / Tab # 221

Notice of Appeal
By Davita Key

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DAVITA M. KEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:19-CV-767-ECM |
| | ) | |
| HYUNDAI MOTOR | ) | |
| MANUFACTURING, ALABAMA, | ) | |
| LLC; HYUNDAI ENG AMERICA, | ) | |
| INC.; and DYNAMIC SECURITY, | ) | |
| INC. | ) | |
| | ) | |
| Defendants. | ) | |

## <u>NOTICE OF APPEAL</u>

COMES NOW Davita Key, Plaintiff in the above-named case, by and through her undersigned counsel of record and hereby appeals to the United States Court of Appeals for the Eleventh Circuit from the Court's Order dated February 10, 2023, Granting Summary Judgment in full to Defendant HMMA and Defendant HEA and partially to Defendant Dynamic (Doc. 138); the Court's Order dated August 31, 2021 partially Granting Defendant HEA's Motion to Dismiss as to all Title VII claims (Doc. 38); and from all other interlocutory orders or rulings affecting her rights entered by the Court prior to the entry of the final judgment. Plaintiff also appeals the Taxation of Costs entered on April 13, 2023 for Defendants HEA and HMMA (Docs. 191, 192).

Judgment on the jury verdict was entered on March 30, 2023. (Doc. 186). Plaintiff filed a post judgment Motion for Equitable Relief of Reinstatement and Interest on April 25, 2023 (Doc. 193) which was disposed of by the court's Order dated March 14, 2024. (Doc. 213). Dynamic Security filed post judgment motions seeking to alter, amend or vacate the judgment, or in the alternative for a new trial under Rules 59 and 60 on April 26, 2023 (Doc. 197) which were disposed of by the court's Order dated March 11, 2024 (Doc. 212). Dynamic security filed a Notice of Appeal on April 5, 2024 (Doc. 217). Plaintiff's Notice of Appeal is filed within 14 days of the filing of Dynamic Security's Notice of Appeal. Fed. R. App. P. 4(a)(3) and within thirty (30) days of the Order disposing of the last of the timely-filed post-judgment motions. Fed. R. App. P. 4(a)(4)(A)

|  |  |
|---|---|
|  | Respectfully submitted, |
|  | Attorneys for Plaintiff |
|  | */s/ Heather Leonard* |
|  | Heather Newsom Leonard |
| OF COUNSEL: |  |
| Heather Leonard, P.C. |  |
| 2105 Devereaux Cir., Suite 111 |  |
| Birmingham, AL 35243 |  |
| Phone: (205) 977-5421 |  |
| heather@heatherleonardpc.com |  |
|  |  |
|  | */s/ Leslie A. Palmer.* |
|  | Leslie A. Palmer |
| OF COUNSEL: |  |
| Palmer Law, LLC |  |
| 104 23rd Street South, Suite 100 |  |
| Birmingham, AL 35233 |  |

| (205) 285-3050 | |
|---|---|
| leslie@palmerlegalservices.com | |

## **Certificate of Service**

I certify that I have filed the foregoing on the Court's CM/ECF filing system which will provide notice to all counsel of record on this 10th day of April, 2024.

Wesley C. Redmond
Susan W. Bullock
FordHarrison LLC
420 20th Street North, Suite 2560
Birmingham, AL 35203
wredmond@fordharrison.com
sbullock@fordharrison.com
Phone: (205) 244-5905
Counsel for Dynamic Security, Inc.

David J. Middlebrooks
Whitney R. Brown
Lehr Middlebrooks Vreeland & Thompson, P.C.
PO Box 11945
Birmingham, AL 35202
dmiddlebrooks@lehrmiddlebrooks.com
wbrown@lehrmiddlebrooks.com
Phone: (205) 326-3002
Counsel for Hyundai Motor Manufacturing Alabama, LLC

T. Matthew Miller
Cortlin Bond
Bradley, Arant, Boult Cummings, LLP
One Federal Place
1819 5th Avenue North
Birmingham, AL 35203
mmiller@bradley.com
cbond@bradley.com
Phone: (205) 521-8000
Counsel for Hyundai ENG America, Inc.

*/s/ Leslie A. Palmer*
OF COUNSEL

Docket / Tab # B

CERTIFICATE OF SERVICE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 5, 2024, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system, which will send

notification of such filing to the following:

Counsel for Hyundai Motor Manufacturing Alabama, LLC ("HMMA")
David Middle Brooks
Whitney Ryan Brown
Lehr Middlebrooks Vreeland & Thompson, P.C.
dmiddlebrooks@lehrmiddlebrooks.com
wbrown@lehrmiddlebrooks.com

Counsel for Hyundai ENG America, Inc. ("HEA")
Matthew T. Miller
Sarahanne Vaughn
Scott Burnett Smith
Bradley Arant Boult Cummings, LLP
mmiller@bradley.com
svaughan@bradley.com
ssmith@bradley.com

Counsel for Dynamic Security, Inc.
Wesley C. Redmond
Susan W. Bullock
FordHarrison, LLP
wredmond@fordharrison.com
sbullock@fordharrison.com

Counsel for the EEOC as Amicus
Georgina Yeomans
Equal Employment Opportunity Commission
Georgina.yeomans@eeoc.gov