No. 24-11126-GG

**In the
United States Court of Appeals
for the Eleventh Circuit**

◆

DAVITA KEY,

*Appellant,*

v.

HYUNDAI MOTOR MANUFACTURING ALABAMA, LLC
HYUNDAI ENG AMERICA, INC., AND
DYNAMIC SECURITY, INC.,

*Appellees.*

◆

On Appeal from the United States District Court
for the Middle District of Alabama
Case No. 2:19-cv-0767-ECM

◆

**APPELLEE HYUNDAI ENG AMERICA, INC.'S
BRIEF**

◆

T. Matthew Miller                          Scott Burnett Smith
Sarahanne Vaughan                          Schyler B. Burney
BRADLEY ARANT BOULT CUMMINGS LLP           BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place                          200 Clinton Avenue West, Suite 900
1819 Fifth Avenue North                    Huntsville, Alabama 35801
Birmingham, Alabama 35203                  (256) 517-5198
(205) 521-8000                             ssmith@bradley.com
mmiler@bradley.com                         sburney@bradley.com
svaughan@bradley.com

*Attorneys for Appellee Hyundai ENG America, Inc.*

*Key v. Hyundai Motor Manufacturing Ala., LLC, et al.*

No. 24-11126-GG

### CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-3, Appellee Hyundai ENG America, Inc. provides the following:

Bae, Yurie Yeoul, Attorney for Appellee Hyundai ENG America, Inc.

Bond, Cortlin, Attorney for Appellee Hyundai ENG America, Inc.

Bradley Arant Boult Cummings, LLP, Counsel for Appellee Hyundai ENG America, Inc.

Brown, Whitney R., Attorney for Appellee Hyundai Motor Manufacturing of Alabama, LLC

Bullock, Susan W., Attorney for Appellee Dynamic Security, Inc.

Burney, Schyler B., Attorney for Appellee Hyundai ENG America, Inc.

Company Australia PTY Ltd., affiliate of Appellee Hyundai ENG America, Inc.

Construtora Egestao de Projetos Ltda., affiliate of Appellee Hyundai ENG America, Inc.

DeWeese & Bae, LLC, Counsel for Appellee Hyundai ENG America, Inc.

DeWeese, Richard Leon, Attorney for Appellee Hyundai ENG America, Inc.

C-1 of 5

*Key v. Hyundai Motor Manufacturing Ala., LLC, et al.*

No. 24-11126-GG

Doyle, The Honorable Stephen M., United States Magistrate Judge for the Middle District of Alabama

Dynamic Security, Inc., Appellee

FordHarrison, LLP, Counsel for Appellee Dynamic Security, Inc.

Galing Power & Energy Construction Co. Inc., affiliate of Appellee Hyundai ENG America, Inc

Heather Leonard, PC, Counsel for Appellant

HEC India LLP, affiliate of Appellee Hyundai ENG America, Inc

Hyundai ENG America, Inc., Appellee

Hyundai Engineering Brasil, affiliate of Appellee Hyundai ENG America, Inc.

Hyundai Engineering Chennai Private Ltd., affiliate of Appellee Hyundai ENG America, Inc

Hyundai Engineering Co., (not publicly traded),

Hyundai Engineering Co., Ltd. is the parent company of Hyundai ENG America, Inc. (not publicly traded)

Hyundai Engineering Czech S.R.O., affiliate of Appellee Hyundai ENG America, Inc.

*Key v. Hyundai Motor Manufacturing Ala., LLC, et al.*

No. 24-11126-GG

Hyundai Engineering Deutschland GMBH, affiliate of Appellee Hyundai ENG America, Inc.

Hyundai Engineering India Private Limited, affiliate of Appellee Hyundai ENG America, Inc.

Hyundai Engineering Insaat Turizm, affiliate of Appellee Hyundai ENG America, Inc.

Hyundai Engineering Malaysia SDN BHD, affiliate of Appellee Hyundai ENG America, Inc.

Hyundai Engineering Mexico, S. DE R.L. DE C.V., affiliate of Appellee Hyundai ENG America, Inc.

Hyundai Engineering Pakistan (Private) Limited, affiliate of Appellee Hyundai ENG America, Inc.

Hyundai Engineering Poland S. Zoo, affiliate of Appellee Hyundai ENG America, Inc.

Hyundai Engineering RUS L.L.C., affiliate of Appellee Hyundai ENG America, Inc.

Hyundai Engineering Singapore PTE. Ltd., affiliate of Appellee Hyundai ENG America, Inc.

Hyundai Engineering Slovakia S.R.O.

*Key v. Hyundai Motor Manufacturing Ala., LLC, et al.*

No. 24-11126-GG

Hyundai Engineering, affiliate of Appellee Hyundai ENG America, Inc.

Hyundai Hyundai Engineering China (Beijing) Co. Ltd., affiliate of Appellee Hyundai ENG America, Inc.

Hyundai Motor America, Single member of Appellee Hyundai Motor Manufacturing of Alabama, LLC.

Hyundai Motor Company, Ltd. (HYMTF, OTC U.S. Stock Market Ticker)[1], Parent of Hyundai Motor America

Hyundai Motor Manufacturing of Alabama, LLC, Appellee

Hyunen Canada Ltd., affiliate of Appellee Hyundai ENG America, Inc.

Indonesia Facility Management, affiliate of Appellee Hyundai ENG America, Inc.

Key, Davita M., Appellant

Lehr Middlebrooks Vreeland & Thompson, PC, Counsel for Appellee Hyundai Motor Manufacturing of Alabama, LLC

Leonard, Heather Newsom, Attorney for Appellant

Marks, The Honorable Emily C., United States District Court Judge

Middlebrooks, David J., Attorney for Appellee Hyundai Motor

---

[1] Hyundai Motor Company, Ltd. is publicly traded on the Korean Stock Exchange.

*Key v. Hyundai Motor Manufacturing Ala., LLC, et al.*

No. 24-11126-GG

Manufacturing of Alabama, LLC

Miller, T. Matthew, Attorney for Appellee Hyundai ENG America, Inc.

Palmer Law, LLC, Counsel for Appellant

Palmer, Leslie A., Attorney for Appellant

Pt. Hein Global Utama, affiliate of Appellee Hyundai ENG America, Inc.

PT. Hyundai Engineering SSA, affiliate of Appellee Hyundai ENG America, Inc.

Pt. Hyundai Engineering, affiliate of Appellee Hyundai ENG America, Inc.

Redmond, Wesley C., Attorney for Appellee Dynamic Security, Inc.

Rizhao Amco Property Service Co., Ltd., affiliate of Appellee Hyundai ENG America, Inc.

Sanayi ve Ticaret Limited Sirketi, affiliate of Appellee Hyundai ENG America, Inc.

Smith, Scott Burnett, Attorney for Appellee Hyundai ENG America, Inc.

Vaughan, Sarahanne Young, Attorney for Appellee Hyundai ENG America, Inc.

Yundai Engineering India Private Limited, affiliate of Appellee Hyundai ENG America, Inc.

STATEMENT REGARDING ORAL ARGUMENT

This is an employment discrimination case. Plaintiff Davita Key is an African American female. She worked at the Hyundai plant in Montgomery, Alabama for 3.25 hours over 2 days in 2017. Her paycheck, after taxes, was $1.76. She was fired because she refused to comply with a grooming policy prohibiting dreadlocks. The two managers involved were both African American females. Key was also replaced by an African American female.

Key filed an EEOC charge against her employer, Dynamic Security, a security contractor at the plant. She later filed another EEOC charge against Appellee Hyundai Motor Manufacturing, the entity who runs the plant. She never filed a charge against Appellee Hyundai Engineering America, a subcontracted service provider who, in turn, contracted with Dynamic Security to provide security personnel at the plant. Neither Hyundai Manufacturing nor Hyundai Engineering was Key's employer. Key sued Dynamic Security, Hyundai Manufacturing, and Hyundai Engineering under Title VII and § 1981 for discrimination and retaliation.

The District Court dismissed Key's Title VII claims against Hyundai Engineering because she didn't file an EEOC charge against it. The District Court

i

later granted summary judgment for Hyundai Manufacturing and Hyundai Engineering on the remaining claims. The court held Key's race discrimination claim failed for lack of evidence of intentional discrimination in enforcing a grooming policy. The court found no actionable retaliation claim because (1) Key only complained to Hyundai Engineering about the grooming policy, not race, and (2) a complaint about hairstyle does not concern an immutable racial trait and thus cannot support a § 1981 retaliation claim.

Key's retaliation claim against Dynamic Security was tried to a jury. The jury reached a verdict in her favor and awarded her over $800,000 in compensatory and punitive damages. Dynamic Security appealed the final judgment in a separate appeal, No. 24-11069. Key cross-appealed the dismissal and summary judgment against all her other claims in this appeal, No. 24-11126. It is unclear what relief she seeks in her cross-appeal. Her other claims against Dynamic Security merged into the judgment. RESTATEMENT (SECOND) OF JUDGMENTS §§ 18 & 24 (1982). There is no point reviving the claims against Hyundai Manufacturing and Hyundai Engineering because she cannot recover more against them than she recovered against her employer at trial. *Id.* § 49 cmt. a & illus. 1; *id.* § 50.

Oral argument is not necessary. Key's cross-appeal turns on the factbound application of established law. This Court's precedent is settled on the two legal issues presented. A grooming policy against dreadlocks is not racially discriminatory. *Equal Emp. Opportunity Comm'n v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1030 (11th Cir. 2016), *en banc reh'g denied*, 876 F.3d 1273 (11th Cir. 2017). And a complaint about a grooming policy is not protected conduct sufficient to support a valid retaliation claim. *Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1388–89 (11th Cir. 1998). The Court should affirm the District Court's dismissal and summary judgment rulings without argument.

## TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement.................C-1

Statement Regarding Oral Argument......................................................................... i

Table of Authorities................................................................................................ vi

Statement of Jurisdiction........................................................................................ ix

Statement of the Issues............................................................................................1

      A.    Statement of Facts. ........................................................................ 2

           1.    Dynamic Security was Key's only employer. ...........................2

           2.    The grooming policy against Key's dreadlocks. .......................4

           3.    Key's job interview.................................................................5

           4.    Key's 2 days on the job..........................................................6

      B.    Course of proceedings. .................................................................. 8

      C.    Standard of Review. .................................................................... 12

Summary of the Argument.....................................................................................14

Argument...............................................................................................................15

I.     The District Court Properly Granted Hyundai Engineering's Motion to
      Dismiss...........................................................................................................15

      A.    Key failed to exhaust her administrative remedies against
           Hyundai Engineering............................................................... 15

      B.    Key failed to plausibly allege an employment relationship with
           Hyundai Engineering............................................................... 19

      C.    Key failed to plausibly allege her disparate impact claims................ 21

II.    The District Court Properly Granted Hyundai Engineering's Motion
      for Summary Judgment on Key's §1981 Claims. .........................................22

iv

A.    Key cannot establish race discrimination under either the *McDonnell Douglas* or convincing mosaic standard. ........................ 23

B.    Key cannot establish race retaliation................................................. 26

Conclusion ...........................................................................................................29

Certificate of Service ..........................................................................................31

Certificate of Compliance ...................................................................................32

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Armstrong v. Flowers Hosp., Inc.*,
    33 F.3d 1308 (11th Cir. 1994) ........................................................22

*Butler v. Ala. Dept. Transp.*,
    536 F.3d 1209 (11th Cir. 2008) ....................................................28

*Comcast Corp. v. Nat. Assoc. of African American-Owned Media*,
    140 S.Ct. 1009 (2020) ...................................................................23

\* *Equal Emp't Opportunity Comm'n v. Catastrophe Mgmt. Sols.*,,
    852 F.3d 1018 (11th Cir. 2016), *en banc reh'g denied*, 876 F.3d 1273
    (11th Cir. 2017)........................................................ iii, 11, 14, 25–27

*Furcron v. Mail Ctrs. Plus, LLC*,
    843 F.3d 1295 (11th Cir. 2016) ....................................................28

*Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*,
    458 U.S. 375 (1982)......................................................................22

*Gogel v. Kia Motors Mfg. of Ga., Inc.*,
    967 F.3d 1121 (11th Cir. 2020) (en banc) ....................................26

\* *Harper v. Blockbuster Entm't*,
    139 F.3d 1385 (11th Cir. 1998) ...................................... iii, 11, 14, 27

*Haves v. City of Miami*,
    52 F.3d 918 (11th Cir. 1995) ........................................................12

*Horn v. United Parcel Servs., Inc.*,
    433 F. App'x 788 (11th Cir. 2011). ..............................................24

*Jenkins v. Nell*,
    26 F.4th 1243 (11th Cir. 2022) .....................................................24

*Lanfear v. Home Depot*,
    679 F.3d 1267 (11th Cir. 2012) ....................................................12

*Lewis v. Asplundh Tree Expert Co.*,
  402 F. App'x 454 (11th Cir. 2010) ............................................................17–19

*Lewis v. City of Union City, Ga.*,
  918 F.3d 1213 (11th Cir. 2019) (en banc) ...................................23–24

*Lyes v.City of Rivera Beach*,
  166 F.3d 1332 (11th Cir. 1999) ...................................................................20

*Mach Mining, LLC v. Equal Emp't Opportunity Comm'n*,
  575 U.S. 480 (2015)....................................................................................15, 18

*Martinez-Rivera v. Commonwealth of Puerto Rico*,
  812 F.3d 69 (1st Cir. 2016).......................................................................15

*McClure v. Oasis Outsourcing II, Inc.*,
  674 F. App'x 873 (11th Cir. 2016) ...................................................17

*McCreight v. AuburnBank*,
  117 F.4th 1322 (11th Cir. 2024) .....................................................17

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973)....................................................................................23

*Miller v. Chicago Transit Authority*,
  20 F.4th 1148 (7th Cir. 2021) .......................................................27

*Patterson v. Georgia Pacific, LLC*,
  38 F.4th 1136 (11th Cir. 2022) ....................................................28

*Peppers v. Cobb Cnty., Georgia*,
  835 F.3d 1289 (11th Cir. 2016) ...................................................20–21

*Shields v. Fort James Corp.*,
  305 F.3d 1280 (11th Cir. 2002) ...................................................23

*Spivey v. Beverly Enters, Inc.*,
  196 F.3d 1309 (11th Cir. 1999) ...................................................22

*Stanley v. City of Sanford, Fla.*,
  83 F.4th 1333 (11th Cir. 2023) ....................................................27

vii

*Tamayo v. Blagojevich*,
  526 F.3d 1074 (7th Cir. 2008) ..............................................................18

*Virgo v. Riviera Beach Assocs.*,
  30 F.3d 1350 (11th Cir. 1994) ......................................................15–17

*Willingham v. Macon Tel. Publ'g*,
  507 F.2d 1084 (5th Cir. 1975) (en banc) ......................................11, 25

*Wright v. City of St. Petersburg, Fla.*,
  833 F.3d 1291 (11th Cir. 2016) ...........................................................13

**Statutes**

42 U.S.C. § 1981 ..........................................i–ii, 1, 9–12, 22–23, 26, 29

42 U.S.C. § 2000e-2 ..............................................................................19

42 U.S.C. § 2000e-5 ..................................................................15, 19–20

**Other Authorities**

FED. R. APP. P. 4 .....................................................................................ix

FED. R. CIV. P. 54 ...................................................................................ix

10 MOORE'S FEDERAL PRACTICE 3D § 54.25[5] (2024) ...........................ix

RESTATEMENT (SECOND) OF JUDGMENTS § 18 (1982) ............................ ii

RESTATEMENT (SECOND) OF JUDGMENTS § 24 (1982) ............................ ii

RESTATEMENT (SECOND) OF JUDGMENTS § 49 (1982) ............................ ii

RESTATEMENT (SECOND) OF JUDGMENTS § 50 (1982) ............................ ii

**STATEMENT OF JURISDICTION**

Key's cross-appeal arises from two interlocutory rulings. The District Court dismissed Key's Title VII claims against Hyundai Engineering on a motion to dismiss. R-39. The court later granted summary judgment on the remaining claims against Hyundai Engineering and Hyundai Manufacturing. R-138. Key did not move for certification of a judgment against those two defendants under Federal Rule of Civil Procedure 54(b). So the District Court's grant of dismissal and summary judgment merged into the final judgment. 10 MOORE'S FEDERAL PRACTICE 3D § 54.25[5] (2024) (citing *Aaro v. Daiwoo Int'l*, 755 F.2d 1398, 1400 (11th Cir. 1985)).

The District Court entered a $811,264 judgment on the jury's verdict in Key's favor on March 30, 2023. R-186. Both Key and Dynamic Security filed timely post-judgment motions on April 25 and 26, 2023. R-193; R-197. Those motions postponed the time for filing an appeal. *See* FED. R. APP. P. 4(a)(4)(A). The District Court ruled on the post-judgment motions on March 11 and 14, 2024. R-212; R-213. Dynamic Security timely appealed the final judgment on April 5, 2024. R-217. Key timely cross-appealed the dismissal and summary judgment rulings on April 10, 2024. R-221. *See generally* FED. R. APP. P. 4(a)(3).

ix

**STATEMENT OF THE ISSUES**

1.      A prerequisite to a Title VII lawsuit is the filing of an EEOC charge naming the employer who allegedly committed an unlawful employment practice. The District Court dismissed Key's Title VII claims against Hyundai Engineering because Key did not name it in the EEOC charge. Did the District Court err in dismissing the Title VII claims against Hyundai Engineering for lack of administrative exhaustion?


2.      An actionable 42 U.S.C. § 1981 claim for discrimination or retaliation requires the plaintiff establish she was discriminated based on her race. The District Court granted summary judgment because Key failed to prove Hyundai Engineering had discriminatory intent in enforcing the race-neutral grooming policy. The court further held Key failed prove her retaliation claim because she complained only about hair and this Court's settled precedent holds (1) rules governing hairstyles are not racially discriminatory and (2) any protest that such rules are illegal cannot be objectively reasonable. Did the District Court err in granting summary judgment on the § 1981 claims for Hyundai Engineering?

1

## STATEMENT OF THE CASE

### A.    Statement of Facts.

#### 1.    Dynamic Security was Key's only employer.

Key's 2 days of employment at the Hyundai plaint in Montgomery involved 3 different companies. All but 1 of the people involved in Key's 2 days at work were African American.

Dynamic Security was Key's only employer. She applied for a job with Dynamic Security. R-71(2)-29–30.[1] Dynamic Security interviewed and hired her. R-71(1)-8–9 at 18:13–22:12; R-71(2)-32–33. It trained her. R-71(2)-32–33. It assigned her to work in the mail room. R-71(1)-13–14 at 40:18–41:8. It paid her. R-71(1)-10 at 27:18–28:4. Her Dynamic Security paycheck for 3.25 hours was $1.76, net after tax withholding. R-71(2)-31. Dynamic Security terminated her from the mail room. R-71(1)-14 at 41:24–43:3; R-71(1)-47 at 174:6–25. And when Key applied for unemployment benefits, she named Dynamic Security as her employer. R-71(1)-14 at 44:7–12; R-71(3)-3. The 3 Dynamic Security employees directly involved in Key's employment were Gloria Robinson (who hired her),

---

[1] Hyundai Engineering's citations use the following format: R-_(_)-_. The first blank refers to the ECF docket number. The second blank, in parentheses, refers to the attachment number, if any. The third blank provides the pinpoint cite for that document, referencing the CM/ECF page number.

Maurice Chambliss (her immediate supervisor), and LaTonya Howell (who trained her), all African American. R-68(5)-3 at ¶ 14; R-71(1)-8 at 18:15–24; R-71(1)-9 at 23:10–13; R-71(1)-11 at 31:8–23; R-71(1)-12 at 35:24–25; R-71(1)-13 at 37:14–17. Dynamic Security's office manager (African American) and district manager (White) took Key's formal discrimination complaint on her last day of work. R-71(1)-12 at 33:1–25 and 34:23–35:23.

Hyundai Manufacturing runs the manufacturing facility. Key admitted she never applied for a job with Hyundai Manufacturing. R-71(1)-10 at 26:5–7. No Hyundai Manufacturing employee was involved in any way in Key's employment. R-71(1)-22 at 75:1–15; R-71(13)-12 at 35:14–17; R-71(13)-40 at 146:8–13. It thus had no notice of her race, her complaints, or her termination. R-138-16–19.

Hyundai Manufacturing contracted with Hyundai Engineering to receive security and other services at Hyundai Manufacturing's Montgomery location. R-71(13)-7 at 14:13–19, 15:9–14; R-71(14)-2 at ¶ 2. Hyundai Engineering, in turn, contracted with Dynamic Security to provide security personnel. *See* R-71(14)-4 at ¶ 7. Key admitted she never applied for a job with Hyundai Engineering. R-71(1)-10 at 26:2–4. Only 1 Hyundai Engineering employee was directly involved in

Key's employment, Cassandra Williams, who is African American. R-71(1)-13 at 37:16–17.

### 2.     The grooming policy against Key's dreadlocks.

Dynamic Security employees assigned to the Hyundai plant were expected to comply with a grooming policy. R-71(3)-5–7; R-71(14)-4 at ¶¶ 6–7. The policy states that "[h]airstyles must present a professional appearance" and that "[d]reads or dreadlocks" hairstyles "are prohibited" for men and women. R-71(13)-82–83. The policy includes a list of other restrictions, regarding hair color, length, and ability to fit inside work-required headgear. *Id.* Cassandra Williams, Hyundai Engineering's manager, wrote the policy based on a prior Hyundai Manufacturing version. *See* R-71(13)-13 at 39:11–22; R-71(13)-15 at 45:5–46:21; R-71(14)-3 at ¶ 3.

Williams enforced the grooming policy evenhandedly. She recalled at least one White candidate with dreadlocks who was not acceptable. R-71(14)-4–5 at ¶¶ 6, 8. Williams testified that she would have taken issue (as an African American) had the policy been directed only towards African American people. R-71(13)-40 at 147:2–9.

4

Key styles her hair in dreadlocks. R-71(11)-20–22 (photographs). Key testified that she started her dreadlocks when she was 18. R-71(1)-64 at 243:7–24. She conceded that Whites can also style their hair in dreadlocks. R-71(1)-67 at 254:12–22.

### 3.    Key's job interview.

In mid-July 2017, Dynamic Security manager Gloria Robinson and Maurice Chambliss interviewed Key to be a mailroom security officer. R-71(1)-9 at 21:8–10. Key wore her hair in dreadlocks that day. R-71(1)-68 at 260:9–16. After her interview, Robinson called in Williams to ask about Key's hairstyle, and Key told Robinson and Williams that she could pull her dreadlocks up into a bun for a neater look. R-71(1)-22 at 74:15–23; R-71(1)-69 at 261:10–14, 262:13-20; R-71(14)-4–5 at ¶ 8. She showed them a picture to illustrate. R-71(1)-69 at 262:13–20.

Robinson and Williams agreed to allow Key to wear her hair in a bun when she started work. R-71(1)-70 at 265:23–266:5. Williams said that was the first exception she had ever granted to the no-dreadlocks policy. R-71(14)-5 at ¶ 8.

5

4.    <u>Key's 2 days on the job.</u>

Key worked at the plant for 2 days, July 31 and August 1, 2017. R-71(1)-10 at 27:22–25. She showed up at work on Day 1 with her dreadlocks down, not in a bun. R-71(1)-70 at 266:17–20.

Robinson and Williams asked her why she hadn't changed her hairstyle, and Key said that during her pre-job training Dynamic Security told her that she did not need to. R-71(1)-70 at 268:8–21. Key demanded to see the grooming policy, which Williams showed her. R-71(1)-16 at 50:5–52:10. Robinson and Williams agreed to allow Key to wear a hat until she could see her hairstylist over the weekend. R-71(1)-58 at 218:22–219:10; R-81(7)-3. Key did not have a hat with her, so Robinson sent her home. R-71(1)-33 at 117:21–118:21. Key testified that she understood that dreadlocks were not allowed. R-71(1)-40 at 147:5–148:8.

After Key left the office, Robinson and Williams discussed having Dynamic Security reassign Key. R-71(13)-27 at 94:2–95:6. Williams had no authority to terminate a Dynamic Security employee, but she could make recommendations regarding their placement at Hyundai Manufacturing. R-71(13)-11 at 31:16–32:14.

On Day 2, Williams received a call from LaTonya Howell, the Dynamic Security employee training Key. R-71(13)-27 at 95:12–15. She reported that Key was uncooperative and did not listen or attempt to learn the position and thus she couldn't train Key. R-71(13)-29 at 102:11–103:23. Key admitted she did not get very far into the training; she never even learned how to take things to the post office. R-71(1)-31 at 111:22–112:2. The trainer said Key was complaining about the grooming policy. R-71(13)-27 at 95:7–20. Key corroborated this, recounting how she told the trainer she was being treated "unfairly" because of her hair, not her race. *See* R-71(1)-41–42 at 152:24–154:2. Specifically, she testified as follows:

> Q. All right. And you told the trainer that you thought you were being treated unfairly because of your hair?
> A. Yes, I told her I didn't think it was fair, yes.
> Q. And what is it that you thought was unfair about it?
> A. That I couldn't be here because of my hair.

R-71(1)-42 at 153:23–154:6.

Key told her Dynamic Security supervisor, Maurice Chambliss, that she wanted to speak to Human Resources. R-71(1)-44 at 164:17–23. She then left the plant, drove to Dynamic Security's offices, and lodged a formal complaint with the district manager, Ray Cureton. R-71(1)-45 at 167:8–168:24. Cureton told Key that she would not be returning to work at the plant. R-71(1)-47 at 174:6-25.

7

At 8:50 that morning—before Key made her formal complaint to Cureton (*see* R-71(1)-41 at 152:4–7 (arrived at work between 7:00 and 7:30); R-71(2)-31 (worked 2 hours on 8/1/2017))—Williams sent an email to Dynamic Security concurring in its decision to reassign Key. R-81(8)-2–4; R-71(13)-29 at 101:1–104:14. In the email, Williams expressed concerns over Key's failure to heed direction over the grooming policy and the reports that she was untrainable. *Id.* Williams never understood Key's complaints to be about race. R-71(14)-5 at ¶ 9. And Key admitted she never spoke to Williams "about anything other than [her] hair." R-71(1)-12 at 36:12–14.

After her reassignment, Key was replaced in the mail room by an African American female. R-71(13)-37 at 134:23–135:7.

## B.    Course of proceedings.

Key filled out an EEOC intake questionnaire on August 2, 2017, that named "Hyundai" generically, Dynamic Security, "Cassandra Williams, AMCO," and Gloria Robinson as those responsible. R-11(2). AMCO was Hyundai Engineering's previous corporate name. R-71(13)-30 at 106:16–17. The EEOC issued a charge of discrimination against Dynamic Security (Charge No. 846-2017-32787) on August 3, 2017, which Key signed. R-13(2). More than a year later, the EEOC issued a

second charge under a different number (Charge No. 420-2019-00128) to Hyundai Manufacturing. R-13(1). The EEOC acknowledged that it failed to serve Hyundai Manufacturing within ten days and "apologize[d] for the administrative error." R-81(14)-2. The EEOC issued Key a right to sue Dynamic Security on March 1, 2019. R-13(3). The EEOC issued Key a right to sue Hyundai Manufacturing months later, on July 12, 2019. R-1(1)-3.

Key filed a *pro se* complaint on October 10, 2019, more than 180 days after issuance of her right to sue Dynamic Security but within 180 days of issuance of her right to sue Hyundai Manufacturing. R-1. She named three defendants: Dynamic Security, Hyundai Manufacturing, and Hyundai Engineering. R-1-2. After retaining counsel, Key filed an amended complaint. R-28. Key asserted five claims against Hyundai Engineering: (1) pregnancy discrimination termination under Title VII, (2) racially discriminatory termination under Title VII, (3) racially discriminatory termination under § 1981, (4) racial retaliation under Title VII, and (5) racial retaliation under § 1981. R-28-13–26 at ¶¶ 96–162.

It is undisputed that Key did not submit an EEOC charge naming Hyundai Engineering. *See* R-13(1)–(2); R-71(1)-19 at 61:22–62:1. In her amended complaint, Key recognized that Hyundai Manufacturing and Hyundai Engineering

are separate entities and alleged that "HMMA contracted with HEA . . . to provide services at HMMA's Montgomery, Alabama location," that Dynamic employees "work[ed] on HMMA's property," that the HMMA property is located at 700 Hyundai Boulevard in Montgomery, and that her EEOC charge listed only this address and "Hyundai" (in addition to Dynamic Security). R-28-2–6 at ¶¶ 7, 19, 25, 39. Key also alleged that the EEOC issued charges against only Dynamic Security and Hyundai Manufacturing. R-28-5 at ¶¶ 27, 28.

Hyundai Engineering moved to dismiss Key's Title VII claims because it was not her employer and was not named in the EEOC charge. R-31. The District Court granted the motion and dismissed the Title VII claims against Hyundai Engineering for failure to exhaust administrative remedies. R-39. Specifically, the court held that Key did not name Hyundai Engineering in any EEOC charge and that allowing Title VII claims to proceed against it would not advance the purpose of Title VII. R-39-9–12. The court also dismissed Key's Title VII and § 1981 disparate impact allegations (*see* R-28-17–20 at ¶¶ 121, 135) because she offered nothing to support her bare "conclusory allegations" and because disparate impact is not actionable under § 1981. R-39-24, 29 n.8. Only 2 claims remained against Hyundai Engineering: racially discriminatory termination and race retaliation, both under § 1981. *See* R-39-33.

10

The District Court later granted summary judgment to Hyundai Engineering on the 2 remaining claims. R-138-43. The District Court applied settled precedent and held Hyundai Engineering's no-dreadlocks grooming policy was race-neutral. R-138-28 (citing *Willingham v. Macon Tel. Publ'g*, 507 F.2d 1084, 1092 (5th Cir. 1975) (en banc), and *Equal Emp. Opportunity Comm'n v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1030 (11th Cir. 2016)). The court also found Key failed to present sufficient evidence for a jury to find intentional race discrimination, under either a convincing mosaic analysis or mixed-motive analysis. R-138-26–31. The District Court rejected Key's § 1981 retaliation claim because (1) Key's only complaints to Hyundai Engineering were about her hair, not her race, (2) Key's belief that the race-neutral grooming policy was unlawful could not be objectively reasonable under circuit precedent, and (3) there was "no causal link between Key's purported protected activity and termination." R-138-39–42 (citing *Harper v. Blockbuster Ent Corp.*, 139 F.3d 1385, 1387, 1389 (11th Cir. 1998)).

The District Court also granted summary judgment outright to Hyundai Manufacturing and partial summary judgment to Dynamic Security. R-138-43. The court dismissed the Title VII claims against Dynamic Security because Key presumably received the first right to sue notice issued on March 19, 2019 but

11

waited to sue Dynamic Security until October 10, 2019, more than 90 days later. R-138-19–24, 43. Key's only remaining claim against Dynamic Security, § 1981 race retaliation, proceeded to a jury trial. R-178-2. The jury returned a verdict in Key's favor, awarding her $85,200 in lost wages, $214,864 for mental anguish, and $511,200 in punitive damages. R-185. The trial court entered final judgment on the jury's verdict and denied Dynamic Security's post-judgment motion for judgment as a matter of law, new trial, and remittitur. R-186; R-212.

### C.    Standard of Review.

This Court reviews a Rule 12(b)(6) dismissal *de novo*. *See Lanfear v. Home Depot*, 679 F.3d 1267, 1275 (11th Cir. 2012).

The Court also reviews a grant of summary judgment *de novo*, "applying the same legal standards which bound the district court." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact." *Id.* (citations omitted).

The Court may "affirm for any reason supported by the record, even if the district court did not rely on that reason." *Wright v. City of St. Petersburg, Fla.*, 833 F.3d 1291, 1294 (11th Cir. 2016) (cleaned up).

## SUMMARY OF THE ARGUMENT

This is an employment discrimination case involving an individual who refused to comply with a race-neutral grooming policy. *See Equal Emp. Opportunity Comm'n*, 852 F.3d at 1018, *en banc reh'g denied*, 876 F.3d 1273 (11th Cir. 2017). Key claimed she was retaliated against for protesting enforcement of a legally permissible, race-neutral grooming policy. *Cf. Harper*, 139 F.3d at 1388–89. The merit of her claims has been squarely rejected by a previous panel and this Court declined to rehear the issues en banc. *Catastrophe Mgmt.*, 852 F.3d at 1030–33.

Key's claims fail on the merits. Even if Hyundai Engineering were her employer and she had exhausted her administrative remedies, the outcome would be the same. Key presents no novel argument. The District Court ruled correctly on Hyundai Engineering's motion to dismiss and motion for summary judgment. This Court should affirm.

ARGUMENT

## I. The District Court Properly Granted Hyundai Engineering's Motion to Dismiss.

The District Court correctly granted Hyundai Engineering's motion to dismiss. Key's Title VII claims fail because she did not name Hyundai Engineering in her EEOC charge. Her Title VII claims independently fail because Hyundai Engineering was not her employer. Likewise, her disparate impact claims lack merit.

### A. Key failed to exhaust her administrative remedies against Hyundai Engineering.

Key did not exhaust her administrative remedies before the EEOC via a charge naming Hyundai Engineering. Title VII requires an employment plaintiff to file a charge with the EEOC naming the "employer" who allegedly committed an unlawful employment practice. 42 U.S.C. § 2000e-5; *Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1358–59 (11th Cir. 1994); *Martinez-Rivera v. Commonwealth of Puerto Rico*, 812 F.3d 69, 77–78 (1st Cir. 2016). The naming requirement "serves to notify the charged party of the allegations and allows the party an opportunity to participate in conciliation and voluntarily comply with the requirements of Title VII." *Virgo*, 30 F.3d at 1358; *see also Mach Mining, LLC v. Equal Emp. Opportunity Comm'n*, 575 U.S. 480, 488 (2015) (explaining statutory

15

requirement of conciliation requires "tell[ing] the employer about the claim" and "provid[ing] the employer with an opportunity to discuss the matter in an effort to achieve voluntary compliance").

An employer not named in the EEOC charge cannot be sued except when necessary to fulfill the purposes of Title VII. *Virgo*, 30 F.3d at 1358–59. The Court considers the following factors in determining whether the purposes of Title VII are fulfilled:

> (1) the similarity of interest between the named party and the unnamed party; (2) whether the plaintiff could have ascertained the identity of the unnamed party at the time the EEOC charge was filed; (3) whether the unnamed parties received adequate notice of the charges; (4) whether the unnamed parties had an adequate opportunity to participate in the reconciliation process; and (5) whether the unnamed party actually was prejudiced by its exclusion from the EEOC proceedings.

*Id.* at 1359.

It is undisputed Hyundai Engineering was not named in either of Key's charges. R-11(1); R-13(1)–(2). Key testified that she did not name Hyundai Engineering. R-71(1)-19 at 61:22–62:1. The District Court properly dismissed the Title VII claims based on this administrative default. R-39-12.

16

Permitting Key to pursue claims against unnamed Hyundai Engineering would not further the purposes of Title VII. *Virgo*, 30 F.3d at 1359. *See* R-39-9–12. There is no similarity of interest between Hyundai Engineering and the parties actually named in the charges (Hyundai Manufacturing and Dynamic Security): they are not affiliates, have no shared executives, and simply have an independent contractor relationship. *See* R-39-11; *Lewis v. Asplundh Tree Expert Co.*, 402 F. App'x 454, 457 (11th Cir. 2010). Key could have ascertained the identity of Hyundai Engineering at the time of her charge. In fact, she was fully aware of the difference between Hyundai Engineering and Hyundai Manufacturing. The District Court properly found Key "could distinguish between the two Hyundai entities when she identified Williams as an AMCO (HEA) employee in her intake questionnaire . . . ." R-11(2)-2; R-39-11; R-71(13)-21 at 69:9–71:5. *Accord Lewis*, 402 F. App'x at 457; *McClure v. Oasis Outsourcing II, Inc.*, 674 F. App'x 873, 875 (11th Cir. 2016) ("The record demonstrates that [plaintiff] could have ascertained the identity of [defendant.]").

Hyundai Engineering never hid its involvement from Key or the EEOC. In May 2019, Williams filed a declaration in the EEOC proceedings identifying her employer as Hyundai Engineering. R-71(13)-110. Had Key wanted to pursue

17

claims against Hyundai Engineering, the EEOC could have issued another charge naming it, just as it did with Hyundai Manufacturing.

Hyundai Engineering did not have adequate notice of a claim against it or an opportunity to participate in conciliation. As a matter of law, Hyundai Engineering was "prejudiced by facing a lawsuit without notice from [Key] or the EEOC that they would seek to impose Title VII liability." *Lewis*, 402 F. App'x at 457; *see also Mach Mining, LLC*, 575 U.S. at 488. "[I]t had no notice of charges or any potential charges against it on the theory that it was [Key's] employer under Title VII." *Lewis*, 402 F. App'x at 457; *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1089 (7th Cir. 2008) (affirming dismissal of unnamed party because general notice of EEOC charge did not put defendant on notice plaintiff was asserting claims against it). Suing Hyundai Engineering does not fulfill the purposes of Title VII.

Key wrongly argues Hyundai Engineering was constructively on notice of her EEOC charge based on information in the intake questionnaire. Blue Br. at 18–27. If that were so, her first EEOC charge against Dynamic Security would encompass her Title VII claims against Hyundai Engineering. And for the same reasons Key's claims against Dynamic Security were untimely, so too would her

18

claims be against Hyundai Engineering. *See* R-138-19–24 (granting summary judgment for Dynamic Security because Key failed to overcome presumption on deadline to file Title VII claims); 42 U.S.C. § 2000e-5(f)(1) ("[W]ithin ninety days after the giving of . . . notice [of dismissal of the charge,] a civil action may be brought against the respondent named in the charge" by the person claiming to be aggrieved.). Key pleaded herself into this result when she alleged Dynamic Security is a "joint employer with HMMA and/or HEA." R-28-4 at ¶ 23.

Notice cannot be imposed on Hyundai Engineering from Key's naming Hyundai Manufacturing, either. Neither Hyundai Engineering nor Hyundai Manufacturing is Key's employer; Hyundai Engineering never had notice it could be held liable to Key; and Hyundai Engineering was not party to any conciliation process before the EEOC. *See Lewis*, 402 F. App'x at 457.

## B.   Key failed to plausibly allege an employment relationship with Hyundai Engineering.

Key's Title VII claims against Hyundai Engineering independently fail because it was not her employer. This is an alternate basis for affirmance. *See* R-31-7–10; R-39-16.

Title VII guards against employers discriminating against any individual on account of the individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). A Title VII claim "can only be brought by an employee against his *employer*." *Peppers v. Cobb Cnty., Georgia*, 835 F.3d 1289, 1297 (11th Cir. 2016) (emphasis added). *Accord* 42 U.S.C. § 2000e-5(b) ("Whenever a charge is filed by or on behalf of a person claiming to be aggrieved . . . alleging that an *employer* . . has engaged in an unlawful employment practice, the [EEOC] shall serve notice of the charge . . . on such employer . . . ."). To be considered an "employer," one must be "in control of the fundamental aspects of the employment relationship that gave rise to the claim." *Peppers*, 835 F.3d at 1297.

Only in rare circumstances does this Court treat separate entities as both employers under Title VII. *See id.* at 1298 (quoting *Lyes v.City of Riviera Beach*, 166 F.3d 1332, 1341 (11th Cir. 1999) (en banc)). The recognized circumstances include: where two nominally separate entities are highly integrated with respect to ownership and operations; where two entities contract with each other for the performance of some task, and one company retains sufficient control over the other's employees; and where an employer delegates sufficient control of some traditional rights over employees to a third party. *See Lyes*, 166 F.3d at 1341. Key did not prove any of the rare circumstances apply.

20

It is undisputed Hyundai Engineering was not Key's employer. R-28-5 at ¶ 26; R-71(1)-14 at 44:10–12. Key concedes Dynamic Security was the entity who interviewed, hired, trained, assigned, paid, and terminated her. R-28-5 at ¶ 26; R-71(1)-8–9 at 18:13–22:12; R-71(1)-10 at 27:18–28:4; R-71(1)-13–14 at 40:18–41:8, 41:24–43:3; R-71(1)-47 at 174:6–25; R-71(2)-29–33. Unlike Dynamic Security, Hyundai Engineering did not assert control over Key, nor did it possess the power to make decisions related to Key's employment. *See Peppers*, 835 F.3d at 1297. The record shows Williams had no authority to hire or fire Key; she could only make recommendations. R-71(13)-11 at 31:16–32:14. Key admits Williams refused to tell her to go home when prompted, leaving that decision to her Dynamic Security supervisor, Robinson. R-28-10 at ¶¶ 69–70. Dynamic Security hired and fired Key. R-71(1)-8–9 at 18:13–22:12; R-71(1)-47 at 174:6–25; R-71(2)-32. Key knew who her employer was and admitted she never worked for Hyundai Engineering or Hyundai Manufacturing.

### C.    Key failed to plausibly allege her disparate impact claims.

The District Court properly dismissed Key's disparate impact claims. To establish a claim for disparate impact, plaintiff must (1) "identify the specific employment practice that allegedly has a disproportionate impact," and

21

(2) "demonstrate causation by offering statistical evidence sufficient to show that the challenged practice has resulted in prohibited discrimination." *See Spivey v. Beverly Enters, Inc.*, 196 F.3d 1309, 1314 (11th Cir. 1999); *Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1314 (11th Cir. 1994).

Key's Title VII disparate impact claim fails because her complaint is devoid of any factual allegations plausibly establishing such a claim. R-28; R-39-23–24. Key's § 1981 disparate impact claim also fails because it is not cognizable under Supreme Court precedent. *See* R-39-29, n. 8; *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982) ("We conclude, therefore, that § 1981, like the Equal Protection Clause, can be violated only by purposeful discrimination."). The District Court properly discussed Key's bald allegations of disparate impact. R-39-23–24, 29 n. 8

## II.    The District Court Properly Granted Hyundai Engineering's Motion for Summary Judgment on Key's § 1981 Claims.

Hyundai Engineering was entitled to summary judgment on Key's § 1981 race discrimination and retaliation claims because Key cannot establish she was subject to discrimination on the basis of her race as opposed to her hairstyle. Section 1981 provides, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts

22

to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Under this standard, Key must prove her claim under the more stringent but-for causation standard. *See Comcast Corp. v. Nat. Assoc. of African American-Owned Media*, 589 U.S. 327, 333, 340–41 (2020) (holding § 1981 race discrimination claims require but-for causation).

### A.    Key cannot establish race discrimination under either the *McDonnell Douglas* or convincing mosaic standard.

Key's claim for intentional race-based discrimination fails. Under the *McDonnell Douglas* burden-shifting framework, to create a presumption of unlawful discrimination against the employer, a plaintiff must first establish a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973); *see also Shields v. Fort James Corp.*, 305 F.3d 1280, 1282 (11th Cir. 2002) (evaluating § 1981 claims under same framework as Title VII).

To establish a *prima facie* case of discrimination, an employee must prove she (1) belongs to a protected class, (2) was subjected to an adverse employment action, (3) was qualified to perform the job, and (4) was treated less favorably by her employer than "similarly situated" employees outside the protected class or was replaced by someone outside her protected class. *Lewis v. City of Union City,*

23

*Ga.*, 918 F.3d 1213, 1220-21 (11th Cir. 2019) (en banc); *Horn v. United Parcel Servs., Inc.*, 433 F. App'x 788, 792–93 (11th Cir. 2011). Key's claim fails because she did not present evidence of a valid comparator. *See Lewis*, 918 F.3d at 1220–21, 1224–28. It is undisputed that Key was replaced in the mail room by an African American female. R-71(13)-37 at 134:23–135:7. *See Horn*, 433 F. App'x at 792–93. Key cannot show a *prima facie* case.

To circumvent this problem, Key resorts to the convincing mosaic theory. *See McCreight v. AuburnBank*, 117 F.4th 1322, 1326 (11th Cir. 2024) (explaining both tests require "enough evidence" for jury to conclude discrimination occurred). She must show evidence demonstrates "(1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, (2) systematically better treatment of similarly situated employees, and (3) pretext." *See Jenkins v. Nell*, 26 F.4th 1243, 1250 (11th Cir. 2022) (citation omitted). That argument likewise fails because the mosaic here does not show discrimination given the shared race of everyone involved.

The record shows there was no race discrimination. The only Hyundai Engineering employee involved in Key's 2-day employment, Cassandra Williams, is also an African American female. Williams wrote the grooming policy and

enforced it against African Americans and Whites alike. R-71(13)-15 at 45:5–12; R-71(3)-5–7; R-71(14)-4–5 at ¶¶ 6, 8, 9. *See Catastrophe Mgmt.*, 852 F.3d at 1030–33, 1035 (holding race-neutral grooming policies are nondiscriminatory); *Willingham*, 507 F.2d at 1091–92 (holding distinctions in employment practices based on "something other than immutable or protected characteristics do not inhibit employment opportunity in violation of [Title VII]"). Williams never heard anyone, or saw anything, stating the policy was race based. R-71(14)-4 at ¶ 5; R-71(13)-40 at 147:2–6. Moreover, after Key's assignment ended, she was replaced by an African American female. R-71(13)-37 at 134:23–135:7. The convincing mosaic here rebuts, not supports, a claim of race discrimination.

The District Court agreed, rejecting Key's assertions that the policy was being enforced in a racially discriminatory manner. R-138-26–31. The court noted the evidence "strikes against" Key's arguments that the policy was not applied uniformly. R-138-27. Citing this Court's well-established precedent, the District Court explained the evidence showed the issue was the *style* of Key's hair. R-138-28 (citing *Willingham*, 507 F.2d at 1092). Contrary to treating Key less favorably, Williams made the first exception she had ever granted to the no-dreadlocks policy for Key. R-71(14)-4–5 at ¶ 8. Key's remaining circumstantial evidence was similarly unpersuasive. R-138-29–30. The District Court correctly held Key could

not show Hyundai Engineering intentionally discriminated against her and "[t]o infer racial animus from [her] lack of evidence would relieve Key of her burden[.]" R-138-30–31.

### B.     Key cannot establish race retaliation.

The District Court correctly held Key failed to show an actionable § 1981 claim for retaliation. To show a *prima facie* case of retaliation, a plaintiff must establish (1) "she engaged in statutorily protected activity," (2) "she suffered an adverse action," and (3) "the adverse action was causally related to the protected activity." *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc) (citation omitted).

A plaintiff may establish she engaged in a statutorily protected activity if she shows "she subjectively (i.e., in good faith) believed the defendant was engaged in unlawful employment practices" and "that her belief was objectively reasonable in light of the facts and record present." *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1311 (11th Cir. 2016) (citations omitted).

Settled Eleventh Circuit precedent holds that a race-neutral grooming policy against dreadlocks is not racially discriminatory. *Catastrophe Mgmt.* 852 F.3d at

1030. This Court's prior *Catastrophe Management* decision is binding. *See Stanley v. City of Sanford, Fla.*, 83 F.4th 1333, 1338 (11th Cir. 2023). Williams wrote the grooming policy and enforced it uniformly. R-71(13)-15 at 45:5–12; R-71(3)-5–7; R-71(14)-3–5 at ¶¶ 3, 6, 8. Thus, this grooming policy is not unlawful. Key cannot equate her hairstyle to an immutable characteristic. *See Catastrophe Mgmt.*, 852 F.3d at 1030 ("That dreadlocks are a 'natural outgrowth' of the texture of black hair does not make them an immutable characteristic of race."). Regardless of whether her hair is natural or chemically treated, Key testified that her dreadlocks are a style she chose, and one used by African Americans and Whites alike. *See* R-71(1)-64 at 243:7–244:2; R-71(1)-67 at 254:12–22.

This Court's precedent also holds that any protest about a grooming policy cannot be objectively reasonable. *Harper*, 139 F.3d at 1388 ("The reasonableness of the plaintiff's belief in this case is belied by the unanimity with which the court have declared grooming policies like [defendant's] non-discriminatory."). *Accord Miller v. Chicago Transit Authority*, 20 F.4th 1148, 1155 (7th Cir. 2021) (complaining in general terms of discrimination without indicating connection to protected class is insufficient). This Court's prior panel decision in *Harper* is binding and has been reaffirmed numerous times. The District Court properly applied binding precedent and held that Key's protest about the grooming policy

27

was not objectively reasonable. R-138-39–42. *E.g.*, *Butler v. Ala. Dept. Transp.*, 536 F.3d 1209, 1214 (11th Cir. 2008). And, at the time she complained, there was no objective basis for her to believe the policy was racially discriminatory. R-138-39–42.

Key likewise cannot show she had a subjective, good-faith belief the policy was unlawful. *Furcron*, 843 F.3d at 1311. She testified she was unaware of any laws applicable to Alabama prohibiting an employer from having a policy against dreadlocks and is unaware of any discriminatory application of the policy. R-71(1)-42 at 154:22–25; R-71(1)-67 at 254:4–11. With neither a subjective nor objective belief, Key cannot qualify for protected conduct.

The District Court properly found no causation. "To establish a causal connection, a plaintiff must show that the relevant decisionmaker was aware of the protected conduct, and that the protected activity and the adverse actions were not wholly unrelated." *Patterson v. Georgia Pacific, LLC*, 38 F.4th 1336, 1351 (11th Cir. 2022) (citation omitted). Key only protested once to Hyundai Engineering, and it concerned her hair. R-71(13)-27 at 95:7–20; R-71(13)-29 at 102:11–103:5; R-71(1)-41–42 at 152:24–154:2. Williams never understood Key's complaints to be about race and she testified that, as an African American, she would have been

offended had the policy been directed only towards African American people. R-71(13)-40 at 147:2–9; R-71(14)-5 at ¶ 9. Key admitted she never spoke to Williams "about anything other than [her] hair." R-71(1)-12 at 36:12–14. Key's statement is not "protected activity" because (1) factually, she never complained about race to Hyundai Engineering and (2) legally, she could not hold an objectively reasonable belief that the grooming policy was unlawful. R-71(14)-5 at ¶ 9; R-71(1)-12 at 36:12–14. Key failed to prove an actionable § 1981 retaliation claim.

## Conclusion

The District Court's rulings rest on the text of Title VII and settled precedent. This Court should affirm the District Court's dismissal and summary judgment rulings in favor of Hyundai Engineering.

Respectfully submitted,

*s/ Scott Burnett Smith*
Scott Burnett Smith
Attorney for Appellee Hyundai ENG America, Inc.

OF COUNSEL

Scott Burnett Smith
Schyler B. Burney

29

BRADLEY ARANT BOULT CUMMINGS LLP
200 Clinton Avenue West, Suite 900
Huntsville, Alabama 35801-4900
(256) 517-5198
(256) 517-5298 (fax)
ssmith@babc.com
sburney@bradley.com

T. Matthew Miller
Sarahanne Vaughan
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
(205) 521-8000
mmiler@bradley.com
svaughan@bradley.com

## CERTIFICATE OF SERVICE

I certify that, on February 10, 2025, the foregoing was filed using the CM/ECF system, which will serve notice on all counsel of record.

*s/ Scott Burnett Smith*

Of Counsel

**CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 32(g) of the Federal Rules of Appellate Procedure, the undersigned counsel certifies that this brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure. This brief contains 5,830 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 365 in Times New Roman, font size 14.

*s/ Scott Burnett Smith*
Of Counsel
