Appeal No. 24-11126

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

DAVITA KEY

Plaintiff/Appellant

v.

HYUNDAI MOTOR MANUFACTURING ALABAMA, LLC, et al.

Defendants/Appellees

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

CASE NO.: 2:19-cv-767-ECM

CHIEF JUDGE EMILY C. MARKS, PRESIDING

_____

BRIEF OF APPELLEE DYNAMIC SECURITY, INC.

_____

Wesley C. Redmond
Susan W. Bullock
FORDHARRISION, LLP
420 20th Street North, Suite 2560
Birmingham, AL  35203
T (205) 244-5905/(205) 244-5904
F (205) 244-5901
Email: wredmond@fordharrison.com
Email: sbullock@fordharrison.com

*Counsel for Defendant/Appellee Dynamic Security, Inc.*

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, the undersigned counsel for Defendant/Appellee Dynamic Security, Inc. submits the following list of the trial judge, attorneys, individuals, associations, firms, partnerships, and corporations that have an interest in the outcome of this case on appeal:

Bae, Yurie Yeoul (Attorney for Defendant/Appellee Hyundai ENG America, Inc.);

Bond, Cortlin (Attorney for Defendant/Appellee Hyundai ENG America, Inc.);

Bradley Arant Boult Cummings, LLP (Counsel for Defendant/Appellee Hyundai ENG America, Inc.);

Brown, Whitney R. (Attorney for Defendant/Appellee Hyundai Motor Manufacturing Alabama, LLC);

Bullock, Susan W. (Attorney for Defendant/Appellee Dynamic Security, Inc.);

DeWeese & Bae, LLC (Counsel for Defendant/Appellee Hyundai ENG America, Inc.);

DeWeese, Richard L., Jr. (Attorney for Defendant/Appellee Hyundai ENG America, Inc.);

Doyle, The Honorable Stephen M., United States Magistrate Judge for the Middle District of Alabama;

Dynamic Security, Inc. (Defendant/Appellee);

FordHarrison, LLP (Counsel for Defendant/Appellee Dynamic Security, Inc.);

Gilbride, Karla (General Counsel for Amicus Curiae The Equal Employment Opportunity Commission);

Goldstein, Jennifer S. (Associate General Counsel for Amicus Curiae The Equal Employment Opportunity Commission)

Heather Leonard, P.C. (Counsel for Plaintiff/Appellant Davita M. Key);

Hyundai ENG America, Inc. (Defendant/Appellee);

Hyundai Motor Manufacturing Alabama, LLC (Defendant/Appellee);

Key, Davita M. (Plaintiff/Appellant);

Lehr Middlebrooks Vreeland & Thompson, P.C. (Counsel for Defendant/Appellee Hyundai Motor Manufacturing Alabama, LLC);

Leonard, Heather (Attorney for Plaintiff/Appellant Davita M. Key);

Marks, The Honorable Emily C., Chief Judge, United States District Court for the Middle District of Alabama;

Middlebrooks, David J. (Attorney for Defendant/Appellee Hyundai Motor Manufacturing Alabama, LLC);

Miller, T. Matthew (Attorney for Defendant/Appellee Hyundai ENG America, Inc.);

Occhialino, Anne Noel (Assistant General Counsel for Amicus Curiae The Equal Employment Opportunity Commission);

Palmer Law, LLC (Counsel for Plaintiff/Appellant Davita M. Key);

Palmer, Leslie A. (Attorney for Plaintiff/Appellant Davita M. Key);

Redmond, Wesley C. (Attorney for Defendant/Appellee Dynamic Security, Inc.);

 Smith, Scott Burnett (Attorney for Defendant/Appellee Hyundai ENG America, Inc.);

Vaughn, Sarahanne Young (Attorney for Defendant/Appellee Hyundai ENG America, Inc.);

Yeomans, Georgina (Attorney for Amicus Curiae The Equal Employment Opportunity Commission).

Pursuant to Fed. R. App. P. 26.1-3(b), Dynamic Security, Inc., states that no publicly traded company or corporation has an interest in the outcome of the case or appeal.

Corporate Disclosure. Pursuant to Fed. R. App. P. 26.1, and 11th Cir. R. 26.1-1, 26.1-2 and 26.1-3, Defendant/Appellee Dynamic Security, Inc., submits this Corporate Disclosure, stating as follows: Dynamic Security, Inc. has not issued

shares or debt securities to the public. Furthermore, no parent, subsidiary, or affiliate of Dynamic Security, Inc. has issued shares of debt securities to the public, nor does any publicly owned company own ten percent or more of the stock of the Dynamic Security, Inc. Defendant/Appellee Dynamic Security, Inc. is not aware of any other entity likely to be an active participant in the proceedings.

*/s/ Wesley C. Redmond*
Wesley C. Redmond
Susan W. Bullock
FORDHARRISON, LLP
420 20th Street North, Suite 2560
Birmingham, AL  35203
T (205) 244-5905/(205) 244-5904
Email: wredmond@fordharrison.com
Email: sbullock@fordharrison.com

*Counsel for Defendant/Appellee Dynamic Security, Inc.*

## STATEMENT REGARDING ORAL ARGUMENT

Defendant/Appellee does not believe oral argument to be necessary in this case. The case does not involve unique issues of law. The District Court properly granted Defendant/Appellee's Motion for Summary Judgment, with prejudice, based upon clearly established Eleventh Circuit precedent. The District Court's opinion is clear and well-reasoned, and all parties have had a fair and full opportunity to address all issues via written briefing.  Thus, oral argument will not assist the Court in deciding the issues in this case.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................C-1

CORPORATE DISCLOSURE STATEMENT .....................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ............................................. i

TABLE OF CONTENTS................................................................................ ii

TABLE OF CITATIONS AND AUTHORITIES ................................................ iv

STATEMENT OF JURISDICTION.........................................................................1

STATEMENT OF THE ISSUES...............................................................................1

STATEMENT OF THE CASE...................................................................................2

    A.   Course of Proceedings and Disposition in the Court Below. ......................2

    B.   Statement of the Facts...................................................................................3

        1.  The Defendants/Appellants.....................................................................3

        2.  Key's allegations against Dynamic and HMMA.....................................4

        3.  Key filed separate EEOC Charges against HMMA and Dynamic. .........4

        4.  Dynamic hired Key and assigned her to a mail room job at Hyundai.....9

        5.  Key failed to comply with HEA's grooming policy against dreadlocks and failed to comply with HMMA's exceptions. .................................10

        6.  HMMA removed Key from Hyundai for failure to comply with HEA's grooming policy. ..................................................................................11

        7.  Key did not present evidence that Dynamic terminated her employment or took any adverse employment action against her because of her race. ....................................................................................................11

STANDARD OF REVIEW .....................................................................................12

SUMMARY OF THE ARGUMENT .......................................................................13

ARGUMENT AND CITATIONS OF AUTHORITY ............................................15

**I.     THE DISTRICT COURT CORRECTLY DETERMINED THAT KEY'S TITLE VII CLAIM AGAINST DYNAMIC WAS UNTIMELY.**........15

A.   Key Failed to File Suit against Dynamic within 90 Days after Receipt of the Dynamic Notice-of-Right-to-Sue, Barring any Title VII Claim against Dynamic. 15

B.   Dynamic Had Alternative Grounds for Granting Summary Judgment.....25

1.  Key Failed to Satisfy Administrative Prerequisites with Regard to Any Title VII Termination Claim against Dynamic by Failure to Allege in Her EEOC Charge that Dynamic Terminated Her Employment. .........25

2.  Key's Amended Complaint Does Not Assert a Title VII Race Discrimination Claim Against Dynamic. ...............................................30

**II.   DISTRICT COURT CORRECTLY DETERMINED THAT APPLICATION OF THE GROOMING POLICY WAS NOT RACE DISCRIMINATION UNDER TITLE VII AND 1981.**.......................................32

A.   Controlling Law Is That Race-Neutral Grooming Policies against Wearing of Dreadlocks Are Nondiscriminatory unless Applied in Discriminatory Manner. ...................................................................................................33

1.  *Catastrophe Management* is not factually distinguishable from Key's case. .........................................................................................................33

2.  Key failed to identify evidence showing racially disparate application of HEA's grooming policy as required by *Catastrophe Management*. .....35

B.   Key Failed to Demonstrate District Court Erred in Finding Insufficient Evidence of Discriminatory Motive by Dynamic. ...........................................37

C.   The Best Evidence Rule Bars Consideration of "Korean Memos" as Evidence of Racially Discriminatory Intent Underlying Grooming Policy......39

D.   Best Evidence Rule Argument Permissible on Appeal Even Though Not Raised or Addressed in District Court's Opinion.............................................43

CONCLUSION ........................................................................................................45

CERTIFICATE OF COMPLIANCE.......................................................................46

CERTIFICATE OF SERVICE ...............................................................................47

TABLE OF CITATIONS AND AUTHORITIES

Page(s)

Cases

*Access Now, Inc. v. Sw. Airlines Co.*,
   385 F.3d 1324 (11th Cir. 2004) ..........................................................43
*Adams v. Memorial Hermann,*
   Civil Action No. 4:15-CV-01270, 2018 WL 5886800 (S.D. Tex. November 19,
   2018) ....................................................................................................40
Alexander v. Fulton County, Ga.,
   207 F.3d 1303 (11th Cir. 2000) ................................................... 26, 28
*Allstate Ins. Co. v. Swann,*
   27 F.3d 1539 (11th Cir. 1994) ............................................................42
*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..................................................................... 12, 13
*Baldwin County Welcome Center v. Brown,*
   466 U.S. 147 ........................................................................................20
*Benjamin v. Thomas,*
   766 Fed. Appx. 834 (11th Cir. 2019)...................................................39
*Berry v. Crestwood Healthcare LP*,
   84 F.4th 1300 (11th Cir. 2023) .................................................... 37, 38
*Blue Martini Kendall, LLC v. Miami Dade Cnty. Fla.,*
   816 F.3d 1343 (11th Cir. 2016) ................................................... 43, 44
*Bost v. Fed. Express Corp*.,
   372 F.3d 1233 (11th Cir. 2004) ..........................................................32
*Brooks v. Blue Cross & Blue Shield of Fla*., Inc.,
   116 F.3d 1364 (11th Cir. 1997) ..........................................................13
*Callahan v. Emory Healthcare, Inc*.,
   No. 23-10604, 2024 WL 3027684 (11th Cir. June 17, 2024) ..............44
*Carter v. Jack Daniel's Distillery*,
   2002 U.S. Dist. LEXIS 26887 (E.D. Tenn. Nov. 26, 2002)................22
*Celotex Corp. v. Catrett*,
   477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ....................13
*Chanda v. Engelhard/ICC*,
   234 F.3d 1219 (11th Cir. 2000) ..........................................................28
*Chapman v. AI Transp*.,
   229 F.3d 1012 (11th Cir. 2000) ..........................................................12

iv

*Cox v. Colsa Corp.*,
   2014 WL 3889495 (N.D. Ala. Aug. 6, 2014) ......................................28
*Crawford v. Babbitt*,
   186 F.3d 1322 (11th Cir. 1999) ..........................................................26
*Cunningham v. Dist. Attorney's Office for Escambia Cnty.*,
   592 F.3d 1237 (11th Cir. 2010) ..........................................................12
*Dean Witter Reynolds, Inc. v. Fernandez,*
   741 F.2d 355 (11th Cir. 1984) ............................................................43
*E.E.O.C. v. Catastrophe Mgmt.,*
   *Sols.*, 852 F.3d 1018 (11th Cir. 2016) ................................ 33, 34, 36
*E.E.O.C. v. Joe's Stone Crabs, Inc.*,
   296 F.3d 1265 (11th Cir. 2002) ..................................................... 26, 27
*Farley v. Nationwide Mut. Ins. Co.*,
   197 F.3d 1322 (11th Cir. 1999) ..........................................................44
*Franks v. Bowman Transp. Co.*,
   495 F.2d 398 (5th Cir. 1974) ..............................................................24
*Gordon v. United States,*
   344 U.S. 414 (1953) ............................................................................40
*Grange Mutual Casualty Co. v. Slaughter*,
   958 F.3d 1050 (11th Cir, 2020) ..........................................................42
*Green v. Union Foundry Company*,
   281 F.3d 1229 ....................................................................................16
Gregory v. Ga. Dep't of Human Resources,
   355 F.3d 1277 (11th Cir. 2004) ..................................................... 27, 30
*Hamm v. Members of Bd. of Regents*,
   708 F.2d 647 (11th Cir. 1983) ............................................................44
*Hayes v. ATL Hawks, LLC,*
   844 F. App'x 171 (11th Cir. 2021) ....................................................36
*Hayes v. N.J. Dep't of Hum. Servs.*,
   108 F.4th 219 (3d Cir. 2024) ..............................................................24
*Houston v. Army Fleet Servs., L.L.C.*,
   509 F. Supp. 2d 1033 (M.D. Ala. 2007) ............................................28
In *re Lynch*,
   755 Fed. Appx.  (11th Cir. 2018) ......................................................40
*Kerr v. McDonald's Corp.*,
   427 F.3d 947 (11th Cir. 2005) ....................................... 16, 17, 23, 25
*Kerr*,
   333 F. Supp. 2d ..................................................................................16
*Kerr*,
   417 F.3d ..............................................................................................23

*Law v. Hercules, Inc.*,
  713 F.2d 691 (11th Cir. 1983) ...........................................................................17
*Lennon v. Alabama Telecasters*,
  CIVIL ACT. NO. 2:18-cv-967-ECM, 2021 WL 1554892 ...................................31
*Martin v. Fin. Asset Mgmt. Sys., Inc.*,
  959 F.3d 1048 (11th Cir. 2020) ...........................................................................38
*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)..............................................................................................12
*Medina v. Multaler*,
  No. CV 06-00107 MMM (AJWx), 2007 WL 5124009 (C.D. Cal. February 7,
  2007) ......................................................................................................................41
*Minix v. JELD-WEN, Inc.*,
  237 F. App'x 578 (11th Cir. 2007) ......................................................................27
*Narey v. Dean*,
  32 F.3d 1521 (11th Cir. 1994) .............................................................................43
*Newman v. Career Consultants, Inc.*,
  470 F. Supp. 2d 1333 (M.D. Ala. 2007)..............................................................27
*Pijnenburg v. West Georgia Health Sys, Inc.*,
  255 F.3d 1304 (11th Cir. 2001) ...........................................................................32
*Price v. M & H Valve Co.*,
  177 F. App'x 1 (11th Cir. 2006)...........................................................................30
*Robbins v. Vonage Business*,
  819 Fed. Appx. 863 (11th Cir. 2020)............................................................. 20, 24
*Robinson v. City of Fairfield*,
  750 F.2d 1507 ........................................................................................................20
*Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*,
  689 F.2d 982 (11th Cir. 1982) .............................................................................44
*Roundtree v. Bowers*,
  No. 22-11557, 2022 WL 17986182 (11th Cir. December 29, 2022) ...................39
*Sanchez v. Standard Brands, Inc.*,
  431 F.2d 455 (5th Cir. 1970) ...............................................................................28
*Seller*,
  *II,* 808 F.2d..........................................................................................................41
*Smallwood v. T&A Farms*, 2017 WL 5904673 *3 (S.D. Ga. June 15, 2017) 5:14-
  cv-86,2017 WL 5904673 (S.D. Ga. June 15, 2017) ...........................................40
*Stallworth v. Wells Fargo Armored Servs. Corp.*,
  936 F.2d 522 (11th Cir. 1991) .............................................................................24
*Swindle v. Hale*,
  2:09-CV-1458-SLB, 2012 WL 4725579 (N.D. Ala. Sept. 30, 2012) ........... 27, 28

*Taylor v. Yellen*,
   No. CV 1:20-00583-CG-N, 2021 WL 6135491 (S.D. Ala. Nov. 23, 2021) ........22
*Tynes v. Fla. Dep't of Juv. Just.*,
   88 F.4th 939 (11th Cir. 2023) ..............................................................37
*United States v. Godoy*,
   821 F.2d 1498 (11th Cir. 1987) ...........................................................43
*United States v. Ross*,
   33 F.3d 1507 ....................................................................................40
*Vason v. City of Montgomery*,
   240 F.3d 905 (11th Cir, 2001) ............................................................32
*Vinson v. Koch Foods of Ala., LLC*,
   2013 WL 5441969 (M.D. Ala. Sept. 27, 2013) ....................................28
*Wilkerson v. Grinnell Corp.*,
   270 F.3d 1314 (11th Cir. 2001) ..........................................................26
*Williams v. Hager Hinge Co.*,
   916 F. Supp. 1163 (M.D. Ala. 1995) ...................................................27
*Wilson v. B/E Aerospace, Inc.*,
   376 F.3d 1079 (11th Cir. 2004) ..........................................................36
*Wilson v. Sprint/United Mgmt. Co.*,
   2011 WL 2670184 (M.D. Fla. July 8, 2011) ........................................32
*Winsor v. Home Depot U.S.A., Inc.*,
   743 F. App'x 335 (11th Cir. 2018) .............................................. 16, 17
*Wu v. Thomas*,
   863 F.2d 1543 (11th Cir. 1989) ................................................... 26, 30
*Zillyette v. Capital One Financial Corp.*,
   179 F.3d 1337 (11th Cir. 1999) .................................................. 16, 22

Statutes

28 U.S.C. § 1291 ......................................................................................1
28 U.S.C. §§ 1331, 2343 ...........................................................................1
29 U.S.C. § 626(e) ..................................................................................16
42 U.S.C. 2000e-5(f)(1) ...........................................................................13
42 U.S.C. §2000e-5(f)(3) ...........................................................................1
42 U.S.C. § 1981 ......................................................................... 1, 2, 3, 4
42 U.S.C. § 2000e-5 ...............................................................................26
42 U.S.C. § 2000e-5(b) ...........................................................................32
42 U.S.C. § 2000e–5(b), and 5(e)(1) (1994)............................................26

Rules

11th Cir. R. 26.1-1, 26.1-2 and 26.1-3 ..................................................3

Fed. R. App. P. 32(a)(5) ...................................................................46

Fed. R. App. P. 32(a)(6) ...................................................................46

Fed. R. App. P. 32(a)(7)(B) ..............................................................46

Fed. R. App. P. 32(f) ........................................................................46

Fed. R. Civ. P. 6(e) ................................................................... 16, 20

Fed. R. Civ. P. 56(a) ........................................................................12

Federal Rule of Evidence 1002 .........................................................40

Rule 26.1 of the Federal Rules of Appellate Procedure .......................1, 3

Regulations

29 C.F.R. § 1601.9 ...........................................................................32

Other Authorities

2007 U.S. App. LEXIS 15463 ............................................................27

*Id.*, ¶ 113 ......................................................................................31

*Id.*, ¶ 115 ......................................................................................31

## STATEMENT OF JURISDICTION

The United States District Court for the Middle District of Alabama had federal question subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 2343, and 42 U.S.C. §2000e-5(f)(3).  Key's initial Complaint (Doc. 1) and Amended Complaint (Doc. 28) alleged violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981 ("§ 1981").

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. On February 10, 2023, the District Court entered an order and Memorandum Opinion Granting Summary Judgment for HMMA and HEA and Partially Granting Summary Judgment for Dynamic Security" (Doc. 138) in which the District Court dismissed with prejudice as to Dynamic Key's race discrimination claims pursuant to § 1981 and Title VII. On April 10, 2024, Key filed a notice of appeal (Doc. 221; Doc. 1-2), and this action was assigned as Case No. 24-11126.

## STATEMENT OF THE ISSUES

1.    Whether the district court correctly granted summary judgment and dismissed Key's Title VII claims against Dynamic based on Key's failure to file her Complaint within 90 days of her receipt of the EEOC's Notice of Right to Sue?

2.    Whether the district court correctly granted summary judgment and dismissed Key's race discrimination claims under 42 U.S.C. § 1981 based on Dynamic's application of a neutral grooming policy?

STATEMENT OF THE CASE

This action arises out of the two days Plaintiff/Appellant Davita Key ("Plaintiff/Appellant" or "Key") worked for Defendant/Appellee Dynamic Security, Inc. ("Dynamic") at the Hyundai facility in Montgomery, Alabama. After those two days, Key never returned to work for Dynamic or any of its clients. Key claimed she was terminated from her employment due to her race and as retaliation following a complaint about hair discrimination when she was told wearing a dreadlock hairstyle was against Hyundai's grooming policy. Dynamic denies those claims.

A.    Course of Proceedings and Disposition in the Court Below.

Key filed a Complaint on October 10, 2019, against Hyundai Motor Manufacturing Alabama, LLC; Hyundai Engineering America, Inc.; and Dynamic Security, Inc. (Doc. 1). The Complaint asserted three claims pursuant to Title VII: discrimination based on race (Count I), discrimination based on pregnancy (Count II), and retaliation for making an inquiry into Defendant HMMA's employment policies regarding pregnancy and hair grooming. (Count III). (Doc. 1, ¶¶ 29-32, 33-38, and 39-40, respectively).

Key filed an Amended Complaint on June 1, 2020, against the same parties. (Doc. 28). The Amended Complaint asserted claims of pregnancy discrimination in termination (Count One, Title VII), race discrimination in termination based on hairstyle (Count Two, Title VII; Count Three, 42 U.S.C. § 1981), and retaliation for

2

complaining of a racially disparate hair grooming policy (Count Four, Title VII; Count Five, § 1981). (Doc. 28, ¶¶ 96-108, 109-124, 125-138, 139-150, and 151-162, respectively). Dynamic filed an Answer and Defenses to Key's Amended Complaint. (Doc. 43).

Dynamic filed on October 12, 2022, a summary judgment motion on all pending claims (Doc. 73) and a reply on November 11, 2022. (Doc. 87). On February 10, 2023, the district court granted summary judgment on all claims against Dynamic except for Key's § 1981 retaliation claim. (Doc. 138).

### B.    Statement of the Facts.

#### 1.    The Defendants/Appellants.

Defendant/Appellant Hyundai Motor Manufacturing Alabama ("HMMA") is an automotive assembly plant located in Montgomery, Alabama, that produces vehicles for the North American market. (Doc. 75-28, 9:19-23).[1] Dynamic places security officers with clients having need to monitor its perimeters or the safety of incoming or outgoing traffic, e.g., manufacturing facilities, retail businesses, hospitals, and gated communities. (Doc. 75-26, 13:22-14:7). Dynamic places both armed and unarmed officers per client request. (*Id*., 13:8-17). Defendant/Appellant Hyundai Engineering America ("HEA") provides services to HMMA, such as

---

[1] Robert Burns is the current Chief Administrative Officer (since July 2021) and Vice-President of HR and Administration (since October 2018) and has been employed by HMMA since April 2007. (Doc. 75-28, 10:20-11:9).

managing security contracts, janitorial contracts, landscaping contracts, and general construction contracts. (Doc. 75-24, 14:6-19).

> 2. Key's allegations against Dynamic and HMMA.

Key filed a Complaint on October 10, 2019, against Hyundai Motor Manufacturing Alabama, LLC; Hyundai Engineering America, Inc.; and Dynamic Security, Inc. (Doc. 1). The Complaint asserted three claims pursuant to Title VII: discrimination based on race (Count I), discrimination based on pregnancy (Count II), and retaliation for making an inquiry into HMMA's employment policies regarding pregnancy and hair grooming. (Count III). (Doc. 1, ¶¶ 29-32, 33-38, and 39-40, respectively).

Key filed an Amended Complaint on June 1, 2020, against the same parties. (Doc. 28). The Amended Complaint asserted claims of pregnancy discrimination in termination (Count One, Title VII), race discrimination in termination based on hairstyle (Count Two, Title VII; Count Three, 42 U.S.C. § 1981), and retaliation for complaining of a racially disparate hair grooming policy (Count Four, Title VII; Count Five, § 1981). (Doc. 28, ¶¶ 96-108, 109-124, 125-138, 139-150, and 151-162, respectively).

> 3. Key filed separate EEOC Charges against HMMA and Dynamic.

Key filed an EEOC Charge against Dynamic on August 3, 2017, identified as Charge No. 846-2017-32787 ("Charge No. 846-2017-32787" or the "Dynamic

Charge") (Doc. 13-2; Doc. 75-11). In the Dynamic Charge, Key "checked the boxes" for "race," "sex," and "retaliation" and alleged she was Black, female, and pregnant. (*Id.*). The only action Key alleges she experienced was getting "sent home," which she believes was because of criticism and questioning about her dreadlock hairstyle and because she just told her supervisor she was pregnant (without physical restrictions). (*Id.*). The Dynamic Charge states the same supervisor told her she could leave to make a complaint with Human Resources in Birmingham and could return to work. (*Id.*). The Dynamic Charge does not allege Dynamic terminated her employment or that she was terminated from the Hyundai facility. (*Id.*).

On August 3, 2017, Key submitted an Intake Questionnaire to the EEOC stating she wanted to file an EEOC Charge against Hyundai. (Doc. 28, ¶¶ 25-26; Doc. 75-10). Key wrote in her Intake Questionnaire that she had "filed a complaint w/ Dynamic Security/the agency I was hired through . . . on Aug. 1, 2017." (Doc. 28, ¶ 26; Doc. 75-10 at p. 4). Key signed and filed a separate EEOC charge against HMMA dated October 16, 2018; and the EEOC opened an investigation under Charge No. 420-2019-00128 ("Charge No. 420-2019-00128" or the "HMMA Charge"). (Doc. 28, ¶ 28; Doc. 13-1; Doc. 75-12). Key testified she did not understand her August 3, 2017, EEOC Charge against Dynamic was different from the EEOC Charge she filed against HMMA on October 16, 2018, but "figured" they were the same and that the EEOC handled them together. (Doc. 75-1, 185:4-21;

5

193:5-13). However, Key admitted she signed and filed two separate charges – one against Dynamic as her employer and a second against HMMA as her employer – and that the charges each had a unique charge number. (*Id*., 185:19-21, 191:19-192:6; Doc. 75-18; Doc. 75-21). Nobody at the EEOC told Key that she had only one EEOC charge against both Dynamic and HMMA together as opposed to separate charge against each. (Doc. 75-1, 193:5-13).

Key received from the EEOC by mail at her house a copy of the statement of position Dynamic filed with the Commission. (Doc. 75-1, 222:13-224:2). Key sent to the EEOC a rebuttal to Dynamic's position statement, which she dated October 4, 2017. (*Id*., pp. 219:21-221:6, 75-22).

On March 1, 2019, the EEOC's District Director issued to Key and Dynamic Security a Notice of Right to Sue for the Dynamic Charge (the "Dynamic Notice-of-Right-to-Sue"), ending the investigation against Dynamic with a finding of "no cause" for discrimination. (Doc. 13-3; Doc. 75-18). The EEOC issued the Dynamic Notice-of-Right-to-Sue letter on or about March 1, 2019, and Dynamic received it on or before March 20, 2019. (Docs. 75-26, 122:3-21; 75-18; 75-30; 75-31). The delay in Dynamic's receipt until March 20, 2019, was due to Dynamic moving its local office after Key filed her EEOC Charge, but before the Dynamic Notice-of-Right-to-Sue was issued; the envelope from the EEOC to Dynamic containing the

Dynamic Notice-of-Right-to-Sue was forwarded by the United States Postal Service to Dynamic's new address. (Docs. 75-26, 203:9-204:3; 75-31).

On July 12, 2019, the EEOC's District Director mailed to Key and HMMA a "Notice of Right to Sue (Conciliation Failure)" for the HMMA Charge. (Doc. 28, ¶ 29; Doc. 1-1, 2-3; Doc. 75-21).  Key acknowledged she received at her Wrangler Road address a Dismissal and Notice of Rights for the Hyundai Charge that had a mailing date of July 10, 2019; she is not aware of any delay in receiving that document. (Doc. 75-1, 189:4-14; Doc. 75-19).

The Dynamic Notice-of-Right-to Sue shows a mailing date of March 1, 2019, to Dynamic at its address and to Key at the address of 6940 Wrangler Road, Apartment C, which Key confirmed was her correct address at that time. (Doc. 75-1, 188:17-189:6; Doc. 75-18). Key pled in her Amended Complaint that she never received the Dynamic Notice-of-Right-to Sue and that she "believed and understood that her claims against Dynamic had been incorporated with the Hyundai Charge" and that when she "received the finding in her favor and Notice of Right to Sue relating to the Hyundai charge, she believed it applied to Dynamic." (Doc. 28, ¶¶ 31-33). However, the EEOC handled separately the Dynamic Charge and the HMMA Charge, making a "cause finding" only against HMMA and attempting conciliation with only HMMA. (Doc. 28, ¶ 29; Doc. 1-1).

7

Key testified she received in the mail the determination letter for the HMMA Charge she filed. (Doc. 75-1, 188:13-189:6; Doc. 75-20). Key acknowledged she remembered receiving by mail a letter from the EEOC telling her that conciliation efforts on her HMMA Charge had failed, which she understood to mean the EEOC would not bring a lawsuit against HMMA. (Doc. 75-1, 189:20-190:6; Doc. 75-20). Key also testified she received in the mail the Notice of Right to Sue for HMMA and that she is not aware of any delay in her receipt of that letter, which was sent to the same correct Wrangler Road address. (Doc. 75-1, 190:11-191:5; Doc. 75-21).

Even though Key acknowledged that the three documents from the EEOC she had received by mail all related to her HMMA Charge, she still testified she thought "they were all the same thing" as the EEOC Charge she filed against Dynamic. (Doc. 75-1, 191:6-11).  Nobody at the EEOC told Key the two EEOC Charges she signed, one against HMMA and one against Dynamic, were the same thing – she just figured that they were. (Doc. 75-1, 193:5-13).

Key cannot explain why she did not receive the Dynamic Notice of Right to Sue and was not aware of any problems receiving mail at her Wrangler address during this time frame. (*Id*., 187:3-10, 188:6-10). During 2019, Key lived with her husband and three children, and she and her husband were the only ones who "got the mail" at her house. (*Id*., 187:14-188:5). Three days after March 1, 2019, the date the EEOC mailed the Dynamic Notice of Right to Sue, was March 4, 2019

("Dynamic Right to Sue receipt date"). Ninety days after the Dynamic Right to Sue receipt date was June 3, 2019. Key filed this lawsuit on October 10, 2019, which was 220 days after the March 4, 2019, Dynamic Right to Sue receipt date. (Doc. 1).

After the EEOC dismissed the Dynamic Charge and issued the Dynamic Notice-of-Right-to Sue, Dynamic was no longer a Respondent, and the EEOC would not have referenced Dynamic in any further communications to Plaintiff. Key testified that she saw the Dynamic Notice-of-Right-to Sue for the first time during her June 20, 2022, deposition. (Doc. 75-1, 185:23-186:5; Doc. 75-18).

4.      Dynamic hired Key and assigned her to a mail room job at Hyundai.

Key applied through Indeed.com for employment with Dynamic Security working in the mail room at Hyundai. (Doc. 75-1, 19:10-24). On or around July 19, 2017, Gloria Robinson of Dynamic interviewed Key for a mail room job, with Maurice Chambliss, also of Dynamic, sitting in on the interview. (*Id.*, 18:4-14, 15-24; 21:8-10). Robinson offered Key the mail room job and told her she would work at the Hyundai facility. (*Id.,* 22:8-23). LaTonya Howell, a Dynamic employee, trained Key to work in the mail room. (*Id.*, 23:4-13). Key was an at-will employee. (*Id.*, 25:9-19; Doc. 75-2). Key's first day of work as mailroom clerk was July 31, 2017. (Doc. 75-1, 16:12-20).

     5.     <u>Key failed to comply with HEA's grooming policy against dreadlocks and failed to comply with HMMA's exceptions.</u>

HEA has a grooming policy for Security Contractors that applies to all security officers assigned post duties at HMMA, including those assigned to the mailroom. (Doc. 75-24, 81:18-21; Doc. 75-5, p. 1; Doc. 75-29, p. 1). HEA Appearance Standards for Security Personnel provides, "Natural Dreads, Dreadlocks, Locs or similar such hairstyles are strictly prohibited. However, weaved or crocheted in type dreads are allowed." (Doc. 75-29, p. 1). Cassandra Williams, who is African American, has been employed by HEA since September 1, 2010, as facilities manager overseeing the security contract. (Doc. 75-24, 40:3-11; Doc. 75-25, 19:12-14; Doc. 75-1, 37:16-17). Williams applied the grooming policy, including disallowing dreads or dreadlock hairstyles, to all security positions including those working in the mailroom. (Doc. 75-24, 45:5-46:4). During the time Robinson was interviewing her, Robinson brought in Cassandra Williams to examine Key's dreadlock hairstyle; and Williams objected to Key's dreadlock hairstyle as being against policy. (Doc. 75-24, 77:11-81:2; Doc. 75-1, 51:4-52:10). Gloria Robinson tried to work with Key to make her hairstyle fit Hyundai's requirements, and Key showed Robinson and Williams a photograph of how she could style her dreads to look more professional, and Williams agreed the style in the photograph would be acceptable. (Doc. 75-24, 84:1-19). However, when Key arrived to her first day of work, she had not done what she stated and still had the

same dreadlock style that did not comply with the policy. (Doc. 75-25, 54:12-23; Doc. 75-24, 102:13-104:4).

> 6.    HMMA removed Key from Hyundai for failure to comply with HEA's grooming policy.

Cassandra Williams sent an email and also told Gloria Robinson asking that Key be removed from her assignment at HMMA. (Doc. 75-25, 52:22-53:3; Doc. 75-24, 94:21-95:6). Williams asked Dynamic to remove Key from the Hyundai site because her hair did not meet Hyundai standards. (Doc. 75-25, 54:2-11). It was HMMA's decision to remove Key from the mailroom clerk position at the Hyundai site due to her non-compliant hairstyle, and instructed Dynamic to remove her, which it did. (Doc. 75-25, 55:1-7; 62:6-13; 82:5-9).

> 7.    Key did not present evidence that Dynamic terminated her employment or took any adverse employment action against her because of her race.

Dynamic did not terminate her employment but simply removed her from the Hyundai site at Hyundai's instruction. (Doc. 75-25, 55:1-13; 62:12-13; 63:5-14). Key's contention that the grooming policy prohibiting dreadlocks is racially motivated is based on her testimony that she was told by Gloria Robinson that "the Koreans were a different breed of animals and that they send little memos and they don't want African Americans, you know, wearing their hair like this because of the clientele they have." (Doc. 75-1, 158:24-159:3). The "memos" were the only basis

for Gloria Robinson making that statement, and Key has never seen such memos. (*Id.*, 63:22-64:14).

## STANDARD OF REVIEW

This appeal involves the propriety of the District Court granting Dynamic's motion for summary judgment. Accordingly, this Court's review is de novo. *See, e.g., Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (summary judgment); *Cunningham v. Dist. Attorney's Office for Escambia Cnty.*, 592 F.3d 1237, 1255 (11th Cir. 2010) (judgment on the pleadings). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In responding to a properly supported motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-movant must "go beyond the pleadings" and submit admissible evidence demonstrating "specific facts showing that there is

a genuine [dispute] for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotation marks omitted). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249−50 (citations omitted). The court's role is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Importantly, if the non-movant "fails to adduce evidence which would be sufficient . . . to support a jury finding for the non-movant, summary judgment may be granted." *Brooks v. Blue Cross & Blue Shield of Fla.*, Inc., 116 F.3d 1364, 1370 (11th Cir. 1997) (citation omitted)

## SUMMARY OF THE ARGUMENT

The district court correctly determined that Key failed to file suit within 90 days of receipt of the Dynamic Notice-of-Right-to Sue dismissing her Charge against Dynamic. Thus, her Title VII claims against Dynamic were due to be dismissed, and summary judgment was entered correctly. Key has not created a dispute about a genuine issue of fact on the issue of whether she received the Dynamic Notice-of-Right-to Sue and failed to file suit within 90 days of that receipt as required by 42 U.S.C. 2000e-5(f)(1). The undisputed facts, including Key's receipt of four other mailings from the EEOC at her home mailing address and Dynamic's timely receipt of the Dynamic Notice-of-Right-to-Sue, establish a presumption that Key received

13

the Dynamic Notice-of-Right-to Sue within three days of the issuance of the Dynamic Notice-of-Right-to Sue on March 1, 2019.  Key failed to present any evidence to contest the facts establishing that presumption merely stating that she did not receive the Dynamic Notice-of-Right-to Sue.  Key's filing of her Complaint on October 1, 2019, was approximately 180 days after Key was presumed to have received the Dynamic Notice-of-Right-to Sue.

The District Court correctly determined that Key failed to present sufficient evidence that the HMMA grooming policy was racially discriminatory. The District Court correctly determined that Key failed to present sufficient evidence that Dynamic applied the grooming policy in a racially discriminatory manner toward Key.  More importantly, this Court in the *Catastrophe Management* decision has already decided the issues of law Key presents. Key's account of a comment by Gloria Williams that "the Koreans" send out memos saying they do not want black people wearing dreadlocks does not create a genuine issue of fact because that statement alone, without any unequal application in favor of white individuals, does not show any intentional racial animus. Moreover, and alternatively, Key's reference to Williams' comment was a description of the contents of a document and thus is barred by the Best Evidence rule.

14

ARGUMENT AND CITATIONS OF AUTHORITY[2]

## I.  THE DISTRICT COURT CORRECTLY DETERMINED THAT KEY'S TITLE VII CLAIM AGAINST DYNAMIC WAS UNTIMELY.

### A.  Key Failed to File Suit against Dynamic within 90 Days after Receipt of the Dynamic Notice-of-Right-to-Sue, Barring any Title VII Claim against Dynamic.

The District Court correctly granted summary judgment for Dynamic on Key's Title VII claims based on Key's failure to file suit within 90 days of receipt of the Dynamic Notice-of-Right-to Sue from the EEOC. In doing so, the District Court did not improperly weigh the evidence, but found that Key failed to raise any issue of fact that she had not received the Dynamic Notice-of-Right-to Sue while substantial evidence existed that all of the EEOC's procedures were followed. First, Key's action against Dynamic was filed 210 days after the presumptive receipt date and was, therefore, 120 days late, not a day or two as Key's brief and the EEOC's amicus brief seem to state. Dynamic received a copy of the Dynamic Notice-of-Right-to Sue on or about March 20, 2019.[3]   Key also received multiple other notices from the EEOC.

---

[2]  Dynamic adopts and incorporates herein all grounds and arguments presented by Defendants/Appellees HMMA and HEA in their respective appellate briefs with regard to Key's appeal of the District Court's dismissal of her race discrimination claims pursuant to Title VII and § 1981 arising out of HEA's grooming policy, the application of HEA's grooming policy, and with regard to her dreadlock hairstyle.

[3]  The delay in the receipt by Dynamic was due to Dynamic changing its mailing address. Furthermore, if that date is used as Key's receipt date, Key's complaint against Dynamic was still filed four months late. The argument in the Equal Employment Opportunity Commission's amicus brief that Dynamic did not receive the Dynamic Notice-of-Right-to-Sue until after March 4, 2019, and thus the three-day presumption is unreasonable (doc. 36 at 33), ignores the undisputed explanation given that Dynamic moved and changed its mailing address.

Key's brief and the EEOC's amicus brief completely ignore all of those facts and rely solely on Key's contention that she never received the Dynamic Notice-of-Right-to-Sue and request this Court to provide the type of open-ended statute of limitations that this Court has rejected.

For a plaintiff to maintain an action under Title VII, she must file a complaint within ninety days of receiving the EEOC's Notice-of-Right-to-Sue letter. *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005) (citing 29 U.S.C. § 626(e)). "Once a defendant contests the issue of whether the complaint was filed timely, the plaintiffs bear the burden of showing that they have met the requirement." *Kerr*, 333 F. Supp. 2d at 1358 (citing *Green v. Union Foundry Company*, 281 F.3d 1229, 1233 – 34 (11th Cir. 2002)). Where there is no evidence to the contrary, the court will assume that the plaintiff received the right-to-sue letter three days after it was issued. *Kerr*, 427 F.3d at 953, n. 9. "When the date of receipt is in dispute, this court has applied a presumption of three days for receipt by mail, akin to the time period established in Fed. R. Civ. P. 6(e)." *Kerr*, 427 F.3d at 953, n. 9 (citing *Zillyette v. Capital One Financial Corp.*, 179 F.3d 1337, 1342 (11th Cir. 1999)); *Winsor v. Home Depot U.S.A., Inc.*, 743 F. App'x 335, 335-36 (11th Cir. 2018) (where the date of receipt by mail is in dispute, the court presumes that the plaintiff received the right-to-sue-letter three days after it was issued, which meant that the plaintiff was deemed to have filed his complaint on the 98th day, making it untimely). These presumptions

16

are designed among other reasons to prevent a Title VII plaintiff from having an open-ended time period to file based on alleged non-receipt of the EEOC's Notice-of-Right-to-Sue letter. *Kerr*, 427 F.3d 952 ("[W]e have expressed concern over enabling complainants to enjoy a 'manipulable open-ended extension which could render the statutory minimum meaningless." (quoting *Zillyette*¸179 F.3d at 1340); *see also Winsor v. Home Depot,* 743 Fed. Appx. 335, 336 (11th Cir. 2018 ) ("We have declined to impose a requirement of 'actual receipt'" of the right-to-sue letter where it might foster a 'manipulable open-ended time extension which would render the statutory limitation meaningless.'" (quoting *Law v. Hercules, Inc.*, 713 F.2d 691, 692-93 (11th Cir. 1983))  (internal quotation marks omitted).

Key is attempting to reverse the burden of proof to Dynamic by claiming "[b]ecause Key took all reasonable steps to ensure the EEOC provided her notice of any dismissal, and because Dynamic has no evidence to rebut her testimony that she never received the dismissal, Key is not subject to the three-day mailing rule." (Doc. 32, Appellant's Brief at 42). That is an incorrect statement of the law. To create an issue of fact, Key must produce some evidence that she did not receive the Dynamic Notice-of-Right-to Sue through no fault of her own. More importantly, Key's own self-serving statement that she did not receive the Dynamic Notice-of-Right-to-Sue is insufficient, particularly so here because Key received four notices from the EEOC at the correct address. Her assumption that the Dynamic Charge had been

combined with another Charge is her fault; or at least she offers no evidence that fault lay with someone else.

Key testified she filed two EEOC Charges, one against Dynamic and one against HMMA. (Doc. 75-1, 185:19-21, 191:19-192:6; Doc 75-18 DX 22; Doc. 75-21 DX 25). Key listed the same home address on the two EEOC Charges. Key received in the mail from the EEOC at that address a copy of Dynamic's position statement filed with the EEOC and submitted a response to the position statement. (Doc. 75-1, 219:21-221:6; 75-22). Key further testified she received three letters from the EEOC regarding a cause finding, conciliation, and the EEOC's decision not to file a lawsuit against HMMA on her behalf. (Doc. 75-1, 188:13-189:6, 189:20-190:6, 190:11-191:5; Doc. 75-20, DX 24; Doc. 75-21, DX 25; and Doc. 75-22, DX 26). In fact, Key attached to her Complaint filed on October 10, 2019, the EEOC's Notice-of-Right-to-Sue for the HMMA Charge. (Doc. 1, ¶ 11, Doc. 11). The HMMA Right-to-Sue that Key attached to her Complaint bears a mailing date of July 12, 2019 (Doc. 1-1). All four of the items referenced above that Key received in the mail from the EEOC were mailed to Key at the address Key included in her EEOC Charge against Dynamic, which is the same address reflected on the Dynamic Notice-of-Right-to-Sue.

The EEOC issued the Dynamic Notice-of-Right-to-Sue letter on or about March 1, 2019, and Dynamic received it on or before March 20, 2019. (Docs. 75-26,

122:3-21; 75-18; 75-30; 75-31). The delay in Dynamic's receipt until March 20, 2019, was due to Dynamic moving its local office after Key filed her EEOC Charge, but before the Dynamic Notice-of-Right-to-Sue was issued; the envelope from the EEOC to Dynamic containing the Dynamic Notice-of-Right-to-Sue was forwarded by the United States Postal Service to Dynamic's new address. (Docs. 75-26, 203:9-204:3; 75-31).

Key's claim to have not received the Dynamic Notice-of-Right-to-Sue is unreliable; on October 4, 2017, which was before she even filed an EEOC Charge against HMMA, she submitted to the EEOC a "rebuttal" letter responding to Dynamic's Statement of Position (Charge Number 846-2017-32787) (Doc. 75-22). Key's testimony is that she made assumptions that the Dynamic and HMMA Charges she filed were somehow combined, that she did not receive the Dynamic Notice-of-Right-to Sue even though her address was correct, that she received multiple other mailings from the EEOC in the same time frame, that she and her husband were the only people who received mail at her house, and that she had intentionally submitted a rebuttal statement to the EEOC specific to her Dynamic Charge and allegations against Dynamic.

Key does not dispute the Dynamic Notice-of-Right-to-Sue was issued around March 1, 2019, admitting in her Statement of Facts that "[a]pparently, the EEOC issued a Dismissal and Notice of Rights on the Dynamic Charge sometime around

19

March 1, 2019. . . ." (Doc. 32, Appellant's Brief at 23). Clearly, she fails to rebut the presumption that she timely received the Dynamic Notice-of-Right-to Sue at her home address. Therefore, the presumptive three-day rule applies, and this Court must find that Key received the Notice on March 4, 2019. Ninety days after March 4, 2019, was June 2, 2019, which was the last day Key could have filed a timely lawsuit arising out of her alleged EEOC Charge. Key did not file her Complaint until four months later, on October 10, 2019, making her Title VII claims untimely and due to be dismissed (Doc. 1) on this ground alone. This Court has found that the date of the issuance of the Notice-of-Right-to-Sue is the date from which the three-day rule applies unless plaintiff comes forth with some evidence to rebut the presumption. *See Robinson v. City of Fairfield*, 750 F.2d 1507, 1510 n. 4 (11th Cir. 1985) ("By contrast, a subsequent Supreme Court decision presumed that a plaintiff received her right-to-sue letter three days after it was issued, citing Rule 6(e).") (citing *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 148, n. 1(U.S. 1984)); *see also Robbins v. Vonage Business*, 819 Fed. Appx. 863, 867 (11th Cir. 2020) ("Because the notice was issued on November 22. 2017, application of the three-day presumption would result in a receipt date of November 25, 2017 – a date which would make the complaint 27 days late.")

Dynamic presented evidence that it received the Dynamic Notice-of-Right-to-Sue bearing the same mailing date as the one the EEOC file reflects as having been

sent to Key. (*See* Doc. 75-30). Yet Key's only evidence is her testimony she checked her mail and did not receive the right to sue notice. Key attempts to remove any responsibility from herself, arguing, "[n]o one from the EEOC informed Key that her charges had been bifurcated, that the Dynamic charge had been issued, or even that separate dismissals would be mailed" (doc. 82 at 47), but she presents no authority that the EEOC has any responsibility to take affirmative steps prior to issuing a notice of right to sue to ensure that a Charging Party fully comprehends the meaning of having filed two separate EEOC Charges. Moreover, less than six months before the March 1, 2019, mailing date of the Dynamic Notice-of-Right-to-Sue Key filed on October 16, 2018, a separate EEOC Charge against Hyundai bearing a distinct charge number. Yet, Key claims she did not know the Dynamic Charge and Hyundai Charge were separate and did not learn of receipt of a notice of right to sue regarding the Dynamic charge until January 2020, several months after filing this lawsuit. Key has failed to overcome the presumption of proper mailing and receipt, as she has presented no evidence of unreliability in the EEOC's mailing process or evidence that the EEOC did not mail the notice on the date indicated.

In the end, Key's own self-serving sworn deposition testimony speculating that her notice of right to sue was lost in the mail and self-serving sworn declaration testimony that she checked her mail and did not receive the Dynamic Notice-of-Right-to Sue is unreliable evidence that unfairly relieves Key of any responsibility

to be engaged in the EEOC process she initiated. *See Zillyette v. Cap. One Fin. Corp.*, 179 F.3d at 1340 (11th Cir. 1999) (placing on the plaintiff the burden of communicating with family members to be on the lookout for an "important letter related to their pending claim" in attempt to "insure against the possibility of manipulation when the time of receipt is uniquely within the plaintiff's control"); *see also Taylor v. Yellen*, No. CV 1:20-00583-CG-N, 2021 WL 6135491, at *3–4 (S.D. Ala. Nov. 23, 2021), report and recommendation adopted, No. CV 20-583-CG-N, 2021 WL 6202563 (S.D. Ala. Dec. 30, 2021), appeal dismissed sub nom. *Taylor v. Sec'y, U.S. Dep't of the Treasury*, No. 22-10248-AA, 2022 WL 1257155 (11th Cir. Apr. 22, 2022) (granting summary judgment on untimeliness grounds because the plaintiff's "shifting, inconsistent declarations regarding her receipt of the EEOC's right to sue letter," including declarations submitted to rebut the defendant's motion for summary judgment, failed to meet her burden of rebutting the defendant's challenge to the timeliness of the suit); *Carter v. Jack Daniel's Distillery*, 2002 U.S. Dist. LEXIS 26887 *4-5 (E.D. Tenn. Nov. 26, 2002) (court entered judgment because the plaintiff's evidence that consisted only of her own unsubstantiated, self-serving affidavit failed to rebut the applicable five-day mailing presumption; plaintiff did not proffer any other probative evidence to prove she received the notice when she alleged). *Carter v. Jack Daniel's Distillery* at *4-5. Here, Key also points to nothing other than her own self-serving declaration to support her contention she

never received the Dynamic Notice-of-Right-to Sue in the mail.

As the District Court found, this case is very similar to the facts in *Kerr*. (Doc. 138 at 21). Although the plaintiffs in that case claimed they never received the notices of the right to sue until approximately six weeks after the notices were issued, this Court found sufficient evidence that the notices had been mailed earlier. In reaching that conclusion, this Court relied heavily on the evidence that the plaintiffs had received other mail from the EEOC at that address and that the employer had received the notice of right to sue without delay.[4] *Kerr*, 417 F.3d at 951-52. The undisputed facts in this case are more compelling than the facts in *Kerr*. In *Kerr* the district court had evidence of the usual mailing procedures. In this case, every imaginable piece of mail the EEOC sent to Key arrived at her home address (the same address that was on the Dynamic Notice-of-Right-to-Sue). Dynamic itself received a copy of the Dynamic Notice-of-Right-to Sue in a timely fashion. The receipt of the four letters by Key and Dynamic's receipt of the Dynamic Notice-of-Right-to Sue is sufficient for the three-day rule to apply and to require Key to make some showing – other than her unsupported denial - to rebut the presumption. *Kerr,* 427 F.3d at 952.[5] Key has not attempted to make that showing relying solely on her

---

[4] As the District Court correctly noted, Dynamic's receipt of its copy of the Dynamic Notice-of-Right-to-Sue was delayed due to the office being moved. But as the District Court also noted, if the 90-day time period is measured from the date Dynamic actually received the Dynamic Notice-of-Right-to-Sue, Key's suit was still untimely by almost four months. (Doc. 138 at 22 n. 3).

[5] The case cited by the EEOC in its amicus brief from the Third Circuit for the proposition that a self-serving declaration of non-receipt is sufficient had none of these indicators that the notice of

self-serving statement that she did not receive the Dynamic Notice-of-Right-to Sue. As the District Court correctly stated it, "Key has not identified any evidence demonstrating there may a flaw in the mailing procedure." (Doc. 138 at 22).

Furthermore, all of the cases cited by Key and the EEOC for the proposition that Key had taken all reasonable steps to ensure delivery (doc. 32 at 30-31, 33-34; 36 at 22-23) and, therefore, the three-day presumption should not apply were cases that, as the District Court described it, "had some type of *affirmative evidence* that an event out of the complainant's control occurred to keep her from noticing the right-to-sue letter." (Doc. 138 at 23). *See, e.g., Stallworth v. Wells Fargo Armored Servs. Corp.*, 936 F.2d 522, 524-25 (11th Cir. 1991) (notice not sent to lawyer as instructed but to former address); *Franks v. Bowman Transp. Co.*, 495 F.2d 398, 404 (5th Cir. 1974) (reversed on other grounds) (nine-year-old nephew signed for and lost the notice). Key has not produced any of that affirmative evidence that failure to received notice was out of her control. As Key correctly points out, the case Key cites for the proposition that "the timer begins to run on the date of actual receipt, not the presumed three-days" (doc. 32 at 38) (citing *Robbins v. Vonage Business*, 819 Fed. Appx. at 867) found the plaintiff's claims was untimely because of her counsel's failure to take reasonable steps to ensure delivery.

---

right to sue had been mailed. (Doc. 36 at 34) (citing *Hayes v. N.J. Dep't of Hum. Servs.*, 108 F.4th 219, 224 (3d Cir. 2024)).

Applying the standard three-day presumption for receipt by mail, Key is presumed to have received notice of the EEOC's decision more than six months before she filed her lawsuit bringing Title VII claims against Dynamic, and she had plenty of notice to contact the EEOC to inquire if she did not think she had received it. *Kerr*, 427 F.3d at 953. And under the "fair and reasonable" framework of *Green v. Union Foundry Co.* used to evaluate when a complainant receives notice of an EEOC's decision, Key fails to establish that she did not receive the right to sue notice three days after the mailing date. 281 F.3d at 1234 (affirming dismissal of an untimely Title VII suit where the plaintiff failed to "rebut the fact that ninety-seven days elapsed from the date of mailing to the date of filing"). The Eleventh Circuit's three-day presumption of receipt rule applies here, and Key failed to overcome that presumption of receipt. Key's Title VII claims against Dynamic must be dismissed because they are time-barred.

B.    Dynamic Had Alternative Grounds for Granting Summary Judgment

In addition to Key's Title VII claims being time-barred, alternative grounds exist for granting summary judgment with respect to any Title VII termination or race discrimination claims against Dynamic.

1.    Key Failed to Satisfy Administrative Prerequisites with Regard to Any Title VII Termination Claim against Dynamic by Failure to Allege in Her EEOC Charge that Dynamic Terminated Her Employment.

25

Before a potential plaintiff may sue for discrimination under Title VII, she must first exhaust her administrative remedies." *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001) (citing *Crawford v. Babbitt*, 186 F.3d 1322, 1326 (11th Cir. 1999)). The first step is filing a timely charge of discrimination with the EEOC, which in a non-deferral state like Alabama is within 180 days after the last discriminatory act. *Wilkerson*, at 1317 (citing 42 U.S.C. § 2000e–5(b), and 5(e)(1) (1994)). Exhaustion also requires that, before a plaintiff can pursue a claim in federal court, the EEOC charge must have addressed that claim to permit the EEOC the opportunity to pursue remedial action against the Respondent. See *E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002); 42 U.S.C. § 2000e-5. A plaintiff thus may not raise for the first time in judicial proceedings "allegations of new acts of discrimination." *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989). The Eleventh Circuit succinctly set forth the law on administrative prerequisites to bring a judicial Title VII claim as follows:

> "The starting point of ascertaining the permissible scope of a judicial complaint alleging employment discrimination is the administrative charge and investigation." Alexander v. Fulton County, Ga., 207 F.3d 1303, 1332 (11th Cir. 2000). "No action alleging a violation of Title VII may be brought unless the alleged discrimination has been made the subject of a timely-filed EEOC charge." Id. "EEOC regulations provide that charges should contain, among other things,' 'a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices." Id. "A plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."

> Id. (internal quotation marks omitted.) Although we have stated that "the scope of an EEOC complaint should not be strictly interpreted," we have also been careful to "caution[] that allegations of new acts of discrimination are inappropriate." Gregory v. Ga. Dep't of Human Resources, 355 F.3d 1277, 1279-80 (11th Cir. 2004). We will consider judicial claims only if they "amplify, clarify, or more clearly focus the allegations in the EEOC complaint." Id. at 1279. We must ask, then, whether the claims pursued in the judicial proceeding are "like or related to, or grew out of, the allegations contained in [the employee's] EEOC charge." Id. at 1280.

*Minix v. JELD-WEN, Inc*., 237 F. App'x 578, 587 – 88 (11th Cir. 2007); 2007 U.S. App. LEXIS 15463. ** 26-27; 101 Fair Empl. Prac. Cas. (BNA) 367 (court dismissed claim because Key failed to include it in EEOC Charge and it did not arise out of allegations of hostile work environment claim). *See also Newman v. Career Consultants, Inc*., 470 F. Supp. 2d 1333, 1343 (M.D. Ala. 2007) (granting summary judgment in favor of employer as to employee's failure to promote and hostile environment claims as those claims could not reasonably be expected to grow out of employee's EEOC charge based upon employer's discriminatory discharge and failure to train); *Williams v. Hager Hinge Co*., 916 F. Supp. 1163, 1174 (M.D. Ala. 1995) ("Courts have found that a charge based on [ ] discrimination does not encompass all potential claims for denial of promotions, pay raises, transfers, and overtime.").

"EEOC regulations provide that charges should contain, among other things, '[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices.'" *Swindle v. Hale*, 2:09-CV-1458-SLB,

2012 WL 4725579 at *20 (N.D. Ala. Sept. 30, 2012), appeal dismissed (Feb. 4, 2013) (quoting *A.M. Alexander v. Fulton County, Ga*., 207 F.3d 1303, 1332 (11th Cir. 2000) (internal citations omitted) overruled on other grounds by *Manders v. Lee*, 338 F.3d 1304, 1328 n. 52 (11th Cir. 2003)). Consequently, "[t]he selection of the type of discrimination alleged, i.e., the selection of which box to check, is in reality nothing more than the attachment of a legal conclusion to the facts alleged." Id. Indeed, "checking the correct box alone is not sufficient to satisfy the filing requirement when no factual particulars relating to the claim are disclosed to the EEOC." Id. (citing *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1225 (11th Cir. 2000)); see also *Cox v. Colsa Corp*., 2014 WL 3889495, at *4 (N.D. Ala. Aug. 6, 2014) (dismissing a retaliation claim in spite of the fact that the plaintiff checked the charge's "RETALIATION" box because the charge was devoid of factual averments that would prompt the EEOC to investigate retaliation). "[T]he crucial element of a charge of discrimination is the factual statement contained therein." *Houston v. Army Fleet Servs., L.L.C.,* 509 F. Supp. 2d 1033, 1042-43 (M.D. Ala. 2007); see also *Vinson v. Koch Foods of Ala., LLC*, 2013 WL 5441969, at *10 (M.D. Ala. Sept. 27, 2013) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970)).

Key's EEOC Charge against Dynamic, which she filed on August 3, 2017, "checked the boxes" for "race," "sex," and "retaliation." (Doc. 75-11, DX 14). Her Charge alleges she is Black and female and was pregnant at the time. (*Id*). It alleges

she was sent home, which she feels was because of her dreadlock hairstyle and she had informed her supervisor she was pregnant but had no medical restrictions. (*Id.*). She also alleges she was told by a Dynamic supervisor that she could leave to make a complaint and could return. (*Id.*). Key does not allege Dynamic terminated her employment or that she was terminated from the Hyundai facility. (*Id.*).

Count One of Key's Amended Complaint, "Title VII – Pregnancy Discrimination" alleges "Defendants [without specifying Dynamic, HMMA or HEA] terminated Key's employment from the Hyundai Plant August 2, 2017," that "Defendant Dynamic did not assign Key to any other assignments upon her Hyundai termination," and that "Defendants terminated Plaintiff because of her pregnancy." (Doc. 28, ¶¶ 102-104). Count Two of Key's Amended Complaint, "Title VII Race Discrimination" alleges "Defendant Dynamic was aware of Hyundai's alleged concern [about her dreadlocks] and allowed Hyundai to prevent Key from working." (Doc. 28, ¶ 115). Count Four of Key's Amended Complaint, "Title VII Race Retaliation" alleges "Defendants discriminated against Plaintiff in retaliation for engaging in protected activity in violation of Title VII . . . by terminating Plaintiff's employment when she complained of discrimination on the basis of a racially protected trait and a racially disparate grooming policy." (Doc. 28, ¶ 140).

Key is barred from pursuing any claim against Dynamic based on any purported adverse action of termination from employment because she failed to

29

allege in her EEOC Charge that Dynamic terminated her employment or that Dynamic removed her from assignment at the Hyundai plant. Key's EEOC Charge alleges only that she was sent home and that, the next day, she was told she could leave work to make a complaint to Human Resources in Birmingham and could then return to work. A plaintiff is not permitted to allege in her lawsuit new acts of discrimination. See *Price v. M & H Valve Co.*, 177 F. App'x 1, 13–14 (11th Cir. 2006) (disparate impact claim barred because not alleged in EEOC charge) (citing *Gregory v. Georgia Dept. of Human Resources*, 355 F.3d at 1280; and *Wu v. Thomas*, 863 F.2d at 1547 (a plaintiff may not raise "allegations of new acts of discrimination" in the judicial proceedings)). Because Key did not allege in her EEOC Charge against Dynamic that Dynamic terminated her employment or removed her from the Hyundai facility, she cannot pursue Title VII claims against Dynamic in federal court arising out of any such purported adverse employment action. Summary judgment is therefore due to be granted, dismissing Counts One, Two, and Four as against Dynamic.

2.    Key's Amended Complaint Does Not Assert a Title VII Race Discrimination Claim Against Dynamic.

Key's Amended Complaint asserts under Count Two a claim for "Title VII Race Discrimination." (Doc. 28 at 16). The basis for that claim is that Key was

terminated because of her race. That claim, however, is only asserted against HMMA and HEA. Count Two specifically alleges:

1) "Without allowing Plaintiff time to change her hairstyle, Defendants HMMA and HEA terminated Plaintiff's employment from the Hyundai Plant August 2, 2017." (Doc. 28 at 17, ¶ 116);

2) "Defendants HMMA and HEA terminated Plaintiff because of her race." (*Id.*, ¶ 119);

3) "Race was a motivating factor in HMMA and HEA's decision. (*Id.*, ¶ 120).

Count Two includes no allegation that Dynamic terminated Key's employment or took any action due to Key's race. The only allegations are that "Dynamic was aware of Hyundai's concerns around Key's hair and allowed Hyundai to prevent Key from working" (*Id.*, ¶ 115), which appears to relate to the allegation that HMMA and HEA sent Key home from her shift – rather than to an allegation that Dynamic terminated her employment. (*Id.*, ¶ 113). The specific allegations against HMMA and HEA and the lack of any allegations against Dynamic clearly demonstrate that Key has not asserted a race discrimination claim relating to her termination. See *Lennon v. Alabama Telecasters*, CIVIL ACT. NO. 2:18-cv-967-ECM, 2021 WL 1554892 *3 and n.4 (M.D. Ala. April 20, 2021) (although complaint factually mentioned acts of alleged harassment, it did not specifically assert a claim for inappropriate workplace behavior, which eliminated any potential claim of harassment against defendant). The only claim asserted in Count Two is based on the act of termination of

employment, and Key does not make that allegation against Dynamic, which requires summary judgment in favor of Dynamic on Count Two.

Finally, the fact that Key separately notified the Equal Employment Opportunity Commission ("EEOC") in a letter about her purported termination by Dynamic is not sufficient to raise the claim. An unverified questionnaire or any other form of informal communication in writing or otherwise does not satisfy the statutory conditions precedent to filing an EEOC charge. To satisfy the conditions precedent for filing a charge, a charge must be verified – given under oath or affirmation. 42 U.S.C. § 2000e-5(b); 29 C.F.R. § 1601.9; *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1241 (11th Cir. 2004) (intake questionnaire filed along with an affidavit not sufficient since plaintiff later filed another charge and no investigation began until after charge filed); *Pijnenburg v. West Georgia Health Sys, Inc.*, 255 F.3d 1304, 1305 (11th Cir. 2001) ("[A]s a general matter, an intake questionnaire is not intended to function as a charge."); *Vason v. City of Montgomery*, 240 F.3d 905, 907 (11th Cir, 2001); *Wilson v. Sprint/United Mgmt. Co.*, 2011 WL 2670184 at \*7 (M.D. Fla. July 8, 2011) (unverified intake questionnaire is not a charge).

## II. DISTRICT COURT CORRECTLY DETERMINED THAT APPLICATION OF THE GROOMING POLICY WAS NOT RACE DISCRIMINATION UNDER TITLE VII AND 1981.

On appeal, Key argues the District Court erred in granting summary judgment on her race discrimination claims because (1) "a reasonable juror could find that race

32

was a motivating factor in the application of the grooming policy;" (2) "the evidence creates a trial issue as to Defendants' intent with the policy;" (3) "Defendants-Appellees cannot escape liability because strict comparators do not exist;" and (4) "nothing in the text of Title VII or § 1981 limits race to an immutable characteristic." (Doc. 32, p. 45)

A.  <u>Controlling Law Is That Race-Neutral Grooming Policies against Wearing of Dreadlocks Are Nondiscriminatory unless Applied in Discriminatory Manner.</u>

The District Court was correct in following *E.E.O.C. v. Catastrophe Mgmt. Sols.* in holding "[a]bsent evidence of discriminatory application of restrictions on dreadlocks, the Eleventh Circuit treats race neutral no-dreadlocks grooming policies as nondiscriminatory," Doc. 138, p. 28 (citing *E.E.O.C. v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1030 (11th Cir. 2016)). The court in *Catastrophe Management* held that dreadlocks are a hairstyle, not "an immutable characteristic of race," even though they "are a 'natural outgrowth' of the texture of black hair." *Id.* The District Court correctly stated that, to survive summary judgment, Key must have produced evidence that HEA's grooming policy was disparately applied to African Americans, and it was correct in finding she failed to do so.

1.  <u>*Catastrophe Management* is not factually distinguishable from Key's case.</u>

Key argues *Catastrophe Management* does not apply to her case due to factual differences. Specifically, she states the plaintiff in *Catastrophe Management*, "did not allege that the charging party wore dreadlocks because [o]f an immutable characteristic, and instead, noted [the plaintiff] chose the hairstyle as 'historically, physiologically, and culturally associated with their race.'" *Catastrophe Mgmt.*, 852 F.3d at 1030. Key attempts to factually distinguish *Catastrophe Management* by claiming "she would be required to chemically treat her hair in order to not have dreadlocks." (Doc. 32 at 47-48). Yet this is exactly the situation the Eleventh Circuit addressed in *Catastrophe Management.* Key does not argue that black people have hair conducive to forming dreadlocks without chemical treatment; instead, she argues that <u>she</u> has hair conducive to forming dreadlocks without chemical treatment. This is exactly in line with this Court's ruling that, even where dreadlocks are a "natural outgrowth" of the texture of black hair, the naturalness "does not make them an immutable characteristic of race." *Equal Emp. Opportunity Comm'n v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1030 (11th Cir. 2016). In fact, Key's reasoning seems to undermine her argument that the application of the grooming policy as applied to her is evidence of race discrimination.

In her appeal, Key speculates about HAA's intent behind implementing a neutral grooming policy, arguing that "[o]ne motive behind the grooming policy was to prevent African American employees from having dreadlocks when working in

34

positions visible to the public." (Doc. 32 at 46). But even if subjective motivation behind implementation of a facially neutral policy were relevant to this analysis, Key fails to cite the record for any evidence supporting this argument.

>2. <u>Key failed to identify evidence showing racially disparate application of HEA's grooming policy as required by *Catastrophe Management*.</u>

Key speculates as evidence of illegal racial motivation that Williams, who is African American, "held negative beliefs about dreadlocks unless they were pulled back and freshly done so as to not be identified as dreadlocks." (Doc. 32 at 46). Again, Key fails to cite the record for any evidence supporting this factual assertion or that Williams' personal preference about styling natural dreadlocks amounts to illegal racial motivation. Even had she, this argument is counter-productive to establishing racial motivation. The grooming policy prohibited entirely dreadlocks hairstyle, but Williams was willing to work with her and make an exception. Thus, testimony that Williams <u>permitted</u> her to wear dreadlocks or that Williams personally did not like unstyled dreadlocks cannot create an issue of fact that Williams bore illegal racial discrimination in relieving her of assignment at the Hyundai plant. The evidence shows Key would have been permitted to work at the plant with styled dreadlocks, and her removal for failure to wear styled dreadlocks is not evidence of racially discriminatory application of a neutral grooming policy.

Next, Key argues she should not have been denied a jury trial on Dynamic's and the other Defendants/Appellees' racially discriminatory application of the neutral grooming policy "simply because Defendants-Appellees have not had the opportunity to decide whether a White employee's dreadlocks are appropriate" and that a comparator is not necessary to establish racially discriminatory intent. (Doc. 32, p. 39). While Dynamic acknowledges comparators are indeed not always necessary to establish racially discriminatory intent in light of other compelling evidence of illegal racial motivation, the *Catastrophe Management* case makes clear that an employer's facially neutral grooming policy against wearing dreadlocks is not per se racially discriminatory but discriminatory application would be. Establishing disparate application of the policy based on race without evidence of a comparator might be conceivable, but it is not likely, and Key has presented no such evidence of disparate application of the policy between herself and individuals outside her protected class. Her attempts to split hairs between various styles of dreadlocks brings the District Court into the territory of acting as a super personnel board, which this Court is loath to do. *See, e.g., Hayes v. ATL Hawks, LLC*, 844 F. App'x 171, 182 (11th Cir. 2021) (citing *Wilson v. B/E Aerospace, Inc*., 376 F.3d 1079, 1092 (11th Cir. 2004)).

Key argues Robinson's statement about the "Korean memos" alone is enough to show that the grooming policy had a discriminatory purpose and race was a

motivating factor in her removal from the Hyundai plant. She stated, "[t]he record evidence, which must be viewed in the light most favorable to Key, includes Robinson[']s statement linking the dreadlocks policy to African Americans because of a negative racial trait." (Doc. 32 at 45). She argues this statement is "direct evidence" of race discrimination and sufficient to satisfy her burden of showing a sufficient link between race and the adverse action at issue. The evidence Key presented to the District Court is her own testimony that Robinson told her "that the Koreans were a different breed of animals and that they send little memos and they don't want African Americans . . . wearing their hair [in dreadlocks] because of the clientele they have." (Doc. 138 at 29) (citing Doc. 75-1 at 41)). The District Court found that "Robinson denies ever making this statement," "the only evidentiary support for the memos from unidentified 'Koreans' is Key's own testimony as to Robinson's statement," and "[n]o documentary evidence corroborating this claim was ever submitted." (Doc 138 at 29).

B.    Key Failed to Demonstrate District Court Erred in Finding
       Insufficient Evidence of Discriminatory Motive by Dynamic.

Key argues that her race discrimination claims against Defendants/Appellees should have survived summary judgment because she satisfied her burden to "present evidence to create a triable issue of discriminatory intent," citing *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 946 (11th Cir. 2023), *cert. denied*, No. 23-

1235, 2024 WL 4426607 (U.S. Oct. 7, 2024) and arguing that the district court examined her evidence individually rather than in totality as her "story." (Doc. 34, p. 38) (citing *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1311 (11th Cir. 2023)). However, even considering all evidence to determine its sufficiency to form a "mosaic" of discriminatory intent, her story falls short. The evidence she proffers is merely speculative, regardless of whether she argues it amounts to direct evidence[6] or circumstantial evidence. *See Berry v. Crestwood Healthcare LP*, 84 F.4th at 1311 ("[i]nferences in favor of [an employee] can be based only on evidence—not on speculation.") (quoting *Martin v. Fin. Asset Mgmt. Sys., Inc.*, 959 F.3d 1048, 1058 (11th Cir. 2020)). Key presented to the District Court no evidence of racially discriminatory intent against her in eventually relieving her of her assignment at the Hyundai plant for failure to comply with the grooming policy. She has presented no evidence that HEA's appearance standard was not uniformly applied; her argument that other black employees were permitted to wear styled dreadlocks does not establish racial motivation by any Defendant/Appellee; the instruction she received to style her dreadlocks or wear them under a hat rather than in what she refers to as their natural state is not evidence of discriminatory application of the policy against

---

[6] Key frames Key's testimony of Robinson's statement about the content of the "Korean memos" as direct evidence of a link between her race and the adverse employment decision. (Doc. 32, p. 37). This is hardly direct evidence of discriminatory intent by Dynamic in HEA's implementation of the grooming policy or its application to Key, and it does not link illegal motivation by Dynamic to any adverse employment action.

her because of her race[7]; and she failed to identify any individual outside her protected class who was permitted to wear their hair in natural dreadlocks.

C.    The Best Evidence Rule Bars Consideration of "Korean Memos" as Evidence of Racially Discriminatory Intent Underlying Grooming Policy.

Even if the District Court had permitted Key's testimony about the Korean memos as evidence of racially discriminatory application of the grooming policy, which it did not, Key's testimony as to what Gloria Robinson said about the contents of Korean memos she had seen is not sufficient evidence of the content of the memos and certainly is not the best evidence. The alleged contents of the memos are the only basis for Key contending the "Koreans" did not want African Americans wearing dreadlocks.  (Doc. 75-1, 63:22-64:14). Without the memos themselves, there was no evidence before the District Court that could create a jury question as to whether any Defendant/Appellee was motivated by racial discrimination in applying a neutral grooming policy against Key for wearing dreadlocks.

The Best Evidence Rule applies whenever a party attempts to testify regarding or introduce evidence of the contents of a document and prohibits admission of such testimony. *Roundtree v. Bowers*, No. 22-11557, 2022 WL 17986182 *3 (11th Cir.

---

[7] Her argument that her hair would become dreadlocks without chemical treatment is not compelling. Race aside, any person with hair would likely fail to comply with a neutral neatness grooming policy without some kind of proactive styling, whether that be brushing, cutting, or a number of other normal grooming interventions.

December 29, 2022) ("This rule applies when a witness seeks to testify about the contents of a recording when the witness was not privy to the events described.");[8] *Benjamin v. Thomas,* 766 Fed. Appx. 834, 837 (11th Cir. 2019) ("[T]he best evidence rule thus applies 'when a witness seeks to testify about the contents of a writing, recording or photograph without producing the physical item itself - particularly when the witness was not privy to the events those contents describe."); In *re Lynch*, 755 Fed. Appx. 929 (11th Cir. 2018) ("if, however, a witness testifies about the contents of a documents that have not been separately admitted into evidence, that testimony may be excluded under Federal Rule of Evidence 1002, provided that an exception to the so-called 'best-evidence rule' does not apply.").[9]

The purpose of the Best-Evidence Rule is to prevent inaccurate information when describing documents while the actual documents accurately reflect the information. *Gordon v. United States,* 344 U.S. 414, 420 (1953)) ("The elementary wisdom of the best evidence rule rests on the fact that the [recording itself] is a more reliable, complete and accurate source of information as to its contents and meaning

---

[8] The Eleventh Circuit found the district court correctly sustained an objection to admission of an internal report where the investigator stated that he had seen a video and that the plaintiff was struck 16 times.

[9] *See also Adams v. Memorial Hermann,* Civil Action No. 4:15-CV-01270, 2018 WL 5886800 *4 (S.D. Tex. November 19, 2018) ("Plaintiffs and/or Patterson purport to testify to the contents of certain documents which they claim to have seen but they do not possess. This testimony . . . clearly violates the Best Evidence Rule."); *Smallwood v. T&A Farms*, CIVIL ACTION NO.:5:14-cv-86, 2017 WL 5904673 *3 (S.D. Ga. June 15, 2017) ("Here, the best evidence rule is implicated because Plaintiff's proposed testimony pertains to the contents of a document.").

than anyone's description [of it]."); *United States v. Ross*, 33 F.3d 1507. 1513 (11th Cir. 1994) ("the purpose of the best-evidence rule is to prevent inaccuracy and fraud when attempting to prove the contents of a writing.") This case demonstrates the purpose of the Rule. The description of the memos is not supported by any proof of the documents themselves or proof that the documents exist.

The application and justification for the Best Evidence Rule is demonstrated by the decision in *Medina v. Multaler,* No. CV 06-00107 MMM (AJWx), 2007 WL 5124009 (C.D. Cal. February 7, 2007). In a pregnancy discrimination case, plaintiff offered evidence that one of the individual defendants sent her an email stating "that the pregnancy was 'bad' or 'bad timing' for the company." *Id*. at *1. The court sustained defendants' objections, holding that "her testimony is offered '[t]o prove the content of a writing,' and falls within the scope of the best evidence rule." *Id*. The court further found that the best evidence rule is "particularly appropriate where, as here, the alleged writer of the original document does not acknowledge the document's existence." *Id.* The court's description of the justification of the Best Evidence Rule applies equally to the present case:

> Pontacq's assertion that he does not remember writing such an email, combined with Medina's inability to produce the email, triggers both of the evidentiary concerns that underpin the best evidence rule, i.e., "guard[ing] against incomplete or fraudulent proof," and preventing inaccuracies that necessarily occur when witnesses are asked to recollect the specific words of a document. *Seller II,* 808 F.2d at 1319; see *id.* ("The modern justification for the rule has expanded from prevention of fraud to a recognition that writings occupy a central

41

position in the law. When the contents of a writing are at issue, oral testimony as to the terms of the writing is subject to a greater risk of error than oral testimony as to events or other situations" (citations omitted"))

*Id*. at *1-2.

This is not a case where the party does not have to produce the document because he or she is testifying about information that is in a document but of which the party also has personal knowledge. *Allstate Ins. Co. v. Swann,* 27 F.3d 1539, 1543 (11th Cir. 1994). The Robinson statement was solely a recitation of what was in the alleged document and was not purported to be based on her personal knowledge. The testimony was not offered to show that a memo existed as that did not prove any portion of Key's case.  Key has offered testimony of the contents of the documents to demonstrate racial animus.  The only source of the fact that the "Koreans" send out memos stating that they do not want African Americans to wear dreadlocks is Robinson's description of the content of the documents. That fact (and Key's sole basis for claiming her hairstyle claim is related to her race) is not based on any other evidence than the description of the contents of the documents. In *Grange Mutual Casualty Co. v. Slaughter*, 958 F.3d 1050, 1058 (11th Cir, 2020), the defendants "needed to prove the content of the lease" to show what entity had exclusive use at the time of the accident. The Eleventh Circuit ruled that the problem for the defendants was the best evidence rule as "[t]he best evidence of the content of the lease is the writing itself."  Similarly, in this case, Key needed to prove

42

intentional racial animus with the only evidence being a description of the contents of a writing. That evidence is barred by the best evidence rule.

### D.    Best Evidence Rule Argument Permissible on Appeal Even Though Not Raised or Addressed in District Court's Opinion.

This Court applies a general rule that an issue "raised for the first time in an appeal will not be considered by this court." *Blue Martini Kendall, LLC v. Miami Dade Cnty. Fla.,* 816 F.3d 1343, 1349 (11th Cir. 2016) (quoting *Access Now, Inc. v. Sw. Airlines Co.,* 385 F.3d 1324, 1331 (11th Cir. 2004) (internal quotations omitted) (collecting cases) and citing *Dean Witter Reynolds, Inc. v. Fernandez,* 741 F.2d 355, 360 (11th Cir. 1984) ("Except for questions concerning the power of the court to order relief, an appellate court generally will not consider a legal issue or theory unless it was presented to the trial court.")). This Court explained that this general rule "preserves judicial resources and hews to the 'essential nature, purpose, and competence of an appellate court.'" *Blue Martini Kendall, LLC v. Miami Dade Cnty. Fla.,* 816 F.3d at 1349 (quoting *Access Now,* 385 F.3d at 1331).

This general rule is not without exception and is at the sound discretion of the Court. *Blue Martini Kendall, LLC* at 1349 (citing *United States v. Godoy,* 821 F.2d 1498, 1504 (11th Cir. 1987) and *Narey v. Dean,* 32 F.3d 1521, 1527 (11th Cir. 1994) (internal citation omitted). Notably, this Court is more likely to make exception and exercise discretionary when "the appeal stems from a summary judgment ruling, not

after trial, because a remand from summary judgment proceedings involves less strain on judicial resources and does not impair judicial efficiency as dramatically." *Blue Martini Kendall, LLC* at 1349 (citing *Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.,* 689 F.2d 982, 990 (11th Cir. 1982)).

Assuming review is available, given Dynamic's failure to raise the Best Evidence Rule argument below, it is only for plain error. *Callahan v. Emory Healthcare, Inc*., No. 23-10604, 2024 WL 3027684, at *4 (11th Cir. June 17, 2024) (citing *Hamm v. Members of Bd. of Regents*, 708 F.2d 647, 651 (11th Cir. 1983)). "Under plain error review, [this Court] will reverse the district court only if [it] find[s]: (1) there is an error (2) that is plain (3) that affects a litigant's substantial rights and (4) that 'not correcting the error would seriously affect the fairness of the judicial proceeding.'" *Callahan v. Emory Healthcare, Inc*. at *4 (quoting *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1329 (11th Cir. 1999)).

Here, consideration upon Defendants/Appellees' motions for summary judgment of the "Korean memos" as evidence of discriminatory intent either with regard to the neutral grooming policy or in application of the neutral grooming policy would be plain error. In admissible evidence generally cannot be considered on a motion for summary judgment. That is particularly so here where Key has no evidence the alleged memos even exist. Key urges this Court consider Key's testimony about the content of the Korean memos as evidence of discriminatory

intent by Dynamic and the other Defendants/Appellees. As demonstrated above, the best evidence of the content of the memoranda would be the memoranda themselves, not Key's testimony about what Robinson told her was contained in certain memoranda. That testimony, were Key to attempt to offer to before a jury, would be excluded as not being the best evidence of the content of the "Korean memos," and it would be plain error for the District Court to have permitted it as evidence of intent in ruling on Defendants/Appellees' motions for summary judgment.

## CONCLUSION

For the reasons stated above, the District Court's Order granting summary judgment on all of Key's claims against Dynamic other than Key's § 1981 claim is due to be affirmed.

CERTIFICATE OF COMPLIANCE

This document contains 11,222 words and thus complies with the word limit of Fed. R. App. P. 32(a)(7)(B), excluding the parts exempted by Fed. R. App. P. 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type-style requirements of Fed. R. App. P. 32(a)(6).

Dated: February 10, 2025

Respectfully submitted,

*/s/Wesley C. Redmond*
OF COUNSEL

## CERTIFICATE OF SERVICE

I certify that, on February 10, 2025, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system. Counsel for all parties registered as CM/ECF users will be served with the foregoing document by the Court's CM/ECF system.

*/s/Wesley C. Redmond*
OF COUNSEL